## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RYAN WALLACE ZIMMERMAN,
Nationals Park
1500 Capitol Street SE
Washington, DC 20003,

                    Plaintiff,

v.

AL JAZEERA AMERICA, LLC, AL JAZEERA
MEDIA NETWORK, AL JAZEERA
INTERNATIONAL (USA) INC., LIAM JAMES
COLLINS, and DEBORAH DAVIES,

                    Defendants.

Civil Action No. 16-cv-00014-KBJ

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

Plaintiff Ryan Wallace Zimmerman, as and for his Complaint against Defendants Al Jazeera America, LLC ("Al Jazeera America"), Al Jazeera International (USA) Inc., and Al Jazeera Media Network, (collectively, "Al Jazeera"), Liam James Collins, and Deborah Davies (together with Al Jazeera, "Defendants"), by and through undersigned counsel, hereby alleges as follows:

## NATURE OF THE ACTION

1.    This is a suit to redress an unjust injury to the public image and reputation of Major League Baseball ("MLB") player Ryan Wallace Zimmerman, which have been damaged by outrageously false and defamatory statements recklessly published by Al Jazeera. As detailed below, Defendants publicly smeared Mr. Zimmerman with false and unsubstantiated allegations of performance-enhancing drug use, based on uncorroborated accusations by a third party that had been unequivocally recanted *prior* to Defendants' publication.  Defendants knew full well

that their "source" had recanted his scandalous and untrue allegations against Mr. Zimmerman but, abdicating all journalistic responsibilities, Defendants nonetheless chose to publish their defamatory story in an attempt to stir scandal and increase Al Jazeera's low ratings, no matter the cost to Mr. Zimmerman.

## THE PARTIES

2.      Plaintiff Ryan Wallace Zimmerman is a citizen and resident of Virginia, and a first baseman for the Washington Nationals MLB team.

3.      Defendant Al Jazeera America is a Delaware corporation with its headquarters and principal place of business at 435 Hudson Street, New York, New York 10014, and with an office at 1200 New Hampshire Avenue, NW, Washington, DC 20036.  Al Jazeera America is a U.S. based news channel that provides both domestic and international news coverage for its American audiences.  Headquartered in New York City with bureaus in 12 cities across the United States, Al Jazeera America is available in more than 60 million homes in the U.S. across major television providers, including DirecTV, Comcast/Xfinity, Time Warner Cable, DISH Network, AT&T U-Verse, Verizon FiOS, and Bright House Networks.

4.      Defendant Al Jazeera International (USA) Inc. is a Delaware corporation with its headquarters and principal place of business at 1627 K Street, NW, 11th Floor, Washington, DC 20006.  Al Jazeera International (USA) Inc. is a mid-sized television broadcasting station in Washington, DC. It opened in 2005 and now has an estimated $15.5 million in yearly revenue and 137 employees.

5.      Defendant Al Jazeera Media Network is a multinational multimedia conglomerate, and is the parent company of both Al Jazeera America, and Al Jazeera International (USA) Inc., as well as other non-party Al Jazeera affiliates.  Al Jazeera Media

Network is headquartered in Doha, Qatar with offices around the United States, including in Washington DC at 1200 New Hampshire Avenue, NW, Washington, DC 20036.

6.    Al Jazeera Media Network maintains what it calls its "Investigative Unit." Upon information and belief, the Investigative Unit is based out of Al Jazeera America's office located at 1200 New Hampshire Avenue, NW, Washington, DC 20036. The Investigative Unit, which works collaboratively with Al Jazeera Media Network and Al Jazeera America purports to investigate stories throughout the United States and the world. Employees of the Investigative Unit report directly to executives from Al Jazeera Media Network. (A true and correct copy of the article found at https://www.washingtonpost.com/blogs/erik-wemple/wp/2016/01/13/al-jazeera-unit-that-did-doping-documentary-unaffected-by-al-jazeera-america-shutdown/ is attached hereto as **Exhibit A**). Specifically, those investigative employees "have their own 'directorate' within the [Al Jazeera Media Network] corporate structure, with offices in Doha, London and Washington." (*Id.*) According to its website, "Al Jazeera's Investigative Unit does not report the news, it makes the news." (*See* **Exhibit B** , a true and correct copy of the web page found at http://www.aljazeera.com/investigations/). The website further boasts that "the stories we have produced have led the global news agenda." (*Id.*) Upon information and belief, those stories have been distributed on various Al Jazeera Media Network channels and platforms, including Al Jazeera America.

7.    Defendant Deborah Davies is a reporter jointly employed, upon information and belief, by Al Jazeera America and Al Jazeera Media Network in Washington, D.C. Upon information and belief, Davies is a citizen of the United Kingdom and a resident of Washington, D.C.

