**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RYAN WALLACE ZIMMERMAN,

    Plaintiff,

v.

AL JAZEERA AMERICA, LLC, *et al*.,

    Defendants.

Case No. 1:16-cv-13-KBJ

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
<u>DEFENDANT LIAM JAMES COLLINS TO DISMISS THE COMPLAINT</u>**

Jay Ward Brown, Bar No. 14947
Matthew L. Schafer, Bar No. 13442
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street NW, Suite 200
Washington, DC 20036
Tel: (202) 508-1100
Fax: (202) 861-9888
jbrown@lskslaw.com
mschafer@lskslaw.com

*Attorneys for Defendant
Liam James Collins*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

      A.      Plaintiff Ryan Zimmerman .....................................................................................2

      B.      The Al Jazeera Defendants ....................................................................................3

      C.      Defendant Liam James Collins ..............................................................................4

      D.      The Investigation And Resulting Documentary ....................................................4

      E.      Zimmerman's Defamation Complaint ...................................................................5

ARGUMENT ...............................................................................................................................6

I.      ZIMMERMAN DOES NOT PLAUSIBLY ALLEGE THAT COLLINS
      PUBLISHED THE DOCUMENTARY OR ARTICLE .......................................................7

II.     THE CHALLENGED STATEMENTS ARE NOT REASONABLY
     CAPABLE OF THE DEFAMATORY MEANING ALLEGED .........................................9

III.    ZIMMERMAN HAS NOT PLAUSIBLY ALLEGED THAT COLLINS
    ACTED WITH ACTUAL MALICE ..................................................................................10

      A.      Zimmerman Is A Public Figure As A Matter Of Law .........................................11

      B.      Zimmerman Pleaded No Facts That Would Support A finding Of
             Actual Malice Against Collins ..............................................................................13

CONCLUSION ..........................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Petroleum Inst. v. Technomedia Int'l, Inc.*,
   699 F. Supp. 2d 258 (D.D.C. 2010) ................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................6, 7, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................6, 7, 13

*Bell v. Associated Press*,
   584 F. Supp. 128 (D.D.C. 1984) ..................................................................................12, 13

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .......................................................................................13

*Brewer v. Memphis Publ'g Co.*,
   626 F.2d 1238 (5th Cir. 1980) ....................................................................................11

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) .................................................................................7, 9

*Cepeda v. Cowles Magazines & Broad., Inc.*,
   392 F.2d 417 (9th Cir. 1968) ......................................................................................11

*Chapman v. Journal Concepts, Inc.*,
   528 F. Supp. 2d 1081 (D. Haw. 2007) .......................................................................12

*Chuy v. Phila. Eagles Football Club*,
   595 F.2d 1265 (3d Cir. 1979) .....................................................................................12

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967) ...................................................................................................13

*D.A.R.E. Am. v. Rolling Stone Magazine*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000) .....................................................................14

*Garrison v. Louisiana*,
   379 U.S. 64 (1964) .....................................................................................................11

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ..............................................................................................10, 11

**Page(s)**

*Jankovic v. Int'l Crisis Grp.*,
   494 F.3d 1080 (D.C. Cir. 2007) ..................................................................................... 7

*Mattiaccio v. DHA Grp., Inc.*,
   908 F. Supp. 2d 136 (D.D.C. 2012) ................................................................................ 8

*Mayfield v. NASCAR*,
   674 F.3d 369 (4th Cir. 2012) ......................................................................................... 14

*McFarlane v. Esquire Magazine*,
   74 F.3d 1296 (D.C. Cir. 1996) ............................................................................. 10, 11, 14

*Michel v. NYP Holdings, Inc.*,
   No. 15-11453, 2016 WL 860647 (11th Cir. Mar. 7, 2016) ........................................... 13

*Moldea v. N.Y. Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994) ........................................................................................ 10

*Murdoch v. Rosenberg & Assocs., LLC*,
   875 F. Supp. 2d 6 (D.D.C. 2012) .................................................................................... 1

*Murray v. Bailey*,
   613 F. Supp. 1276 (N.D. Cal. 1985) ............................................................................. 14

