## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RYAN W. ZIMMERMAN,

                Plaintiff,

    v.

AL JAZEERA AMERICA, LLC, et al.,

                Defendants.

Case No. 1:16-cv-13-KBJ-RMM

RYAN J. HOWARD

                Plaintiff,

    v.

AL JAZEERA AMERICA, LLC, et al.,

                Defendants.

Case No. 1:16-cv-14-KBJ-RMM

## PLAINTIFFS RYAN W. ZIMMERMAN'S AND RYAN J. HOWARD'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................3

    A.    Al Jazeera's Recruitment and Hiring of Collins .........................................................3

    B.    Al Jazeera's Direction of Collins' Work ...................................................................5

    C.    Al Jazeera and Collins Cooperate In The Defense of This Lawsuit.........................7

    D.    The Instant Dispute...................................................................................................8

ARGUMENT ...........................................................................................................................9

I.     AL JAZEERA CONTROLS COLLINS AND SHOULD COLLECT AND PRODUCE ALL DOCUMENTS WITHOUT LIMITATION ...........................................9

    A.    Al Jazeera Has The Legal Right To Obtain The Documents At Issue From Collins. ...................................................................................................................10

    B.    The Principal-Agent Relationship Between Al Jazeera And Collins Establishes Control. ................................................................................................12

    C.    Al Jazeera Has The Practical Ability To Obtain Documents From Collins. .........14

II.    THE COURT SHOULD AWARD PLAINTIFFS THEIR REASONABLE COSTS AND FEES INCURRED IN CONNECTION WITH THIS MOTION ...............15

CONCLUSION.......................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bonds v. Dist. of Columbia*,
    93 F.3d 801 (D.D.C. 1996) ................................................................................16

*Bush v. Ruth's Chris Steak House, Inc.*,
    286 F.R.D. 1 (D.D.C. 2012) ................................................................ 10, 13, 14

*Campbell v. Nat'l R.R. Passenger Corp.*,
    309 F.R.D. 21 (D.D.C. 2015) ............................................................................16

*CapitalKeys, LLC v. Democratic Republic of Congo*,
    2017 WL 4466581 (D.D.C. Oct. 6, 2017) .........................................................13

*Cooper Indus., Inc. v. British Aerospace, Inc.*,
    102 F.R.D. 918 (S.D.N.Y. 1984).......................................................................14

*Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*,
    2005 WL 1713067 (Del. Ch. July 13, 2005) ....................................................14

*Doe v. AT & T W. Disability Benefits Program*,
    2012 WL 1669882 (N.D. Cal. May 14, 2012)...................................................12

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*,
    233 F.R.D. 338 (S.D.N.Y. 2005).......................................................................14

*Flagg v. City of Detroit*,
    252 F.R.D. 346 (E.D. Mich. 2008).....................................................................11

*In re Folding Carton Antitrust Litg.*,
    76 F.R.D. 420 (N.D. Ill. 1977) ..........................................................................14

*Golden Trade, S.r.L. v. Lee Apparel Co.*,
    143 F.R.D. 514 (S.D.N.Y. 1992).......................................................................12

*Herbst v. Able*,
    63 F.R.D. 135 (S.D.N.Y. 1972).........................................................................11

*Ice Corp. v. Hamilton Sundstrand Corp.*,
    245 F.R.D. 513 (D. Kan. 2007) .........................................................................11

*Jackson v. Loews Washington Cinemas, Inc.*,
    944 A.2d 1088 (D.C. 2008) ...............................................................................13

*McKesson Corp. v. Islamic Republic of Iran*,
    185 F.R.D. 70 (D.D.C. 1999) ................................................................. 9, 12, 13

*Newill v. Campbell Transp. Co.*,
    2013 WL 6002349 (W.D. Pa. Nov. 12, 2013)...................................................15

*Novak v. Wolpoff & Abramson LLP*,
    536 F.3d 175 (2d Cir. 2008) ........................................................................16

*In re NTL, Inc. Sec. Litig.*,
    244 F.R.D. 179 (S.D.N.Y. 2007) ..................................................................10

*Rosie D. v. Romney*,
    256 F. Supp. 2d 115 (D. Mass. 2003) ..........................................................10

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
    305 F.R.D. 630 (D. Or. Mar. 23, 2015) ..........................................................9

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
    242 F.R.D. 1 (D.D.C. 2007) ...........................................................................8

