# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RYAN W. ZIMMERMAN, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> AL JAZEERA AMERICA, LLC, *et al*., <br><br> Defendants. | Case Nos. 1:16-cv-13-KBJ <br> 1:16-cv-14-KBJ <br><br> Redacted |

**DEFENDANTS AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    A.    Peyton and Ashley Manning acted as Al Jazeera's second, corroborating source for the Documentary ....................................................................4

    B.    Defendants have consistently and appropriately asserted the attorney-client privilege and the work product protection in this litigation..........................6

    C.    Plaintiffs failed to confer regarding their remaining complaints about Defendants' privilege logs...................................................................8

LEGAL ARGUMENT ...............................................................................................10

    A.    Defendants have not waived the right to assert the attorney-client privilege simply by producing non-privileged documents reflecting the corroborating facts provided by the Mannings...................................................10

    B.    Defendants have not waived the right to assert the attorney work-product doctrine by producing, in response to Plaintiffs' discovery demands, non-privileged documents reflecting the corroborating facts provided by the Mannings ...........................................................................................12

    C.    Defendants have not placed any legal advice or attorney work product at issue in this litigation ......................................................................14

    D.    Defendants have appropriately withheld and logged privileged communications .....................................................................................15

    E.    Defendants' redactions of information related to highly confidential, unrelated investigations are proper .................................................16

CONCLUSION.........................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Banks v. Office of Senate Sergeant-At-Arms*,
   228 F.R.D. 24 (D.D.C. 2005) ............................................................. 12

*Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper*,
   No. Civ.# A. 03-56, 2005 WL 1074329 (D.D.C. May 4, 2005) ...................................... 16, 18

*Brinton v. Dep't of State*,
   636 F.2d 600, 604 (D.C. Cir. 1980) ................................................... 11

*\*F.T.C. v. Boehringer Ingelheim Pharm., Inc.*,
   286 F.R.D. 101 (D.D.C. 2012*), aff'd in part, vacated in part on other grounds*,
   778 F.3d 142 (D.C. Cir. 2015) ............................................... 15, 16

*\*F.T.C. v. Boehringer Ingelheim Pharm., Inc.*,
   778 F.3d 142 (D.C. Cir. 2015) ................................................ 12

*Feld v. Fireman's Fund Ins. Co.*,
   991 F. Supp. 2d 242 (D.D.C. 2013) ..................................... 13

*FiberLight, LLC v. Washington Metro. Area Trans. Auth.*,
   288 F. Supp. 3d 133 (D.D.C. 2018) ................................... 17

*Gates v. Rohm & Haas Co.*,
   No. 06-1743, 2007 WL 295416 (E.D. Pa. Jan. 29, 2007) ..................................... 17

*Hager v. Bluefield Regional Med. Ctr., Inc.*
   170 F.R.D. 70 (D.D.C. 1997) ....................................... 13

*\*Loftin v. Bande*,
   258 F.R.D. 31 (D.D.C. 2009) ...................................... 16

*McBride v. Merrell Dow & Pharms. Inc.*,
   717 F.2d 1460 (D.C. Cir. 1983) ................................... 18

*In re Sealed Case*,
   737 F.2d 94 (D.C. Cir. 1984) .................................... 11

*In re Takata Airbag Prods. Liab. Litig.*,
   MDL No. 2599, 2016 WL 1460143 (S.D. Fla. Feb. 24, 2016) ........................... 17

*\*Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund
   Advisors, Inc.*,
   266 F.R.D. 1 (D.D.C. 2010) ........................................... 11, 13, 14, 16

*United States v. All Assets Held at Bank Julius Baer & Co.*,
312 F.R.D. 16, 18 (D.D.C. 2015) ..........................................................................19

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*,
No. 99-3298, 01-MS-50 (MDL) (RCL), 2004 WL 2009414 (D.D.C. May 17,
2004) .....................................................................................................................19

*United States v. W. Elec. Co.*,
132 F.R.D. 1 (D.D.C. 1990) ..................................................................................13

*Weiss v. Mentor Corp.*,
Misc. No. 92-0203, 1992 WL 235889 (D.D.C. July 10, 1992) .............................13

*Wells v. Liddy*,
37 F. App'x 53 (4th Cir. 2002) .........................................................................14, 15

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab.
Litig.*,
No. 3:09-md-02100-DRH-PMF, 2010 WL 3780798 (S.D. Ill. Sept. 22, 2010) .....17

## Other Authorities

Advisory Committee on Rules of Evidence, Minutes of Meeting of Apr. 12-13,
2007, available at http://www.uscourts.gov/sites/default/files/fr_import/EV04-
2007-min.pdf ..........................................................................................................12

Fed. R. Civ. P. 26(b)(1) ...............................................................................................16

Fed. R. Evid. 502(a) .....................................................................................................12

Defendants Al Jazeera Media Network ("AJMN"), Al Jazeera international (USA), Inc. ("AJI"), Al Jazeera, LLC ("AJAM") (collectively, "Al Jazeera"), and Deborah Davies ("Davies") (collectively, "Defendants") respectfully submit this memorandum in opposition to Plaintiffs Ryan W. Zimmerman's and Ryan J. Howard's Motion to Compel Documents Withheld as Privileged ("Plaintiffs' Motion") (Dkt. No. 107).

