# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RYAN W. ZIMMERMAN, *et al*., | Case Nos. 1:16-cv-13 (KBJ) (RMM) |
| Plaintiffs, | 1:16-cv-14 (KBJ) (RMM) |
| v. | REDACTED BY PLAINTIFFS |
| AL JAZEERA AMERICA, LLC, *et al*., |  |
| Defendants. |  |

**DEFENDANTS AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO ENFORCE THE REVISED PROTECTIVE ORDER, <u>FOR SANCTIONS, AND FOR A CIVIL CONTEMPT ORDER</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

RELEVANT BACKGROUND .............................................................................4

    I.    This Action .......................................................................................4

    II.    Plaintiffs' Relationships with ███████████ .....................................5

    III.    The Subpoenas to ████████ Preferred Pharmacies for
        Procuring Performance Enhancing Substances ......................................7

        A.    The Subpoena to ████████████ .........................................7

        B.    The Subpoena to █████████████ ............................................11

    IV.    Plaintiffs' Misrepresentations to the Court Regarding the Clawback Requests....13

ARGUMENT ..................................................................................................15

    I.    Al Jazeera Has Not Violated the Revised Protective Order .................................15

        A.    The Records Produced by the Pharmacies, as Redacted,
            Do Not Reveal Information Subject to HIPAA or Any
            Purported Physician-Patient Privilege ......................................15

        B.    Paragraphs 19 and 20 of the Revised Protective Order
            Do Not Apply to the Redacted Pharmacy Records ..................................19

    II.    The Redacted Documents Are Relevant and Al Jazeera Reserves All Rights......20

    III.    Sanctions and Civil Contempt Order are Entriely Unwarranted ..........................22

    IV.    Al Jazeera Should Be Awarded Its Costs In Defending This Motion .................22

CONCLUSION.................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

C<span>ASES</span>

*Acad. of Allergy & Asthma in Primary Care v. Am. Acad. of Allergy, Asthma & Immunology,*
2014 WL 12497027 (W.D. Tex. 2014) ...................................................................21

*Alexander v. FBI,*
186 F.R.D. 144 (D.D.C. 1999)...........................................................................23

*\*Amente v. Newman,*
653 So. 2d 1030 (Fla. 1995) ............................................................................17

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.,*
961 F. Supp. 2d 245 (D.D.C. 2013) .................................................................23

*C.R. v. Novi Cmty. Sch. Dist.,*
2016 WL 126520 (E.D. Mich. 2016) ...............................................................20

*Caldwell v. Ctr. for Corr. Health & Policy Studies, Inc.,*
228 F.R.D. 40 (D.D.C. 2005)...........................................................................23

*Graham v. Carroll,*
2011 WL 855331 (N.D. Fl. 2011).....................................................................21

*Graham v. Fleissner Law Firm,*
No. 08-cv-00031, 2008 WL 2169512 (E.D. Tenn. May 22, 2008)..................8, 16

*In re Anderson,*
973 S.W.2d 410 (Tex. App. 1998) ....................................................................17

*In re Christus Health Se. Texas,*
167 S.W.3d 596 (Tex. App. 2005) ....................................................................17

*In re Columbia Valley Reg'l Med. Ctr.,*
41 S.W.3d 797 (Tex. App. 2001) .................................................................17, 18

*In re Forth Worth Children's Hosp.,*
100 S.W.3d 582 (Tex. Ct. App. 2003) .............................................................18

*In re Nat'l Hockey League Players Assoc. Concussion Injury Litig.,*
120 F. Supp. 3d 942 (D. Minn. 2015) .............................................................18

*\*In re Palacio,*
No. 07-10-0483-CV, 2011 WL 46978 (Tex. App. Jan. 6, 2011)........................17

*In re Rezulin Products Liability Litigation,*
   178 F. Supp. 2d 412 (S.D.N.Y. 2001) ............................................................ 17, 18

*In re Tenet Healthcare, Ltd.,*
   No. 12-05-00310-CV, 2006 WL 860076 (Tex. App. Mar. 31, 2006) ...................................17

*In re Zyprexa Prod. Liab. Litig.,*
   254 F.R.D. 50, *aff'd*, No. 04-MD-01596, 2008 WL 4682311 (E.D.N.Y.
   Oct. 21, 2008) ...........................................................................................................18

*Jacobs v. Connecticut Cmty. Technical Colls.,*
   258 F.R.D. 192 (D. Conn. 2009) .........................................................................21

*Kreuzer v. American Academy of Periodontology,*
   516 F. Supp. 1034 (D.D.C. 1981), *aff'd*, 735 F.2d 1479 (D.C. Cir. 1984) ..................... 17, 18

*Nw. Mem'l Hosp. v. Ashcroft,*
   362 F.3d 923 (7th Cir. 2004) ...............................................................................16

*Pierce v. Underwood,*
   487 U.S. 552 (1988) ............................................................................................23

*Pigford v. Veneman,*
   307 F. Supp. 2d 51 (D.D.C. 2004) ........................................................................22

*S.E.C. v. Life Partners, Inc.,*
   912 F. Supp. 4 (D.D.C. 1996) ..............................................................................22

*Sovereign Health of Fla., Inc. v. City of Fort Myers,*
   No. 15-cv-265, 2016 WL 5870213 (M.D. Fla. Oct. 7, 2016) ................................................16

*State Farm Mut. Auto. Ins. Co. v. Kugler,*
   840 F. Supp. 2d 1323 (S.D. Fla. 2011) ...................................................................8

*Tom v. S.B., Inc.,*
   280 F.RD. 603, 621 (D.N.M. 2012) ......................................................................23

*United States ex rel. Alvord v. Lakeland Reg'l Med. Ctr., Inc.,*
   No. 10-cv-00052, 2012 WL 12904676 (M.D. Fla. Sept. 14, 2012)................................. 16, 17

*Washington-Baltimore Newspaper Guild v. Washington Post Co.,*
   626 F.2d 1029 (D.C. Cir. 1980) ...........................................................................22

**STATUTES**

Florida Statute 458331 ...................................................................................................9

Florida Statute Chapter 893.........................................................................................9

