# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RYAN W. ZIMMERMAN et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 16-00013 (KBJ/RMM) |
| AL JAZEERA AMERICA, LLC et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs Ryan Zimmerman and Ryan Howard (collectively "Plaintiffs") raise defamation and invasion of privacy claims against Defendants Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA), Inc., (collectively "Al Jazeera"), and Deborah Davies (collectively "Defendants") based on the publication of a documentary titled "The Dark Side: Secrets of the Sports Dopers" ("The Dark Side" or "the Documentary"), which accused Plaintiffs of using performance enhancing drugs. Plaintiffs have filed an Emergency Motion to Compel the Deposition of Mostefa Souag, in which they asked the Court to (i) compel Defendants to present Dr. Mostefa Souag ("Dr. Souag"), then-Acting Director General of Al Jazeera Media Network, for a deposition on October 9 or 11, 2018 in Doha, Qatar; and (ii) issue an order imposing sanctions against Al Jazeera for the fees incurred by Plaintiffs in preparing the Emergency Motion. The District Judge presiding over this case has referred all discovery disputes to the undersigned Magistrate Judge pursuant to Local Civil Rule 72.2(a). *See*

9/14/2017 Order. After reviewing the parties' written submissions and the entire record herein,[1] the Court issued a Minute Order on October 5, 2018, which granted-in-part and denied-in-part Plaintiffs' Emergency Motion to Compel. *See* 10/05/2018 Minute Order. The Court concluded that Dr. Souag should be required to be deposed, for up to five hours, on a mutually agreeable date prior to October 31, 2018. *See id.* This Memorandum Opinion sets forth the reasons for that ruling.

## BACKGROUND

I. **Factual History**

   *A.*    *The Dark Side*

On December 27, 2015, Al Jazeera Media Network aired "The Dark Side" as a documentary episode of the *Al Jazeera Investigates* television program. Pl. Ryan Zimmerman's First Am. Compl. ("Zimmerman First Am. Compl.") ¶ 37, ECF No. 9. The Documentary explores the use of performance enhancing drugs ("PEDs") in professional sports and how professional athletes are supplied with PEDs. *See generally* Pl. Liam Collins Mot. to Dismiss, Ex. A, ECF No. 26-4 (Transcript of The Dark Side). Al Jazeera hired Liam Collins, a former British track and field athlete, to pose as an athlete trying to obtain PEDs to qualify for the 2016 Summer Olympics in Rio de Janeiro. Zimmerman First Am. Compl. ¶¶ 39–40. With the help of the Al Jazeera Investigation Unit in Washington, D.C., Mr. Collins set up meetings with suppliers of PEDs and then recorded their interactions with a hidden camera. Zimmerman First Am. Compl. ¶ 40. One of those suppliers, Charlie Sly ("Mr. Sly"), made allegations that Mr. Zimmerman and Mr. Howard were using Delta-2, a PED banned by Major League Baseball. *Id.*

---

[1] The pleadings relevant to this motion are: Emergency Mot. to Compel the Dep. of Mostefa Souag ("MTC Souag Dep."), ECF No. 136; Opp'n to Pls. Mot. to Compel the Dep. of Mostefa Souag ("MTC Opp'n"), ECF No. 143; Reply to Opp'n ("MTC Reply"), ECF No. 148.

¶¶ 41–46; *see also* Pl. Ryan Howard's First Am. Compl. ¶¶ 45–50, ECF No. 44. On video, Mr. Sly later recanted his prior statements, stating that they were "absolutely false and incorrect . . . Under no circumstances should any of those statements, communications, or recordings be aired." Zimmerman First Am. Compl. ¶ 54. Despite Mr. Sly's recantations, Al Jazeera proceeded to air "The Dark Side" on December 27, 2015. *Id.*

### B. Dr. Souag's Relevant Responsibilities

Dr. Souag serves as the Acting Director General of Al Jazeera Media Network. MTC Opp'n, Ex. 1, ECF No. 143-1, Decl. of Dr. Mostefa Souag ("Souag Decl.") ¶¶ 2–3. His responsibilities as the head of that multinational media organization include overseeing and approving the final annual budgets of news channels, departments, and directorates. *Id.* ¶ 4. The Investigative Journalism Directorate ("IJ Directorate"), which developed the Documentary, is one of the specific directorates that reports to Dr. Souag. *Id.* ¶ 5.

