IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES<br><br>    Petitioners,<br><br>vs.<br><br>GIBSON, DUNN & CRUTCHER, LLP<br><br>    Respondent. | Case Nos.: 1:16-cv-13-KBJ<br>            1:16-cv-14-KBJ |

**AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK,
AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
<u>DISCOVERY FROM GIBSON, DUNN & CRUTCHER, LLP</u>**

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS ................................................................................................ 1
THE DISCOVERY DISPUTE .......................................................................................... 5
ARGUMENT ..................................................................................................................... 8
    I.    RELEVANCE IS BROAD AT THE DISCOVERY STAGE ................................. 8
    II.   THE GDC SUBPOENAS SEEK HIGHLY RELEVANT INFORMATION........ 9
    III.  ANY CONFIDENTIALITY OBJECTION HAS BEEN WAIVED OR
            CAN BE ADDRESSED BY THE CONFIDENTIALITY ORDERS. ................. 11
CONCLUSION ................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*\* Breiterman v. United States Capitol Police*,
  No. CV 16-0893, 2017 WL 5176317 (D.D.C. Nov. 7, 2017) ................................................. 8, 9

*In re England*,
  375 F.3d 1169 (D.C. Cir. 2004) ................................................................................................ 8

*\* English v. Washington Metro. Area Transit Auth.*,
  No. 16-02335, 2017 WL 4620976 (D.D.C. Oct. 13, 2017) ............................................. 8, 9, 12

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .................................................................................................................. 9

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) ............................................................................................ 9

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
  838 F.2d 1287 (D.C. Cir. 1988) ................................................................................................ 5

*Lohrentz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003) ................................................................................................ 5

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .................................................................................................................. 9

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964) .................................................................................................................. 9

*United States ex rel. Shamesh v. CA, Inc.*,
  314 F.R.D. 1 (D.D.C. 2016) ...................................................................................................... 9

*Sklagen v. Greater Se. Cmty. Hosp.*,
  625 F. Supp. 991 (D.D.C. 1984) ............................................................................................. 12

*\* Sourgoutsis v. United States Capitol Police*,
  No. CV 16-1096, 2017 WL 5633088 (D.D.C. Nov. 21, 2017) ................................................. 9

*Whitbeck v. Vital Signs, Inc.*,
  163 F.R.D. 398 (D.D.C. 1995) ................................................................................................ 12

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 8, 9

Fed. R. Civ. P. 45(a)(1) ...........................................................................................................9

Petitioners Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies (collectively "Defendants" or "Al Jazeera"), who are Defendants in two consolidated actions pending before this Court, styled *Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 (KBJ) (RMM) and 16-cv-00014 (KBJ) (RMM) (the "Underlying Actions"), respectfully submit this memorandum of law in support of their motion to compel discovery from Gibson, Dunn & Crutcher, LLP ("GDC"), a non-party to the Underlying Actions filed by Plaintiffs Ryan Zimmerman and Ryan Howard ("Plaintiffs"), as called for by the subpoenas Defendants served on GDC (the "GDC Subpoenas").  Defendants will move this week in the U.S. District Court for the Southern District of Indiana for an order compelling discovery from non-party Phenix Investigations, Inc. ("Phenix"), under subpoenas Defendants served on Phenix (the "Phenix Subpoenas," and together with the GDC Subpoenas, the "GDC/Phenix Subpoenas").  As the subject matter of the GDC/Phenix Subpoenas overlap, the circumstances of these motions are intertwined, and there was a single set of negotiations regarding compliance with the GDC/Phenix Subpoenas, Defendants are seeking transfer of the motion to compel against Phenix (the "Phenix Motion") back to this Court for resolution to ensure consistent rulings on related discovery issues.

