IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES<br><br>Petitioners,<br><br>vs.<br><br>GIBSON, DUNN & CRUTCHER, LLP<br><br>Respondent. | Case Nos. 1:16-cv-13-KBJ<br>1:16-cv-14-KBJ |

**DECLARATION OF RACHEL STEVENS IN SUPPORT OF MOTION TO COMPEL
DISCOVERY FROM GIBSON, DUNN & CRUTCHER, LLP**

I, Rachel V. Stevens, hereby declare as follows:

1. I am an attorney licensed to practice in the State of New York and am of counsel at the firm DLA Piper LLP (US) ("DLA"), counsel for Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) Inc. (collectively, "Al Jazeera"), and Deborah Davies, who are Defendants in the above-captioned actions (together with Al Jazeera, "Defendants"). I am admitted *pro hac vice* in this action, and am fully familiar with the facts set forth herein.

2. I submit this Declaration in support of Defendants' motion to compel compliance with subpoenas served on the Washington D.C. law firm of Gibson, Dunn & Crutcher LLP ("GDC") and GDC partner, Matthew McGill.

*Relevant Background*

3. In 2015, in the course of Al Jazeera's investigation into the doctors and pharmacists who supply performance-enhancing drugs, Liam Collins recorded over 27 hours of conversations with Charles Sly ("Sly").

4. During those conversations, Sly advised Collins about the activities of, among other athletes, Peyton Manning, the former NFL football player, and his wife, Ashley Manning (the "Mannings") at the Guyer Institute, a clinic where Sly had worked. *See* the transcript of the Documentary, 16-cv-00013, ECF Dkt. No. 26-4, at 33.

5. In particular, Sly told Collins that the Guyer Institute mailed Ashley Manning human growth hormone ("HGH") at various addresses, including Florida.

6. On December 4, 2015, Al Jazeera sent Peyton Manning's agent, Tom Condon, letters and emails detailing Sly's statements related to each of the Mannings, expressing Al Jazeera's intent to broadcast them as part of a documentary, and offering the Mannings an opportunity to comment on them. Attached hereto as Exhibits A and B are true and correct copies of the emails sent to Tom Condon, which have been produced in this action as AJ-HZ_0025123 and AJ-HZ_0025125.

7. In response to Al Jazeera's December 4, 2015 communications to the Mannings, between December 14 and 17, 2015, Ted Olson and Matthew McGill, both partners at GDC, the law firm representing the Mannings, had conversations with attorneys at Davis Wright Tremaine LLP ("DWT"), Al Jazeera's pre-broadcast counsel. In the course of those conversations, GDC corroborated many of Sly's allegations. In particular, GDC confirmed the following four key facts that Sly had told Collins during their hours of recorded conversations:

[Redacted]

8. In three emails to Al Jazeera dating between December 15 and 17, 2015, DWT provided Al Jazeera with factual accountings of the content of its discussions with GDC. Attached hereto as Exhibits C through E are true and correct copies of those emails, which have been produced in this action as AJ-HZ_0042260-261, AJ-HZ_0042262-263, and AJ-HZ_0042264-265.

9. According to an article published in the Washington Post, on December 22, 2015, Brian Bauer and Ben Ford, two private investigators from Phenix, a private investigations firm who had been hired by GDC, visited Sly's family home, prompting the Slys to call 911. In addition, according to the article, the investigators returned to Sly's home and interrogated Sly on December 23, 2015. On December 24, 2015, Sly recorded a video in which he purported to recant his previous statements about the Mannings and everything else that he was recorded saying to Collins. Sly sent that video to DWT on December 24, 2015, and the video was subsequently posted to YouTube. A true and correct copy of the Washington Post article is attached hereto as Exhibit F; Sly's video is available at https://www.youtube.com/watch?v=sf2-8V0K3oM.