8.      Defendant Liam James Collins is, among other things, a former hurdler, would-be bobsledder, and bankrupt real-estate promoter who is banned by British authorities from directing any business until 2027 after being found to have taken substantial sums of money from investors with the promise of high returns on property investments and no reasonable expectation that they would ever be able to meet the repayments promised to investors.  Upon information and belief, Collins is a citizen and resident of the United Kingdom.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.      This Court has personal jurisdiction over Al Jazeera America and Al Jazeera International (USA) Inc. pursuant to § 13-422 of the District of Columbia Code because each is a domiciliary of the District of Columbia.  This Court also has personal jurisdiction over each of the Al Jazeera defendants pursuant to § 13-423 of the District of Columbia Code by virtue of its: (i) transacting business within the District of Columbia; (ii) causing tortious injury in the District of Columbia by acts committed within the District of Columbia; (iii) causing tortious injury in the District of Columbia by acts committed outside the District of Columbia while regularly doing business within, engaging in persistent conduct within, and deriving substantial revenue from goods consumed and services rendered within the District of Columbia; and, upon information and belief, (iv) having an interest in, using, or possessing real property within the District of Columbia.

11.      This Court has personal jurisdiction over Davies pursuant to § 13-422 of the District of Columbia Code because, upon information and belief, she is a domiciliary of the

District of Columbia.  This Court also has personal jurisdiction over Davies pursuant to § 13-423 of the District of Columbia Code by virtue of her: (i) transacting business within the District of Columbia and maintaining a principal place of business in D.C.; (ii) causing tortious injury in the District of Columbia by acts committed within the District of Columbia; (iii) causing tortious injury in the District of Columbia by acts committed outside the District of Columbia while regularly doing business within, engaging in persistent conduct within, and deriving substantial revenue from goods consumed and services rendered within the District of Columbia; and, upon information and belief, (iv) having an interest in, using, or possessing real property within the District of Columbia.

12.     This Court has personal jurisdiction over Collins pursuant to § 13-423 of the District of Columbia Code by virtue of his: (i) transacting business within the District of Columbia; (ii) causing tortious injury in the District of Columbia by acts committed within the District of Columbia; and (iii) causing tortious injury by acts committed outside the District of Columbia while deriving substantial revenue from goods consumed and services rendered in the District of Columbia.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred herein, and because all Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### *Plaintiff Ryan Wallace Zimmerman*

14.     Mr. Zimmerman is a highly successful professional baseball player, and a starting first baseman for the Washington Nationals.  Mr. Zimmerman has played for the Nationals for his entire MLB career.

15.     Mr. Zimmerman graduated from Kellam High School in Virginia Beach, Virginia, and attended the University of Virginia, where he was a three-year starting third baseman for the Cavaliers before being drafted by the Nationals.  While playing for the University of Virginia, Mr. Zimmerman twice established a school record for hits in a season, and ended his career in the top ten in school history for doubles, hits, and runs batted in ("RBI").  In his final collegiate season, Mr. Zimmerman was named an All-American by both Baseball America and the National Collegiate Baseball Writers Association.  He also was named an All-Atlantic Coast Conference Team member in both 2004 and 2005.

16.     Mr. Zimmerman also played on the 2004 United States National Team, which won the 2004 FISU World University Baseball Championship in Tainan, Taiwan.  Mr. Zimmerman led Team USA in batting average, RBIs, and home runs, and was named tournament MVP and USA Baseball's Athlete of the Year.

17.     Mr. Zimmerman was the fourth overall pick in the 2005 MLB draft, and the newly established Nationals' first-ever draft pick.  He was called up to the major leagues in September 2005.

18.     Mr. Zimmerman quickly became a hometown hero and fan favorite.  In 2006, his first full season in the major leagues, he placed second in National League Rookie of the Year voting, in what was the closest vote ever for the award.

19.     Mr. Zimmerman has been an integral member of the Nationals for the past 11 years.  He is the Nationals' all-time leader in games, plate appearances, at bats, runs, hits, doubles, home runs, RBI, total bases, extra base hits, walks, intentional walks, walk off hits, and defensive innings.  He also has won numerous awards for his on-field performance.  For example, in the 2009 season, Mr. Zimmerman was named to the National League All-Star Team,

won the Gold Glove Award as the best defensive third baseman in the National League, won the Fielding Bible Award as the best fielding third baseman in Major League Baseball, and won the Silver Slugger Award as the best offensive third baseman in the league.  He won a second consecutive Silver Slugger Award in 2010.

20.     Mr. Zimmerman is also well known for his charity work.  In 1995, his mother was diagnosed with multiple sclerosis, and she eventually became wheelchair bound.  Mr. Zimmerman has explained that the diagnosis and disease was a substantial formative experience throughout his childhood, forcing him and his brother to assume significant responsibility for their home and family at an earlier age than most of their peers.

21.     In 2005, Mr. Zimmerman founded the ziMS Foundation, which is dedicated to treating and curing multiple sclerosis.  Through the foundation, Mr. Zimmerman is able to give back to his community and help countless others afflicted by the disease that his family has fought for years.  In the ten years since its founding, the ziMS Foundation has donated more than $1.5 million to multiple sclerosis research.