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ...................................................................................................... 11

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ......................................................................................... 12

*Piersall v. Sportsvision of Chicago*,
   230 Ill. App. 3d 503, 595 N.E.2d 103 (1st Dist. 1992) ................................................. 12

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ......................................................................................... 14

*Price v. Viking Penguin, Inc.*,
   881 F.2d 1426 (8th Cir. 1989) ....................................................................................... 14

*Saint-Jean v. D.C.*,
   846 F. Supp. 2d 247 (D.D.C. 2012) ................................................................................ 8

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ........................................................................................... 14

*Shipkovitz v. Wash. Post Co.*,
   571 F. Supp. 2d 178 (D.D.C. 2008) ................................................................................ 7

**Page(s)**

*Sprewell v. NYP Holdings, Inc.*,
   819 N.Y.S.2d 851 (N.Y. 2006) ....................................................................................................12

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ......................................................................................................................11

*Tavoulareas v. Piro*,
   759 F.2d 90 (D.C. Cir. 1985) .................................................................................................7, 8, 9

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ...................................................................................................7, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................................................2

*Time, Inc. v. Johnston*,
   448 F.2d 378 (4th Cir. 1997) .......................................................................................................12

*Waldbaum v. Fairchild Publ'ns , Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ..................................................................................................11

*Weyrich v. New Republic, Inc.*,
   235 F.3d 617 (D.C. Cir. 2001) ......................................................................................................7

**Other Authorities**

FED. R. CIV. PROC. 12(b)(6) ...................................................................................................1, 2, 6

1 ROBERT D. SACK, SACK ON DEFAMATION § 5:5.2 (4th ed. 2010) ...............................................11

Defendant Liam James Collins, by and through his undersigned counsel, hereby submits this Memorandum of Law in support of his motion pursuant to Fed. R. Civ. Proc. 12(b)(6) to dismiss the First Amended Complaint ("Complaint" or "Compl.").[1]

## PRELIMINARY STATEMENT

This defamation lawsuit arises from a documentary news report about one aspect of the on-going public controversy over the role of banned performance-enhancing substances ("PESs") in professional and Olympic sports. That documentary, titled *The Dark Side* (the "Documentary"), is the product of a months-long, international investigation of the underground world of chemists and physicians who enable and promote doping in sports. *The Dark Side*, in the form of both a 49-minute video report and an accompanying text version, was produced and distributed by the international news organization Al Jazeera (sued here as Al Jazeera America, LLC, Al Jazeera Media Network, and Al Jazeera International (USA) Inc.) and was reported by Al Jazeera's employee, defendant Deborah Davies (together, the "Al Jazeera Defendants"), who have separately moved to dismiss the Complaint.

Defendant Liam James Collins, a former world-class athlete, was recruited by the Al Jazeera Defendants to assist in their investigation for *The Dark Side* by using a hidden camera and audio recording device when meeting with certain chemists and physicians suspected of supplying PESs to athletes. Collins was and is not an employee of Al Jazeera and he did not draft, edit, or publish *The Dark Side*, much less any of the statements alleged here to be defamatory. Zimmerman makes no allegation to the contrary (nor could he), which is the first

---

[1] Defendants Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) Inc., and reporter Deborah Davies have concurrently filed a motion pursuant to Fed. R. Civ. Proc. 12(b)(6) to dismiss the First Amended Complaint. *See* Dkt. No. 22, *see also* Dkt. No. 22-1 (Memorandum of Law in Support of Motion to Dismiss ("AJ Br.")). Collins hereby joins in that motion and incorporates herein by reference the arguments in support thereof. *See Murdoch v. Rosenberg & Associates, LLC*, 875 F. Supp. 2d 6, 8 n.1 (D.D.C. 2012) (permitting incorporation by reference).

reason why his Complaint must be dismissed as to Collins: It is an essential element of each of Zimmerman's claims that the defendant published the allegedly defamatory statements, and there is no allegation that Collins published anything, much less the statements at issue.