*Transcon. Fertilizer Co. v. Samsung Co.*,
    108 F.R.D. 650 (E.D. Pa. 1985) ...................................................................15

*Uniden Am. Corp. v. Ericsson Inc.*,
    181 F.R.D. 302 (M.D.N.C. 1998) .................................................................12

## RULES

Fed. R. Civ. P. 34 ..........................................................................................11, 13

Fed. R. Civ. P. 34(a) ...........................................................................................9

Fed. R. Civ. P. 34(a)(1) .....................................................................................11

Fed. R. Civ. P. 36(a) .........................................................................................16

Fed. R. Civ. P. 37 .............................................................................................16

Plaintiffs Ryan W. Zimmerman and Ryan J. Howard (collectively, "Plaintiffs") submit this Memorandum of Law in Support of their Motion to Compel ("Motion") Defendants Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) Inc., and Deborah Davies (collectively, "Al Jazeera") to collect and produce documents from one of the most critical witnesses in this case:  Liam Collins ("Collins"), the undercover "reporter" for Al Jazeera who obtained under false pretenses the very defamatory statements at the center of this action.

## PRELIMINARY STATEMENT

Collins is a former employee and/or agent of Al Jazeera and a former defendant in this action who was, at one point, represented by Al Jazeera's counsel.  For eight months, Collins served as the lead undercover "reporter" for Al Jazeera in connection with its documentary called *The Dark Side*, which investigated doping in professional sports.  In the documentary, Al Jazeera falsely accused Plaintiffs, who are or were Major League Baseball ("MLB") players, of using a performance-enhancing drug ("PED") known as Delta-2 that is banned by MLB.  In response to these claims, Plaintiffs sued Al Jazeera and Collins for defamation.  Although Collins has since been dismissed from this action, he still possesses highly relevant documents and information related to Plaintiffs' claims and concerning Collins' work for Al Jazeera.

Despite the plain relevance of such documents and information, Al Jazeera has limited its production of Collins' documents to just one e-mail account and otherwise declined to collect and produce documents and information from him.  But nothing justifies such a limitation. Documents produced thus far demonstrate that Collins had *other* e-mail and social media messaging accounts at which Al Jazeera and sources e-mailed him.  It is also apparent that

1

Collins regularly sent text messages related to this investigation from a cell phone that was paid for by Al Jazeera.  This Court should compel Al Jazeera to collect and produce documents from these files, as well as any other relevant custodial files kept by Collins.

Without question, Al Jazeera "controls" Collins for purposes of Federal Rule of Civil Procedure 34, which requires a party to produce documents and information that are within its "possession, custody, or control."  Not only is Al Jazeera paying for Collins' defense in this action, but it has also required Collins to cooperate with Al Jazeera in any litigation, like this, that arose in response to the documentary.  *See* E-mail from Al Jazeera Copy Machine to P. Charley, dated Dec. 7, 2015 (attached hereto to as Exhibit A) at ¶ 4 (executed "Appearance Release" in which Al Jazeera agreed to "defend and indemnify [Collins] (including paying [his] attorneys' fees and the costs of [his] legal defense) in connection with" "any claim, charge, or lawsuit brought against [him] by a third party relating to [his] appearance in the [documentary]" and "that Al Jazeera's indemnification obligations are conditioned upon . . . [Collins'] cooperation with Al Jazeera in defense of the claim").

Additionally, before this action even arose, Collins agreed not to disclose any non-public information learned or generated in the course of the documentary to anyone without first obtaining Al Jazeera's consent.  *See* E-mail from J. Young to P. Charley, dated Dec. 1, 2015 (attached hereto as Exhibit B) at ¶ 3 (executed "Confidentiality and Non-Disclosure Agreement" stating that "[w]ithout the prior written consent of [Al Jazeera], [Collins] shall not disclose to any individual or entity the Confidential Information").  And beyond that, Al Jazeera further required Collins to assign whatever ownership rights he may have had over his work product to Al Jazeera.  *See id.* at ¶ 9 ("Al Jazeera owns and Collins hereby assigns all copyrightable 'Work Product' Collins makes" while performing services for Al Jazeera).