## PRELIMINARY STATEMENT

In support of its Motion to Compel Documents Withheld as Privileged, Plaintiffs claim in internally inconsistent fashion that Defendants: (a) relied on an uncorroborated single source, Charlie Sly, for their documentary *Dark Side: The Secrets of Sports Dopers* (the "Documentary"); (b) hired an outside law firm that served as a second source and verified the statements made by Sly in the Documentary; (c) waived any claims of attorney-client privilege and work-product doctrine by "aggressively using the advice it obtained from [the outside law firm] as a sword in this litigation"; and (d) made unwarranted redactions to certain documents and submitted a flawed privilege log.   As explained below, every one of these claims is demonstrably false.

As this Court knows, Sly is a pharmacist known to his peers as an expert in sports doping, was closely connected to both Plaintiffs and their personal trainer, and stated on hidden camera in the Documentary that several professional athletes, including Plaintiffs, had used banned performance enhancing substances ("PES") in order to gain an unfair advantage or prolong their careers.   On hidden camera, Sly also claimed that he was a pharmacist who had trained at the Guyer Institute in Indiana, that he had worked with Peyton and Ashley Manning during that time, and that the Guyer Institute sent Mrs. Manning many shipments of human growth hormone ("HGH") to locations across the United States.   Defendants corroborated Sly's statements.   For example, Al Jazeera's Investigative Unit spoke with an employee at Guyer, who

confirmed that Sly had worked at the Guyer Institute and provided the dates that he interned at the clinic.[1]   The Investigative Unit also confirmed Sly's pharmacist credentials.[2]   Sly's knowledge about and work with PES and access to professional athletes was independently corroborated by pharmacist Chad Robertson, naturopath Brandon Spletzer, and the Seattle Seahawks' team chiropractor Gerry Ramogida.[3]   Sly also identified a pharmacy in Louisiana that would ship Delta-2, one of the PES banned by Major League Baseball ("MLB").   Al Jazeera ordered and received a shipment of Delta-2 from that same pharmacy, which proved that Sly had the ability and means to acquire the PES he said were used by the professional athletes he identified.[4]   *See also* Dkt. No. 110-1 (Defendants' Opposition to Plaintiffs' Motion to Compel), at 6-9.   Accordingly, contrary to Plaintiffs' claims, Sly's statements were corroborated.

Next, Plaintiffs claim that Sly was the "single" source and that Al Jazeera's outside law firm, Davis Wright Tremaine ("DWT"), served as a second or "corroborating source."   *See* Plaintiffs' Motion at 1-2.   Although contradictory, both claims are false.   First, DWT was retained, long before any Al Jazeera reporter ever met Sly, to act as Al Jazeera's pre-broadcast libel review counsel for the Documentary.   DWT was not a "source" for anything that appeared in the Documentary.   And the Documentary did not rely on a single source.   The second, corroborating source for some of Sly's statements was the Mannings, who voluntarily

---

[1] *See* AJ-HZ_0036588 (Ex. 1).

[2] *See* AJ-HZ_0043243; AJ-HZ_0043245; AJ-HZ_0043247 (Ex. 2).

[3] *See* Documentary transcript, Dkt. No. 26-4, at 14 (Of Sly, Robertson claims "[h]e still to this day built the best NFL athlete that ever existed athletically[,]" and Spletzer states that he "is so bright, it's scary."); *Undercover Video Raises Questions: Did Seattle Seahawks Chiropractor Have Business Link With Individuals in Al Jazeera Doping Documentary?*, Kevin Hirten, Feb. 7, 2016 (available at https://www.huffingtonpost.com/kevin-hirten/undercover-video-raises-q_b_9171620.html) (Ramogida says of Sly that "[h]e's one of these kinds of genius types that he's so deep into things that he forgets where the baseline normal is for everybody else.").

[4] *See* AJ-HZ_0026174 (Ex. 3).

communicated facts to Al Jazeera through their lawyers at Gibson Dunn & Crutcher ("GDC"). In particular, the Mannings informed Defendants, through their respective law firms, that, ███

███████████████████████████████████████████████████████████████

████████████████████████████████████████ █ ████████████████████████

███████████████████████████████████████████████████████████[6] In short, the Mannings—not, as Plaintiffs have alleged, DWT—served as a second source for the Documentary when the Mannings' lawyers corroborated important statements made by Sly on hidden camera, further confirming Sly's credibility.[7] Accordingly, the Plaintiffs' contention that DWT served as the second source is demonstrably false; DWT simply relayed the information the Mannings provided through counsel.