**OTHER AUTHORITIES**

45 C.F.R. § 160.102(a) ...........................................................................................8, 16

45 C.F.R. § 164.512(e)(1)(i) ........................................................................................20

45 C.F.R. § 164.512(e)(1)(ii)(B).................................................................................20

45 C.F.R. § 164.512(e)(1)(v) ..................................................................................20, 21

Fed. R. Civ. P. 37(a)(5)(A) ....................................................................................22, 23

Defendants Al Jazeera America LLC, Al Jazeera Media Network, Al Jazeera International (USA), Inc., and Deborah Davies (collectively, "Al Jazeera") respectfully submit this memorandum of law in opposition to the motion *in limine* improperly styled as a motion to enforce the revised protective order, for sanctions, and for a civil contempt order (the "Motion"), which was filed by Plaintiffs Ryan Zimmerman and Ryan Howard (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Al Jazeera's investigative documentary "*The Dark Side: Secrets of the Sports Dopers*" (the "Documentary") exposed the extreme measures to which pharmacists, physicians, agents, and trainers resorted in order to procure banned performance enhancing substances ("PES") for wealthy professional athletes. They would, among other things, use phony diagnoses for non-existent ailments to obtain PES prescriptions for these athletes in the names of their spouses, friends, agents, or trainers. The PES might be delivered in bulk to the athletes (or their spouses, friends, agents, or trainers), or they might be sent directly to medical professionals who would "treat" the athletes with the PES they had stockpiled in their offices.

Discovery has revealed Plaintiffs' close connections to a PES network—which they have falsely denied in public—that includes pharmacist ███████████████████████████ ████████████████████████████ As part of its defense to the defamation suits filed by Plaintiffs, Al Jazeera issued subpoenas to the various pharmacies used by ████████████ and ████ which included ████████████████████████████████ ██████████ and ████████████████████████████████████ These subpoenas sought relevant discovery, including:

- All documents and communications relating to ████████████████ ████████ including but not limited to all documents and communications between You and ████ or any agents, representatives, attorneys accountants, investigators, consultants, and any other person or entity acting on ████ behalf, between January 1, 2013, and the present.

- All documents and communications regarding prescriptions or orders filled for which ███████ was the prescribing doctor, *and for which no other patient name was provided*, between January 1, 2013, and the present.

- All documents and communications relating to ████████████ ██████ including but not limited to all documents and communications related to any orders or purchases of substances or products *for any purpose other than for use by an identified patient for whom the substance or product was prescribed*, between January 1, 2013, and the present.[1]

These subpoenas did not seek the identities of any individual patients or any "protected health information" about non-parties that could potentially be subject to HIPAA protections, even though such information was discoverable and could further show the accuracy of Al Jazeera's reporting. Indeed, neither Plaintiffs nor the subpoenaed pharmacies made any objections or filed any motions seeking to quash the subpoenas *before* responsive documents were produced. More importantly, neither ████████████ nor ████████████ filed any motions for any relief *even after* responsive documents were produced. Far from filing a motion, ████████ ████████ went on to execute and provide a custodian of records affidavit to Al Jazeera, which confirmed the authenticity of its produced documents (expressly as Al Jazeera had redacted them). In short, no one has raised any dispute in court about the pharmacy records produced in response to Al Jazeera's subpoenas except for Plaintiffs. There is, of course, a reason that Plaintiffs are so concerned about these records—and it has nothing to do with anyone's HIPAA rights.[2]

---

[1] Declaration of Michael Hynes dated October 9, 2018, Ex. 19, at Doc. Requests 1, 2, 3 ████ ████████████; Ex. 30 at Doc. Requests 1, 2, 3 ████████████████. Contrary to Plaintiffs' assertions, the plain language of these first requests show that ████ personal health information was not sought.

[2] Notably, Plaintiffs' decision to include in its motion Al Jazeera's July 20, 2018 letter to ████████ ████████, proves that they have no genuine interest in protecting the privacy of others. *See* Plaintiffs' Motion, Ex. Q. The letter confirmed that Al Jazeera had destroyed records produced by ████████████ showing that ████████████████ As a professional courtesy, Al Jazeera did not share this letter with anyone other than ████████, and yet Plaintiffs obtained and filed a copy with the Court.

Over the course of this litigation, Plaintiffs have gone to great lengths to keep secret the evidence that demonstrates both the falsity of their public allegations, and the accuracy of Al Jazeera's reporting.  For example, Plaintiffs:



- ▪ Designated as "Highly Confidential" ███████████████████

- ▪ Designated as "Highly Confidential" various ███████████████

After seeing the records produced by █████████████ and █████████████, Plaintiffs and their counsel pressured those pharmacies to seek the return of evidence damaging to

---

[3]  *See* Hynes Decl., Ex. 9, ████████████████████████████████████
████

[4]  *See* Hynes Decl., Ex. 10, ██████████████████████████████████

[5]  *See Ryan Zimmerman Denies PED Use, Explains Defamation Suit*, MASN (Feb. 23, 2016) http://w ww.masnsports.com/nationals-pastime/2016/02/zimmerman-denies-ped-use-explains-defamation- suit.html (quoting Zimmerman's public statement about Sly: "I've never met that guy . . . I've never heard of that guy."); Hynes Decl., Ex. 11, at Interrogatory Response No. 1 (reflecting Howard's sworn statement that "he has no recollection of ever meeting or communicating with Sly.").

[6]  *See* Hynes Decl., Ex. 12 ("QuickConfirm License Verification Report" for █████████████

[7]  *See* Hynes Decl., Ex. 13, at ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████

[8]  *See* Hynes Decl., Ex. 14, at ██████████████████████

[9]  *See*, *e.g*., Howard Am. Compl., ¶ 50, Case No. 16-cv-00014 ("Howard has never taken Delta 2, human growth hormone, or any other steroid or performance-enhancing substances banned by the MLB.").

Plaintiffs' claims,[10] made material misrepresentations to this Court when seeking leave to file this Motion, and invited this Court to exclude important evidence from the record.  For the reasons explained below, the Court should deny Plaintiffs' Motion in its entirety, permit Al Jazeera to seek the production of the ██████████ and ████████████ records in unredacted forms, and award Al Jazeera the costs associated with responding to this Motion.