On December 15, 2015, the Director of the IJ Directorate wrote to Dr. Souag, "We are naming major American athletes in association with alleged drug use by using undercover footage. So, of all projects, you really do need to feel comfortable with this one." MTC Souag Dep., Ex. 1 at 2–3,[2] ECF No. 136-3 (Email from C. Swisher to M. Souag, dated Dec. 15, 2015) (hereinafter "12/15 Swisher-Souag Email"). Dr. Souag recalls that, consistent with his standard practice, he watched the documentary before its broadcast. Souag Decl. ¶¶ 10–11. Dr. Souag commented in a contemporaneous email, "[i]t seems to be a good one. I do not see any problem with it, editorially speaking. If you feel comfortable with the legal advice given by our legal team, then I think it would be ok to go ahead with it on the time you have chosen." MTC Souag Dep., Ex. 2 at 2, ECF No. 136-4 (Email from M. Souag dated Dec. 21, 2015).

---

[2] Citations to page numbers refer to the pagination in the ECF header.

Dr. Souag also authored a foreword in a document titled, "Editorial Standards Aljazeera Media Network" ("Editorial Standards"), which sets forth "guidelines . . . meant to guarantee accuracy and impartiality." MTC Souag Dep., Ex. 11 at 4–5, ECF No. 136-23 ("Ed. Standards"). The Editorial Standards describe the use of hidden cameras, microphones, and wiretapping as an "issue . . . fraught with ethical and legal problems." *Id.* at 11.

## II. Relevant Procedural History

### A. *Plaintiffs' Request to Depose Dr. Souag*

On July 16, 2018, Plaintiffs sent a Notice of Deposition to Defendants via email, scheduling the deposition of Dr. Souag in Washington, D.C. on August 6, 2018. *See* MTC Souag Dep., Ex. 4, ECF No. 136-6 (Email from S. Lerner to Defs., attaching Notice of Dep. dated July 16, 2018). Defendants' counsel responded that Dr. Souag would not attend the deposition because: (1) he was a high-ranking executive who did not have knowledge superior to that of lower-ranking employees; (2) there were less intrusive means to obtain information from Dr. Souag; and (3) if a deposition did occur, it should occur in Doha, Qatar. *See id.*, Ex. 5, ECF No. 136-7 (Ltr. from T. Toweill to Pls. dated July 27, 2018). In response, Plaintiffs' counsel offered to proceed with Dr. Souag's deposition in Doha, Qatar on either August 6 or August 10, 2018 and attached a subpoena for Dr. Souag's deposition. *See* MTC Opp'n, Ex. Q at 2–3, ECF No. 143-20 (Email from S. Lerner to T. Toweill dated July 27, 2018). Defendants' counsel responded via email that Dr. Souag would not appear for a deposition on any date, citing service of process issues and the rationale provided in their July 27 letter. *See* MTC Opp'n, Ex. R at 2, ECF 143-21 (Email from T. Towell to S. Lerner dated Aug. 1, 2018). Plaintiffs' counsel responded by sending a letter and subpoena scheduling Dr. Souag's deposition for August 29, 2018 in Doha, Qatar. *See* MTC Souag Dep., Ex. 6 at 2, ECF No. 136-8 (Ltr. from S. Lerner to T.

Toweill dated Aug. 7, 2018). On the same day, Plaintiffs' counsel wrote a separate letter stating that seeking a protective order or moving to quash would be the appropriate means to defy a subpoena. *See id.,* Ex. 7, ECF No. 136-9 (Second Ltr. from S. Lerner to T. Toweill dated Aug. 7, 2018). Again, Defendants' counsel asserted that Dr. Souag lacked relevant knowledge and raised issues regarding service of process, stating that Plaintiffs "simply emailed each subpoena to Defendants' counsel of record" and, as such, did not comport with the Federal Rules of Civil Procedure which require personal service of deposition subpoenas. *Id.,* Ex. 8 at 3–4, ECF No. 136-10 (Ltr. from T. Toweill to Pls. dated Aug. 9, 2018).