## STATEMENT OF FACTS

The Underlying Actions arise out of the documentary "*The Dark Side: Secrets of the Sports Dopers*" produced by Al Jazeera (the "Documentary"), which was broadcast for the first time on December 26, 2015.  Al Jazeera conducted an investigation into the doctors and pharmacists who supply performance-enhancing drugs ("PEDs") to professional athletes.  PEDs are often illegal and always banned by professional sports organizations.  To conduct the investigation, Al Jazeera realized that the subjects would not talk honestly to the media and that it would be necessary to use undercover methods.  A British athlete, Liam Collins ("Collins"),

1

agreed to pose as an international athlete-in-training and to approach suspected PED suppliers. As a result, he was able to secretly record over twenty-seven hours of conversations, over an entire week, with Charles Sly ("Sly"). Al Jazeera learned of Sly through undercover taping of a pharmacist and homeopath who had admitted to having "doped people."[1] These individual described Sly as a partner who they called "a genius at outwitting WADA [The World Anti-Doping Agency]".[2]

During these twenty-seven hours of secretly recorded conversation, Sly, who holds a pharmacy degree, provided an extended tutorial of the means and methods through which world-class athletes are supplied with PEDs and taught how to avoid detection through the drug tests mandated by sports' governing bodies. The investigation showed clearly that Sly was what he claimed to be: a pharmacist in possession of PEDs who supplied drugs to professional athletes and advised on how to use them. Sly had what he claimed were illegal drugs in his refrigerator, which he displayed to Collins.[3] He even provided a sample to Collins during the hidden-camera filming.[4] Sly's client Taylor Teagarden, a former Chicago Cubs catcher, admitted that he had taken illegal drugs supplied by Sly, and took a bag of purported drugs from Sly on camera.[5] In

---

[1] *See* the transcript of the Documentary, 16-cv-00013, ECF Dkt. No. 26-4, at 10.
[2] *Id.* at 13.
[3] *Id.* at 15-16.
[4] *Id.*
[5] *Id.* at 2, 22-23. Following the broadcast of the Documentary, Major League Baseball suspended Teagarden for 80 games for violating MLB's Joint Drug Prevention and Treatment Program. *See, e.g.*, Nick Martin, "MLB suspends Taylor Teagarden 80 games after investigating Al Jazeera report," WASHINGTON POST, Apr. 1, 2016, available at https://www.washingtonpost.com/news/early-lead/wp/2016/04/01/mlb-suspends-taylor-teagarden-80-games-after-investigating-al-jazeera-report/?utm_term=.0cb30ee784fc (stating that Teagarden was "the first player . . . to face a punishment directly because of Al Jazeera's 'The Dark Side: The Secret World of Sports Doping.'"). A true and correct copy of this article is attached as Exhibit N to the February 26, 2018 Declaration of Rachel Stevens ("Stevens Decl.") filed herewith.

addition to Teagarden, Sly told Collins about six other current and former NFL and MLB players who he said used PEDs, including Plaintiffs Howard and Zimmerman.

Sly also told Collins about the activities of Peyton Manning, the former NFL football player, and his wife, Ashley Manning (the "Mannings"), at the Guyer Institute, a clinic where Sly had worked. Sly reported:

> I did part of my training at the Guyer Institute which is like this anti-aging clinic in Indiana. Him and his wife would come in after hours and get IVs and s***. … So one thing that Guyer does is he dispenses drugs out of his office which physicians can do in the United States it's just not very many of them do it. …
>
> And all the time we would be sending Ashley Manning drugs. Like growth hormone, all the time, everywhere, Florida. And it would never be under Peyton's name, it would always be under her name. … We were sending it everywhere ... (laughs). It'd go to Florida ...[6]