*The Instant Dispute and the Parties' Meet and Confer Process*

10. On September 28, 2017, DLA served a Subpoena Duces Tecum on GDC (the "GDC Subpoena"). On February 13, 2018, DLA served an Amended Subpoena Duces Tecum on Gibson Dunn (the "Amended GDC Subpoena"). The Amended GDC Subpoena is identical to the GDC Subpoena in all respects, save that the place of compliance was changed to 500 Eighth Street, NW, Washington, DC 20004. True and correct copies of the GDC Subpoena and the Amended GDC Subpoena are attached hereto as Exhibit G. On December 8, 2017, DLA served a Subpoena Duces Tecum on Phenix (the "Phenix Subpoena"). A true and correct copy of the Phenix Subpoena is attached hereto as Exhibit H. On February 9, 2018, Subpoenas ad Testificandum were served via email on GDC lawyer Matthew McGill and Phenix. True and correct copies of the McGill and Phenix Subpoenas ad Testificandum are attached hereto as Exhibits I and J. Although these subpoenas were served after the discussions recounted below, the depositions contemplated by these subpoenas were negotiated during the course of the below-mentioned meet and confers.

11. On November 10, 2017, I participated in a telephone call with Martin Hewett, assistant general counsel for GDC, and Edward Patterson, an associate at GDC. Mr. Hewett indicated that—contrary to his earlier representation that GDC anticipated producing responsive non-privileged documents—GDC would not produce any documents in response to the GDC Subpoena. Mr. Hewitt explained that GDC believed that the only documents the firm considered relevant to Defendants' defense were already in Defendants' possession. After the call, Mr. Patterson sent me GDC's responses and objections to the GDC Subpoena, and failed to produce any documents. A true and correct copy of GDC's responses and objections to the GDC Subpoena is attached hereto as Exhibit K.

12.     By letter to GDC dated December 8, 2017, DLA requested a "meet and confer" with GDC to discuss its refusal to produce documents. That meet and confer took place on December 21, 2017 by telephone conference among DLA attorneys Charles Scheeler, Joseph Alonzo, and myself, and GDC attorneys Hewett and Patterson. During that call, we discussed a proposal by Michael Meresak, an attorney who also represents the Mannings, for Defendants to draft a stipulation containing information requested in the GDC Subpoena in lieu of producing documents. DLA suggested that GDC confirm this would be acceptable to Plaintiffs and clarify the content of the proposed stipulation by January 4, 2018.

13.     On January 4, 2018, DLA and counsel for the Mannings held another meet and confer telephone conference, which was attended by the same DLA attorneys; GDC attorneys Hewett and Patterson, and GDC partner Matthew McGill; as well as Andrew Detherage, a partner at the law firm Barnes & Thornburg LLP, another co-counsel for the Mannings. The Mannings' representatives continued to refuse to produce any documents in response to the GDC Subpoena, or to offer any specifics as to the stipulation that had been suggested by Mannings counsel Meresak.

14.     GDC, which also represents Phenix, also refused to produce documents or agree to a deposition in response to the Phenix Subpoena.

15.     On January 9, 2018, GDC sent a letter to DLA, which, among other things, demanded that "any discovery (or other) motion that you may file . . . that refers to highly sensitive information regarding Ms. Manning's medical treatment or other private information about the Mannings must be filed under seal." A true and correct copy of GDC's January 9, 2018 letter is attached hereto as Exhibit L.

16. On January 10, 2018, DLA responded acknowledging that Defendants' would abide by all obligations of the Court with respect to any filings. A true and correct copy of DLA's January 10, 2018 letter is attached hereto as Exhibit M.

17. On January 11, 2018, DLA attorneys Scheeler, Alonzo, and myself; GDC attorneys McGill, Hewett, and Patterson; and Detherage participated in yet another meet and confer, again by telephone. In the course of that call, GDC offered to produce all non-privileged documents responsive to Document Request 1 of the GDC Subpoena, which asks for "[a]ll non-privileged documents and communications relating to Charles Sly," but no documents responsive to any other request in the GDC Subpoena. GDC's offer was contingent on Defendants agreeing to withdraw the Phenix Subpoena and waive their rights to seek further discovery from GDC and Phenix, including the right to depose representatives of those parties. DLA rejected that offer and proposed instead a compromise whereby GDC and Phenix would provide all non-privileged documents relating to (i) GDC's communications with DWT; and (ii) Phenix's interactions with Sly. Under this proposal, DLA would also be entitled to depose the GDC lawyer most knowledgeable about the relevant facts (McGill), as well as Phenix investigators who had dealings with Sly.