22.     Based on Mr. Zimmerman's reputation and the foundation's mission, the ziMS Foundation has numerous corporate partners, including Mercedes Benz of Arlington, Bedrock Management Company, Comcast, MC Dean, Marquis Jet, Appollo Jets, Pharma, Smithfield Foods, Under Armour, Biotechnology Industry Organization, Kazi Investment Group, Coca-Cola, Segovia Global, Haven Pizzeria, GEICO Insurance, Headfirst Camps, Events D.C., Novartis, MASN, Chevrolet, Advisor Shares, Papa John's Pizza, Norfolk Southern, PNC Bank, Pop Chips, Tyson's Corner, CBS Radio, American PT Association, Miller, Heineken, and Jim Beam.

23.     And Mr. Zimmerman's philanthropy extends beyond the ziMS Foundation.  For example, Mr. Zimmerman, in conjunction with the Nationals and athletic apparel maker Under Armour, has recently dedicated a field in his name at a youth recreational facility in Washington, D.C.

24.     Due to his reputation as a talented and widely respected athlete, Mr. Zimmerman has endorsed and acted as spokesman for various companies both in the Washington, D.C. metro area and nationally, including Mercedes Benz of Arlington, Stutzman Chevrolet of Winchester, Passport Infiniti, Coca-Cola, LoJo Sports & Memorabilia, Lock Room Memorabilia, Force 3, Papa John's Pizza, MASN, Comcast, Majestic, Thompson Creek Windows, PNC Bank, GEICO Insurance, DirecTV, MLB The Show, Under Armour, Nike, Louisville Slugger, Rawlings, Topps, and Upper Deck.

### *The Al Jazeera Defendants*

25.     Al Jazeera Media Network is a Qatar-based news network that, upon information and belief is owned or funded by the government of Qatar.  Originally launched as an Arabic-language cable channel, Al Jazeera Media Network has expanded into a multi-channel network.

26.     In 2013, Al Jazeera Media Network spent $500 million to buy Current TV and start an American channel—Al Jazeera America.  However, Al Jazeera America has been "plagued with low ratings" in the "nearly two years since its launch."  (A true and correct copy of the article found at http://www.thewrap.com/al-jazeera-america-mess-low-ratings-distribution-woes-still-dog-embattled-network/ is attached as **Exhibit C**).

27.     In or about May 2015, Al Jazeera America suffered "an exodus of top executives" who left citing "a culture of fear" and a "newsroom in total 'disarray behind the scenes.'" (A true and correct copy of the article found at http://www.nytimes.com/2015/05/06/business/media/al-

jazeera-network-in-turmoil-is-now-the-news.html?_r=0 is attached hereto as **Exhibit D**).  In fact, as a result of this exodus, as well as a $15 million discrimination lawsuit, Al Jazeera America "nearly imploded," and then-CEO Ehab Al Shihabi was removed.  (A true and correct copy of the article found at http://www.ft.com/intl/cms/s/0/7bef7300-6304-11e5-a28b-50226830d644.html#axzz3vclM4j1F is attached hereto as **Exhibit E**).

28.     Since Al Shihabi's removal, Al Jazeera America has continued to face difficulties. In August 2015, it parted ways with its Senior Vice President of News Output.  (A true and correct copy of the article found at http://www.huffingtonpost.com/entry/mary-caraccioli-al-jazeera-america_55df7ce7e4b0b7a963386b6a is attached hereto as **Exhibit F**).  And in September 2015, Al Jazeera America refused to voluntarily recognize a union drive announced by its digital employees.   (A true and correct copy of the article found at http://www.ibtimes.com/al-jazeera-america-will-not-recognize-union-nlrb-elections-underway-2118695 is attached hereto as **Exhibit G**).

29.     As of September 28, 2015, Al Jazeera America continued to trail far behind its competitors, and its new CEO, Al Anstey, was quoted as admitting, "[t]he reputation is low." (**Exhibit E**).

30.     In November 2015, Al Jazeera America was forced to suspend David W. Harleston as the company's general counsel, after it was revealed that he was not licensed to practice law.   (A true and correct copy of the article found at http://www.nytimes.com/2015/11/09/business/media/general-counsel-for-al-jazeera-america-appears-to-be-unlicensed.html?_r=0 is attached hereto as **Exhibit H**).

31.     On January 13, 2016, Al Jazeera America announced that it would be ceasing operations in April 2016.   (A true and correct copy of the article found at

http://www.nytimes.com/2016/01/14/business/media/al-jazeera-america-to-shut-down-in-april.html?ref=business&smid=tw-nytimesbusiness&smtyp=cur&_r=0 is attached hereto as **Exhibit I**).  In a memo to the staff, Al Jazeera America's chief executive, Mr. Anstey, said the "decision by Al Jazeera America's board [to shut down operations] is driven by the fact that our business model is simply not sustainable in light of the economic challenges in the U.S. media marketplace."  (*Id.*)  Despite its closure, Mr. Anstey promised that  "Al Jazeera would expand its digital presence in the United States . . . [and] 'would bring new global content into America.'"  (*Id.*)

32.     Al Jazeera Media Network's Investigative Unit will not be affected by Al Jazeera America's imminent shutdown, as the employees of the Investigative Unit report to executives of the Al Jazeera Media Network. (**Exhibit A**).