Even if Zimmerman had adequately alleged publication by Collins, Zimmerman's claims would still fail for two additional, independent reasons, as demonstrated by the Al Jazeera Defendants and in whose arguments Collins joins: First, Zimmerman cannot show that the Documentary or the article are reasonably capable of sustaining the defamatory meaning he attributes to them. Second, Zimmerman is a public figure who is required to but has failed to plead "actual malice" (knowing or reckless falsity) with the required specificity—indeed, with respect to Collins, he has entirely failed to plead actual malice at all.

## STATEMENT OF FACTS[2]

**A.     Plaintiff Ryan Zimmerman**

Ryan Zimmerman is a "highly successful" starting first baseman for Major League Baseball's Washington Nationals. Dkt. No. 9 (Compl.) ¶ 14. Zimmerman began his career at the University of Virginia, where he was named an "All-American" by multiple sports organizations. *Id.* ¶ 15. He also traveled to Taiwan to compete on the U.S. National Team, which went on to win the World University Baseball Championship. *Id.* ¶ 16. As their first pick in the MLB draft as a newly established baseball team in 2005, the Nationals picked Zimmerman first, and fourth overall. *Id.* ¶ 17. In the intervening years, Zimmerman "quickly became a hometown hero and fan favorite" and has played an "integral role" on the Nationals for over a decade. *Id.* ¶ 18. In that role, he is the "all-time leader in games, plate appearances, at bats,

---

[2] For the purposes of Collins' motion pursuant to Fed. R. Civ. Proc. 12(b)(6), the following facts are drawn from the First Amended Complaint and assumed for this limited purpose to be true, and from other sources of which this Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

runs, hits, doubles, home runs, RBI[s], total bases, extra base hits, walks, intentional walks, walk off hits and defensive innings." *Id.* ¶ 19.  His on-field prowess has earned him the a National League All-Star team spot, the Gold Globe Award, the Fielding Bible Award, and the two Silver Slugger Awards.  *Id.*

His exploits are not limited to the baseball field:  His successful career has led to numerous endorsements by, among other corporations, "Coca-Cola, . . . Papa John's Pizza, . . . PNC Bank, GEICO Insurance, [and] Nike." *Id.* ¶ 24.  He has also used his corporate connections to benefit his philanthropic efforts, most notably with the ziMS Foundation, a non-profit founded by Zimmerman that has donated over $1.5 million to multiple sclerosis research.  *Id.* ¶ 21.  This philanthropic effort was made possible through Zimmerman's relationships with "numerous corporate partners," including "Comcast, . . . Under Armour, . . . Chevrolet, . . . Miller, Heineken, and Jim Beam." *Id.* ¶ 22.  In addition, Zimmerman worked with Under Armour to have a Washington, D.C.-area baseball field dedicated in his name.  *Id.* ¶ 23.

**B.      The Al Jazeera Defendants**

Al Jazeera Media Network is a Qatar-based news organization that is the parent company of Al Jazeera America and Al Jazeera International (USA) Inc.  *Id.* ¶ 5.  Al Jazeera International is a Washington, D.C.-based television broadcasting station.  *Id.* ¶ 4.  In 2013, Al Jazeera Media Network bought former Vice President Al Gore's media network, Current TV, forming Al Jazeera America.  *Id.* ¶¶ 25-26.  Al Jazeera America, headquartered in New York City, has "bureaus in 12 cities across the United States" and "is available in more than 60 million homes in the [United States]." *Id.* ¶ 3.  Al Jazeera Media Network also runs an Investigative Unit, which "works collaboratively with Al Jazeera Media Network and Al Jazeera America" to investigative news stories across the globe.  *Id.* ¶ 6.  Its investigative news reports cover urgent stories of the day, ranging from genocide in Myanmar, the workings of Al Qaeda, and the Greek financial

3

crisis, to questions about the safety of Boeing aircraft and bribery and corruption in Hollywood. *Id.*, Ex. B.  Deborah Davies is a reporter for the Al Jazeera Investigative Unit and also the lead reporter on the investigation at the center of this lawsuit.  *Id.*

C.  **Defendant Liam James Collins**

Liam James Collins is a former medal-winning hurdler not otherwise associated with Al Jazeera who was engaged to assist in Al Jazeera's investigation of PESs.  *Id.* ¶¶ 8, 34.  As it was put in the Documentary:

> Liam Collins is a British athlete . . . .  [who] has run into trouble and found a fresh start on the track.  For a while, Liam went into property development promising high returns he couldn't deliver.  Investors lost millions and Liam was banned as a company director.  Liam is now back on track in every way competing again and looking for new challenges.