Accordingly, Al Jazeera has the legal right and practical ability to obtain documents and information from Collins.  Plaintiffs, therefore, respectfully request that the Court grant their Motion and order Al Jazeera to collect and produce all responsive documents and communications from each of Collins' numerous custodial files, including all of his e-mail accounts, social media accounts, and cell phones that he used in connection with the documentary.  Without such an order, Plaintiffs will be forced to pursue burdensome third-party discovery from Collins, which may be further complicated by the fact that Collins is now located in the United Kingdom.

## **BACKGROUND**

### A.    **Al Jazeera's Recruitment and Hiring of Collins**

In 2015, Al Jazeera started production on a documentary entitled *The Dark Side:  The Secrets of Sports Dopers* (the "Documentary").  The purported goal of the Documentary was to investigate doping in professional sports and to expose "top level athletes" linked to PEDs.  *See* ECF No. 26-4 at 10 (transcript from the Documentary).  In order to infiltrate the underground world of sports doping, Al Jazeera needed to develop a convincing cover story that would allow entrée into this secretive world.  *See id.* at 1.  To do this, Al Jazeera turned to Collins—an accomplished British track and field athlete who is a six-time European champion in the 400 meter and 110 meter hurdles.  *See* E-mail from L. Collins to R. Thompson, dated May 14, 2015 (attached hereto as Exhibit C).  According to Al Jazeera, these credentials made Collins "perfectly placed to go undercover."  ECF No. 26-4 at 5.  Specifically, Al Jazeera wanted Collins to go undercover by "claiming to be an athlete desperate to qualify for the [2016] Rio Olympics" and in search of PEDs.  *Id.* at 6.  Al Jazeera believed that this "cover story would lead [it] to top level athletes on the dark side."  *Id.* at 10.  Collins agreed and shortly thereafter entered into

various employment agreements with Al Jazeera to memorialize the terms of his employment. *See* Ex. A; *see also* Ex. B.

One of the agreements that Collins signed was a "Confidentiality and Non-Disclosure Agreement" (the "NDA"). *See* Ex. B. The NDA specifically states that all Confidential Information—defined to include (although not be limited to) "any and all information shared verbally or in writing between [Al Jazeera] and Collins[,]" as well all "products of journalistic investigations, including the subject matter of the Documentary, the Documentary's subjects, and the sources of information for the Documentary"—must be held by Collins "in strictest confidence" and cannot be disclosed "without [Al Jazeera's] prior written consent." *Id.* at ¶¶ 1-2. These restrictions "remain in effect in perpetuity." *Id.* at ¶ 7. The NDA also requires Collins to provide Al Jazeera with "prompt written notice" before he can disclose Confidential Information "so that [Al Jazeera] may seek a protective order or other appropriate remedy." *Id.* at ¶ 5. To the extent Collins violates the terms of the NDA, Al Jazeera, for its part, may seek "injunctive relief, specific performance, and/or other appropriate equitable remedy for any such breach." *Id.* at ¶ 6 .

The NDA also set Collins' pay. From May 2015 through mid-August 2015, Collins was paid $200 for each day he worked on the Documentary. *See id*. at ¶ 8. By August 11, 2015, however his daily rate increased to $350. *See* E-mail from M. Khaliq to L. Collins, dated Aug. 13, 2015 (attached hereto as Exhibit D) at AJ-HZ_0001472 (Collins' rate card). All told, Collins was paid approximately $65,000 by Al Jazeera for his work on the Documentary. Beyond his daily compensation, Al Jazeera also covered Collins' expenses. For example, Al Jazeera reimbursed Collins for his cell phone, which he used throughout the Documentary to text message, e-mail, and call Al Jazeera staff, sources, and others. *See* E-mail from L. Collins to J.

4

Young, dated Oct. 6, 2015 (attached hereto as Exhibit E) (e-mail showing request by Collins for £383 reimbursement for cell phone use); *see also* E-mail from L. Collins to C. Sly, dated Oct. 30, 2015 (attached hereto as Exhibit F) (e-mail showing text messages exchanged between Collins and Sly).  Al Jazeera also covered Collins' travel expenses, which included business class air and train travel, as well as stays at hotels around the world, including Las Vegas, Vancouver, and New York City.  *See*, *e.g.*, E-mail from M. Surma to L. Collins, dated Dec. 11, 2015 (attached hereto as Exhibit G) (e-mail showing Al Jazeera covering Collins' train and hotel expense for New York City trip).