Finally, Plaintiffs claim that Defendants have waived the right to assert the attorney-client privilege and the work-product doctrine as a discovery protection by "aggressively using the advice it obtained from DWT as a sword in this litigation." Plaintiffs' Motion at 2. Nonsense. The Defendants have not and will not use in this litigation any legal advice it obtained from DWT in connection with the Documentary. On the other hand, Defendants will continue to expose Plaintiffs' false allegations against them by, among other things, relying upon the corroborating facts that the Mannings provided to Al Jazeera. Consistent with its discovery obligations, the Defendants and/or DWT have produced all non-privileged documents reflecting

---

[5] Declaration of Robert Corn-Revere in Support of Petitioners' Motion to Compel Discovery from Gibson, Dunn & Crutcher, LLP ("First Corn-Revere Decl."), Dkt. No. 91-1, at ¶¶ 7, 8-9, and 12.

[6] AJ-HZ_0043344 (Ex. 4) (Dec. 18, 2015 e-mail repeating Gibson Dunn's representation that

████████████████████████████████████████████████████████████████
██████████████████████████████████████████

[7] *See* AJ-HZ_0043672 (Ex. 5); AJ-HZ_0043344 (Ex. 4); First Corn-Revere Decl. at ¶ 12.

the facts provided by the Mannings through their counsel, including notes taken by DWT and factual summaries of the Manning conversations provided by DWT to the Defendants.[8] Defendants also have agreed, in response to Plaintiffs' subpoena, to make DWT available to be deposed with respect to those conversations.[9]

In an attempt to transform the disclosure of non-privileged, corroborating facts into a broad privilege waiver, Plaintiffs mischaracterize as "legal advice" or "work product" Defendants' production of *non*-privileged documents and communications that reflect the facts provided by the Mannings—the second source—which corroborate Sly's statements.  Put simply, Defendants' production of these non-privileged documents was consistent with its discovery obligations and does not give rise to a waiver of any kind.  The Plaintiffs' unrelated complaints about redactions to certain documents and purportedly flawed privilege log entries fare no better.  For the reasons set forth below, Defendants respectfully request that the Court deny Plaintiffs' Motion in its entirety.

## STATEMENT OF FACTS

A.     **Peyton and Ashley Manning acted as Al Jazeera's second, corroborating source for the Documentary**

In the course of its year-long, in-depth investigation into the use of PES in professional sports, Al Jazeera reporters learned of a man, Charlie Sly, described by self-confessed sports dopers as "a genius at outwitting WADA [the World Anti-Doping Agency]."[10] Through undercover recordings, the reporters watched as Sly handed a bag of purported PES to Taylor

---

[8] *See* DavisWright_000001, DavisWright_000004, DavisWright_000009. (Ex. 6).

[9] *See* Mar. 5, 2018 email from S. Lerner to J. Seiver discussing dates for the deposition of Robert Corn-Revere. (Ex. 7).

[10] *See* Transcript of the Documentary, Dkt. No. 26-4, at 10, 13.

Teagarden, a MLB player then affiliated with the Chicago Cubs.[11]   During the remaining 27 hours of secretly-recorded conversations, Sly revealed that other MLB players, including Plaintiffs, had taken PES.[12]

Sly also said the following about former NFL player Peyton Manning:

> I did part of my training at the Guyer Institute which is like this anti-aging clinic in Indiana. [Peyton Manning] and his wife would come in after hours and get IVs and s***. … So one thing that Guyer does is he dispenses drugs out of his office which physicians can do in the United States it's just not very many of them do it. … And all the time we would be sending Ashley Manning drugs. Like growth hormone, all the time, everywhere, Florida. And it would never be under Peyton's name, it would always be under her name. … We were sending it everywhere ... (laughs). It'd go to Florida ...[13]

In keeping with journalistic standards, prior to the broadcast of the Documentary, Defendant Deborah Davies emailed Peyton Manning's agent, Tom Condon, on December 4, 2015 and offered the Mannings the opportunity to comment on Sly's allegations.[14]   On December 13, 2015, Theodore Olson of GDC, a lawyer for the Mannings, placed a telephone call to Robert Corn-Revere of DWT, a lawyer for Al Jazeera.[15]   During that conversation, Olson confirmed that, ████████████████████████████████████████████████████████████

████████████████[16]   Over the course of several subsequent conversations with Corn-Revere,

---

[11] *Id*. at 23, 24.

[12] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████   *See* Dkt. No. 110, Ex. 2, Howard-0004158. ███████████████
████████████████████████████████████████████████████████

[13] Documentary transcript, Dkt. No. 26-4, at 32.

[14] *See* AJ-HZ_0025123, AJ-HZ_0025125 (Ex. 8).

[15] *See* First Corn-Revere Decl. ¶ 7.

[16] *See id*.

Matthew McGill (a partner of Olson's at GDC) provided additional information that further corroborated Sly's statements. For example:



The factual information conveyed by the Mannings to Al Jazeera through their respective law firms is reflected in a number of emails attached to Plaintiffs' Motion (the "Manning Emails")[18] as well as notes produced by DWT in response to a subpoena served by Plaintiffs.[19] The corroborating facts provided by the Mannings, taken together with other details the journalists had learned, buttressed Defendants' determination that Sly was a credible source, and his allegations worthy of inclusion in the Documentary.[20]

**B.   Defendants have consistently and appropriately asserted the attorney-client privilege and the work product protection in this litigation**

Throughout discovery, Defendants have consistently asserted attorney-client privilege and work product protection over documents and communications containing, reflecting and/or requesting legal advice and work-product from its outside counsel, DWT. For example, on September 6, 2017, Defendants objected to Plaintiffs' First Set of Requests for Production of

---

[17] *See id*. at ¶¶ 9, 12.