## RELEVANT BACKGROUND

### I.  THIS ACTION

Plaintiffs commenced this action after the December 27, 2015 broadcast of the Documentary, which used hidden cameras to follow Liam Collins, an aging British track star, as he attempted to infiltrate a PES network.  Weaving his way through several contacts, Collins was told how PES suppliers and athletes avoid detection with aliases, phony diagnoses, and falsified or destroyed records.  For instance, Collins consulted with a pharmacist who said he "doped" athletes while running a supplement company as a cover, and gloated that "no one's got caught because the system's so easy to beat."[11]  The pharmacist then introduced Collins to his business partner, a naturopath doctor who said he could obtain banned PES such as HCG for Collins.[12]  This pharmacist-doctor team told Collins that together they could lessen any risk of detection by "get[ting] rid of the medical records," "not really writing anything down," and creating "decoy" treatment charts.[13]

---

[10]  In this regard, Plaintiffs' counsel seems to have adopted the same aggressive tactics used by Phenix Investigations, Inc. and Gibson, Dunn & Crutcher LLP.  Before the Documentary broadcast, Phenix exchanged more than 96 text messages and 26 phone calls with Sly, and also visited his parents' home (which prompted a 911 call) until Sly agreed to issue a blanket denial of everything he had said to Liam Collins over more than 27 hours of conversations.  *See generally Al Jazeera America, LLC, et al. v. Phenix Investigations, Inc. et al*, No. 18-mc-00045 (KBJ) (RMM) (D.D.C.), ECF No. 23.

[11]  Hynes Decl., Ex. 1, Documentary Tr. at 10-11.

[12]  *Id.* at 12.

[13]  *Id.* at 13.

The pharmacist-doctor team[14] ultimately referred Collins to, Sly, another business partner of theirs whom they described as "a genius at outwitting WADA [The World Anti-Doping Agency]."[15]  In 27 hours of recorded conversations, Collins received an extended tutorial about PES from Sly—which included getting a PES sample from Sly[16] and learning first-hand about the user experience from Sly's client Taylor Teagarden, a former catcher for the Chicago Cubs.[17]  The film footage also captured Sly describing in detail six other professional athletes who used PES— including Zimmerman, a current first baseman for the Washington Nationals, and Howard, a former first baseman for the Philadelphia Phillies.  After the broadcast of the Documentary, Plaintiffs filed complaints alleging defamation seeking millions of dollars in damages.[18]

## II.    PLAINTIFFS' RELATIONSHIPS WITH ██████████████████████

Discovery in this action has confirmed the accuracy of Al Jazeera's reporting by exposing, among other things, ████████████████████████████████████████████████

████████████████████ who was recruited by Sly and ██████████████████████████ to treat

---

[14]  As a result of the Documentary, the pharmacist and doctor both faced professional reprimands. *See* Hynes Decl., Ex. 2 (disciplinary notice for pharmacist Chad Robertson); Ex. 3 (disciplinary notice for Dr. Brandon Speltzer).

[15]  Hynes Decl., Ex. 1, at 13-14.

[16]  *See id.* at 15-16.

[17]  *See id.* at 22-23.

[18]  *See* Zimmerman Orig. Compl., ¶ 61, Case No. 16-cv-00013; Howard Orig. Compl., ¶ 64, Case No. 16-cv-00014.

[19]  *See generally Athletes in Doping Documentary Linked to Controversial Anti-Aging Industry*, WASH. POST (Mar. 11, 2016) [hereinafter *Dr. Rucker Washington Post Article*], *available at* https://www.washingtonpost.com/sports/when-pro-athletes-go-to-anti-aging-clinics-doping-experts-take-notice/2016/03/10/f90a01c2-e3ef-11e5-b0fd-073d5930a7b7_story.html?noredirect=on&utm_term=.2cbcbb1b6e11 (reporting on Dr. Rucker's anti-aging practice and a string of doping scandals that originated from similar clinics).  This article quoted one doping expert as saying, "[W]e [should] be suspicious about elite athletes who visit anti-aging clinics . . . there is so much evidence that the people who run these clinics are willing to bend the rules and break the law."  *Id.* (internal quotation marks omitted).

clients at their sports compound.[20]   Indeed, Dr. Rucker, Sly, and Riley were so close that they

prepared materials for a business called Elementz Rx,[21] which was designed to expand upon ████

████████████████████████████████████████████ to "get guys into pharmacy stuff."[22]

████████████████████████████████████████████████████████████████████

the evidence shows that their familiarity was more than skin deep:[23]



---

[20]  *See* Hynes Decl., Ex. 4, ████████████ 10:4-21; *see also* Hynes Decl., ¶ 7 & Ex. 5 (publically available photo of Howard at the sports compound where Dr. Rucker worked).

[21]  *See* Hynes Decl., Ex. 15, at RILEY0000030; RYWAAC-0000008.

[22]  Hynes Decl., Ex. 16; *see also* Hynes Decl., Ex. 17, Riley Dep. Tr. 31:24-32:1, 50:3-19 (describing how Riley and Sly met and went into business together) & Ex. 18, at KRUMS-0000852 at 55-56, 70-71 ████████████████████ Zimmerman was prominently featured on the Elementz Nutrition website—at least until it was taken down around the time the Documentary aired.

[23]  This public Twitter post—where Dr. Rucker celebrated "our very own Dr. Sly!"—was once linked to an Instagram video that showed Dr. Rucker getting a needle injection from Sly.  *See* Hynes Decl., ¶ 9 & Ex. 7.  The underlying video has since been taken down from various social media platforms. *See Dr Rucker Washington Post Article*, *supra* note 19.



▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ ▮ His former nurse testified that Dr. Rucker would see special patients with no other staff present.[26] She further testified that Dr. Rucker would not keep records when he provided testosterone, which was made freely available to trainers at the sports compound where ▮▮▮▮▮▮▮[27] In response to questions about these and other prescription practices, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮[28]

## III.   THE SUBPOENAS TO ▮▮▮▮▮ PREFERRED PHARMACIES FOR PROCURING PERFORMANCE ENHANCING SUBSTANCES

### A.   The Subpoena to ▮▮▮▮▮▮

To obtain discovery relating to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Al Jazeera issued a document subpoena to ▮▮▮▮▮▮ on May 23, 2018. This subpoena requested documents and communications relating to: (i) this action; (ii) Plaintiffs; (iii) ▮▮ and (iv) ▮▮▮▮▮[29] More specifically, to identify how ▮▮▮▮▮obtained the PES that he stockpiled in his offices ▮▮▮▮▮▮▮▮▮▮▮ subpoena requested:

---

[24] *See generally* Hynes Decl., Exs. 29 & 4, ▮▮▮▮▮▮46:17-47:6, 102:2-18. The story about the nature of this ▮▮▮▮▮▮▮▮▮▮▮ *Compare, e.g.*, *Dr. Rucker Washington Post Article*, *supra* note 19 (quoting anonymous source "familiar with Howard and Zimmerman's defamation lawsuits" who claimed that Dr. Rucker only "drew blood" from Plaintiffs), *with Ryan Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, No. 18-mc-00130 (KBJ) (RMM) (D.D.C.), ECF No. 13, at 6 (claiming that ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.