Between August 14 and September 24, 2018, the parties exchanged several emails regarding deposition scheduling, including further discussions of the proposed deposition of Dr. Souag. *See generally id.,* Ex. 9, ECF No.136-11 (Email Chain between Pls. and Defs. dated Sept. 25, 2018) (hereinafter "9/25 Email Chain"). On August 25, 2018, Plaintiffs' counsel requested a "tentative date for Dr. Souag, in the event that the parties amicably resolve their disputes." *Id.* at 10 (Email dated Aug. 25, 2018). Defendants' counsel ultimately declined to provide a date for Dr. Suoag's deposition "for the reasons previously expressed in [their] correspondence." *Id.* at 5–6 (Email dated Sept. 12, 2018).

In the emails exchanged in September 2018, the parties also discussed how and by whom this dispute would be presented to the Court. Plaintiffs' counsel repeatedly advised Defendants' counsel that they should seek relief from the Court if they continued to object to Dr. Souag's deposition. *See, e.g.*, *id.* at 3 (Email dated Sept. 24, 2018). On September 24, 2018, Plaintiffs' counsel advised Defendants' counsel that they would file a motion to compel the following day unless Dr. Souag agreed to appear for a deposition on October 9 or 10, 2018. *See* 9/25 Email Chain at 3. In response, Defendants' counsel stated that they "were preparing a motion to quash

5

the deposition notice as [Plaintiffs] suggested…but, we will put our pencils down since you have changed your position and prefer to file your own motion. *Id.* at 2–3. Later that day, Plaintiffs' counsel advised Defendants that they intended to file a motion to compel. *See id.* at 1.

### B.     *Motion to Compel Deposition of Dr. Souag*

On September 25, 2018, Plaintiffs filed an Emergency Motion to Compel the Deposition of Mostefa Souag. *See* MTC Souag Dep. The Court set an expedited briefing schedule, pursuant to which Defendants filed an opposition and Plaintiffs filed a reply. *See* MTC Opp'n; MTC Reply. In addition, in a private letter, Defendants' counsel offered to present Dr. Souag for a 1.5-hour deposition "after he returns from his international travels on October 22, 2018 . . . [to] be conducted on these terms in person, by video conference, or through written questions." MTC Opp'n, Ex. V, ECF No. 143-25 (Ltr. from M. Hayes to S. Lerner dated October 1, 2018) ("10/01/2018 Ltr."). Ultimately, the Court resolved the motion partially in Plaintiffs' favor and advised the parties that a full opinion would follow. *See* 10/05/2018 Minute Order.

## **LEGAL STANDARD**

A party who seeks a deposition under Rule 30, and who believes that the opposing party has failed to meet its obligations to produce a witness to testify in accordance with that Rule, may, after conferring in good faith with the opposing party, seek to compel discovery pursuant to Federal Rule of Civil Procedure 37. *See* FED. R. CIV. P. 37(a)(1) (permitting party to file motion to compel discovery); FED. R. CIV. P. 37(d) (permitting party to file a motion when a party fails to appear for a properly noticed deposition). Rule 26 permits broad discovery, including depositions. *See* FED. R. CIV. P. 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *see also CFTC v. McGraw–Hill Cos.,* 390 F. Supp. 2d 27, 31 (D.D.C. 2005) (noting that the "general rule

in legal actions is to favor broad disclosure"). Consequently, "the complete prohibition of a deposition" is an "extraordinary measure[] which should be resorted to only in rare occasions." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.")).