Prior to the broadcast of the Documentary, Al Jazeera contacted all persons who were to be named in the Documentary, and provided them with an opportunity to respond to statements about them. As part of this process, Al Jazeera notified the Mannings about Sly's statements that were to be included in the Documentary.[7] This notification led to a series of discussions prior to publication initiated by Ted Olson and his partner, Matt McGill, from the Washington, DC-based law firm of GDC, who spoke as counsel for the Mannings, with lawyers from Al Jazeera's pre-broadcast counsel, Davis Wright & Tremaine LLP ("DWT") (the "GDC/DWT conversations").[8] Factual recitations of the representations made by GDC about the Mannings were set forth in emails dated December 15-17, 2015 from Constance Pendleton (DWT attorney) to Clayton Swisher (of Al Jazeera's Investigative Unit).[9]

---

[6] *See* the transcript of the Documentary, 16-cv-00013, ECF Dkt. No. 26-4, at 32.
[7] *See* Stevens Decl. at ¶ 6.
[8] *Id.* at ¶ 7.
[9] *Id.* at ¶ 8. The referenced e-mails have been produced in this case by Al Jazeera with "Highly Confidential" designations and are attached as Exhibits C-E to the Stevens Declaration.

3

The representations made by GDC about the Mannings provided rich detail and substantially corroborated Sly's statements. Just as Sly had advised Collins, GDC confirmed four key facts regarding the Mannings which are set forth in the Stevens Declaration at ¶ 7.

On December 22, 2015 (after the GDC/DWT conversations), and shortly before Al Jazeera planned to broadcast the Documentary, Brian Bauer and Ben Ford, two private investigators from Phenix, who had been hired by Mannings' attorneys at GDC, visited Sly's family's home.[10] The investigators were so intimidating and threatening that Sly's sister, Kaitlyn Sly, called 911. Ms. Sly told the 911 operator that the investigators wore black overcoats, that one had "claimed to be a law enforcement officer but won't present a badge," and that "[i]t just seems like a very sketchy situation."[11]

On December 23, 2015, the investigators returned to Sly's home and interrogated Sly. Sly then recorded a video purportedly "recanting" his statements to Collins.[12]  We invite the Court to review this brief video.[13]  Sly, who plainly appears nervous and is reading from a script, says in the video that "the statements or any recordings or communications that Al Jazeera plans to air are absolutely false and incorrect.  To be clear, I am recanting any such statements and

---

[10] *See* Stevens Decl. at ¶ 9.
[11]  A recording of the 911 call is available online.  *See* Stevens Decl., Exhibit O (attaching a true and correct copy of Ryan Grim, "A 911 call sheds new light on the Peyton Manning Doping Scandal," HUFFINGTON POST, Feb. 5, 2016, available at https://www.huffingtonpost.com/entry/911-call-peyton-manning-doping_us_56b42379e4b04f9b57d92158).  *See also* Stevens Decl., Exhibit F (attaching a true and correct copy of Will Hobson and Justin Wm. Moyer, "Inside Peyton Manning's secret investigation into Al Jazeera documentary," WASHINGTON POST, Feb. 4, 2016, available at https://www.washingtonpost.com/sports/inside-peyton-mannings-secret-investigation-into-al-jazeera-documentary/2016/02/04/d0da2f04-cb05-11e5-a7b2-5a2f824b02c9_story.html?utm_term=.e487c4085ffb); Stevens Decl., Exhibit P (attaching a true and correct copy of Noelle Phillips, "Sly family called 911 when Peyton Manning's investigators knocked," DENVER POST, Feb. 5, 2016, available at https://www.denverpost.com/2016/02/05/sly-family-called-911-when-peyton-mannings-investigators-knocked/).
[12] *See* Stevens Decl. at ¶ 9.
[13]  Sly's statement is available at https://www.youtube.com/watch?v=sf2-8V0K3oM.

there is no truth to any statement of mine that Al Jazeera plans to air." In other words, while apparently having no recollection of what he had actually said over days of conversations with Collins, Sly was unconditionally stating that every single thing he said to Collins over a week of meetings was false, including facts that had been corroborated days before by GDC.