18. The participants on the January 11, 2018 call reconvened by telephone on January 17, 2018 for yet another meet and confer. During the January 17, 2018 telephone conference, GDC offered a new proposal: that GDC and Phenix produce non-privileged documents relating to Sly; that GDC agree to a stipulation detailing the conversations between GDC and DWT (summarized in the emails attached hereto as Exhibits C through E); and that GDC submit to a single deposition by written questions, which would relate to the Phenix investigators' interactions with Sly. GDC continued to insist that Defendants not be permitted to take live

depositions of any GDC or Phenix witnesses, and made it clear that its proposal was contingent on Defendants surrendering their rights to such live depositions and foregoing any additional discovery related to the Mannings. DLA indicated that it was unlikely Al Jazeera would agree to GDC's proposal, as, among other things, it would eliminate Defendants' ability to sufficiently explore with the Phenix witness the events surrounding Phenix's interaction with the Slys. DLA further indicated that Defendants viewed the parties' meet and confer obligations to have been satisfied.

19. To date, neither GDC nor Phenix has produced any material responsive to the GDC Subpoena or the Phenix Subpoena, nor have they made available any witnesses for depositions.

20. This week, Al Jazeera intends to file a motion to compel compliance with the Phenix Subpoena in the U.S. District Court for the Southern District of Indiana (the "Phenix Motion"). In advance of filing the Phenix Motion, DLA asked Phenix, through its counsel GDC, if it would consent to have the motion transferred to this Court for resolution. Phenix refused to consent. The Phenix Motion seeks transfer of the motion back to this Court, or in the alternative, to compel Phenix to comply with the Phenix Subpoena.

21. Attached hereto as Exhibit N is a true and correct copy of an April 1, 2016 Washington Post article stating that Taylor Teagarden was "the first player … to face a punishment directly because of Al Jazeera's 'The Dark Side: The Secret World of Sports Doping,'" available at https://www.washingtonpost.com/news/early-lead/wp/2016/04/01/mlb-suspends-taylor-teagarden-80-games-after-investigating-al-jazeera-report/?utm_term=.0cb30ee784fc.

22. Attached hereto as Exhibit O is a true and correct copy of a February 5, 2016 Huffington Post article that includes a recording of the Slys' December 22, 2015 911 call, available at https://www.huffingtonpost.com/entry/911-call-peyton-manning-doping_us_56b42379e4b04f9b57d92158.

23. Attached hereto as Exhibit P is a true and correct copy of a February 5, 2016 Denver Post article also discussing the December 22, 2015 911 call, available at https://www.denverpost.com/2016/02/05/sly-family-called-911-when-peyton-mannings-investigators-knocked/.

24. Attached hereto as Exhibit Q is a true and correct copy of a January 3, 2016 Daily Mail article available at http://www.dailymail.co.uk/news/article-3383320/Second-absolutely-impeccably-placed-source-said-human-growth-hormone-repeatedly-mailed-Peyton-Manning-s-wife-reporter-claims.html.

25. Attached hereto as Exhibit R is a true and correct copy of a December 27, 2015 article published on SB Nation, available at https://www.sbnation.com/nfl/2015/12/27/10669870/peyton-manning-wife-prescription-hgh-guyer-institute.

26. Attached hereto as Exhibit S is a December 27, 2015 tweet from the Twitter account of Ian Rapaport (@RapSheet), available at https://twitter.com/RapSheet/status/681113498177396736.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 26th day of February, 2018
New York, New York

_____
RACHEL V. STEVENS