### *Defendant Deborah Davies*

33.     Deborah Davies holds herself out as a British reporter working for Al Jazeera in Washington, D.C., as part of Al Jazeera's Investigative Unit.   Upon information and belief, Deborah Davies was the lead reporter involved in Al Jazeera's program entitled "The Dark Side: Secrets of the Sports Dopers."

### *Defendant Liam James Collins*

34.     Liam James Collins is a known fraudster and publicity-seeker who gained fame in 2009 as a semi-finalist on Britain's Got Talent as part of the dance duo "Faces of Disco."  Collins also has sought publicity to raise money for a supposed attempt at joining an Olympic bobsled team, as well as for a never-materialized bid to buy Michael Jackson's Neverland Ranch.

35.     More infamously, in 2012, Collins and his business partner declared bankruptcy after their real estate investment scheme was exposed and investors lost millions.  Following an

investigation by Britain's Insolvency Service's Public Interest Unit into Collins' business activities, Collins and his partner were each given 14-year bankruptcy restriction orders barring them from directing companies within the United Kingdom.  The maximum ban is 15 years. British authorities found that Collins and his partner had amassed nearly a million pounds from investors "'with the promise of high returns on property investments with no reasonable expectation that they would ever be able to meet the repayments promised to investors.'"  (A true and correct copy of the article found at http://www.thisismoney.co.uk/money/celebritymoney/article-2409740/Britains-Got-Talent-star-Liam-Collins-handed-bankruptcy-ban-duping-investors-property-scam.html is attached hereto as **Exhibit J**).

36.    Most recently, Collins made news for busking in Glasgow dressed as Iron Man, in a purported scheme to raise money for his wedding.  (*See* **Exhibit K**, a true and correct copy of the article found at  http://www.thescottishsun.co.uk/scotsol/homepage/news/5441426/Iron-Moan.html).

### *The Dark Side*

37.     On Sunday, December 27, 2015, at 9:00 p.m. EST, Al Jazeera aired a program on its television network entitled "The Dark Side: Secrets of the Sports Dopers" ("The Dark Side"). (A true and correct video copy of the program, **Exhibit L** hereto, is available at the Court's request and the notice of filing is attached hereto)  In addition, no later than December 27, 2015, Al Jazeera posted on its website a news article describing "The Dark Side" and including an embedded link to a video of the full program.  In this news article, Al Jazeera describes "The Dark Side", as an "investigation rais[ing] questions about whether sports heroes are linked to performance-enhancing drugs."   (A true and correct copy of the article found at http://www.aljazeera.com/news/2015/12/dark-side-secrets-sports-dopers-151227133355144.html is attached hereto as **Exhibit M**).

38.     On December 26, 2015, in advance of its televised airing of "The Dark Side," Al Jazeera posted a video of the full program on YouTube, and provided the full program to The Huffington Post, which published an article with an embedded link to the full program on Saturday, December 26, 2015.   (A true and correct copy of the article found at http://www.huffingtonpost.com/entry/peyton-manning-human-growth-hormone_567f16e4e4b0b958f6599440 is attached hereto as **Exhibit N**).

39.     In "The Dark Side," as reported by Davies, Al Jazeera used Liam Collins to "help us to investigate doping in sport . . . [by] claiming to be an athlete desperate to qualify for the Rio Olympics."

40.     According to Al Jazeera, Collins—who has no known news reporting training or experience—spent six months traveling to the Bahamas, Canada, and Texas, attempting to make contact with suppliers of performance-enhancing substances.  Falsely claiming to be a potential

client, Collins induced various people he came into contact with to discuss the topic of performance-enhancing substances and to provide him with what were purported to be performance-enhancing substances.  Using hidden cameras, Collins secretly recorded these interactions.

41.     Much of "The Dark Side" focuses on Collins' time in Texas, where he made contact with Charles David Sly, falsely described by Davies in the program as a "doctor of pharmacy." (**Exhibit L** at 18:48).

### *The Defamatory Statements Contained in "The Dark Side" and the Accompanying Print Article*

42.     Shortly after their initial meeting, Sly is captured on a concealed camera in Collins' hotel room in Austin, Texas, offering Collins a steroid called "Delta 2", or "D-2", in order to help him with his "strength gains."  As part of his sales pitch to Collins, Sly claims, "There's a bunch of football players who take this, and a bunch of baseball players take it too.  It was recently added to the MLB banned list." (**Exhibit L** at 19:22).  A voiceover from Davies further explains: "Major League Baseball added Delta 2 by name, but as a steroid it was already banned in baseball and football." (**Exhibit L** at 19:28).

43.     Later in the program, Collins returns to Texas for a road trip with Sly.  As described by Davies in the program:

> Back in Texas, the pharmacist Charlie Sly names more sportsmen he claims are linked to Delta 2, in baseball and football.  He says he coached them on what to take and how to avoid testing positive.  In a series of conversations crisscrossing Texas, we primed Liam [Collins] with questions to dig into the claims.  (**Exhibit L** 35:20).