Declaration of Matthew L. Schafer, Ex. 1 at 5:08.  According to the Documentary, Al Jazeera reached out to Collins requesting his help to investigate doping in sports:  "He's perfectly placed to go undercover by claiming to be an athlete desperate to qualify for the real Olympics."  *Id.* at 6:40.  Collins agreed, explaining that "[i]t's a closed business among people who are in the know and here was an opportunity for me personally to be the guy to go undercover and make a change."  *Id.* at 6:48.[3]

D.  **The Investigation And Resulting Documentary**

For at least eight months, Al Jazeera conducted an international investigation into doping in sports.  *Id.* ¶ 40; *see also* Dkt. No. 22-4 at 2 (Declaration of Andrew Deutsch, Ex. A).  Insofar as relevant to Zimmerman's claims against Collins, during that investigation, Collins went undercover "traveling to the Bahamas, Canada and Texas, attempting to make contact with

---

[3] The Complaint includes numerous gratuitous attacks on Mr. Collins personally that are entirely unrelated to the subject of the lawsuit.  As a public figure, Mr. Collins understands that he is obliged to have a thick skin and he will not respond to those attacks here, but his forbearance should not be taken as acquiescence.

suppliers of performance-enhancing substances." *Id.* By claiming to be seeking another chance at the Olympics, Collins was able to "induce[] various people he came into contact with to discuss the topic of performance-enhancing substances and to provide him with what were purported to be performance-enhancing substances." *Id.* Many people he had contact with are shown on undercover video giving Collins performance-enhancing drugs. *Id.* ¶ 40. One such person was Charles Sly. *Id.* "[P]rimed" by Al Jazeera "with questions to dig into the claims" regarding doping, Collins had several conversations with Sly, who offered Collins a steroid, "Delta 2" or "D-2," and stated that several professional athletes used the steroid, including "a bunch of baseball players." *Id.* ¶¶ 42, 43. Among the players Sly named was Zimmerman, and as Collins continued to ask questions about D-2 and how it might help him, he had the following exchange with Sly, which ultimately was included by Al Jazeera in *The Dark Side*:

| | | |
|---|---|---|
| *Collins*: | How long have you known Zimmerman? | |
| *Sly*: | Probably six years. I worked with him in the off season. That's how I get him to change some stuff. | |
| *Collins*: | Is he on the D-2 as well? | |
| *Sly*: | Yeah. | |
| *Collins*: | What does he think of the D-2? | |
| *Sly*: | It does its job. | |
| *Collins*: | Does he notice a lot of power or not? | |
| *Sly*: | Yeah, I think some guys have just kind of gotten used to it. It's the new normal. | |

*Id.* ¶ 44. In the written article accompanying the Documentary, Al Jazeera notes that "Sly also named . . . Ryan Zimmerman, of the Washington Nationals, . . . raising questions about whether [he] use[s]" performance-enhancing drugs. *Id.* ¶ 46.

**E.    Zimmerman's Defamation Complaint**

On January 20, 2016, Zimmerman filed the present Complaint against the Al Jazeera Defendants and Collins. Of the entire Documentary, Zimmerman complains only of the thirty-

5

five second segment in which Collins probes Sly about Sly's claim that Zimmerman used Delta 2, *id.* ¶ 44, as quoted above. Zimmerman alleges that "Sly's statements about Mr. Zimmerman" and D-2 are "*per se* defamatory" because they "falsely accuse [him] of illegal acts," namely "the taking of illegal and banned performance-enhancing substances," *id.* ¶ 48. Additionally, Zimmerman claims that the accompanying article is false and defamatory because it included the statement that "'Sly also named . . . Ryan Zimmerman, of the Washington Nationals, . . . raising questions about whether [he] use[s]'" D-2. *Id.* ¶ 46 (alterations in Zimmerman's brief).[4]