### B.    Al Jazeera's Direction of Collins' Work

For the next eight months, from May 2015 through December 2015, Al Jazeera controlled Collins' every move.  First, Al Jazeera set up at a Gmail account for Collins to use in connection with his work on the Documentary.  *See* Ltr. from R. Stevens to E. Thompson, dated Oct. 5, 2017 (attached hereto as Exhibit H) (claiming Al Jazeera set up liamcollins400m@gmail.com for Collins to use during the Documentary).  In addition to this e-mail account, however, Collins also used a separate Gmail account, liamcollins0@gmail.com, for purposes of the Documentary.  *See* E-mail from J. Young to L. Collins, dated May 31, 2015 (attached hereto as Exhibit I) (e-mail from Al Jazeera producer to Collins at liamcollins0@gmail.com); *see also* E-mail from L. Collins to K. Hirten, dated Sept. 29, 2015 (attached hereto as Exhibit J) (showing emails sent and received by Collins at liamcollins0@gmail.com).  Al Jazeera specifically instructed Collins not to "delete anything" from his e-mail, noting that it "need[ed] to preserve everything in there."  E-mail from J. Young to L. Collins, dated Sept. 14, 2015 (attached hereto as Exhibit K).  In addition to e-mail, Collins also relied on various social media platforms, including Facebook and WhatsApp, for messaging services.  *See* E-mail from J. Young to L. Collins, dated Aug. 7, 2015 (attached hereto as Exhibit

L) (referencing Collins sending Facebook messages to Al Jazeera producers); *see also* Ex. K (referencing Collins' messages sent through Facebook and WhatsApp).

Once Collins' Gmail account was set up, Al Jazeera provided him with a list of people to contact whom Al Jazeera believed might lead Collins to dopers, including sports agents, athletic trainers, pharmacists, and massage therapists, among others. Collins, with the help of Al Jazeera, would then send unsolicited e-mails to these people to discuss his purported desire to qualify for the 2016 Rio Olympic Games. *See, e.g.*, E-mail from C. Feith to L. Collins, dated May 22, 2015 (attached hereto as Exhibit M); *see also* Ex. C. If a target responded, Collins would try to arrange a meeting with the person, often times through e-mails that were drafted or edited by Al Jazeera. *See* E-mail from L. Collins to J. Young, dated Sept. 11, 2015 (attached hereto as Exhibit N) (Al Jazeera producer editing Collins' e-mail to source); *see also* E-mail from J. Young to L. Collins and K. Hirten, dated Nov. 16, 2015 (attached hereto as Exhibit O) (Al Jazeera producer drafting e-mail for Collins to send to Sly). In advance of the meetings, Al Jazeera would prepare detailed itineraries for Collins to follow. *See* E-mail from J. Young to L. Collins, dated Sept. 4, 2015 (attached hereto as Exhibit P) (providing six-day itinerary for Collins to follow in Gainesville, Florida); *see also* E-mail from J. Young to K. Hirten, C. Pennington, D. Davies, and L. Collins, dated Nov. 5, 2015 (attached hereto as Exhibit Q) (providing two-day itinerary for Collins to follow in Austin, Texas prepared by Al Jazeera).

Once at the meetings, Collins would engage these unsuspecting individuals in carefully choreographed and secretly recorded conversations in which Collins peppered them with questions designed to identify alleged dopers. These questions were often drafted by Al Jazeera and fed to Collins via e-mail. *See* E-mail from J. Young to L. Collins, dated Aug. 28, 2015 (attached hereto as Exhibit R) (prepared questions for Collins to ask source); E-mail from J.

Young to L. Collins, dated Aug. 24, 2015 (attached hereto as Exhibit S) (prepared questions for Collins to ask source).

One such encounter—the encounter that forms the basis of this lawsuit—occurred in early November 2015 when Collins secretly recorded conversations with a purported pharmacist named Charles Sly ("Sly").  *See* ECF No. 41-4 at 26.  During these conversations, Sly falsely claimed that Plaintiffs (among others) had taken a substance called Delta-2 that is banned by MLB.  Collins never corroborated Sly's claims about Plaintiffs.  *See* E-mail from K. Hirten to L. Collins, dated Dec. 26, 2015 (attached hereto as Exhibit T) (e-mail indicating that Collins did not "see any evidence that [Plaintiffs] received PEDs . . . beyond [Sly] just claiming that [he] supplied PEDs to [them]").  Nor could he have.  The statements are not true.  And Al Jazeera knew it.  For one, both Plaintiffs vehemently and repeatedly denied the allegations *prior to* Al Jazeera's publication.  *See* ECF Nos. 9-15, 9-16, 9-17.  Additionally, *prior to* Al Jazeera airing the Documentary, Sly publicly and privately recanted his statements about Plaintiffs to Al Jazeera.  *See* ECF No. 9-18.