[18]  *See* Plaintiffs' Motion, at Ex. C (AJ-HZ_0042264); Plaintiffs' Motion, at Ex. D (AJ-HZ_0042260); Plaintiffs' Motion, at Ex. E (AJ-HZ_0042262).

[19] DavisWright_000001, DavisWright_000004, DavisWright_000009. (Ex. 6).

[20] *See also* Defendants' Memorandum of Law in Opposition to Plaintiffs' Substantive Motion to Compel, Dkt. No. 110-1, at 6-9.

Documents to the extent Plaintiffs were seeking documents protected by the attorney-client privilege and work product doctrine, and agreed only to search for and produce *non-privileged* documents within their possession custody and control.[21]   In particular, Defendants only agreed to "produce non-privileged" material in response to Request Number 10, which seeks "All Documents and Communications that Refer, Relate, or Pertain to Your sources of the Defamatory Publications."[22]   On October 23, 2017, Defendants objected to Plaintiffs' Second and Third Requests for Production of Documents by asserting all applicable privileges and agreeing to produce only *non-privileged* documents in response to Request Number 139, which seeks "All Documents and Communications that Refer, Relate, or Pertain to Davies' appearance and statements made on the CNN's Reliable Sources on January 3, 2016, regarding *The Dark Side*."[23]   It was during Ms. Davies' appearance on CNN's Reliable Sources January 3, 2016 broadcast that she first noted that Al Jazeera had a second source, but did not identify that the second source was the Mannings.

On November 14, 2017, Defendants objected to Plaintiffs' First Set of Interrogatories by asserting all applicable privileges, and specifically responded to Interrogatory No. 16—which asks Defendants to "[i]dentify the 'second source' Davies referred to in her appearance on CNN's Reliable Sources on Sunday, January 3, 2016, and describe in detail each and every fact that Person provided to You"—by objecting to the extent the request calls for information

---

[21] *See* Defendants' Objections and Responses to Plaintiffs' First Request for Production of Documents (Ex. 9); *see also* DWT's December 19, 2017 Objection to Plaintiffs' December 5, 2017 Subpoena *Duces Tecum* served on Robert Corn-Revere (Ex. 10).

[22] *See* Ex. 9 at Response to Request No. 10.

[23] *See* Defendants' Objections and Responses to Plaintiffs' Second Request for Production, at Response to Request No. 139 (Ex. 11).

protected by the attorney-client privilege and work product doctrine, and then describing the information provided by the Mannings through their attorneys at GDC.[24]

Finally, as Plaintiffs are well aware, Defendants have produced nine privilege and redaction logs, each of which asserts the attorney-client privilege and work product doctrine as the basis for withholding communications between Al Jazeera and DWT. Notably, the very first privilege and redaction logs produced by Defendants, on December 11, 2017, included numerous entries reflecting legal advice provided by DWT, including legal advice provided in or around December 15, 2017 when DWT spoke with GDC.[25] Subsequent privilege and redaction logs, including those produced on January 29, 2018, again made clear that Defendants continue to exercise—and have not waived—their right to assert attorney-client privilege and work product protection over its communications with DWT to the extent that such communications are, in fact, privileged.[26]

## C.    Plaintiffs failed to confer regarding their remaining complaints about Defendants' privilege logs

Throughout the discovery period, Plaintiffs have questioned the sufficiency of Defendants' privilege log entries. For example, Plaintiffs sent letters dated February 12, March 7, and March 12, 2018 describing perceived deficiencies in Defendants' privilege logs.[27] In response and in an attempt to avoid motion practice, Defendants have produced documents, written letters dated March 8, 2018 and March 21, 2018, provided additional information,

---

[24] *See* Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories, at Response to Request No. 16 (Ex. 12).

[25] *See* Defendants' December 11, 2017 Privilege and Redaction Logs (Ex. 13).

[26] *See* Defendants' January 29, 2018 privilege logs (Ex. 14).

[27] *See* May 23, 2018 Declaration of Rachel V. Stevens in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Documents Withheld as Privileged ("May 23 Stevens Decl.") ¶ 4, at Exs. 15-17.

revised redactions, and amended log entries.[28]  As a result, Defendants were not aware of any remaining concerns that Plaintiffs had with respect to their privilege log entries until Plaintiffs' Motion was filed.  Defendants remain committed to this meet and confer process should Plaintiffs have any additional questions.