[25] *See* Hynes Decl., Ex. 4, ▮▮▮▮▮▮28:13-18, 29:14-22, 33:16-23.

[26] *See, e.g.*, Hynes Decl., Ex. 6, Adams Dep. Tr. 37:14- 22.

[27] *See id.*, Adams Dep. Tr. 38:10- 39:17.

[28] *See* Hynes Decl., Ex. 4, ▮▮▮▮▮▮24:12-26:21, 66:4-8.

[29] *See generally* Hynes Decl., Ex. 19, Doc. Requests 1-8.

- All documents and communications regarding prescriptions or orders filled for which ████ was the prescribing doctor, *and for which no other patient name was provided*, between January 1, 2013 and the present.

- All documents and communications relating to ████████████ ████ including but not limited to all documents and communications related to any orders or purchases of substances or products *for any purpose other than for use by an identified patient for whom the substance or product was prescribed*, between January 1, 2013, and the present.[30]

No objections or motions relating to the ████████ subpoena were received by its return date of June 6, 2018.[31]  On June 26, 2018, ████████████ sent Al Jazeera's counsel two password-protected PDF files, but failed to supply the requisite passwords.[32]  On July 2, 2018, ████████████ finally sent the passwords to an Al Jazeera attorney who was traveling internationally.[33]  Consequently, Al Jazeera first accessed the production on Thursday, July 5, 2018.[34]

In response to the subpoena, ████████████████████████

████████████████████████████. In short, it confirmed Al Jazeera's reporting. But even though it is not subject to HIPAA and had no obligation to do so,[35] Al Jazeera redacted all information that could possibly be used to identify individual recipients of PES and other drugs.[36]

---

[30] *Id.*, Doc. Requests 2-3 (emphasis added).

[31] Hynes Decl., ¶ 22.

[32] Hynes Decl., Ex. 21, at 1.

[33] *Id.*

[34] *Id.*

[35] *See* 45 C.F.R. § 160.102(a) (defining HIPAA "covered entities" as health plans, health care clearinghouses, and health care providers engaged in electronic transactions); *see also State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp. 2d 1323, 1328 (S.D. Fla. 2011) ("Law firms who are not representing covered entities are not regulated under HIPAA."); *Graham v. Fleissner Law Firm*, No. 08-cv-00031, 2008 WL 2169512, at *3 (E.D. Tenn. May 22, 2008) ("Defendants, a law firm and individual attorney, are not Covered Entities as defined by HIPAA.").

[36] *See* Hynes Decl., Ex. 25, at 2.

On the morning of Monday, July 9, 2018, an unredacted copy of the ██████████

production was provided to Plaintiffs' counsel, who acknowledged receipt a half hour later.[37]

At the deposition of ████████ later that day, Al Jazeera ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

    ████████████████████████████████

██  ████████████████████████████████

    ████████████████████████████████

    ████████████████████████████████

    ████████████████████████████████

    ████████████████████████████████

    ████████████████████████████████

    ██████████████████

██  ████████████████

██  ████████████████████████████████

    ██████████████████████████████

    ██████████████████████████████

    ██████████

██  ██

██  ████████████████████████████████

    ██████████████████████

██  ██████████████

██  ██████████████████████

██  ████████████

_____

[37] Hynes Decl., ¶ 24 & Ex. 21, at 2.
[38] *See* Hynes Decl., Ex. 20 (redacted copy of this ████████ Pharmacy production).



Plaintiffs and ████████—*who kept in close contact with Sly*[41] *and* ████████ *in the offices where he stockpiled PES*—then embarked on a coordinated effort to stifle the truth.  In a series of telephone and written communications with Al Jazeera's counsel, ████████ counsel: (i) stated that his client "had no dog in this fight" but was receiving complaints from others; (ii) was unable to explain how the *redacted* records disclosed any HIPAA-protected or privileged information; and (iii) stated that his client had no intention of complying with the subpoena if the records were returned.[42]  In response to these communications, Al Jazeera's counsel destroyed all copies of the records produced by ████████ with two exceptions: (i) one copy of the unredacted records was returned to ████████ counsel (who, again,

---

[39]  Hynes Decl., Ex. 4, ████████ 17:20-19:15.
[40]  *See id.*, Dr. ████████ 24:12-26:21, 66:4-8.
[41]  Apparently, they have remained close.  Through discovery in this action, Al Jazeera has learned that Dr. Rucker and Sly exchanged more than 200 text messages between January 2015 and April 2015.  Dr. Rucker never produced these texts, despite a follow-up demand for them.  *See* Hynes Decl., Ex. 28.  And, despite extensive efforts, Al Jazeera has been unable to locate or obtain documents from Sly.  *See generally Al Jazeera America, LLC, et al. v. Phenix Investigations, Inc. et al*, No. 18-mc-00045 (KBJ) (RMM) (D.D.C.), ECF No. 23.
[42]  *See* Hynes Decl., ¶ 30 & Ex. 27.

refused to agree to preserve that copy); and (ii) the redacted exhibit marked at █████████

deposition was retained (and can be found as Exhibit 20 to this Opposition).[43]

**B.    The Subpoena to █████████████████**

On August 20, 2018, Al Jazeera served a subpoena to █████████████████ seeking

documents and communications relating to: (i) this action; (ii) Plaintiffs; (iii) ██; and (iv) ██

█████[44] To discover how █████████ obtained the PES that he stockpiled in the offices █████

██████ the █████████████████ subpoena requested:

- All documents and communications regarding prescriptions or orders filled for
  which █████ was the prescribing doctor, *and for which no other patient name
  was provided*, between January 1, 2013 and the present.