In granting a motion to compel, the court must order that the party whose conduct necessitated the motion pay the movant's reasonable expenses, including attorney's fees, unless "the opposing party's nondisclosure, response, or objection was substantially justified." FED. R. CIV. P. 37(a)(5)(A)(ii) (emphasis added). Similarly, when a party or its officer or director fails to appear for a properly noticed deposition, "the court must require the party failing to act, the attorney advising that party, or both, to pay the reasonable expenses and attorney's fees, caused by the failure, unless the failure was substantially justified." *District Title v. Warren,* 319 F.R.D. 25, 32 (D.D.C. 2015) (quoting FED. R. CIV. P. 37(d)(3)). A party's objection to producing a witness for a deposition is substantially justified if it is the focus of a "genuine dispute" or if "reasonable people could differ as to [the objection's appropriateness]." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). The objection need not be "justified to a high degree," *id*., and "when both sides propose reasonable limits" on the scope of discovery, fees should not be shifted. *Mitchell v. Nat'l R.R. Passenger Corp.,* 217 F.R.D. 53, 57 (D.D.C. 2003). *Compare Capital Keys, LLC v. Ciber, Inc.,* No. 11-00975 (JDB), 2012 WL 2879022, at *1–2 (D.D.C. July 13, 2012) (denying fees upon granting motion to compel after finding defendant was not "so unreasonable as to require sanctions under Rule 37(a)"), *and Simms v. Ctr. for Corr. Health and Policy Studies,* 272 F.R.D. 36, 42 (D.D.C. 2011) (denying motion for fees upon finding that defendant's nondisclosure of discovery material was substantially justified because no protective

order was in place), *with United States v. Dynamic Visions, Inc.,* 307 F.R.D. 299, 302–03 (D.D.C. 2015) (awarding expenses upon grant of motion to compel where defendant altogether failed to respond to motion and was therefore not substantially justified).

## **ANALYSIS**

Plaintiffs contend that Dr. Souag should be compelled to appear for a deposition because his responsibilities at Al Jazeera gave him relevant knowledge of topics that Plaintiffs wish to explore in discovery. Specifically, Plaintiffs contend that Dr. Suoag was personally responsible for approving the broadcast of "The Dark Side" on Al Jazeera America and Al Jazeera English. *See* MTC Souag Dep., ECF 136-1 at 11; *see also id.* at 9 (asserting that Souag "possess[es] unique or superior personal knowledge of highly relevant issues relating to the Documentary, including matters involving the ultimate approval of the film."). Plaintiffs also wish to ask Dr. Souag to clarify whether the Editorial Standards, the foreword of which Dr. Souag authored, govern all Al Jazeera employees or, as Al Jazeera's former CEO Al Anstey asserted, they function "not [as] a rule book, but [merely] a guide." *Id.* at 8–9. Plaintiffs contend that the Editorial Standards are relevant because evidence that Al Jazeera employees deviated from those standards in developing and producing "The Dark Side" would be relevant to determining whether Al Jazeera acted with actual malice. *Id.* at 9. Plaintiffs also assert that Dr. Souag's testimony is relevant because he reviewed "The Dark Side" prior to its publication to assess its compliance with journalistic standards. *Id.* at 11.

Defendants object to the deposition, arguing that Dr. Souag had "at best [a] peripheral relationship to the events underlying this action." MTC Opp'n at 5. Defendants principally argue that Dr. Souag is a high ranking corporate officer who is protected by the apex doctrine and should not be deposed. *See id.* at 9–15. According to Defendants, Dr. Souag lacks unique

firsthand knowledge of any facts relevant to Plaintiffs' claims, and Plaintiffs could obtain the discovery they seek by deposing lower ranking Al Jazeera employees. *See id.* Defendants submitted a declaration from Dr. Souag to support their position. Dr. Souag acknowledges that he viewed "The Dark Side" prior to production but avers that his pre-production review of documentaries is "to assess production quality and the quality of reporting." Souag Decl. ¶ 10. Dr. Souag further notes that he lacks any specific recollection of discussions he had with the IJ Directorate while "The Dark Side" was being investigated and produced. *See id.* ¶ 9. Although Dr. Souag did not write the Editorial Standards, he states that they "generally apply to all work done by [Al Jazeera Media Network], and that the producers and managers within the IJ Directorate are responsible for ensuring that their products comply with the Editorial Standards. *Id.* ¶¶ 15–17. Dr. Souag also notes that the deposition would be "a significant hardship" due to his responsibilities. *Id.* ¶ 6. Notwithstanding those objections, Defendants proposed to produce Dr. Souag on October 22, 2018 for a deposition limited to one and a half hours. 10/01/2018 Ltr.