## THE DISCOVERY DISPUTE

On January 5, 2016, Plaintiffs filed the Underlying Actions. They claimed that the statements Sly made about them that were included in the Documentary were false and defamatory. Plaintiffs, who are admittedly all-purpose public figures, cannot prevail on their libel claims unless they allege and prove by clear and convincing evidence that Al Jazeera published the statements about them with "actual malice," *i.e.*, with "knowledge of the falsity of the defamatory statements" or "a reckless disregard for the truth or falsity of those statements." *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988). A libel complaint must be dismissed at summary judgment if the plaintiff cannot show sufficient evidence of the defendant's actual malice. *Lohrentz v. Donnelly*, 350 F.3d 1272, 1283-84 (D.C. Cir. 2003).

Plaintiffs alleged, in support of their claim that Al Jazeera acted with actual malice, that Sly was the only source of the information in the Documentary about them and that nothing he said had been corroborated by Al Jazeera.[14] They also asserted that it was actual malice for Al Jazeera to broadcast the Documentary after receiving Sly's hostage-style "recantation," arguing

---

[14] *See* Zimmerman First Am. Compl. (ECF Dkt No. 9), ¶¶ 50 ("lone source"), 52, 55 ("sole source"), 73, 84; Howard First Am. Compl. (ECF Dkt No. 10), ¶¶ 53, 55, 58, 76 (same); Zimmerman Opp. (ECF Dkt No. 30), at 1 ("sole source"), 9 ("lone source"); Howard Opp. (ECF Dkt No. 30) at 1, 9 (same).

5

that Al Jazeera "knew prior to publication that *the sole source of the allegations* had recanted these allegations."[15]

Al Jazeera intends to seek summary judgment dismissing Plaintiffs' complaints at the close of discovery. One of the grounds for dismissal will be that Plaintiffs have failed to show clear and convincing evidence from which a reasonable jury could conclude that Al Jazeera broadcast with actual malice. The following are central to this defense and are therefore appropriate matters to explore in discovery, whether: 1) Sly's statements on hidden camera were credible; 2) Sly's "hostage video" should have given Al Jazeera obvious reasons to doubt his truthfulness, given that the video was made under duress (as suggested by Sly's family's 911 call); and 3) Al Jazeera received corroboration prior to broadcast from a highly reputable law firm in Washington that reinforced its belief in Sly's credibility.[16]

The GDC Subpoenas seek non-privileged information directly relevant to these matters: documents and testimony concerning GDC's pre-broadcast, non-privileged communications with Al Jazeera's outside counsel, DWT, concerning the Mannings.[17] Those communications, which are described in detail in Exhibits C to E to the Stevens Declaration, show that GDC's representations confirmed Sly's credibility by providing corroboration of numerous facts, which Al Jazeera has previously described publicly.[18]

---

[15] *See* Zimmerman First Am. Compl. (ECF Dkt No. 9), ¶¶ 1, 53-55, 61, 73, 84; Howard First Am. Compl. (ECF Dkt No. 10), ¶¶ 1, 56-57, 64, 76, 87) (emphasis added).

[16] As noted earlier, the Documentary corroborated Sly's claims of involvement in the elite athlete PEDs consulting business by, among other things: 1) including testimonials from Sly's business partners regarding Sly's involvement; 2) Taylor Teagarden's on-screen statements that he obtained banned substances from Sly; 3) Sly purporting to show Collins banned substances that Sly possessed; and 4) Sly's discussions demonstrating his knowledge in this field.

[17] *See* Stevens Decl. Exhibit G, Requests 3-4.