44.     During the footage of this road trip, the video cuts to a stylized clip of Mr. Zimmerman batting in his Nationals uniform, with a sports announcer's voiceover, "[t]hat's a seeing eye single for Ryan Zimmerman; three for four on the day," before the shot comes to rest

on a backdrop of a stylized baseball card of Mr. Zimmerman, with his name appearing in large letters.   Against this backdrop, the following conversation is played while the text of the conversation scrolls across the screen:

> Collins:  How long have you known Zimmerman?
>
> Sly:  Probably six years.  I worked with him in the off season.  That's how I get him to change some stuff.
>
> Collins:  Is he on the D-2 as well?
>
> Sly:  Yeah.
>
> Collins:  What does he think of the D-2?
>
> Sly:  It does its job.
>
> Collins:  Does he notice a lot of power or not?
>
> Sly:  Yeah, I think some guys have just kind of gotten used to it.  It's the new normal.

45.     In addition, in the written news article about "The Dark Side" posted at http://www.aljazeera.com/news/2015/12/dark-side-secrets-sports-dopers-151227133355144.html, (**Exhibit M**), Al Jazeera originally included the defamatory statement that "Sly also named . . . Ryan Zimmerman, of the Washington Nationals . . . raising questions about whether [he] use[s]" human growth hormone.

46.     On December 28, 2015, Al Jazeera changed this sentence to read: "Sly also named . . . Ryan Zimmerman, of the Washington Nationals . . . raising questions about whether [he] use[s] the hormone supplement Delta 2."   In conjunction with this change, Al Jazeera appended a correction notice to its article, stating that an earlier version of the article "reporting" on an allegation about possible links between Mr. Zimmerman and human growth hormone was incorrect, as the substance alleged in Al Jazeera's own program was not human growth hormone but Delta 2.

14

47.     All of these statements concerning Mr. Zimmerman are categorically untrue.  Mr. Zimmerman has never taken Delta 2, human growth hormone, or any other steroid or other performance-enhancing substance banned by the MLB.  Mr. Zimmerman has not known Charles David Sly for six years, and Charles David Sly has not gotten "[Mr. Zimmerman] to change some stuff."  Mr. Zimmerman has never received any banned substances from Charles David Sly and has never "been coached [by Charles David Sly] on what to take and how to avoid testing positive."

48.     Sly's statements about Mr. Zimmerman, as published by Defendants, are *per se* defamatory, as they falsely accuse Mr. Zimmerman of illegal acts, as well as acts injurious to his professional and business reputation—namely the taking of illegal and banned performance-enhancing substances.  These remarks are further defamatory in that they falsely suggest that the taking of these illegal and banned substances by Mr. Zimmerman was part of an ongoing "maintenance" plan directed by Sly, and imply that Mr. Zimmerman's career accomplishments were the result of taking these substances.

49.     Defendants are well aware that these statements are untrue and defamatory, and have shown reckless disregard for this fact.

### *Defendants Recklessly Disregard All Indicators of Lack of Veracity*

50.     On or about December 9, 2015, Mr. Zimmerman first learned that Al Jazeera planned to run a program accusing him, and others, of taking illegal or banned supplements.  On December 18, 2015, undersigned counsel informed Al Jazeera's counsel that Mr. Zimmerman "unequivocally and emphatically den[ies]" using or having used Delta 2 or any other performance-enhancing drug and that such defamatory claims, if published, would cause Mr.

Zimmerman serious reputational and economic injury.  Counsel also noted that Al Jazeera's refusal to identify the lone source of its claims was a barrier to discovery of the truth, writing:

> In an effort to disabuse Al Jazeera of the error of its ways, we asked that you identify the lone individual who allegedly serves as the source of these charges, but you refused to do so. You have also refused to provide us with any information that might lead us to help you understand how it could be that such a falsehood could have been charged of [our client].  Consequently, you have disabled us in our ability to demonstrate that your source is either untrustworthy or just plain wrong, and therefore Al Jazeera will be taking the risk that false and shoddy journalism could have been rectified had not its reporting protocol been grossly irresponsible.

(A true and correct copy of this December 18, 2015 email is attached hereto as **Exhibit O**).

51.     On December 23, 2015, undersigned counsel again wrote to Al Jazeera's counsel, re-affirming that Mr. Zimmerman "unequivocally and emphatically denies that he used Delta 2 or any other performance enhancing drug" and that publication of such claims would amount to defamation, and demanding that "Al Jazeera immediately cease and desist from making false and injurious statements regarding Mr. Zimmerman's alleged use of performance enhancing drugs." (A true and correct copy of this December 23, 2015 letter is attached hereto as **Exhibit P**).