Based on these two passages, Zimmerman asserts claims for defamation and false light invasion of privacy, both premised on the assertion that the passages "carry the unmistakable message that Mr. Zimmerman has taken or is taking illegal performance-enhancing substances." *Id.* ¶¶ 69, 80. He seeks general, special, and punitive damages in an amount to be proven at trial and additionally seeks an injunction requiring the removal of the references to him and that defendants be compelled to published a retraction in the *New York Times*, which is not a party to this suit, and other relief. *Id.* at p. 25-26 (*ad damnum* clause).

## ARGUMENT

Zimmerman's claims against Collins fail as a matter of law for multiple reasons and the Complaint therefore should be dismissed with prejudice. A plaintiff can defeat a motion to dismiss brought pursuant to Rule 12(b)(6) only if he "state[s] a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and only if his factual allegations show "more than a sheer possibility that [defendants have] acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Neither "labels," nor "conclusions," nor "a formulaic recitation of the elements of a cause of action" will do. *Iqbal*, 556 U.S. at 678 (citation and marks omitted).

---

[4] Originally, the Al Jazeera Defendants indicated that Sly said Howard was using "human growth hormone." FAC ¶ 48-49. They promptly clarified that the substance was alleged to be Delta 2. *Id.* ¶ 49.

Instead, a plaintiff must plead facts, and those facts must be more than "'merely consistent'" with liability. *Id.* (citation omitted); *see also Twombly*, 550 U.S. at 551 (plaintiff failed adequately to plead conspiracy-based claim based on facts showing mere "parallel course of conduct"). In essence, pleaded facts must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Zimmerman's claims here as against Collins do not and cannot meet these standards.

**I.     ZIMMERMAN DOES NOT PLAUSIBLY ALLEGE THAT COLLINS PUBLISHED THE DOCUMENTARY OR ARTICLE**

Among other things, a plaintiff in a defamation action must show "that the defendant published the [allegedly defamatory] statement . . . to a third party." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007). False light claims require the plaintiff to plead that the defendant gave the challenged statements "publicity." *Shipkovitz v. The Washington Post Co.*, 571 F. Supp. 2d 178, 183 (D.D.C. 2008), *aff'd*, 408 F. App'x 376 (D.C. Cir. 2010). The two are construed similarly. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001). Mere participation in an investigation is insufficient to meet the publication requirement where the defendant neither wrote nor edited the broadcast or article nor had editorial control over the final product. *Tavoulareas v. Piro*, 759 F.2d 90, 136 (D.C. Cir.), *vacated in part on other grounds on reh'g*, 763 F.2d 1472 (D.C. Cir. 1985), *and on reh'g*, 817 F.2d 762 (D.C. Cir. 1987). Instead, a plaintiff must plead that the defendant was involved in the "ultimate publication" of the allegedly defamatory report. *Cf. Tavoulareas*, 817 F.2d at 770 n.7; *see also Tavoulareas*, 759 F.2d at 137 (asking whether special correspondent was "responsible as a *principal* for the *final* publication" (emphases in original)). Where a plaintiff fails to plead facts making it plausible that a defendant published the challenged statements, courts, including the Court of Appeals, have not hesitated to dismiss complaints. *See, e.g.*, *Browning v. Clinton*, 292 F.3d 235,

7

247 (D.C. Cir. 2002); *Mattiaccio v. DHA Grp., Inc.*, 908 F. Supp. 2d 136, 139 (D.D.C. 2012); *Saint-Jean v. D.C.*, 846 F. Supp. 2d 247, 267 (D.D.C. 2012); *Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 268 (D.D.C. 2010).