### C.    Al Jazeera and Collins Cooperate In The Defense of This Lawsuit

Notwithstanding both that Sly had acknowledged the falsity of his statements and that nothing else linked Plaintiffs to Delta-2 use, Al Jazeera broadcast the statements on December 27, 2015.  As a result, Plaintiffs promptly filed this lawsuit against both Al Jazeera and Collins on January 5, 2016.  *See* ECF No. 1.  Following the initiation of this lawsuit, Al Jazeera continued to control Collins.  In fact, Al Jazeera's own lawyers in this action represented Collins for several weeks after Plaintiffs filed their original complaint.  *See* ECF No. 6.  But even after Collins obtained a separate lawyer, Al Jazeera still continued to control his defense.  In addition to paying Collins' legal fees, Al Jazeera, by agreement, maintained "sole control over the defense and/or settlement of [Plaintiffs'] claims."  Ex. A at ¶ 4.  And even though Collins has

since been dismissed as a formal party to this action, he is still under an ongoing legal obligation to "cooperat[e] with Al Jazeera in the defense of [Plaintiffs'] claims[s]." *Id.* (requiring Collins' cooperation with Al Jazeera as a condition of indemnification).

### D.   The Instant Dispute

Despite Collins' ongoing obligation to cooperate with Al Jazeera in its defense of Plaintiffs' claims, Al Jazeera now claims that it lacks control over Collins for purposes of discovery.  As such, Al Jazeera has refused to collect and produce all responsive documents and information from him; instead, ominously, Al Jazeera has selectively produced a limited subset of documents from just one of Collins' e-mail addresses—liamcollins400m@gmail.com—which Al Jazeera claims was "created for the purpose of Collins' work on *The Dark Side*." Ex. H.  This gesture—which only confirms Plaintiffs' argument that Collins is under Al Jazeera's control—is not enough.

As mentioned, Collins used *multiple* e-mail addresses in connection with his work on the Documentary, not just the one Al Jazeera claims to have set up for him.  For instance, documents produced for other custodians make clear that Collins used another Gmail account, liamcollins0@gmail.com, to send and receive e-mails from Al Jazeera staffers as well as various sources.  *See* Ex. I, *see also* Ex. J.  To date, Al Jazeera has produced from other custodians more than 175 e-mails sent to or received from Collins' other Gmail account, which confirms the importance of Al Jazeera collecting e-mails from this account as well.  Beyond the two Gmail accounts, Collins also regularly sent messages to potential sources through several social media platforms, including Facebook and WhatsApp, with Al Jazeera's knowledge, consent, and encouragement. *See* Ex. L; *see also* Ex. K. And finally, Collins also frequently sent text messages to Al Jazeera's producers, sources, and others in connection with the Documentary using a cell phone that was paid for by Al Jazeera. *See* Ex. E; *see also* Ex. F.

Plaintiffs have, therefore, asked Al Jazeera (both through written correspondence and telephonic meet and confers) to collect and produce *all* responsive materials and information from *all* of Collins' custodial files in compliance with the obligation under Federal Rule of Civil Procedure 34(a).  *See* Ltr. from E. Thompson to R. Stevens, dated Sept. 26, 2017 (attached hereto as Exhibit U).  Al Jazeera has refused, electing instead to limit its production of Collins' materials to a single e-mail account.  *See* Ex. H.  As discussed more fully below, the Court should not allow Al Jazeera to self-impose this arbitrary limit on what discovery it will or will not collect from Collins, who is under an ongoing obligation to cooperate with Al Jazeera in the defense of Plaintiffs' claims.  Accordingly, Plaintiffs respectfully request that Al Jazeera be ordered to collect and produce documents and information from all of Collins' custodial files.