That said, Plaintiffs complain that 252 privilege log entries reflect communications without a lawyer participating.  Plaintiffs do not complain about the sufficiency of the log entries themselves, but merely argue that this seems like a lot of instances where legal advice is discussed in some manner among non-lawyers.  If Plaintiffs had bothered to ask Defendants, they would have been informed of the Investigative Unit's practice to have all reporters direct any requests for legal advice from outside counsel through the Manager or Director of the Investigative Unit, who in turn would then covey the request for legal advice to DWT and then share the legal advice received with the reporters or personnel who required it.[29]  The attorney-client privilege attaches to all communications in this sequence, even though several do not involve lawyers.  And, given this practice, it is not surprising in the least that there are numerous communications reflected on Defendants' privilege log that do not include lawyers.[30]

Finally, Defendants have produced certain documents with redactions to preserve the secrecy of highly confidential investigations conducted by Al Jazeera that have no relationship whatsoever to the Documentary or this litigation.[31]  Counsel for Defendants have explained to Plaintiffs why these redactions were made and that no information even arguably responsive to

---

[28] *See id.* at ¶ 4, Exs. 18-19.

[29] *See* May 21, 2018 Declaration of Phil Rees in Support of Defendants' Opposition to Plaintiffs' Motion  to Compel ("Rees Decl."), Dkt. No. 110-2, at ¶ 16.

[30] See Plaintiffs' Motion, Appendix C.

[31] *See* May 23 Stevens Decl. at ¶ 5.

any discovery request has been redacted.[32]  Given First Amendment concerns and Plaintiffs'

actions in this very litigation, Defendants were unwilling to make this non-responsive

information available to Plaintiffs' counsel.[33]

## LEGAL ARGUMENT

For the reasons set forth below, Defendants respectfully request that the Court reject

Plaintiffs' invitation to find a broad waiver of the attorney-client privilege and work product

protection where none exists and deny the remainder of Plaintiffs' Motion regarding certain

redactions of unrelated highly confidential investigations and certain privilege log entries.

A.      **Defendants have not waived the right to assert the attorney-client privilege simply
        by producing non-privileged documents reflecting the corroborating facts provided
        by the Mannings**

As explained above, Plaintiffs claim that Defendants waived the right to assert attorney-

client privilege by "aggressively" using the "legal advice" it received from DWT to aid in its

defense in this litigation.  *See* Plaintiffs' Motion at 2.  Plaintiffs, however, fail to identify any

"legal advice" that Defendants have used in this case in any manner, let alone "aggressively."

And for good reason; any legal advice that DWT provided to Defendants in connection with the

Documentary has been reflected on Defendants' privilege logs since as early as December 11,

2017, will not be relied upon by Defendants in this litigation, and has not been intentionally

produced in discovery.  Faced with these circumstances, Plaintiffs resort to mischaracterizing as

"privileged" or "legal advice" or "work product" a handful of non-privileged documents

produced by Defendants that directly respond to Plaintiffs' discovery requests for all

---

[32] *See* Letter from T. Toweill to W. Burck, dated March 8, 2018 (Ex. 18).

[33] *See* Dkt No. 102 at 3-4 (prohibiting Plaintiffs from continuing to review inadvertently produced documents); May 7, 2018 e-mail from Chambers (removing the Motion from the public docket) (Ex. 20).

corroborating facts provided to the Defendants by the second source, which was Peyton and Ashley Manning.

Plaintiffs' entire waiver argument rests on the Mannings' choice to convey the corroborating facts to Defendants by having their outside counsel (GDC) contact Defendants' outside counsel (DWT), which required DWT to relay those facts to Defendants.[34] But "it goes without saying that merely disclosing non-privileged communications with an attorney does not thereby waive privileged ones." *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 10 (D.D.C. 2010). "[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984) (quoting *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980)). And this is precisely the case here. The corroborating, non-privileged facts provided by the Mannings and the documents that reflect those facts are important evidence in this litigation that the Plaintiffs specifically demanded in their Discovery Requests.[35] Since these facts and the conversations between DWT and GDC are not privileged, it stands to reason that documents and communications which memorialize the content of those conversations are discoverable. Accordingly, Defendants have not waived the right to assert the attorney-client privilege over the legal advice it obtained from DWT merely by producing, in response to Plaintiffs' discovery requests, documents reflecting the corroborating facts provided by the

---

[34] *See* May 23, 2018 Declaration of Robert Corn-Revere in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Documents Withheld as Privileged ("May 23 Corn-Revere Decl."), at ¶¶ 6, 8, 10.

[35] *See, e.g.,* Plaintiffs' Second Set of Interrogatories, at Interrogatory No. 40 (Ex. 21).