- All documents and communications relating to █████████████████████
  █████ including but not limited to all documents and communications related
  to any orders or purchases of substances or products *for any purpose other than
  for use by an identified patient for whom the substance or product was
  prescribed*, between January 1, 2013, and the present.[45]

On September 4, 2018, Al Jazeera received a 6-page document from █████████

█████████. On September 13, 2018, Al Jazeera provided this production to Plaintiffs.[46]

As with █████████████ before, these records further confirm the accuracy of Al Jazeera's

reporting. On September 19, 2018, █████████████████ informed Al Jazeera's counsel that

E████████████████████████████████████████████████████████████████████

█████████████████████████ raised concerns about the documents produced by █████████

█████████████ in response to Al Jazeera's subpoena.[47]   Neither █████████████████ nor

Al Jazeera could say how █████████ became aware of the document production.

---

[43] *See* Hynes Decl., Exs. 25 & 20 (redacted copy of this █████████ production).
[44] *See generally* Hynes Decl., Ex. 30, Doc. Requests 1-8.
[45] *Id.*, Doc. Requests 2-3 (emphasis added).
[46] *See* Hynes Decl., ¶ 34.
[47] *See* Hynes Decl., ¶ 35; *see also* & Hynes Decl., Ex. 31.

While under no obligation to do so, as of September 20, 2018, Al Jazeera's counsel had again taken it upon itself to redact information that would support its client's defenses and identify supposed ██████████[48] And, once again, Al Jazeera's counsel destroyed all of records provided by ██████████ with two exceptions: (i) it retained one *redacted* copy of the records, which reflected no patient information and only served to ██████████ ██████████ (which is attached as Exhibit 33 to this Opposition);[49] and (ii) it sent one unredacted set of the records to ██████████ to retain. Al Jazeera's counsel informed ██████████ counsel of the actions taken and never heard back.[50] On September 24, 2018, ██████████ executed and notarized a custodian of records affidavit that confirmed the authenticity of the redacted records.[51]

Four days later, and *after* Plaintiffs' counsel represented to this Court that ██████████ ██████████ had issued a clawback notice, ██████████owner sent an email to Al Jazeera's counsel at 4:38 p.m. on Friday, September 28, 2018, stating it had "inadvertently" produced documents in response to the subpoena.[52] That email did not identify any privilege, immunity, or other basis to support the clawback request and, moreover, did not actually request the return of the redacted document. On Saturday, September 29, 2018, Plaintiffs' counsel sent an email to Al Jazeera's counsel stating his "understanding" that ██████████had sent its email, even though he had already represented to the Court that this had taken place days earlier.[53] On October 1, 2018, Al Jazeera requested an explanation from ██████████ about its

---

[48] *See* Hynes Decl., Ex. 32.
[49] *See* Hynes Decl., Ex. 33.
[50] *See* Hynes Decl., ¶ 39 & Ex. 35.
[51] *See* Hynes Decl., Ex. 36.
[52] *See* Hynes Decl., Ex. 37.
[53] Hynes Decl., Ex. 38.

possible bases for asserting that the documents were (i) inadvertently produced, or (ii) subject to any privilege.[54]   To date, Al Jazeera has received no response to this request, other than the custodian of records affidavit that was received on October 1, 2018.[55]

## IV.   PLAINTIFFS' MISREPRESENTATIONS TO THE COURT REGARDING THE CLAWBACK REQUESTS

In support of their request to file this Motion, Plaintiffs' counsel made numerous misrepresentations to the Court about the facts and events surrounding the ███████████and ███████████ productions, Al Jazeera's redactions, and the bases for the clawback requests.  Al Jazeera addresses each in turn.

### *Plaintiffs' July 25 and 26, 2018 Emails to the Court Regarding* ███████████

On July 25 and 26, 2018, Plaintiffs' counsel represented to the Court that Al Jazeera had wrongfully obtained and retained the "'Protected Health Information' of hundreds of individuals," including the ███████████ records that were marked as an exhibit at ███████████ ███████[56]  Plaintiffs also falsely asserted that Al Jazeera: "improperly used the clawed-back ██████ documents extensively during ███████████"[57]  Both of these statements grossly misrepresent Al Jazeera's actions.  As an initial matter, ███████████ on July 9, 2018, no party had asserted any objections to the ███████████ subpoena or made any clawback demands for the ███████████ records.  Indeed, after making its document production, ███████████ did not contact Al Jazeera again until July 17, 2018.[58]  Additionally, Plaintiffs' counsel declined to inform the Court that: (i) Al Jazeera was returning or destroying all identifiable patient information produced by ███████████; and (ii) the exhibit marked at

---

[54]   *See* Hynes Decl., Ex. 39.
[55]   *See* Hynes Decl., ¶ 43.
[56]   Hynes Decl., Ex. 40, at 5.
[57]   *Id.* at 6.
[58]   *See* Hynes Decl., Ex. 23.

████████████████████ was redacted and did not reveal any identifiable patient information.[59] Plaintiffs further contended that Al Jazeera "ignored the producing party's repeated clawback attempts."[60]  That, too, was false.  Al Jazeera responded to ████████████ July 17, 2018 letter on July 20 and July 25, 2018, and engaged in numerous telephone conferences.[61]  Plaintiffs' counsel was copied on both letters.  ████████████████ never sought relief in any court, never answered Al Jazeera's questions about the basis for its demand, and never addressed Al Jazeera's concerns that returned copies of the records would not be preserved.

*Plaintiffs' September 25, 2018 Email to the Court Regarding* ████████████████████

Plaintiffs' September 25, 2018 email to this Court regarding the documents produced by ████████████████ also contained numerous misstatements.  First, Plaintiffs' counsel asserted on September 25, 2018 that "██████ has clawed back the inadvertently produced documents and demanded that they be destroyed in their entirety."[62]  ████████████████ however, had done no such thing.  To the contrary, ████████████████ executed an affidavit on September 24, 2018—the day before Plaintiffs' counsel emailed the Court—which confirmed the authenticity of the redacted version of its document production.[63]  It was four days after executing the affidavit and three days *after* Plaintiffs' counsel emailed the Court that ██████ ████████████ sent Al Jazeera an email purporting to clawback the redacted documents it had already declared to be trustworthy.  In short, Plaintiffs' counsel orchestrated the basis for its motion *several days after* it requested relief to file it.