### A. *Whether the Apex Doctrine Precludes Dr. Souag's Deposition*

The apex doctrine shields certain high-ranking officials from being deposed. This Court has recognized that "high-ranking *government* officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Sourgoutsis v. United States Capitol Police,* 323 F.R.D. 100, 114 (D.D.C. 2017) (emphasis added). That doctrine derives from the premise that government officials should be allowed to perform their duties without undue disruption and reflects a desire to protect the integrity of the administrative process. *See FDIC v. Galan-Alvarez,* No. 15-MC-752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015). Courts in other jurisdictions have extended the apex doctrine to the private sector

and require a party seeking to depose a high ranking corporate executive to demonstrate that: (1) the executive has unique firsthand knowledge of relevant facts; and (2) those facts cannot be obtained through less intrusive forms of discovery, such as other witnesses. *See, e.g.*, *Affinity Labs of Texas v. Apple, Inc.,* No. 09-4436 (CW) (JL), 2011 WL 1753982, at *17 (N.D. Cal. May 9, 2011) (denying motion to compel deposition of Steve Jobs); *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria,* No. MDL-1428 (SAS) (THK), 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (denying motion to compel depositions of Siemens AG executives). No court in this District has extended the apex doctrine to corporate executives, but there is no binding precedent precluding this Court from doing so. *See Taylor v. Nat'l Consumer Coop.,* No. 95-1918 (LFO), 1996 WL 525322, at *1 (D.D.C. Sept. 10, 1996) (recognizing that "[s]everal cases arising out of state law have held that a high ranking corporate official may not be deposed absent a showing that such official has 'unique or superior knowledge of discoverable information'" but stating that "[i]t is doubtful that such is the rule in federal litigation."); *see also FTC v. Bisaro,* 757 F. Supp. 2d 1, 9 (D.D.C. 2010) (finding that the apex doctrine has very limited application).

The Court need not decide whether to extend the apex doctrine to high-level corporate executives, because it would compel Dr. Souag to appear for a deposition even if that standard applied. The apex doctrine only forecloses the deposition of officials who lack relevant knowledge that cannot be obtained from other witnesses. "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Schneider v. Chipotle Mexican Grill, Inc.,* No. 16-cv-2200 (HSG) (KAW), 2017 WL 4127992, at *2 (N.D. Cal. Sept. 19, 2017).

Dr. Souag's review and authorization of "The Dark Side" prior to its publication gives him unique knowledge of facts highly relevant to this case. The IJ Directorate wanted to ensure

10

that Dr. Souag was "comfortable" with the film. 12/15 Swisher-Souag Email at 2–3. Plaintiffs reasonably seek to explore Dr. Souag's approval process, his interpretation of "comfortable," what factors he considered when approving the film, and what issues he expected his subordinates to consider before releasing the film. Only Dr. Souag can describe his approval and decision-making process. Although Dr. Souag may lack an independent recollection of that review, Plaintiffs are nonetheless entitled to explore the topic and Dr. Souag's standard practice for reviewing documentaries, at a deposition. *See generally Kuwait Airways Corp. v. Am. Sec. Bank, N.A.,* No. 86-cv-2542, 1987 WL 11994, at *2 (D.D.C. May 26, 1987) ("The reason why [the Chairman's] alleged lack of knowledge is not a sufficient ground to prevent a deposition is obvious. The very purpose of the deposition discovery is to test the extent of the deponent's knowledge and claims of ignorance.").