[18] *See id.*, Exhibit Q (attaching a true and correct copy of Ollie Gillman, "Peyton Manning's wife WAS repeatedly sent human growth hormone, claims second 'absolutely impeccably placed' source," DAILYMAIL.COM, Jan. 3, 2016, available at

In addition, the GDC Subpoenas and the Phenix Subpoenas seek non-privileged documents and testimony as to what happened before Sly recorded his "hostage video." This is the same video upon which Plaintiffs have seized as significant evidence of whether Sly was telling the truth in twenty-seven hours of taped conversations with Collins. Al Jazeera believes the evidence will show that the video was made under duress created by GDC's investigators who appeared unannounced at Sly's family's house one evening.[19]

During no less than three "meet and confers," during which Al Jazeera attempted at length to negotiate a compromise to accommodate concerns raised by GDC (the substance of these meet and confer discussions are described in detail in the Stevens Declaration), GDC, on behalf of itself and Phenix, has refused to produce *a single document* requested by the GDC/Phenix Subpoenas.[20] It has also refused to make any GDC lawyers available for deposition on the topic of the GDC/DWT non-privileged conversations, including Matthew McGill, a partner at GDC who held most of the conversations with DWT. It has also refused to make available for deposition the Phenix investigators retained by GDC, whose sudden appearance at Sly's house led to a 911 call from the Sly family, and ultimately to Sly's hostage-style "recantation."

Instead, GDC offered two weak substitutes: a deposition by written questions about the Phenix investigators' interactions with Sly, and a stipulation about GDC's statements to DWT about the Mannings. GDC said it would offer this discovery only if Defendants surrendered their

---

http://www.dailymail.co.uk/news/article-3383320/Second-absolutely-impeccably-placed-source-said-human-growth-hormone-repeatedly-mailed-Peyton-Manning-s-wife-reporter-claims.html).

[19] *See* Stevens Decl. at ¶ 9.
[20] *Id.* at ¶¶ 11-19.

right to seek live depositions of GDC and Phenix witnesses and agreed to pursue no further discovery of the Mannings or anyone acting on their behalf.[21]

In short, Al Jazeera's subpoenas, with which GDC and Phenix have refused to comply, seek non-privileged evidence that is highly relevant to a central issue in these cases: Plaintiffs' assertions that Al Jazeera published statements about Plaintiffs with actual malice. Al Jazeera is entitled to production of all documents surrounding: 1) the GDC/DWT pre-publication conversations; 2) the interactions between Sly and Phenix; and 3) a privilege log reflecting any responsive documents that are withheld from production. Al Jazeera is also entitled to the deposition of Matthew McGill of GDC (the lawyer who had the majority of the conversations with DWT after Ted Olson's initial phone call to DWT on December 14, 2015) and a Rule 30(b)(6) deposition of Phenix. There can be no question that this discovery is relevant to Al Jazeera's pre-publication confirmation of Sly's statements by GDC as outside counsel for the Mannings, and the coerced nature of the Sly hostage style "recantation."

## ARGUMENT

### I. RELEVANCE IS BROAD AT THE DISCOVERY STAGE

"'The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery.'" *English v. Washington Metro. Area Transit Auth.*, No. 16-02335, 2017 WL 4620976, at *3 (D.D.C. Oct. 13, 2017) (Meriweather, M.J.) (quoting *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004)); *Breiterman v. United States Capitol Police*, No. CV 16-0893, 2017 WL 5176317, at *2 (D.D.C. Nov. 7, 2017) (Meriweather, M.J.) (same). "Rule 26(b) permits parties to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P.

---

[21] *Id.* at ¶ 18. Under such circumstances, GDC indicated they would produce documents related to Sly that they deemed non-privileged, but did not indicate whether any such documents exist.

26(b)(1)); *see Breiterman*, 2017 WL 5176317, at *2; *Sourgoutsis v. United States Capitol Police*, No. CV 16-1096, 2017 WL 5633088, at *2 (D.D.C. Nov. 21, 2017) (Meriweather, M.J.) (same).

"The Federal Rules of Civil Procedure allow for 'broad access to relevant information at the discovery stage.'" *Sourgoutsis*, 2017 WL 5633088, at *4 (quoting *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 41 (D.D.C. 2007)). "Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on' a party's claim or defense." *English*, 2017 WL 4620976, at *12 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016). "Moreover, information still 'need not be admissible in evidence to be discoverable.'" *Shamesh*, 314 F.R.D. at 8 (quoting Fed. R. Civ. P. 26(b)(1)).

"As part of this discovery, Federal Rule of Civil Procedure 45 permits a party to issue a subpoena to a non-party to command attendance at a deposition or to produce or permit inspection of documents, information, or tangible things." *Breiterman*, 2017 WL 5176317, at *3 (citing Fed. R. Civ. P. 45(a)(1)); *Sourgoutsis*, 2017 WL 5633088, at *2 (same). "[T]he deposition-discovery rules are to be accorded a broad and liberal treatment." *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)).

## II. THE GDC SUBPOENAS SEEK HIGHLY RELEVANT INFORMATION

The information sought by the GDC Subpoenas is central to the issue of actual malice in these actions and thus relevant to Al Jazeera's defense. First, the GDC Subpoenas seek documents and communications relating to GDC's pre-broadcast, non-privileged communications with DWT, Al Jazeera's pre-broadcast counsel.[22] Those communications confirmed important aspects of the information Sly provided to Collins, as is set forth in detail in

---

[22] *See* Request Nos. 1-4, 6-7, attached as Exhibit G to the Stevens Decl.

the Stevens Declaration and accompanying exhibits. This evidence directly contradicts Plaintiffs' claims that Al Jazeera had no corroboration prior to publication, and contradicts Sly's later statement that everything he told Collins was untrue.

The GDC-DWT communications also served as confirmation of Sly's credibility and bona fides more broadly. They provided additional support for Defendants' belief that some of the more significant statements about major athletes that Sly had made on hidden camera footage were truthful. Al Jazeera will show that the confirming information GDC provided on behalf of the Mannings caused Al Jazeera to subjectively conclude, prior to broadcast, that Sly was a credible source and that his statements about the athletes, including Plaintiffs, were true.

For these reasons, GDC's pre-broadcast, non-privileged communications with DWT are relevant evidence of Al Jazeera's lack of malice in broadcasting the Documentary. GDC's documents pertaining to the GDC/DWT conversations and Mr. McGill's testimony regarding the conversations he had with DWT fit squarely within the parameters of permissible discovery and this Court should order GDC to comply with the GDC Subpoena.

Second, the GDC Subpoenas (as well as the Phenix Subpoenas) seek documents and information relating to Sly's hostage-style "recantation" video and the circumstances from which it resulted. This information is also highly relevant to this action and the actual malice issue. Plaintiffs have raised the "recantation" as a critical piece of evidence that they will seek to introduce to claim that Al Jazeera should have had serious doubts about Sly's veracity. Al Jazeera intends to show that it believed that Sly was telling the truth in his twenty-seven hours of conversations with Collins, and that Sly's 55-second nervous recantation of everything he had ever said was not credible. Al Jazeera is entitled to discovery of GDC to explore the coercive

10

circumstances leading to the "recantation," including the multiple visits to Sly's family's home by Phenix Investigations, which led to, among other things, a 911 call from Sly's family.

### III.   ANY CONFIDENTIALITY OBJECTION HAS BEEN WAIVED OR CAN BE ADDRESSED BY THE CONFIDENTIALITY ORDERS.

GDC has objected to certain of the GDC Subpoenas on the grounds that they seek the Mannings' confidential information.[23] This objection is meritless for at least two reasons.

First, any confidentiality objection has been waived because the information at issue is already in the public record.[24] The Mannings themselves have publicly confirmed that both Peyton and Ashley Manning were patients of the Guyer Institute, and that they visited the Guyer Institute for treatment.[25] A spokesman for the Mannings separately confirmed to an NFL Network reporter that Ashley Manning had a prescription from Guyer, though he would not say what the prescription contained.[26] Accordingly, the information sought by the GDC Subpoenas relating to the Mannings' status as patients at the Guyer Institute or the fact that Guyer prescribed medication to Ms. Manning cannot be considered "confidential," as the Mannings themselves made this information public.

---

[23] *See* Response to GDC Subpoena Requests 3, 6-7, attached as Exhibit K to the Stevens Decl.

[24] Nevertheless, out of an abundance of caution, Al Jazeera is open to sealing the documents describing in detail the information that GDC supplied pending further guidance from the Court. *See* Stevens Decl., Exhibits C to E.

[25] Peyton Manning confirmed that he has "been a patient under Dr. Guyer" and that he had visited the Guyer Institute multiple times. *See* Stevens Decl., Exhibit R (attaching a true and correct copy of Alex Reimer, "Peyton Manning's wife had prescription from anti-aging clinic involved in HGH allegations," SBNATION.COM, Dec. 27, 2015, available at https://www.sbnation.com/nfl/2015/12/27/10669870/peyton-manning-wife-prescription-hgh-guyer-institute).  Ari Fleischer, a spokesperson for the Mannings, confirmed that the Guyer Institute shipped medication to Ashley Manning.  *See id.*, Exhibit F.

[26] *See id.*, Exhibit S (attaching a true and correct copy of a tweet from Ian Rapoport (@RapSheet), available at https://twitter.com/RapSheet/status/681113498177396736 (stating "Manning spokesman did say Peyton's wife was a patient at this anti-aging clinic in question. She had a prescription, wouldn't say for what.")); *see also id.*, Exhibit R.

Second, to the extent concerns exist about additional undisclosed health information, the continued privacy of such information is readily addressed by the confidentiality orders proposed by the parties in this action.[27] "Confidential materials are routinely produced in discovery, and a protective order can be used to safeguard sensitive personal information." *English*, 2017 WL 4620976, at *17 (citations omitted). The proposed orders provide for designation of materials produced in discovery and deposition testimony as "Confidential" or "Highly Confidential," as defined in the confidentiality orders. As Plaintiffs have placed their physical condition at issue, the parties have been engaging in discovery in which private health information has been sought. *See, e.g., Whitbeck v. Vital Signs, Inc.*, 163 F.R.D. 398, 399 (D.D.C. 1995) (holding plaintiff waived doctor-patient privilege by initiating lawsuit putting her medical condition and disability at issue); *Sklagen v. Greater Se. Cmty. Hosp.*, 625 F. Supp. 991, 992 (D.D.C. 1984) ("By placing her physical condition in issue through the filing of this lawsuit, plaintiff has waived her privilege against disclosure of relevant medical evidence."). The proposed orders were designed to appropriately address exactly this situation. To the extent GDC believes any of the documents or information called for by the GDC Subpoenas fit within these categories, it may so designate such documents or information at the time of production.

## CONCLUSION

For the foregoing reasons, Defendants Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies respectfully request that:

1) GDC be ordered to produce all documents relating to the conversations between GDC and DWT lawyers during December 2015 pertaining to this matter, as well as a privilege log describing all documents that are withheld;

---

[27] *See* ECF Dkt. No. 062-1, 063-1.

2)     GDC be ordered to produce all documents relating to Phenix's interactions with Sly or Sly's family, as well as a privilege log describing all documents that are withheld; and

3)     GDC be ordered to produce Mr. Matthew McGill for deposition on this subject matter.

        Respectfully submitted.

Dated:  February 26, 2018

/s/ *Charles Scheeler*
Andrew L. Deutsch (admitted pro hac vice)
Rachel Stevens (admitted pro hac vice)
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020
Office: (212) 335-4500
Fax: (212) 335-4501
andrew.deutsch@dlapiper.com
rachel.stevens@dlapiper.com

Charles Scheeler
DLA PIPER LLP
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209-3600
Office: (410) 580-3000
Fax: (410) 580-3001
charles.scheeler@dlapiper.com

*Counsel for Defendants Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA), Inc., Deborah Davies*

13