52.     On December 26, 2015, Mr. Zimmerman learned (from a source other than Defendants) not only that the sole source of the allegations against him were statements made by Sly and relayed to Al Jazeera by Collins, but that ***Sly had unequivocally advised Davies and Al Jazeera's counsel, in writing, that the purported statements were false***.  Accordingly, at 2:49 p.m. on December 26, undersigned counsel once again wrote Al Jazeera's counsel, noting that, in light of the above facts and especially given Collins' reputation as a fraudster and attention-seeker, "[t]here can be no conclusion but that the sources for Al Jazeera's statements regarding Mr. Zimmerman's alleged use of performance enhancing drugs are patently unreliable," and

again demanding that Al Jazeera cease and desist from making any such defamatory statements against Mr. Zimmerman. (A true and correct copy of this December 26, 2015 letter and cover email is attached hereto as **Exhibit Q**).

53.     Nonetheless, on this same day, in an obvious ploy to drum up publicity in advance of airing the program, and so increase its ratings, Al Jazeera posted the full program on YouTube and provided The Huffington Post with an advance copy. At 9:01 p.m. on December 26, 2015, The Huffington Post published a story relating to "The Dark Side," and embedded in this story not only a link to the video of the full program, but also a video of Sly recanting. (A true and correct video copy of the Sly recantation, **Exhibit R** hereto, is available at the Court's request and the notice of filing is attached hereto); (**Exhibit N**).

54.      In his 55-second long video recantation, Sly clearly states:

> The statements on any recordings or communications that Al Jazeera intends to air are absolutely false and incorrect. To be clear, I am recanting any such statements and there is no truth to any statement of mine that Al Jazeera plans to air. Under no circumstances should any of those statements, communications, or recordings be aired.

In this same article, The Huffington Post further reported that "[i]n a subsequent statement to Al Jazeera, [Sly] walked back the comments even further," although upon information and belief Al Jazeera has not made this subsequent statement public.

55.     Apart from Sly's recantation, other facts known and/or readily available to Al Jazeera suggest the unreliability of Al Jazeera's sole source for the defamatory allegations concerning Mr. Zimmerman.

56.     As Davies herself recognizes in "The Dark Side," the motivations of Collins' "sources" are questionable. Indeed, all references by Sly to professional athletes, whether generally or by name, are in the context of his sales pitch attempting to sell his services, his drugs, and his business to Collins. Following the publication of the piece, a *New York Times*

report quickly recognized this obvious issue with source credibility: "Sly and the other characters appear to be slippery sorts, sweaty salesmen in search of another mark."  (A true and correct copy of the article found at  http://www.nytimes.com/2015/12/28/sports/football/claims-of-peyton-manning-doping-raise-nagging-questions.html?_r=0 is attached hereto as **Exhibit S**).

57.     In addition, the allegations as to Mr. Zimmerman lack any specificity.  "The Dark Side" does not identify when Mr. Zimmerman is alleged to have started taking such performance-enhancing substances or for how long, or how he received and paid for the drugs. It does not include any details on when, where, or how Sly supposedly met Mr. Zimmerman or how they communicated with each other.  Despite six months of undercover work, Defendants failed to uncover a single reported piece of evidence corroborating Sly's outlandish claims about Mr. Zimmerman.  The combination of this lack of specificity and utter absence of any corroborating evidence casts further doubt on Sly's credibility.  Yet Al Jazeera published its report despite its inability to gather any corroborating evidence or to answer even the most basic questions underlying the defamatory statements concerning Mr. Zimmerman.

58.     The contradictions as to even easily verifiable facts also cast doubt on the veracity of Sly and his account.  While Davies refers to him as a "doctor of pharmacy" and "pharmacist," and "The Dark Side" credits him with working at the Guyer Institute in Indiana in 2011, public records reveal that in 2011 Sly was not licensed in Indiana as either a doctor of pharmacy or a pharmacist, but rather as a pharmacy intern, and that this license expired on May 1, 2013.  (*See* **Exhibit   T**,   a   true   and   correct   copy   of   the   web   page   found   at http://www.indianalicensing.org/charles-david-sly)  And both Sly and Dr. Guyer have stated that Sly was not an employee of the Guyer Institute, but rather a short-term, unpaid intern.  Davies herself has now admitted on *The Today Show* that Sly was at the Guyer Institute only as "part of

his training, part of his rotation for pharmacy."  (A true and correct video copy of the Davies interview on *The Today Show*, **Exhibit U** hereto, is available at the Court's request and the notice of filing is attached hereto).

59.     Defendants' own behavior similarly casts doubt on the credibility of the program and Defendants' willingness to uncover the truth.  Already lacking support for the basic "who, where, when, and how" of the story, Al Jazeera could not even remain consistent in its false reporting of the "what."   In its own news article about "The Dark Side," Al Jazeera originally falsely reported that in "The Dark Side" Sly alleged that Mr. Zimmerman had taken human growth hormone.  On December 28, 2015, Al Jazeera printed a correction admitting that it had ***incorrectly reported on its own story***, and that Sly never claimed that Mr. Zimmerman had taken human growth hormone.  (**Exhibit M**).

60.     Further, in a December 27, 2015 interview on Al Jazeera, Davies admitted that Al Jazeera heard from Sly "48 hours ago" (before either Al Jazeera or The Huffington Post published "The Dark Side") and acknowledged that "Charlie Sly now says that anything he said to us wasn't true."   (A true and correct video copy of the Davies interview on Al Jazeera, **Exhibit V** hereto, is available at the Court's request and the notice of filing is attached hereto). Davies further admits that Sly is untrustworthy, continuing, "[y]ou have to say, well, is he lying now, was he lying during day upon day upon day of undercover filming, because obviously the two don't square." (*Id.*).

61.     Notwithstanding this awareness of Sly's questionable motivations, the lack of any specific or independently verified facts, the full knowledge that Sly had recanted any and all statements and that his accounts "don't square," Al Jazeera aired "The Dark Side," as scheduled at 9:00 p.m. EST on December 27, 2015.  Further, Al Jazeera has made and continues to make

the program and news article available on its website and the program available on YouTube, and has failed to retract any statements made therein.

62.     In addition, Al Jazeera and Davies have continued to aggressively promote "The Dark Side."  On December 27 and 28, 2015, Al Jazeera posted numerous videos of Davies being interviewed by other Al Jazeera reporters about "The Dark Side."  On December 29, 2015, Davies appeared on NBC's *The Today Show* for an interview about "The Dark Side."  In addition, Al Jazeera and Davies have continued to promote the piece to various other news outlets and publications, including The Huffington Post.

63.     Since publication, Defendants have refused to retract their defamatory statements. On December 28, 2015, Mr. Zimmerman's counsel sent Defendants' counsel a retraction letter. (A true and correct copy of this December 28, 2015 letter is attached hereto as **Exhibit W**). Defendants' counsel responded on December 30, 2015, refusing to retract the statements.

64.     Defendants have therefore acted with either actual knowledge of falsity or with reckless disregard for the truth or falsity of the defamatory statements.

*Impact of the Defamatory Statements*

65.     Due to Defendants' defamatory statements, Mr. Zimmerman has been at the center of a media storm speculating as to his alleged use of Delta 2 and other performance-enhancing substances.  Mr. Zimmerman's reputation for honesty, both generally and as a competitor, has been called into question, not only in front of the athletic community, but in front of the public at large.  As a consequence, Mr. Zimmerman has suffered reputational harm that has affected and will continue to affect him in his main profession—as a professional baseball player—as well as in future sponsorship and other business opportunities and in charitable pursuits.  The financial impact of this harm on Mr. Zimmerman ultimately will be in the millions

of dollars.

## COUNT ONE:  LIBEL
### (Against All Defendants)

66.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 65 with the same force and effect as if fully stated herein.

67.    Defendants published or caused to be published in print and by broadcast defamatory statements of fact and concerning Mr. Zimmerman on Al Jazeera's television station and website, as well as on YouTube and The Huffington Post's website.

68.    Defendants published or caused to be published the false and defamatory statements of fact and concerning Mr. Zimmerman knowing that such statements would be disseminated throughout the world.

69.    The false and defamatory statements of fact published or caused to be published by Defendants state outright and also carry the unmistakable message that Mr. Zimmerman has taken or is taking illegal performance-enhancing substances, including Delta 2, in contravention of the MLB ban on such substances.  Thus, the false and defamatory statements of fact published by Defendants are libelous *per se* in that they impute criminal conduct to Plaintiff and disparage him in his business and/or profession on their face, and can be so understood without reference to any additional or extrinsic facts.

70.    Those who read or otherwise receive the false and defamatory statements of fact published or caused to be published by Defendants and concerning Mr. Zimmerman understand their defamatory meaning and understand that the statements concern Mr. Zimmerman.

71.    Defendants published or caused to be published the false and defamatory statements concerning Mr. Zimmerman without any applicable privilege.

72.    Defendants published or caused to be published the false and defamatory

statements concerning Mr. Zimmerman with knowledge that they were false and/or with reckless disregard for the truth or falsity of the statements.

73.     Evidencing Defendants' knowledge of the falsity of the defamatory statements concerning Mr. Zimmerman and a reckless disregard for the truth or falsity of those statements, Defendants, *inter alia*:

    a.     knew that the motivations of their sole source were questionable;

    b.     lacked any details tending to establish the veracity of the source's allegations;

    c.     failed to uncover any confirming facts as to these allegations, notwithstanding a purported six-month undercover operation related to same;

    d.     refused to further investigate the sole source of these allegations, or to identify said source, despite Mr. Zimmerman's repeated requests prior to publication regarding same; and

    e.     knew prior to publication that the sole source of the allegations had recanted these allegations.

74.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Zimmerman has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, professional athlete, and businessman, has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage.

75.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory statements concerning Mr. Zimmerman with the specific intent to cause harm to Mr. Zimmerman and in order to boost their own

reputations and Al Jazeera's ratings, and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, justifying an award of punitive damages.

76.     Despite all of the warning signs indicating that the statements in *The Dark Side* about Mr. Zimmerman were untrue, including Sly's retraction, as well as Mr. Zimmerman's denial of the allegations, Al Jazeera Media Network, Al Jazeera America, Davies, and Collins published the untrue and defamatory documentary. Alternatively, Al Jazeera Media Network and Al Jazeera America are liable for the wrongful acts of their agents and employees under the doctrine of *respondeat superior* and agency principles.

## COUNT TWO:  FALSE LIGHT INVASION OF PRIVACY
### (Against All Defendants)

77.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 76 with the same force and effect as if fully stated herein.

78.     Defendants published or caused to be published in print and by broadcast untrue statements concerning Mr. Zimmerman on Al Jazeera's television station and website, as well as on YouTube and The Huffington Post's website.

79.     Defendants published or caused to be published such false statements concerning Mr. Zimmerman knowing that such statements would be disseminated throughout the world, and indeed, have taken ongoing steps to promote and disseminate these false statements.

80.     The false statements published or caused to be published by Defendants state outright and also carry the unmistakable message that Mr. Zimmerman has taken or is taking illegal performance-enhancing substances, including Delta 2, in contravention of the MLB ban on such substances. Such untrue statements place Mr. Zimmerman in a false light highly offensive to a reasonable person, such that anyone who reads or otherwise receives the false

statements of fact published or caused to be published by Defendants concerning Mr. Zimmerman understands the untrue statements to imply that Mr. Zimmerman has taken or is taking illegal and banned performance-enhancing substances.

81.    The publications send this message that Mr. Zimmerman has taken or is taking illegal and banned performance-enhancing substances despite the fact that "The Dark Side" contains Sly's retraction of his untrue statements concerning Mr. Zimmerman's use of performance-enhancing substances and despite Mr. Zimmerman's denial of the allegations.

82.    Defendants published or caused to be published the false statements concerning Mr. Zimmerman without any applicable privilege.

83.    Defendants published or caused to be published the false statements concerning Mr. Zimmerman with knowledge that they were false and/or with reckless disregard for the truth or falsity of the statements.

84.    Evidencing Defendants' knowledge of the falsity of the defamatory statements concerning Plaintiff and a reckless disregard for the truth or falsity of those statements, Defendants, *inter alia*:

    a.    knew that the motivations of their sole source were questionable;

    b.    lacked any details tending to establish the veracity of the source's allegations;

    c.    failed to uncover any confirming facts as to these allegations, notwithstanding a purported six-month undercover operation related to same;

    d.    refused to further investigate the sole source of these allegations, or to identify said source, despite Mr. Zimmerman's repeated requests prior to publication regarding same; and

e.      knew prior to publication that the sole source of the allegations had recanted these allegations.

85.      As a direct and proximate result of the false statements concerning Mr. Zimmerman published or caused to be published by Defendants, Mr. Zimmerman has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, professional athlete, and businessman, has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage.

86.      Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false statements concerning Mr. Zimmerman with the specific intent to cause harm to Mr. Zimmerman and in order to boost their own reputations and Al Jazeera's ratings, and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, justifying an award of punitive damages.

87.      Despite all of the warning signs indicating that the statements in *The Dark Side* about Mr. Zimmerman were untrue, including Sly's retraction, as well as Mr. Zimmerman's  denial of the allegations, Al Jazeera Media Network, Al Jazeera America, Davies, and Collins published the untrue and defamatory documentary.  Alternatively, Al Jazeera Media Network and Al Jazeera America are liable for the wrongful acts of their agents and employees under the doctrine of *respondeat superior* and agency principles.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ryan Wallace Zimmerman demands judgment against Defendants as follows:

a.      For general damages in an amount to be determined at trial;

b.      For special damages in an amount to be proven at trial;

c.      For punitive damages in an amount to be proven at trial, but not less than four times the amount of general and special damages combined, to punish and penalize Defendants and deter Defendants from repeating their unlawful conduct;

d.      For an injunction requiring Defendants to remove all false and defamatory statements about Plaintiff from any and all websites, including Al Jazeera's website and YouTube;

e.      For an injunction requiring Defendants to publish a retraction of all false and defamatory statements about Plaintiff in the *New York Times* or a similar newspaper with nationwide distribution;

f.      For attorneys' costs and fees incurred by Plaintiff in this action; and

g.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Ryan Wallace Zimmerman hereby demands trial by jury.

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Dated: January 20, 2016
Washington, D.C.

Scott E. Lerner
DC Bar # 1024964
scottlerner@quinnemanuel.com
William A. Burck (*pro hac vice pending*)
DC Bar # 979677
williamburck@quinnemanuel.com
777 Sixth Street NW, 11th Floor
Washington, D.C. 20001
(202) 538-8000 (tel.)
(202) 538-8100 (fax)

Robert L. Raskopf (*pro hac vice pending*)
robertraskopf@quinnemanuel.com
Kevin S. Reed (*pro hac vice pending*)
kevinreed@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (tel.)
(212) 849-7100 (fax)

*Attorneys for Plaintiff Ryan Wallace Zimmerman*