In *Browning*, for example, the plaintiff alleged without factual support that the defendant published the challenged statements to third parties and further alleged that a news organization subsequently published those statements. 292 F.3d at 247. The Court of Appeals affirmed dismissal because the allegations as to the defendant's publication were nothing more than "vague assertions" and the plaintiff failed to "link[]" the news organization's publication of the statements to the defendant. *Id.*; *cf. Tavoulareas*, 759 F.2d at 136 (granting judgment notwithstanding the verdict where defendant secretly recorded conversations as a "special correspondent" for allegedly defamatory article, because he did not "*actually* writ[e] or edit[]" the article and had no "influence or control over the [newspaper] defendants' handling of the [recorded] material"). And in *Mattiaccio*, the plaintiff only generally alleged that defendants had published an allegedly defamatory report to unnamed former colleagues. 908 F. Supp. 2d at 138. Judge Kollar-Kotelly dismissed that claim because the complaint stated only that "Defendants 'caus[ed] the report to be published'" and failed to allege any meaningful, underlying facts regarding publication. *Id.* at 138-39.

Here, as Zimmerman himself alleges, the challenged statements in the Documentary are "Sly's statements about Mr. Zimmerman." *Id.* ¶ 48. Although Zimmerman includes detailed factual allegations regarding republication by "Al Jazeera" of those statements in the Documentary, *see id.* ¶¶ 37-38 (alleging date, means, and channels of publication of Documentary and article), he has not pled any facts suggesting that Collins was responsible for

such publication.[5]  As relates to Collins, Zimmerman makes only the boilerplate and conclusory allegation that "Al Jazeera Media Network, Al Jazeera America, Davies *and Collins* published the untrue and defamatory documentary."  *Id. ¶* 76 (emphasis added); *see also id. ¶* 87 (same).  This is precisely the kind of conclusory allegation that the Court of Appeals and other judges in this District have found to be wholly inadequate at the pleading stage.  *See, e.g.*, *Browning*, 292 F.3d at 247 (affirming dismissal of libel suit where plaintiff failed to "link" individual defendant with news organization's subsequent publication); *Mattiaccio*, 908 F. Supp. 2d at 138 (rejecting as insufficient allegation that "Defendants 'caus[ed] the report to be published'"); *see also Tavoulareas*, 759 F.2d at 137 (asking whether defendant was principal in final publication).  As a consequence, Zimmerman's Complaint should be dismissed as against Collins.

## II.   THE CHALLENGED STATEMENTS ARE NOT REASONABLY CAPABLE OF THE DEFAMATORY MEANING ALLEGED

Even if the Court were to conclude that Zimmerman has adequately alleged that Collins published the challenged statements, his Complaint still should be dismissed because the challenged statements are not actionable.  Collins joins in, but will not repeat here, the argument of the Al Jazeera Defendants in support of their motion to dismiss the Complaint on the independent ground that, when viewed in the full context of the Documentary and complete article, the challenged statements are not reasonably understood in the sense alleged by Zimmerman.  AJ Br. at 19-23.

---

[5] In fact, the Complaint alleges the opposite, repeatedly explaining that "Al Jazeera aired" the Documentary and "Al Jazeera posted" the accompanying article "on its website."  *Id. ¶* 37; *see also id. ¶¶* 38 ("Al Jazeera posted a video . . ."), 39 ("In 'The Dark Side,' as reported by Davies . . ."), 43 ("As described by Davies . . ."), 45 ("Al Jazeera originally included the defamatory statement . . ."), 46 ("Al Jazeera appended a correction . . ."), 53 ("Al Jazeera posted . . ."), 59 ("Al Jazeera originally falsely reported . . ."), 61 ("Al Jazeera has made and continues to make the program and news article available . . ."), 62 ("Al Jazeera and Davies have continued to aggressively promote 'The Dark Side' . . .").  But Zimmerman makes no similar allegations as to Collins.

9

### III. ZIMMERMAN HAS NOT PLAUSIBLY ALLEGED THAT COLLINS ACTED WITH ACTUAL MALICE

Finally, even were the Court to conclude both that Zimmerman has adequately alleged publication by Collins and that the Documentary and article are reasonable capably of conveying the defamatory meaning alleged by Zimmerman, the Complaint still should be dismissed for failure to adequately plead "actual malice" on the part of Collins. Collins joins in the argument of the Al Jazeera Defendants on this point, AJ Br. at 23-38, and supplements that argument with considerations particular to Collins.

Zimmerman's defamation and false light claims require him to plead—and ultimately, to prove—that Collins, personally, acted with the requisite degree of fault. *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1303 (D.C. Cir. 1996); *see also Moldea v. New York Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) (false light claim subject to same constitutional bar). Where the plaintiff is a public figure, as the world-famous Zimmerman effectively concedes he is, he must plead and prove by clear and convincing evidence that the defendant published a false statement of fact with "actual malice." *McFarlane*, 74 F.3d at 1301.

The law draws a line between public figures, who must prove actual malice, and private figures, who need prove only that the defendant was negligent. It does so because "[p]rivate individuals are . . . more vulnerable to injury" as they lack the ability of self-help. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974). But "[t]hose who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention," are not so vulnerable; they assume a place on the public stage and thereby maintain "access to the channels of effective communication" to correct falsehoods published about them, while freely "run[ning] the risk of closer public scrutiny." *Id.* at 342, 344.

10

"Actual malice" is a legal term of art requiring proof that the statement at issue was published despite "knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Reckless disregard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Rather, the inquiry is a subjective one, requiring evidence demonstrating that the particular defendant published with a "high degree of awareness of . . . probable falsity." *Id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)); *see also* 1 Robert D. Sack, *Sack on Defamation* § 5:5.2 (4th ed. 2010). Because the constitutional balance favors the First Amendment when public figures assert defamation claims, the actual malice standard is "a daunting one." *McFarlane*, 74 F.3d at 1308.

A.   **Zimmerman Is A Public Figure As A Matter Of Law**

The Supreme Court has identified two distinct categories of "public figures": "general purpose" and "limited purpose." *Gertz*, 418 U.S. at 345. General purpose public figures have "assumed roles of especial prominence in the affairs of society," or "pervasive fame or notoriety," and have therefore become public figures "for all purposes and in all contexts." *Id*. at 351. Simply put, these plaintiffs are celebrities, those "well-known entertainers and athletes, [who] frequently endorse products and candidates, thereby indicating the breadth of their influence and the appropriateness of broad press scrutiny." *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1254 n.22 (5th Cir. 1980) (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980)); *see also Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) (public figures "are, of course, numerous and include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done").

11

In *Bell v. Associated Press*, for example, a court in this District ascribed public figure status to a professional football player. 584 F. Supp. 128, 130 (D.D.C. 1984). In so holding, the court explained that "[p]rofessional athletes, including football players, have frequently been held to be public figures, especially when they have achieved fame or notoriety." *Id*. Well-known professional athletes "can hardly be permitted to hold themselves out as public figures, seeking a maximum amount of publicity for themselves and their teams with respect to their athletic achievements, while successfully claiming strictly private status when misconduct is charged or proved." *Id.* at 131-32; *see also, e.g.*, *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (describing "well-known athlete[s] . . . [as] the archetypes of the general purpose public figure"); *Time, Inc. v. Johnston*, 448 F.2d 378, 380 (4th Cir. 1997) (retired professional basketball player a public figure); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (former professional football player a public figure); *Cepeda*, 392 F.2d at 419 ("extraordinary baseball player" a public figure); *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1095 (D. Haw. 2007) (professional surfer a public figure); *cf. Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 n.4 (9th Cir. 1998) ("There is a strong argument that Newcombe is subject to the more rigorous constitutional standard because he is . . . an all-purpose public figure based on his baseball fame."). Indeed, most professional athletes concede the obvious when they institute litigation like this. *See, e.g.*, *Piersall v. Sportsvision of Chicago*, 230 Ill. App. 3d 503, 595 N.E.2d 103 (1st Dist. 1992) (retired major league baseball player conceded public figure status); *Sprewell v. NYP Holdings, Inc.*, 819 N.Y.S.2d 851 (N.Y. 2006) (same with respect to another professional basketball player).

Zimmerman is a world-famous baseball player whose prominence has begot multiple endorsement deals and who has routine access to the media as a result of his athletic

accomplishments. Compl. ¶¶ 14-24. Far less famous athletes, with far fewer public credentials to their name, have been found to be public figures. *See, e.g.*, *Bell*, 584 F. Supp. at 130 (finding professional football player to be a public figure in light of being a "star athlete in high school," setting several records in college, and playing for the Pittsburg Steelers for five years); *see also Curtis Pub. Co. v. Butts*, 388 U.S. 130, 154 (1967) (holding that university athletic director was a public figure). Indeed, Zimmerman appears to concede that he is a public figure required to plead actual malice. *See id.* ¶ 64 (incanting magic words for "actual malice": conclusorily pleading that "Defendants" published with "actual knowledge of falsity or with reckless disregard for the truth").

> **B. Zimmerman Pleaded No Facts That Would Support A Finding Of Actual Malice Against Collins**

Because Zimmerman is a public figure, he must plead facts that would support a finding that *Collins* published the challenged statements with actual malice—*i.e.*, that he knew the statements were false or subjectively doubted that they were true. But the Complaint makes no allegations at all *as to Collins* in this regard.

Following the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662, and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, federal courts adjudicating defamation actions brought by public figures have made clear that unadorned allegations that a defendant acted with actual malice are insufficient to state a viable claim. *Michel v. NYP Holdings, Inc.*, No. 15-11453, 2016 WL 860647, at *11 (11th Cir. Mar. 7, 2016) ("[E]very circuit that has considered the matter has applied the *Iqbal*/*Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."); *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015) ("[actual] malice must be alleged plausibly in accordance with Rule 8."), *petition for cert. pending* (Mar. 8,

2016); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible."); *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (rejecting plaintiff's argument that allegations of actual malice "need only be articulated in the most general terms"); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (holding that plaintiff's "complaint used actual-malice buzzwords . . . [b]ut these are merely legal conclusions, which must be backed by well-pled facts"). Instead, a plaintiff must provide enough facts "to raise" the existence of actual malice "above the speculative level." *Mayfield*, 674 F.3d at 377.

   Moreover, where a public figure plaintiff brings a claim against an independent contractor hired by a news organization, as Collins is here, he must plead facts supporting actual malice as to each of the organization and the contractor. *Murray v. Bailey*, 613 F. Supp. 1276, 1281 (N.D. Cal. 1985) ("apart from the application of *respondeat superior*, an individual cannot be held liable unless . . . the individual himself has been actuated by actual malice."); *cf. McFarlane*, 74 F.3d at 1303 (*Esquire* magazine not vicariously liable for alleged fabrication by author of allegedly defamatory article who was not magazine's employee because magazine did not control process by which author "turned raw data into [the] finished article"); *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1446 (8th Cir. 1989) (author's reckless disregard could not be imputed to book publisher because author was independent contractor); *D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1280 (C.D. Cal. 2000) (independent contractor's knowledge of falsity could not be imputed to publisher), *aff'd*, 270 F.3d 793 (9th Cir. 2001). Therefore, because actual malice cannot be imputed from defendant to defendant, a plaintiff must plead actual malice as to *each* defendant individually. Quite simply, there is not a single allegation of fact that could even arguably support a finding that *Collins*, to the extent he

14

properly could be said to have participated in publication of the challenged statements at all (which he did not), either knew them to be false, or proceeded despite believing they likely were false. For this additional reason as well, the Complaint should be dismissed as to Collins.

## CONCLUSION

For the foregoing reasons and those stated by the Al Jazeera Defendants, Collins respectfully requests that the Court dismiss the Complaint against him with prejudice.

Dated: April 8, 2016

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By:   /s/ Jay Ward Brown
    Jay Ward Brown, Bar No. 14947
    Matthew L. Schafer, Bar No. 13442

1899 L Street NW, Suite 200
Washington, DC 20036
Tel: (202) 508-1100
Fax: (202) 861-9888
jbrown@lskslaw.com
mschafer@lskslaw.com

*Attorneys for Defendant Liam James Collins*