## **ARGUMENT**

## I.     **AL JAZEERA CONTROLS COLLINS AND SHOULD COLLECT AND PRODUCE ALL DOCUMENTS WITHOUT LIMITATION**

Al Jazeera has imposed an arbitrary limit on the documents it will collect and produce from Collins.  This limitation lacks any basis in the law.  Under Fed. R. Civ. P. 34(a), Al Jazeera is required to produce all responsive documents that are within its "possession, custody, or control."  Fed. R. Civ. P. 34(a).  "Because this requirement is in the disjunctive, actual possession of a document need not be established . . . . Control is sufficient."  *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638 (D. Or. Mar. 23, 2015).  Thus, although Collins may "possess" the documents Plaintiffs seek, such documents are nonetheless within Al Jazeera's "control"—a term that is "broadly construe[d] . . . for Rule 34 purposes."  *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999).  Specifically, "control" exists if a party has "'the right, authority or practical ability to obtain the documents from a non-party to the action.'"  *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012)

(quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)).  Al Jazeera meets this test as to Collins; it has the legal right and authority to obtain the materials sought pursuant to the NDA and the Appearance Release, as well as through his employment and/or agency relationship with Al Jazeera.  It also has the "practical ability" to obtain the materials from Collins by simply asking him for them.

### A.    Al Jazeera Has The Legal Right To Obtain The Documents At Issue From Collins.

The "legal right" to obtain documents or information from a non-party may arise by contract.  *See Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) ("'control' may be established by the existence of . . . a legal right pursuant to a contractual provision").  Here, the NDA and the Appearance Release signed by Collins establish Al Jazeera's unequivocal legal right to obtain the materials Plaintiffs seek.

First, the NDA unambiguously establishes Al Jazeera's "legal right" to demand or obtain documents from Collins.  Specifically, the NDA requires that Collins hold all Confidential Information "in strictest confidence" and prohibits him from disclosing this information "without [Al Jazeera's] prior written consent."  Ex. B at ¶ 2.  "Confidential Information" is broadly defined to include "any and all information shared verbally or in writing between [Al Jazeera] and Collins[,]" as well as all "products of journalistic investigations, including the subject matter of the Documentary, the Documentary's subjects, and the sources of information for the Documentary."  *Id.* at ¶ 1.  To this day, Collins must adhere to his non-disclosure obligations. *See id.* at ¶ 7.  Thus, even if Plaintiffs attempted to obtain documents from Collins directly, the terms of the NDA prohibit him from providing the requested discovery without first obtaining Al Jazeera's consent.  "This acknowledged power [of requiring consent] readily qualifies as a 'legal right to obtain' the [materials] held by [Collins], and hence constitutes 'control' within the

10

meaning of Rule 34(a)(1)." *Flagg v. City of Detroit*, 252 F.R.D. 346, 355 (E.D. Mich. 2008) ("if the City can **block** the disclosure of [information] by **withholding** its consent, it surely follows that it can **permit** the disclosure of these communications by **granting** its consent") (emphasis in original); *see also Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972) (party had control over materials in the possession of a third party by virtue of its ability to secure the consent that was necessary to obtain a copy of these materials).

The NDA further establishes Al Jazeera's "legal right" to the requested materials by conferring legal ownership over Collins' work product directly to Al Jazeera.  Specifically, the NDA states that "Al Jazeera owns and Collins hereby assigns all copyrightable Work Product authored by Collins that he brings or has brought to Al Jazeera and that is used in the course of Al Jazeera's  business . . . ."  Ex. B at ¶ 9.  "Work Product" is broadly defined to include (although not be limited to) "original works of authorship, including *interim work product*, modifications and derivative works, and all similar matters, whether or not copyrightable." *Id.* (emphasis added).  Al Jazeera, therefore, owns Collins' work product and, as a result, maintains control over it for purposes of Rule 34.  *See Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 521 (D. Kan. 2007) (finding defendant had control over documents based on contractual language stating that "defendants own the designs" that they claimed not to control).

In addition to the NDA, Collins and Al Jazeera separately executed the Appearance Release, which also establishes Al Jazeera's "legal right" to the materials requested by Plaintiffs. Specifically, the Appearance Release requires Collins to "cooperat[e] with Al Jazeera in the defense of [Plaintiffs'] claim[s] . . . ."  Ex. A at ¶ 4.  This agreement to cooperate with Al Jazeera in its defense of Plaintiffs' claims is also enough to establish "control" for purposes of Rule 34. *See e.g.*, *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998) (recognizing

11

that control can be found "when one party has contractually agreed to assist the other in litigation"); *Doe v. AT & T W. Disability Benefits Program*, 2012 WL 1669882, at *4 (N.D. Cal. May 14, 2012) (finding "control" over third party documents based on agreement obligating third party to "[a]ssist [litigant]'s counsel, if requested, in preparing the defense of litigated cases arising out of Disability Claims"); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (control established where contract between plaintiff and its agent required agent "to use 'its best efforts . . . to give [plaintiff] . . . all reasonably requested assistance and information necessary to proceed with [a] suit for [patent] infringement'").

There can be little doubt that both the NDA and the Appearance Release confer upon Al Jazeera the "legal right" to obtain from Collins the materials requested by Plaintiffs. This "legal right" means Al Jazeera "controls" Collins for purposes of discovery. Accordingly, on this basis alone, the Court should order Al Jazeera to collect and produce documents from all of Collins' custodial files.

**B.    The Principal-Agent Relationship Between Al Jazeera And Collins Establishes Control.**

Control, for purposes of Rule 34, also can be "established by virtue of a principal-agent relationship." *McKesson Corp.*, 185 F.R.D. at 78. Al Jazeera does not seriously dispute that Collins was its agent. *See* Ex. H. Instead, Al Jazeera claims that it lacks control over Collins because he "is not and has never been an Al Jazeera employee[,]" but was instead "retained . . . as a freelance journalist." *Id.* at 1. But whether or not Collins was formally employed by Al Jazeera is not the relevant test for control under Rule 34. As discussed, "control" is assessed by evaluating whether the resisting party has "the right, authority or practical ability to obtain the documents from a non-party to the action," *Bush*, 286 F.R.D. at 5, which can be established by a

12

principal-agent relationship.  *See McKesson Corp.*, 185 F.R.D. at 78.  Such a relationship exists here.

Under District of Columbia law, "an agency relationship exists if there is 'evidence of the parties' consent to establish a principal-agent relationship' and 'evidence that the activities of the agent are subject to the principal's control.'"  *CapitalKeys, LLC v. Democratic Republic of Congo*, 2017 WL 4466581, at \*14 (D.D.C. Oct. 6, 2017) (quoting *Jackson v. Loews Washington Cinemas, Inc.*, 944 A.2d 1088, 1097 (D.C. 2008)).  Here, Al Jazeera and Collins consented to a principal-agent relationship by virtue of his employment and/or retention by Al Jazeera, as memorialized by the various employment agreements signed by Collins.  *See* Ex. A; *see also* Ex. B.  Separately, the limited record is already replete with evidence establishing that Collins' activities were controlled by Al Jazeera.

For roughly eight months, Collins did everything Al Jazeera asked.  He contacted the people Al Jazeera told him to contact.  *See* Ex. C; *see also* Ex. M.  He asked the questions Al Jazeera wanted him to ask.  *See* Ex. R; *see also* Ex. S.  He followed the itineraries set by Al Jazeera.  *See* Ex. P; *see also* Ex. Q.  He sent the e-mails and text messages that Al Jazeera told him to send.  *See*, *e.g.*, Ex. F; Ex. N; Ex. O.  He traveled the world on Al Jazeera's dime.  *See* Ex. G.  He even purchased PEDs on behalf of Al Jazeera and had them sent through the United States Postal Service.  *See* E-mail from L. Collins to K. Hirten, dated Sept. 9, 2015 (attached hereto as Exhibit V) (reflecting purchases of various PEDs shipped through USPS).  In essence, Collins did **whatever** Al Jazeera asked or demanded of him.

These actions form the basis of an undeniable agency relationship (either as an employee or otherwise) that does not simply end because Collins may no longer be employed by or affiliated with Al Jazeera.  It is sufficient that Collins *was* Al Jazeera's agent at relevant times

and in the course of relevant events. *See Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, 2005 WL 1713067, at *11 (Del. Ch. July 13, 2005) (finding it "logical to conclude . . . that" defendant had control over documents in the possession of a third party who previously acted as defendant's agent in the course of relevant transaction). Thus, for this additional reason, Al Jazeera must be required to collect and produce responsive documents and information from Collins. *See Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) (ordering the production of documents in the possession of the defendant corporation's overseas affiliate and reasoning that if this party "could so easily evade discovery" by "destroying its own copies and relying on . . . copies maintained by its affiliate abroad," then "every United States company would have a foreign affiliate for storing sensitive documents").

### C.  Al Jazeera Has The Practical Ability To Obtain Documents From Collins.

Finally, control can also be established by demonstrating that a party has the "practical ability to obtain the documents from" the non-party. *Bush*, 286 F.R.D. at 5 (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195). There can be no serious doubt that Al Jazeera has the practical ability to obtain documents and information from Collins. Al Jazeera is financing Collins' legal defense in this action and has required Collins to cooperate with Al Jazeera. Al Jazeera has his contact information, including his phone number, e-mail addresses, and last known mailing address (which Al Jazeera failed to provide in its Initial Disclosures). Initial counsel for Al Jazeera even represented Collins in this very same action in which they now claim to not control him.

At its core, Al Jazeera could obtain all documents and information from Collins if it wanted to do so. But there is no indication that Al Jazeera has made any attempt to do so or that Collins has refused to cooperate with such a request (which, incidentally, would be a violation of the Appearance Release). Under these circumstances, Al Jazeera cannot reasonably claim it

14

lacks the practical ability to obtain documents from him.  *See Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341-42 (S.D.N.Y. 2005) (requiring "corporations [to], at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession"); *see also Newill v. Campbell Transp. Co.*, 2013 WL 6002349, at *6 (W.D. Pa. Nov. 12, 2013) (control established, in part, by accepting service of a deposition subpoena for a former employee for whom the defendant claimed it lacked control).

* * * * *

Al Jazeera has a legal obligation to collect and produce documents and information from all of Collins' custodial files.  This Court should require Al Jazeera to comply with this rudimentary obligation.  To hold otherwise would be to impose a tremendous burden on Plaintiffs, who would have to seek non-party discovery on Collins, when Al Jazeera need only ask Collins for such documents and information, which Collins is required to provide under the Appearance Release and the NDA.

## II.  THE COURT SHOULD AWARD PLAINTIFFS THEIR REASONABLE COSTS AND FEES INCURRED IN CONNECTION WITH THIS MOTION

In light of the plain legal obligation Al Jazeera has to collect and produce these documents, the Court should award Plaintiffs their costs and fees on this Motion.  "Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations."  *Bonds v. Dist. of Columbia*, 93 F.3d 801, 807 (D.D.C. 1996).  Absent a showing by Al Jazeera that its refusal to provide the discovery requested herein "was 'substantially justified' or that circumstances render an award 'unjust,'" an award of fees and expenses to Plaintiffs is mandatory.  *Campbell v. Nat'l R.R. Passenger Corp.*, 309 F.R.D. 21, 28 (D.D.C. 2015) (citing *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008)).  For the reasons above,

Al Jazeera cannot offer any justification for its position—much less a substantial one.  Likewise, there are no circumstances that render fee-shifting unjust.   To the contrary, fee-shifting is particularly appropriate here given the clear and unambiguous language in the Appearance Release and the NDA, which confer upon Al Jazeera the "legal right" to obtain the requested materials, as well as the undisputed agency relationship that exists between Al Jazeera and Collins, and the ease with which Al Jazeera could obtain this information.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant their Motion in full. In addition, Plaintiffs request that the Court grant them a reasonable period of time to serve additional, follow-on discovery following its receipt of the documents and information requested herein, to the extent such leave is necessary under the Scheduling Order when Al Jazeera provides such information.

Date:  October 23, 2017

/s/ William A. Burck
William A. Burck (#979677)
Scott E. Lerner (#1024964)
Quinn Emanuel Urquhart & Sullivan, LLP
777 6th Street NW, 11th Floor
Washington, DC 20001
Telephone: (202) 538-8000
Fax: (202) 538-8100
William.burck@quinnemanuel.com
Scott.lerner@quinnemanuel.com

Robert L. Raskopf (admitted *pro hac vice*)
Kevin S. Reed (admitted *pro hac vice*)
Ellyde R. Thompson (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (202) 849-7100
robert.raskopf@quinnemanuel.com

16

kevinreed@quinnemanuel.com
ellydethompson@quinnemanuel.com

*Counsel for Plaintiff Ryan W. Zimmerman*

/s/ *Andrew D. Herman*
Andrew D. Herman (#462334)
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
Telephone: (202) 626-5869
Fax: (202) 626-5801
aherman@milchev.com

*Counsel for Plaintiff Ryan J. Howard*