Mannings, even though certain of those communications were sent from DWT to the Defendants.[36]

**B.     Defendants have not waived the right to assert the attorney work-product doctrine by producing, in response to Plaintiffs' discovery demands, non-privileged documents reflecting the corroborating facts provided by the Mannings**

Plaintiffs fare no better in mischaracterizing as "work product" (rather than "legal advice") the very same documents and communications prepared by DWT that reflect the facts provided by the Mannings. "To be protected by the work product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation. Motivation is key." *Banks v. Office of Senate Sergeant-At-Arms*, 228 F.R.D. 24, 26 (D.D.C. 2005) (internal citations omitted). By contrast, "[w]here a document would have been created in substantially similar form regardless of the litigation, work product protection is not available." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (internal quotation marks omitted). Here, Defendants have not produced any work product prepared by DWT primarily in anticipation or for the purpose of litigation. Rather, any such work product prepared by DWT has been withheld and identified on a privilege

---

[36] In drawing the line between what is privileged and what is discoverable, Defendants made a good faith attempt to redact only the legal advice provided by DWT as opposed to DWT's recording of the facts provided by the Mannings through GDC. Defendants are willing to share unredacted versions of these documents with the Court should it wish to conduct in camera review of DWT's advice. *See* Plaintiffs' Motion, at Exs. C-E. In all events, however, Defendants' good faith efforts to draw the appropriate line cannot give rise to the broad privilege waiver Plaintiffs seek. *See* Advisory Committee on Rules of Evidence, Minutes of Meeting of Apr. 12-13, 2007, available at http://www.uscourts.gov/sites/default/files/fr_import/EV04-2007-min.pdf, at 8 (noting that, under Fed. R. Evid. 502(a), "subject matter waiver should not be found unless it could be shown that the party specifically intended to waive the privilege by disclosing the protected information.").

log where appropriate.[37]   Conversely, the notes and communications prepared by DWT that record the corroborating facts the Mannings conveyed through their lawyers GDC are discoverable and responsive to Plaintiffs' discovery demands because the contemporaneous recording of DWT's conversations and meetings with GDC was not undertaken by DWT primarily in anticipation or preparation for litigation.[38]   Indeed, DWT was not investigating the facts or interviewing witnesses.   Instead, DWT was contacted by GDC in response to Defendants' right-to-reply emails only because the Mannings directed their attorneys at GDC to telephone DWT.   DWT recorded the facts conveyed to them by GDC and forwarded those facts to Defendants.   Under these circumstances, the documents forwarding the facts communicated by GDC that were produced in response to Plaintiffs' discovery demands are not attorney work product, and thus there can be no waiver.[39]

---

[37] *See* Defendants' January 29, 2018 privilege logs (Ex. 14).

[38] *See* May 23 Corn-Revere Decl. at ¶¶ 6, 8.

[39] The cases cited by Plaintiffs (Plaintiffs' Motion at 16-17) are all distinguishable since DWT's meetings and conversations with GDC (which were initiated by the Mannings) were not part of an investigation being conducted by DWT in anticipation of litigation.   *Compare Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 248-49 (D.D.C. 2013) (finding waiver only after concluding that documents prepared in anticipation of litigation qualify for attorney work product protection); *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 16 (D.D.C. 2010) (declining to find waiver of material that was found to be prepared in preparation for litigation); *Hager v. Bluefield Regional Med. Ctr., Inc.* 170 F.R.D. 70, 76 (D.D.C. 1997) (finding counsel's opinions and legal advice underlying opinion letters to be work product); *Weiss v. Mentor Corp.*, Misc. No. 92-0203, 1992 WL 235889, at *3-4 (D.D.C. July 10, 1992) (presuming audit-related documents were attorney work-product); *United States v. W. Elec. Co.*, 132 F.R.D. 1, 3 (D.D.C. 1990) (finding waiver of work product where withholding party relied on advice of counsel).   To the contrary, the meetings and conversations with DWT were initiated by GDC and the Mannings, not the other way around, and were in response to Defendants' right-to-reply emails, not to any request prepared or sent by DWT.

**C.     Defendants have not placed any legal advice or attorney work product at issue in this litigation**

After asserting waiver arguments based exclusively on mischaracterizations of documents specifically requested by Plaintiffs and produced by Defendants, Plaintiffs contend that Defendants intend to rely on "advice of counsel" defense in this case. *See* Plaintiffs' Motion at 14-15. But Defendants have not raised an "advice of counsel" defense in this litigation at any time, and Plaintiffs fail to provide any evidence of such an assertion. And absent that assertion, there can be no at-issue waiver. *See Wells v. Liddy*, 37 F. App'x 53, 66-67 (4th Cir. 2002) (citied prominently in Plaintiffs' Motion). The corollary to this rule is that "only the disclosure of *privileged* information can work a forfeiture." *Trustees of Elec. Workers Local No. 26 Pension Trust Fund,* 266 F.R.D. at 10 (emphasis added). Because Defendants have not asserted an "advice of counsel" defense nor have they intentionally produced and relied upon privileged documents in this litigation, there has been no at-issue waiver. *See id.* at 11 (concluding that "[movants'] notion that [the Court] should . . . consider the disclosure of non-privileged information as a waiver by [non-movants] of privileged information that deals with the same subject matter is flat out wrong.")

In *Wells v. Liddy*, the primary case on which Plaintiffs rely, the non-movant expressly relied on the advice of counsel in support of a summary judgment motion, and admitted that "he had used privileged material as a sword." 37 F. App'x at 65-66, fn. 13. Conversely, here, Defendants have not intentionally produced nor have they relied upon any legal advice received from DWT in defense of the claims asserted against them. Rather, Defendants have consistently asserted both the attorney-client privilege and work product doctrine to withhold from production any legal advice or work product that they received from outside counsel.[40]

---

[40] *See* pages 6-8 *supra*.

Defendants' reliance on facts that GDC conveyed to DWT is simply not the same as reliance on legal advice or work product.  As a result, nothing in the *Wells* case suggests waiver here, and Defendants have not waived privilege by putting any legal advice or work product at issue in this litigation.

**D.      Defendants have appropriately withheld and logged privileged communications**

In a separate, unrelated portion of their motion, Plaintiffs ask this Court to compel Defendants to produce 252 privileged communications because a lawyer was not included in these communications.  *See* Plaintiffs' Motion at 12-15.   But "communications among employees of a client are still afforded the protection of the privilege, so long as the communications concern legal advice sought or received that was intended to be confidential." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 286 F.R.D. 101, 111 (D.D.C. 2012), *aff'd in part, vacated in part on other grounds*, 778 F.3d 142 (D.C. Cir. 2015).  That is the case here.

The 252 communications Plaintiffs seek are protected from discovery by the attorney-client privilege because they contain either a request for legal advice or reflect the actual legal advice provided by DWT in response to the request.   Plaintiffs question the legitimacy of Defendants' privilege assertions essentially by pointing to the volume of internal Al Jazeera communications that do not include an attorney (252).   As stated in the May 21, 2018 Declaration of Phil Rees, the Investigative Unit does not permit its reporters to initiate consultation with Al Jazeera' outside counsel.   Rather, reporters who wish to solicit or receive legal advice must funnel those requests and receive legal advice through specific employees.[41] As a result, requests for legal advice from DWT—and DWT's answers—were shared among Al Jazeera employees.   This business practice does not diminish the privileged nature of these

---

[41] *See* May 23 Corn-Revere Decl. at ¶ 4; Dkt. No. 110-2, Rees Decl. at ¶ 16.

communications.  *See Boehringer*, 286 F.R.D. at 111.  For their part, Plaintiffs are able to confirm for themselves that many of Defendants' redacted documents contain communications with counsel, just as they are described in Defendants' logs.[42]  If Plaintiffs have specific concerns about particular log entries, *see* Plaintiffs' Motion at 20, Defendants can meet and confer with Plaintiffs' counsel.  Even if the Court finds that certain privilege log entries are deficient, the appropriate remedy is for Defendants to supplement their logs (as they have done numerous times without burdening the Court), not an order to produce privileged documents. *See Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009) (holding that inadequate descriptions "do not result in a wholesale forfeiture of defendant's claim of privilege . . . . Rather, plaintiffs should identify other entries on the [privilege logs] that they believe are similarly deficient and defendant should supply the missing information."); *Trustees of Elec. Workers Local No. 26 Pension Trust Fund*, 266 F.R.D. at 9, fn. 8 (even "the failure to produce a privilege log does not justify the harsh sanction of the production of privileged documents;" refusing to "order the production of privileged documents based on inaccuracies or inadequacies in the privilege log alone.").[43]

## E.    Defendants' redactions of information related to highly confidential, unrelated investigations are proper

Under the Federal Rules, a party is only entitled to discovery of material "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  And even if the information sought is relevant, a party may only compel material that is requested "with reasonable particularity."  *See Banks v. Office of Senate Sergeant-At-Arms and*

---

[42]  *See e.g.,* AJ-HZ_0034326, AJ-HZ_0036100, AJ-HZ_0042575 (Ex. 22), which make clear that DWT was a party to the relevant conversations.

[43]  Should the Court wish, Defendants are happy to submit a representative sample of the challenged documents for *in camera* review.

*Doorkeeper*, No. Civ.# A. 03-56, 2005 WL 1074329, at *6 (D.D.C. May 4, 2005) (quoting Fed. R. Civ. P. 34(b)).  Here, Plaintiffs are not entitled to see highly confidential information that is both non-responsive to their discovery demands and relates to a completely different investigation undertaken by Al Jazeera reporters merely because portions of a particular communication or document include discoverable information.  *See FiberLight, LLC v. Washington Metro. Area Trans. Auth.*, 288 F. Supp. 3d 133, 134-36 (D.D.C. 2018) (refusing to hold that "production of a document is a concession of its relevance, especially with respect to the redacted portions of a document."); *In re Takata Airbag Prods. Liab. Litig.*, MDL No. 2599, 2016 WL 1460143, at *2 (S.D. Fla. Feb. 24, 2016) ("a party is . . . not entitled to receive every piece of irrelevant information in responsive documents.")  Recognizing that this happens from time to time, courts have permitted parties to redact non-responsive information in responsive documents, particularly where "the producing party has a persuasive reason for why such information should be withheld."  *Takata*, 2016 WL 1460143, at *2 (permitting redactions for responsiveness to prevent the disclosure of sensitive commercial information unrelated to the case);  *see also In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3780798, at *3 (S.D. Ill. Sept. 22, 2010) (prohibiting redactions of arguably relevant material but permitting redactions for commercially sensitive non-responsive information); *Gates v. Rohm & Haas Co.*, No. 06-1743, 2007 WL 295416, at * 1 (E.D. Pa. Jan. 29, 2007) (allowing redaction of "material [that] has nothing to do with [the relevant] issues and . . . information . . . not germane to this suit.").

Here, the redacted information about which Plaintiffs complain relates to various highly confidential investigations conducted by Al Jazeera reporters that have absolutely no connection to this litigation.  In order to protect the highly confidential nature of these completely different

investigations, Defendants have redacted references and information related to those other investigations; nothing more and nothing less.[44]   Allowing Plaintiffs' counsel access to this information is further contrary to the First Amendment, and should not be permitted.   *See McBride v. Merrell Dow & Pharms. Inc.*, 717 F.2d 1460, 1466-67 (D.C. Cir. 1983) (cautioning that "[l]ibel suits, if not carefully handled, can threaten journalistic independence. . . . It is, therefore, appropriate that discovery be limited initially to the extent feasible to those questions that may sustain summary judgment. . . . [A] district court in supervising discovery in a libel suit by a public figure, … has a duty to consider First Amendment interests as well as the private interests of the plaintiff.") (internal citations omitted).   Production of non-responsive, highly confidential material is especially unwarranted in this case given Plaintiffs' counsel's actions to date.[45]

Plaintiffs attempt to justify their needless complaints by pointing to paragraph 4 of the Revised Protective Order, which states that "[r]edactions for relevancy are not permitted."   As previously explained to Plaintiffs, however, Defendants have not redacted material that is even arguably responsive to any of Plaintiffs' discovery requests on the basis of a subjective assessment of relevancy, which is the conduct proscribed by paragraph 4.[46]   Rather, Defendants have simply redacted information that is not at all responsive to Plaintiffs' requests for production, and that relates to other highly confidential investigative projects under development by Al Jazeera.   Plaintiffs are simply not entitled to material that is not responsive to Plaintiffs' requests.   *See, e.g., Banks*, 2005 WL 1074329, at *6 (a party is only entitled to material that it has

---

[44] *See* May 23, 2018 Stevens Decl. at ¶ 5.

[45] *See* Dkt No. 102 at 3-4 (prohibiting Plaintiffs from continuing to review inadvertently produced documents); May 7, 2018 e-mail from Chambers (removing Plaintiffs' Motion from the public docket) (Ex. 20).

[46] *See* Letter from T. Toweill to W. Burck, dated Mar. 8, 2018 (Ex. 18).

described with reasonable particularity in its discovery requests).  In any event, the Court may exercise its discretion and exempt from this provision, for good cause shown, the highly sensitive information related to a different highly confidential investigation by Al Jazeera.  *See* Dkt. No. 102 (modifying the Protective Order upon a finding of good cause) (*citing United States v. All Assets Held at Bank Julius Baer & Co.*, 312 F.R.D. 16, 18-19 (D.D.C. 2015) (quoting *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,* No. 99-3298, 01-MS-50 (MDL) (RCL), 2004 WL 2009414, at *2 (D.D.C. May 17, 2004)).

Finally, Plaintiffs also ask this Court to order Defendants to produce non-responsive and irrelevant documents from its outside counsel, DWT.  As the Court knows, these documents were not inadvertently made a part of a document production; rather, a file containing a set of documents received from DWT, which were not yet reviewed, was mistakenly posted to a share file site for an hour made available to Plaintiffs electronically before the documents could even be reviewed by Defendants for responsiveness or privilege.[47]  In conformance with the Court's order, Defendants provided Plaintiffs with a log identifying the contents of that file so that Plaintiffs could determine whether to challenge any of Defendants' *privilege* assertions, not to quibble over the non-production of irrelevant documents,[48] such as documents filed with the Court,[49] conference call dial-in details,[50] and whether to order lunch at a client meeting.[51]

---

[47] *See* Transcript of Apr. 4 Telephonic Status Conference at 11, 18 (Ex. 23).

[48] *See* Apr. 5, 2018 Minute Order (directing Defendants to prepare a privilege log to "enable [Plaintiffs] to assess the claim of privilege.") (internal citations omitted); Transcript of Apr. 4 Telephonic Status Conference at 24 (Ex. 23).

[49] Plaintiffs' Motion, Ex. K, Log Entries 365-66.

[50] *Id.*, Log Entry 229.

[51] *Id.*, Log Entry 358.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' Motion in its entirety, and grant Defendants all reasonable relief.

Dated: May 23, 2018

By: /s/ Charles P. Scheeler

Andrew L. Deutsch
Michael D. Hynes
Rachel Stevens
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone:  212.335.4500
Facsimile:    212.335.4501

Anthony D. Gill
DLA PIPER LLP
500 Eighth Street, NW
Washington, DC  20004
Telephone:  202.799.4562
Facsimile:    202.799.5562

Charles P. Scheeler
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, MD  21209-3600
Telephone:  410.580.3000
Facsimile:    410.580.3001

*Attorneys for Defendants*