---

[59]  *See* Hynes Decl., Ex. 40, at 4.

[60]  *Id.* at 5.

[61]   Hynes Decl., Exs. 25, 27 & ¶ 30.  Al Jazeera's counsel also engaged in multiple rounds of correspondence with ████████████ regarding the documents produced by ████████████ *See, e.g.*, Hynes Decl., Exs. 22, 24, 28, 29.

[62]  Hynes Decl., Ex. 40, at 1.

[63]  *See* Hynes Decl., Ex. 36.

**ARGUMENT**

## I.   AL JAZEERA HAS NOT VIOLATED THE REVISED PROTECTIVE ORDER

As demonstrated above, Plaintiffs are the only ones complaining to this Court about the evidence that was produced by two pharmacies that ███████ used for procuring PES for his office visitors.  Neither pharmacy has explained how the records they produced, as redacted, are privileged or entitled to any protection from discovery because there is no such privilege and no such protection.   Neither pharmacy has sought relief in court because Al Jazeera redacted information about the recipients of PES even though it had no obligation to do so.  One of the pharmacies even confirmed the authenticity of the records it produced (as redacted) the day *before* Plaintiffs contacted the Court about this matter.  Plaintiffs' motion, therefore, is based on a coerced record that it orchestrated *after* it contacted the Court.  Consequently, Al Jazeera has not violated the Revised Protective Order and Plaintiffs' Motion should be denied.

### A.   The Records Produced by the Pharmacies, as Redacted, Do Not Reveal Information Subject to HIPAA or Any Purported Physician-Patient Privilege

Plaintiffs' Motion is based on an incorrect reading of the Revised Protective Order and a misinterpretation of the applicable law.  Put simply, Al Jazeera's redactions of the pharmacies' productions to conceal the identities of those receiving PES did not amount to a violation of the Revised Protective Order.   This precautionary approach is expressly contemplated under Paragraph 4 of the Revised Protective Order,[64] and is also in accord with precedent holding that there are no possible HIPAA or physician-patient privilege concerns where all patient identifying

---

[64]  *See* Revised Protective Order, ECF No. 101, ¶ 4 ("**Permitted Redactions**.  The Parties agree to redact from Discovery Material information that (i) is covered by an appropriate claim of privilege or (ii) is required or permitted to be redacted or withheld pursuant to federal or state statute and regulations including any names . . . and other identifying information pertaining to individuals . . . [that] are protected from disclosure by HIPAA regulations . . . .").

information has been redacted.  Moreover, neither of the pharmacies took any exceptions to this widely-accepted approach until they were pressured by Plaintiffs.

First, Plaintiffs incorrectly assert that Al Jazeera "disregard[ed] . . . the HIPAA and the privacy rights of dozens of non-parties."[65]  To the contrary, any initial mishandling by the only possible "covered entities" in this situation—███████████ and ███████████████[66]— was addressed appropriately when Al Jazeera's counsel redacted all identifiable patient information from the productions.  *See, e.g.*, *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 939 (7th Cir. 2004) (holding "HIP[AA] establishes that there is no privacy interest in redacted records"); *Sovereign Health of Fla., Inc. v. City of Fort Myers*, No. 15-cv-265, 2016 WL 5870213, at *8 (M.D. Fla. Oct. 7, 2016) (holding that "HIPAA does not prevent the parties from disclosing protected patient information during the discovery phase" and finding that, even if open questions existed about "covered entity" status and, thus, whether HIPAA's disclosure guidelines should have been followed, the parties could always just "redact any patient identifying information to ensure their non-violation of HIPAA"); *United States ex rel. Alvord v. Lakeland Reg'l Med. Ctr., Inc.*, No. 10-cv-00052, 2012 WL 12904676, at *7 (M.D. Fla. Sept. 14, 2012) (finding that, by "redact[ing] the 'individually identifiable health information' . . . the records will no longer contain 'protected health information' under HIPAA"); *see also id.* (denying a request for sanctions and evidentiary preclusion).  Thus, Al Jazeera's redactions to the pharmacy records, if anything, achieved compliance with HIPAA, and were not a violation.

---

[65]  Plaintiffs' Mem. of Law 13.

[66]  *See* 45 C.F.R. § 160.102(a) (defining HIPAA's "covered entities" as health plans, health care clearinghouses, and health care providers engaged in electronic transactions); *United States ex rel. Alvord v. Lakeland Reg'l Med. Ctr., Inc.*, No. 10-cv-00052, 2012 WL 12904676, at *3 (M.D. Fla. Sept. 14, 2012) ("As HIPAA applies only to 'covered entities,' its provisions . . . do not apply to Relator or Relator's counsel"); *Graham v. Fleissner Law Firm*, No. 08-cv-00031, 2008 WL 2169512, at *3 (E.D. Tenn. May 22, 2008) ("Defendants, a law firm and individual attorney, are not Covered Entities as defined by HIPAA.").

Second, Plaintiffs' attempt to assert state law physician-patient privilege arguments that were never made by the pharmacies is equally misguided. As an initial matter, the productions came from ███████████ and ███████████████—which are pharmacies, not physicians. The state of Texas, where ███████████████ is located, does not recognize any "pharmacy-patient privilege." *See In re Palacio*, No. 07-10-0483-CV, 2011 WL 46978, at *2 (Tex. App. Jan. 6, 2011) ("Because [Texas Evidence] Rule 509(c)(2) specifically pertains to treatment records *created or maintained by a physician*, the records of a pharmacy are not protected from disclosure by the physician-patient privilege." (emphasis in original)).[67] As for Florida, where █████████████████ is located, the state supreme court has decreed that there can be no physician-patient privilege in redacted documents.[68] *See Amente v. Newman*, 653 So. 2d 1030, 1033 (Fla. 1995) (ruling that "the patients' right of privacy and the confidentiality of the patients' medical records are protected by the trial judge's requirement that all identifying information be redacted from the medical records.").

A majority of jurisdictions nationwide, including this District, are in full agreement that any alleged physician-patient privilege concerns are eliminated through redactions. *See, e.g.*, *Kreuzer v. American Academy of Periodontology*, 516 F. Supp. 1034, 1041 (D.D.C. 1981) (holding in a dentist-patient context that it was "unnecessary to reach the question of the privilege . . . because here the patients' names and other identifying characteristics can be redacted in order to

---

[67] For this reason alone, all of the various Texas cases that Plaintiffs cite are inapposite because they dealt with records requests to physicians and hospitals, not pharmacists. *See In re Tenet Healthcare, Ltd.*, No. 12-05-00310-CV, 2006 WL 860076, at *1 (Tex. App. Mar. 31, 2006); *In re Christus Health Se. Texas*, 167 S.W.3d 596 (Tex. App. 2005); *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d 797 (Tex. App. 2001); *In re Anderson*, 973 S.W.2d 410 (Tex. App. 1998).

[68] Plaintiffs failed to alert this Court to controlling Florida state supreme court authority and instead relied upon inapposite decisions from intermediate appellate courts. *See* Plaintiffs' Mem. of Law 14, 20-21. With respect to Texas, various cases cited by Plaintiffs are further unavailing for the reasons set forth in *In re Rezulin Products Liability Litigation*, 178 F. Supp. 2d 412 (S.D.N.Y. 2001).

protect their privacy.  Defendant is concerned only with the nature and operations of plaintiff's practice as reflected in treatment and financial records.  The Court concurs that this information must be divulged."), *aff'd*, 735 F.2d 1479 (D.C. Cir. 1984); *In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 55-56 (E.D.N.Y. 2008) (collecting cases construing various states' laws and ruling that "de-identified or redacted medical records simply do not fall within the ambit of their respective privilege laws"), *aff'd*, No. 04-MD-01596, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008); *In re Rezulin Prod. Liab. Litig.*, 178 F. Supp. 2d 412, 416 (S.D.N.Y. 2001) (dissecting at length *In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d 797 (Tex. App. 2001), upon which Plaintiffs rely, and ultimately ruling that "Texas procedural rules do not apply here, and the federal practice in this respect [to redactions] is quite different").  Consequently, Plaintiffs' attempt to assert privilege fails because the records as redacted by Al Jazeera are not privileged.

Furthermore, even if there were a privilege issue—which there is not—Plaintiffs would lack standing to raise it before this Court because a physician-patient privilege can be asserted by the patient only.  *See, e.g.*, *In re Nat'l Hockey League Players Assoc. Concussion Injury Litig.*, 120 F. Supp. 3d 942, 953 (D. Minn. 2015) ("Because the privilege belongs to the patient, no person other than the patient has standing to invoke the privilege." (internal quotation marks omitted)); *In re Forth Worth Children's Hosp.*, 100 S.W.3d 582, 589 (Tex. Ct. App. 2003) ("[T]he physician-patient privilege may only be asserted by the patient, the patient's representative, or the physician on behalf of the patient.").  As explained, no patient has asserted a privilege here, and thus Plaintiffs do not have standing to assert a violation of the Revised Protective Order on the basis of any purported physician-patient privilege.

### B.      Paragraphs 19 and 20 of the Revised Protective Order Do Not Apply to the Redacted Pharmacy Records

Paragraphs 19 and 20 of the Revised Protective Order provide a mechanism through which a party may retract documents that are both (i) "inadvertently or unintentionally produced" and (ii) "entitled to a claim of privilege or immunity from discovery."[69]   Contrary to Plaintiffs' assertions, however, the documents produced by ██████████ and ██████████ do not meet either requirement.

As explained above, none of the documents produced by either pharmacy is "entitled to a claim of privilege or immunity from discovery."  They are also not immune from discovery based on HIPAA or any other privacy or confidentiality statute.  Even if these documents *were* subject to such a privilege or confidentiality protection—which they are not—Al Jazeera's redactions eliminate such concerns and all unredacted copies of the production were returned to the producing parties.

Moreover, it is clear that these documents were not "inadvertently or unintentionally produced" by the pharmacies.  Rather, the pharmacies sought the return of the documents only after being pressured by Plaintiffs.  Counsel for ██████████ represented that his client "had no dog in this fight,"[70] and ██████████ even executed a custodian of records affidavit the day before Plaintiffs raised this issue with the Court.[71]  Plaintiffs should not be permitted to distort the provisions of the Revised Protective Order merely because the contents of the records produced by ██████████ and ██████████ are damaging to their claims.

---

[69]  Revised Protective Order, ECF No. 101, ¶¶ 19-20.
[70]  *See* Hynes Decl., ¶ 30.
[71]  Hynes Decl., Ex. 36.

Furthermore, because the Revised Protective Order does not apply to the pharmacy productions, had Al Jazeera simply returned the documents to the ████████████ and ████████ ████████—with no assurances they would be preserved and no requirement that the pharmacies would provide a privilege log and, therefore, no mechanism to resolve disputes— Al Jazeera would be left with no recourse to ensure the production of documents relevant to its defense.   Simply put, Al Jazeera has not violated the Revised Protective Order, has properly retained relevant documents, and Plaintiffs' motion should be denied.

## II.   THE REDACTED DOCUMENTS ARE RELEVANT AND AL JAZEERA RESERVES ALL RIGHTS

Patients' rights under HIPAA are not absolute and the statute does not create an evidentiary privilege.  In fact, covered entities are explicitly authorized to produce protected health information in at least two circumstances that are relevant to the instant litigation.  *First*, a covered entity is allowed to produce records "in response to an order of a court."   45 C.F.R. § 164.512(e)(1)(i).   *Second*, and most significantly here, a covered entity is allowed to produce in response to a subpoena or discovery request, so long as "[t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section."   45 C.F.R. § 164.512(e)(1)(ii)(B).   The regulation defines a qualified protective order as one that limits use of the protected health information to the litigation and requires the return of the protected health information to the covered entity at the conclusion of the litigation.  45 C.F.R. § 164.512(e)(1)(v).

It is beyond dispute that when protected health information relates to pending litigation, courts routinely enter orders directing the production of such information.  *See, e.g.*, *C.R. v. Novi Cmty. Sch. Dist.*, No. 14-14531, 2016 WL 126250, at *2 (E.D. Mich. Jan. 12, 2016) (affirming

magistrate judge's conclusion that "that both HIPAA and FERPA 'provide for disclosure of otherwise confidential information 'in compliance with a judicial order,' for use in a judicial proceeding'"); *Graham v. Carroll*, 2011 WL 855331, at *2 (N.D. Fl. 2011) (recognizing that party could obtain court order for protected health information even if the person to whom the records relate does not consent to release).  And courts have recognized that a valid protective order satisfies HIPAA concerns.  *See Jacobs v. Connecticut Cmty. Technical Colls.*, 258 F.R.D. 192, 197 (D. Conn. 2009) ("Indeed, discovery requests issued to non-parties properly seek protected health information as long as the requests are made under a "protective order that prohibits the use of the protected information outside the litigation process and requires the return or destruction of the records, including all copies made, at the conclusion of the litigation.'"); *Acad. of Allergy & Asthma in Primary Care v. Am. Acad. of Allergy, Asthma & Immunology*, 14-cv-35, 2014 WL 12497027, at *5 (W.D. Tex. Sept. 8, 2014) (finding that the party contesting production had not adequately explained how HIPAA applied and that, regardless, a valid protective order was in place).  Here, the Revised Protective Order constitutes a valid protective order under 45 C.F.R. § 164.512(e)(1)(v).  As such, the litigation exception applies and ███████████ and ████████████ could appropriately produce the material in *unredacted* form so long as they received satisfactory assurances of the existence of the Revised Protective Order (which was included in both subpoenas).

Rather than litigate this issue during fact discovery, Al Jazeera instead took the most conservative approach: redacting all patient-identifying information from the pharmacy productions.  Yet, Al Jazeera may be entitled to production of the unredacted documents and reserves all rights to seek production of those documents should the Court allow them to do so.

### III.    SANCTIONS AND CIVIL CONTEMPT ORDER ARE ENTIRELY UNWARRANTED

As a result of Al Jazeera's good faith undertakings, no innocent parties are at risk of having protected information revealed. ███████████ has not pressed this matter since it was told on July 25, 2018 that Al Jazeera has retained its production only in redacted form.[72] ███████ ███████████ effectively concedes that Al Jazeera was entitled to its production as redacted, as reflected in its custodian of record affidavit.[73]  The only parties concerned with the redacted documents are Plaintiffs, whose transparent goal is to exclude authentic evidence that confirms the accuracy of Al Jazeera's reporting.  Thus, Plaintiffs' request for sanctions and a contempt finding should be denied.  *See, e.g.*, *Pigford v. Veneman*, 307 F. Supp. 2d 51, 60 (D.D.C. 2004) (denying request for civil contempt sanctions where "no actual harm resulted from the sharing of the files" and, had a law firm asked for files in an adapted manner, they would have been entitled to the production anyway); *see also S.E.C. v. Life Partners, Inc.*, 912 F. Supp. 4, 11 (D.D.C. 1996) (holding civil contempt has "extraordinary nature" and "is not warranted if there are any grounds for doubt as to the wrongfulness of the defendants' conduct"); *Washington-Baltimore Newspaper Guild v. Washington Post Co.,* 626 F.2d 1029, 1031 (D.C. Cir. 1980) (observing that movant must establish right to civil contempt relief by "clear and convincing evidence").

### IV.    AL JAZEERA SHOULD BE AWARDED ITS COSTS IN DEFENDING THIS MOTION

Given the gamesmanship employed by Plaintiffs to pressure non-parties, Al Jazeera seeks its costs associated with opposing Plaintiffs' Motion.  Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion relating to an alleged discovery violation is granted, the "court must [order] . . . the party . . .  whose conduct necessitated the motion . . . . to pay the movant's reasonable

---

[72] Hynes Decl., Ex. 27.
[73] *See* Hynes Decl., Ex. 36.

expenses incurred in making the motion," except that "the court *must not* order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(A)(5)(A) (emphasis added). "[A] party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The opposing party's response need not be "justified to a high degree." *Pierce*, 487 U.S. at 565.

Here, Al Jazeera's actions were more than substantially justified. Al Jazeera redacted copies of the documents it received from both ██████████ and ██████████ before using those documents at depositions or otherwise, and destroyed all unredacted copies of those documents upon receiving requests. Contrary to Plaintiffs' claims, Al Jazeera did not act unreasonably or unjustifiably, and accordingly Plaintiffs are not entitled to costs.

Conversely, Plaintiffs improperly pressured non-parties and made misrepresentations to the Court in an attempt to exclude authentic evidence that exposes their allegations as false. Thus, Al Jazeera should impose sanctions against Plaintiffs for their abuse of the discovery process. *See Caldwell v. Ctr. for Corr. Health & Policy Studies, Inc.*, 228 F.R.D. 40, 44-45 (D.D.C. 2005) (granting fees to non-movant where movant failed to abide proper discovery process); *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 271 (D.D.C. 2013) (granting leave to file a motion for attorneys' fees and costs based on opposing party's multiple unjustifiable arguments, misrepresentations of the record and attempts to mislead the court); *Tom v. S.B., Inc.*, 280 F.RD. 603, 621 (D.N.M. 2012) (extending discovery and awarding sanctions based on egregious conduct during discovery, including misstating facts in motion for a protective order and in response to a motion to compel production of documents). Accordingly, if the Court is inclined to award costs

to either party in connection with this Motion, it is Plaintiffs who should be required to pay Al Jazeera's costs for responding to this frivolous motion.

<u>**CONCLUSION**</u>

For the foregoing reasons, Al Jazeera respectfully requests that the Court deny Plaintiffs' Motion in its entirety, permit Defendants to seek the production of the ████████████ and ████████████████ records in unredacted forms, and award Al Jazeera the costs associated with responding to this Motion.

Respectfully submitted.

Dated:  October 9, 2018

/s/ Charles Scheeler
Charles P. Scheeler
DLA PIPER LLP
The Marbury Building
6225 Smith Avenue
Baltimore, MD  21209
Office: (410) 580-3000
Fax: (410) 580-3001
charles.scheeler@dlapiper.com

Michael D. Hynes (admitted *pro hac vice*)
Andrew L. Deutsch (admitted *pro hac vice*)
Rachel Stevens (admitted *pro hac vice*)
DLA PIPER LLP
1251 Avenue of the Americas
New Yorelk, NY  10020
Office: (212) 335-4500
Fax: (212) 335-4501
michael.hynes@dlapiper.com
andrew.deutsch@dlapiper.com
rachel.stevens@dlapiper.com

*Counsel for Al Jazeera America, LLC,*
*Al Jazeera Media Network, Al Jazeera*
*International (USA), Inc., and Deborah Davies*