Dr. Souag's discussion of the Editorial Standards in his declaration also demonstrates that he has relevant knowledge of the scope and applicability of those rules. *See* Souag Decl. ¶¶ 15–18. The Editorial Standards contain explicit warnings regarding the ethical dilemmas of covert filming and explicitly require Dr. Souag's approval in certain instances. *See* Ed. Standards at 11–13. Consequently, Plaintiffs reasonably wish to explore whether "The Dark Side" was developed and produced consistent with those standards. Although Dr. Souag is not the only corporate officer familiar with the Editorial Standards, CEO Al Anstey's suggestion that they provide non-binding guidance creates a need for testimony from another authoritative source. Consequently, Plaintiffs should be permitted to question Dr. Souag about the meaning and application of the Editorial Standards.

Finally, although Plaintiffs have not demonstrated that the reasons underlying the closure of Al Jazeera America are relevant to their claims, the Court will not preclude Plaintiffs from

11

exploring that topic at the deposition. Having established that Dr. Souag possesses some unique knowledge that would warrant his deposition, the Court is reluctant to rule in advance about the questions that Plaintiffs may ask. *See generally Banks v. Office of Senate Sergeant at Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004) (noting that "federal courts do not permit a witness to refuse to answer a question that is irrelevant" and declining to "rule in advance as to what topics are relevant"). Plaintiffs' counsel's interest in maximizing the use of the limited time available for the deposition will provide an adequate incentive not to waste time exploring irrelevant topics.

In sum, the Court concludes that Dr. Souag should be deposed notwithstanding his status as a high ranking corporate officer. The Court will, however, limit the deposition to five hours. That should provide adequate time to explore the limited topics about which Dr. Souag is knowledgeable.

### B. *Whether Plaintiffs Should be Reimbursed for the Fees Associated with the Motion to Compel*

Plaintiffs ask the Court to require Defendants to pay the costs and fees associated with having to pursue this Motion. As the prevailing party on a motion to compel, Plaintiffs are entitled to reimbursement for their costs and fees unless Defendants' objections were substantially justified.[3] *See* FED. R. CIV. P. 37(a)(5)(A)(ii). Plaintiffs contend that Al Jazeera improperly refused to present Dr. Souag for his deposition, notwithstanding Plaintiffs' validly served deposition notices and subpoenas, and that Al Jazeera's objections to the deposition were

---

[3] Rule 37(d)(3) permits courts to sanction a party that fails to appear for a properly noticed deposition. *See Covad Commc'ns Co. v. Revonet, Inc.,* 267 F.R.D. 14, 24 (D.D.C. 2010) ("Sanctions are appropriate when a party, after being served with proper notice, fails to appear for a deposition.") (citing FED. R. CIV. P. 37(d)(1)(A)). However, the parties presented their dispute to the Court before the proposed deposition date of October 9 or October 10, 2018, and Defendants appear to have been poised to move for a protective order if Plaintiffs had not filed the instant motion. Therefore, Dr. Souag did not fail to appear, and no award of fees is warranted under Rule 37(d)(3).

groundless.  *See* MTC Souag Dep. at 13–14.  Defendants counter that their objections to the deposition were substantially justified, and therefore no award of costs and fees, nor any other sanction, is warranted.  *See* MTC Opp'n at 16.

The Court will not require Defendants to bear Plaintiffs' fees because Defendants' objection to Dr. Souag's deposition was substantially justified, albeit unsuccessful.  Defendants' invocation of the apex doctrine rested on legal principles that have been adopted by other courts and remain an open question in this District.  Although the Court concluded that Dr. Souag possesses relevant knowledge that would allow him to be deposed even assuming that the apex doctrine applies to corporate executives, the parties' dispute presented an issue on which "reasonable people could differ."  Consequently, neither fees and costs nor any other sanction is warranted.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS-IN-PART AND DENIES-IN-PART Plaintiffs' Motion to Compel the Deposition of Dr. Mostefa Souag, ECF No. 136.  This Memorandum Opinion accompanies the Court's docketed October 5, 2018 Minute Order.  Specifically, the Court will permit Plaintiffs to depose Dr. Souag, for up to five hours, in Doha, Qatar or another location to which the parties mutually agree.  The deposition shall occur between October 9, 2018 and October 31, 2018, on a date on which Dr. Souag and the parties' counsel are available.  Plaintiffs shall bear their own fees and costs for preparing and filing the Motion to Compel.

Dated:     11/02/2018

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE