# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AL JAZEERA AMERICA, LLC, AL JAZEERA
MEDIA NETWORK, AL JAZEERA
INTERNATIONAL (USA) INC., AND
DEBORAH DAVIES

　　　　　Petitioners,

　　　　　vs.

GIBSON, DUNN & CRUTCHER, LLP.

　　　　　Respondent.

Case Nos.: 1:16-cv-13-KBJ
　　　　　　　 1:16-cv-14-KBJ

**REPLY BRIEF OF PETITIONERS AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM GIBSON, DUNN & CRUTCHER, LLP, AND THEIR BRIEF IN OPPOSITION TO RESPONDENT'S CROSS-MOTIONS TO QUASH PETITIONERS' SUBPOENAS AND FOR <u>PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF BACKGROUND FACTS .............................. 2

ARGUMENT ...................................................................... 5

    A.    GDC Possesses And Should Produce The Information Sought By Al Jazeera, Because It Is Or Will Lead To Probative Evidence Supporting Al Jazeera's Position That It Broadcast the Documentary Without Actual Malice. ......................................................................... 7

    B.    GDC's Role In Sly's "Recantation Video" is Highly Relevant and Not Privileged. ..................................................................... 13

    C.    The Court Should Deny GDC's Demand for a Protective Order and Attorney's Fees. ................................................................ 18

CONCLUSION .................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albany Molecular Research, Inc. v. Schloemer*,
  274 F.R.D 22 (D.D.C. 2011)........................................................................6, 9, 12

*Alberts v. HCA Inc.*,
  405 B.R. 498 (D.D.C. 2009) ...................................................................18

*Blumenthal v. Drudge*,
  186 F.R.D. 236 (D.D.C. 1999)................................................................16

*Brinton v. Dep't of State*,
  636 F.2d 600 (D.C. Cir. 1980)...............................................................16

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011) ......................................................6, 9

*Flanagan v. Wyndham Int'l Inc.*,
  231 F.R.D. 98 (D.D.C. 2005)...................................................................6

*Founding Church of Scientology v. Webster*,
  802 F.2d 1448 (D.C. Cir. 1986).............................................................13

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
  778 F.3d 142 (D.C. Cir. 2015)...............................................................17

*Estate of Klieman v. Palestinian Auth.*,
  272 F.R.D. 253 (D.D.C. 2011)...............................................................18

*Kuhn and Kogan, Chtd. v. Jeffery C. Mensh & Assocs., Inc.*,
  77 F. Supp. 2d 52 (D.D.C. 1999)...........................................................10

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
  838 F.2d 1287 (D.C. Cir. 1988)...............................................................7

*Linder v. Dep't of Defense*,
  133 F.3d 17 (D.C. Cir. 1998)...................................................................9

*Maverick Entm't Grp., Inc. v. Does 1-2,115*,
  810 F. Supp. 2d 1 (D.D.C. 2011).............................................................9

*Meijer, Inc. v. Warner Chilcott Holdings Co., III*,
  245 F.R.D. 26 (D.D.C. 2007)...................................................................9

*Meijer, Inc. v. Warner Chilcott Holdings Co., III*,
   245 F.R.D. 26 (D.D.C. 2007)..........................................................................12

*North Carolina Right to Life, Inc. v. Leake*,
   231 F.R.D. 49 (D.D.C. 2005)............................................................................6

*Porter v. Pinkerton Gov't Servs., Inc.*,
   304 F.R.D. 24 (D.D.C. 2014)........................................................................6, 11

*In re Sealed Case*,
   737 F.2d 94 (D.C. Cir. 1984).........................................................................16

*In re Sealed Case (Medical Records)*,
   381 F.3d 1205 (D.C. Cir. 2004)......................................................................10

*Sourgoutsis v. United States Capitol Police*,
   323 F.R.D. 100 (D.D.C. 2017)..........................................................................6

*St. Amant v. Thompson*,
   390 U.S. 727 (1968).........................................................................................7

*Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*,
   276 F.R.D. 376 (D.D.C. 2011).........................................................................12

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987)..........................................................................7

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
   301 F.R.D. 20 (D.D.C. 2014)......................................................................13, 18

*Whitbeck v. Vital Signs, Inc.*,
   163 F.R.D. 398 (D.D.C. 1995).........................................................................11

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990).........................................................................15

*Zimmerman v. Al Jazeera America, LLC*,
   246 F. Supp. 3d 257 (D.D.C. 2017)....................................................5, 8, 14, 15

**Statutes**

D.C. CODE § 14–307 ...............................................................................10, 11

Health Insurance Portability and Accountability Act, Pub. L. 104-191 ........................10

**Other Authorities**

45 C.F.R. §§ 160.102, 160.103 ..............................................................................10

FED. R. CIV. P. 26(b)(1) ..................................................................................................5

FED. R. CIV. P. 26(b)(2)(c)(i) .......................................................................................13

FED. R. CIV. P. 26(b)(3)................................................................................................17

**PRELIMINARY STATEMENT**

Al Jazeera[1] issued subpoenas to the law firm of Gibson, Dunn and Crutcher LLP ("GDC") because GDC has possession, custody and control of discoverable evidence that is central to Al Jazeera's defenses in the underlying *Zimmerman* and *Howard* libel cases.  In general, the subpoenas seek non-privileged documents and testimony relating to: (1) GDC's provision of information that corroborated Al Jazeera's primary source (Charles Sly) for the reporting it is being forced to defend; and (2) the extraordinary pressure GDC and its investigators exerted on Al Jazeera's source to recant 27 hours of recorded statements.  The evidence sought by Al Jazeera is neither privileged nor protected by statutes requiring confidentiality.

Without any legal support for its wholesale refusal to comply with the subpoenas, GDC argues mainly that complying with the subpoenas would infringe upon the privacy rights of its clients, Peyton and Ashley Manning, who authorized GDC's actions.   This is not an excuse for refusing discovery, as GDC and its clients may invoke the confidentiality provisions contained in the Protective Order issued in this action to address any legitimate privacy concerns.  Under no circumstances, however, should the Court permit GDC to deny Al Jazeera access to relevant, non-privileged information that helps explain (1) Al Jazeera's subjective and reasonable belief that the primary source for its reporting was credible, and (2) why that source suddenly disavowed 27 hours of his own statements only after receiving an after-hours visit at his family's home from GDC's Indiana-based investigators.  For the reasons explained below, the Court

---

[1] References to "Defendants" or "Al Jazeera" herein refer to Petitioners Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) Inc., and Deborah Davies.

should deny GDC's motion in all respects, and instead grant Al Jazeera's initial motion to compel GDC's compliance with Al Jazeera's subpoenas.

## STATEMENT OF BACKGROUND FACTS

As the Court is aware, the primary source for the Al Jazeera Investigative Unit (the "Investigative Unit") documentary *The Dark Side: Secrets of the Sports Dopers* (the "Documentary") was pharmacist Charles Sly.  Liam Collins, an athlete acting undercover for the Investigative Unit, approached Sly to discuss obtaining performance-enhancing substances banned by major league sports.  Collins recorded 27 hours of audio/video of Sly with a hidden camera.[2]  During these recordings, Sly admitted that he knew that performance-enhancing substances had been supplied to a number of professional athletes.[3]  Among other revelations, Sly said that he worked at an Indiana anti-aging clinic called the Guyer Institute, knew that professional football player Peyton Manning had been treated by the clinic, and that the clinic had made many shipments of human growth hormone ("HGH") to his wife, Ashley Manning.[4]

On December 4, 2015, Deborah Davies of the Investigative Unit sent the Mannings' agent "right to reply" e-mails informing them that the Investigative Unit was preparing to air a documentary that would reveal what a source said about the HGH shipments.  The e-mails offered the Mannings an opportunity to comment, but did not disclose that Sly was Al Jazeera's source.[5]

---

[2] February 26, 2018 Declaration of Rachel Stevens in Support of Motion to Compel Discovery from Gibson, Dunn & Crutcher ("Stevens Decl."), at ¶ 3.

[3] *See* the transcript of the Documentary, 16-cv-00013, ECF Dkt. No. 26-4 ("Transcript"), at 17, 27-33.

[4] Transcript at 32-33; Declaration of Robert Corn-Revere, dated March 29, 2018 ("Corn-Revere Decl."), submitted herewith, at ¶ 4.  HGH is a drug tightly regulated by federal law, and it is a felony to prescribe it or possess it for adult use except for a few rare conditions.  Transcript at 34-35.

[5] *See* Stevens Decl. at ¶ 5; Exhibits A, B; Corn-Revere Decl. at ¶ 6.

On December 13, 2015, Theodore Olson of GDC, outside counsel for the Mannings, contacted Robert Corn-Revere of Davis Wright Tremaine LLP, outside counsel for Al Jazeera, to begin a discussion of the subjects raised in Davies's e-mails.[6]  On December 15, 2015, lawyers from GDC and DWT attended a meeting, which was followed by a telephone conference on December 17, 2015.[7]  During these discussions, Matthew McGill of GDC represented, among other things, the following facts:



This information provided by GDC was consistent with information provided by the Investigative Unit's source.  GDC and Sly each independently provided Al Jazeera with the same information as to where the HGH was shipped, to whom it was shipped and the amounts billed for HGH by the Guyer Institute.[8]  As it was required to do, DWT relayed GDC's information and statements to the Investigative Unit reporters working on the Documentary.[9]  Those reporters

---

[6] Corn-Revere Decl. at ¶ 7.
[7] *Id.* at ¶¶ 8, 12.
[8] *Id.* at ¶¶ 9, 12.
[9] *See* Stevens Decl. at Exhibits C-E.

viewed the information provided by GDC as corroborating important statements by Sly and as bolstering his credibility.[10]

On the night of December 22, 2015, two men attempted to gain entrance to Sly's parents' home in Indiana by impersonating law enforcement officers.  Alarmed, Sly's younger sister immediately dialed 911.[11]  On December 23, 2015, the men returned and interrogated Sly.  On December 24, 2015, Sly recorded what the Court has called a "recantation video": an approximately one-minute video in which Sly, visibly nervous and sweating, read a statement in which he denied the truth of anything he said to Collins.[12]  The phrasing of the statement read by Sly suggests that it was prepared by a lawyer, not Sly.  The Investigative Unit did not believe Sly's statements in the "recantation video," not only because Sly's demeanor was of someone with a figurative gun to his head and because he appeared to be reading lawyer-drafted words, but also because the Investigative Unit had, through the information disclosed by GDC and otherwise, already verified the truth of some of Sly's disclosures in the hidden camera recordings.[13]

The men who impersonated law enforcement officers, frightened Sly's sister, and interrogated him were employees of Phenix Investigations, Inc. ("Phenix"), an Indiana-based company that was working with GDC and famed publicist Ari Fleischer to represent the Mannings (together, the "Manning Group") in response to Al Jazeera's reporting.[14]

Plaintiffs, in their libel complaints, place enormous reliance on this "recantation video." They allege that because Al Jazeera aired the Documentary after viewing the "recantation

---

[10] *See* Stevens Decl. at Exhibit Q.
[11] *See* Stevens Decl. at ¶ 9. *See also* Stevens Decl. at Exhibits F, O, P.
[12] *See* Stevens Decl. at ¶ 9.
[13] *See* Stevens Decl. at Exhibit Q.
[14] *See* Stevens Decl. at Exhibit F.

video," it acted with actual malice (*i.e.*, knowing that Sly's statements about Plaintiffs' use of performance enhancing drugs were false or recklessly disregarding whether those statements were true or false), a necessary element of their libel claims.[15]   In its denial of Al Jazeera's motion to dismiss, the Court made reference to Plaintiffs' characterization of the "recantation video."[16]

Against this backdrop, Al Jazeera served targeted discovery and deposition subpoenas on GDC to obtain information to refute Plaintiffs' allegations.   Despite Al Jazeera's numerous attempts to reach a compromise, GDC has refused to produce a single document or make available any witnesses.   Perhaps recognizing that its objections are incompatible with the Federal Rules' liberal discovery policy, GDC is left to argue that the Mannings' privacy interests would be harmed if Al Jazeera is able to collect evidence that corroborates its primary source and explains the extreme pressure that the Manning Group placed on that source just before the "recantation video" was made.   Since any legitimate privacy concerns can readily be accommodated within the terms of the Protective Order already entered by the Court, Al Jazeera seeks this Court's assistance in obtaining the discovery to which it is entitled.

## ARGUMENT

### THE DOCUMENTS AND TESTIMONY SOUGHT BY AL JAZEERA'S SUBPOENAS ARE HIGHLY RELEVANT TO AL JAZEERA'S DEFENSE OF ABSENCE OF ACTUAL MALICE AND TO BUTTRESS THE CREDIBILITY OF LIKELY WITNESSES.

For the purposes of discovery, a party is entitled to "any non-privileged material that is relevant to any party's claim or defense."   FED. R. CIV. P. 26(b)(1).   For party and nonparty discovery alike, the standard for relevancy is "whether there is a reasonable likelihood or

---

[15] *See* Howard First Amended Complaint ("FAC") ¶¶ 55-58, 63-64, 76; Zimmerman FAC ¶¶ 53-54, 60, 76.
[16] *See Zimmerman v. Al Jazeera America, LLC*, 246 F. Supp. 3d 257, 285 (D.D.C. 2017).

possibility that the information sought may be relevant to a claim or defense or likely to lead to such evidence." *Porter v. Pinkerton Gov't Servs., Inc.*, 304 F.R.D. 24, 28 (D.D.C. 2014) (cited by GDC at GDC Br. 15). "Moreover, the term relevance at the discovery stage is broadly construed to include information which is not admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Albany Molecular Research , Inc. v. Schloemer*, 274 F.R.D 22, 27 (D.D.C. 2011) (quotation marks omitted) (cited by GDC at GDC Br. 15).

A nonparty seeking to quash a subpoena bears the burden of showing that it is entitled to that relief. *See Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 355 (D.D.C. 2011) (cited by GDC at GDC Br. 12). The moving party must show that "the burden of providing the documents outweighs the need for it." *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (internal citations omitted) (cited by GDC at GDC Br. 12, 24, 30). As one case cited by GDC makes clear, "[t]he quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Sourgoutsis v. United States Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017) (citing *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005)) (cited at GDC Br. 23). *See also Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 354 ("Quashing subpoenas goes against courts' general preference for a broad scope of discovery. . ." (quotation marks omitted)) (cited at GDC Br. 12).

GDC's grounds for refusing to comply with Al Jazeera's subpoenas evaporate in light of these fundamental principles favoring nonparty discovery, which are emphasized in the very cases on which GDC relies for its motion. The Manning Group authorized GDC to approach and disclose to Al Jazeera detailed summaries of the Mannings' medical history and REDACTED

6

REDACTED [17]   The Manning Group, having discovered that Sly was Al Jazeera's primary source, then appears to have orchestrated an aggressive campaign to intimidate Sly and his family, and to pressure Sly into making a "recantation video."  These voluntary actions taken by the Manning Group bolster Sly's credibility, expose the "recantation video" as coerced theatre, and are therefore well within the bounds of discovery.

A.   **GDC Possesses And Should Produce The Information Sought By Al Jazeera, Because It Is Or Will Lead To Probative Evidence Supporting Al Jazeera's Position That It Broadcast the Documentary Without Actual Malice.**

Plaintiffs Howard and Zimmerman, as public figures suing the press for libel, must prove by clear and convincing evidence that Defendants published the statements about them with "actual malice," *i.e.*, with "knowledge of falsity [of the defamatory statements] or a reckless disregard of the truth" or falsity of those statements.  *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1291 (D.C. Cir. 1988).  In support of that contention, Plaintiffs have pleaded that Defendants "lacked any details tending to establish the veracity of [Sly's] allegations" and "failed to uncover any confirming facts as to [Sly's] allegations."[18]

Under well-established precedent, Al Jazeera may rebut Plaintiffs' assertions and demonstrate an absence of actual malice by presenting evidence that the statements of a source for the Documentary were independently verified by another source, even if what was verified was not the actual statements sued on by Plaintiffs.  *See, e.g.*, *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968) (absence of malice established by, among other facts, reporter independently verifying "other aspects of his source's information" beyond alleged libel); *Tavoulareas v. Piro*, 817 F.2d 762, 790-91 (D.C. Cir. 1987) (same).  The Court already has stated that Al Jazeera's

---

[17] *See* Stevens Decl. at ¶ 7, Exhibits C-E.
[18] Howard FAC ¶¶ 76(b), 76(c); Zimmerman FAC ¶¶ 73(b), 73(c).

assessment of Sly's credibility will have a bearing on the issue of actual malice.  *Zimmerman*, 246 F. Supp. 3d at 283.

Accordingly, Defendants are entitled to discover documents and testimony relating to GDC's disclosures regarding the Guyer Institute's shipments ████████ which corroborate important statements made by Sly on hidden camera footage, and confirm that he was a credible source.  The corroborative nature of the information provided by GDC also helps explain Al Jazeera's view of the "recantation video."  Toward that end, Al Jazeera subpoenaed GDC to provide non-privileged documents in its possession, custody or control relating to (1) ████████ ████ ; and (2) GDC's disclosures to and communications with Al Jazeera's counsel.[19]  It also served a deposition subpoena on GDC, seeking McGill's testimony.

Contrary to GDC's current arguments, Al Jazeera is entitled to obtain these documents and testimony for a number of reasons.  First, Al Jazeera has the right to obtain the deposition testimony of the person who made the disclosures, McGill of GDC.  GDC's assertion that an exception to the hearsay rule may allow Corn-Revere of DWT to testify about McGill's disclosures, or that McGill's testimony would be cumulative, is beside the point.  Al Jazeera is entitled to receive the evidence in discovery wherever it may lie, without regard to whatever rulings the Court may or may not make on admissibility of evidence long after the close of fact discovery.

Second, even if Corn-Revere is permitted to testify as to what McGill told him under an exception to the hearsay rule, Al Jazeera is still entitled to discovery, and to choose, if it wishes, to present the disclosures at trial through the testimony of the person who made them. Third, Corn-Revere may be unavailable to testify at trial, or Plaintiffs may attack the credibility of his

---

[19] *See* Stevens Decl. Exhibit G (the "GDC Subpoena"), Request Nos. 2-4, 6-9.

testimony about his conversations with Mr. McGill. Al Jazeera is entitled to protect against unavailability possibilities and buttress the truth of Corn-Revere's testimony by taking McGill's deposition. Finally, McGill's deposition testimony will show that important statements by Sly were independently corroborated by an independent source, which shows Al Jazeera's absence of malice. *See* cases cited at 7 *supra*.

In contrast to Al Jazeera's right to this testimony and documents, GDC has not even attempted to make a factual showing that compliance with the subpoenas would be burdensome, or disproportional to the issues of the libel cases. This Court has repeatedly rejected similar burdensomeness objections by litigants and non-parties when factual support for the objection is absent. *See, e.g.*, *Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 355-56 (denying motion to quash when movant failed to offer more than "general and conclusory information" about burden of compliance) (cited by GDC at GDC Br. 12); *Maverick Entm't Grp., Inc. v. Does 1-2,115*, 810 F. Supp. 2d 1, 9 (D.D.C. 2011) (denying motion for protective order because movants "[could not] claim any hardship, let alone undue hardship.") (cited by GDC at GDC Br. 12); *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 33-34 (D.D.C. 2007) (granting motion to compel when objecting party characterized burden as "extraordinary", but failed to show why production would be burdensome) (cited by GDC at GDC Br. 13, 26); *Albany Molecular Research, Inc.*, 274 F.R.D. at 27 (rejecting arguments that confidentiality considerations required quashing subpoena when "there [wa]s little or no threat" to movant's privacy interests) (cited by GDC at GDC Br. 15). *See also Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (reversing district court order limiting the scope of discovery on oppressiveness grounds, holding that the court below erred because objecting party had not "describe[d] the precise nature of its burden.").

Indeed, GDC's compliance with the subpoenas would not be burdensome in the least. Al Jazeera's subpoenas are reasonably tailored to seek only relevant, non-privileged information relating to the disclosures by GDC to Al Jazeera:[20] the treatment that the Manning Group has publicly admitted was received from the Guyer Institute,[21] and the shipment and use of HGH.[22] This is not such a case as *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1216 (D.C. Cir. 2004) (cited by GDC at GDC Br. 15), where a district court was reversed for erroneously allowing discovery of medical information "regardless . . . of whether it was relevant to a claim or defense."

GDC's fallback position is that the information Al Jazeera seeks is protected from disclosure by healthcare privacy statutes, including D.C. CODE § 14–307 and the Health Insurance Portability and Accountability Act ("HIPAA").[23] *See* GDC Br. at 19. This position is also without merit. First, HIPAA and D.C. CODE § 14–307 are inapplicable. HIPAA's Privacy Rule applies only to health plans, healthcare clearinghouses, and to any healthcare provider who transmits health information in electronic form in connection with transactions for which the Secretary of HHS has adopted standards under HIPAA (a "covered entity"). *See* 45 C.F.R. §§ 160.102, 160.103. GDC, a law firm, is not a covered entity. Similarly, D.C. CODE § 14–307 "only prohibits doctors, surgeons, and mental health professionals from divulging confidential medical information; it does not state that those who are not doctors, surgeons, or mental health professionals are prohibited from divulging medical information which they may have about an individual." *Kuhn and Kogan, Chtd. v. Jeffery C. Mensh & Assocs., Inc.*, 77 F. Supp. 2d 52, 56

---

[20] GDC Subpoena, Request No. 4.
[21] GDC Subpoena, Request No. 6.
[22] GDC Subpoena, Request No.7.
[23] Pub. L. 104-191.

(D.D.C. 1999) (holding that D.C. CODE § 14–307 did not shield from disclosure medical information sought from a party's accountant).

Second, it is not only law, but also common sense, that a person (either directly or through counsel) can share health information voluntarily and without restriction to an unrelated third party, and that third party then is not restrained in the later use of such information.  That is precisely the case here.  The Mannings authorized GDC to disclose to Al Jazeera the Mannings' medical conditions, their treatment by the Guyer Institute, REDACTED.  McGill of GDC further offered to provide Al Jazeera with "anything" (presumably including further health information about the Mannings) to help Al Jazeera make an editorial decision about the inclusion of the Mannings in the Documentary.[24]   In fact, the Mannings later voluntarily disclosed to the general news media that Ms. Manning received medication from the Guyer Institute.[25]

This repeated, extensive and entirely voluntary disclosure by the Mannings proves that the information corroborating Sly is not subject to any privacy rights.  To the extent any privacy rights otherwise existed, however, the Mannings waived them.  *See Whitbeck v. Vital Signs, Inc.*, 163 F.R.D. 398, 400 (D.D.C. 1995) (holding that an individual could not rely on the medical privilege of the D.C. Code following the individual's "partial release and selective production" of her medical records).  This waiver would also apply to any invocation of the common-law physician-patient privilege, GDC Br. at 19, since Ms. Manning authorized her lawyers to disclose to Al Jazeera her medical condition REDACTED.  *See Porter*, 304 F.R.D. at 30

---

[24] *See* Corn-Revere Decl. at ¶ 12.
[25] S*ee* Stevens Decl., at Exhibits F, R.

11

(physician-patient privilege may not be employed "both as a sword and as a shield" (citations omitted)) (cited by GDC at GDC Br. 15).[26]

Assuming *arguendo* that the Mannings have any remnant privacy interests in this information that survive their voluntary disclosures to Al Jazeera, the Protective Order (Dkt. No. 87, "the Protective Order") entered in this case provides sufficient protection.  *See Albany Molecular Research, Inc.* 274 F.R.D at 26 (holding that existence of protective order "weighs against quashing [a] subpoena" based on confidentiality concerns) (cited by GDC at GDC Br. 15).  Here, the Protective Order provides that medical information, when designated as "Highly Confidential" by a producing party, may be viewed only by the parties' attorneys, and may not be disseminated to the parties or publicly.  Protective Order ¶ 5(c).

GDC's other arguments against compliance with the subpoenas also lack merit.  GDC asserts that it is somehow wrong to take the depositions of nonparty attorneys.  GDC Br. at 12.  But the authorities it cites have nothing to do with the proprietary of obtaining discovery from nonparty attorneys.  *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011) (cited by GDC at GDC Br. 12) quashed a subpoena directed to the *adversary's counsel of record*, based on concerns that such discovery would permit harassment of the opposing party and disrupt ongoing litigation.  GDC does not represent a party to the underlying cases and the information sought is highly relevant to the libel litigation, as shown above.  *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26 (D.D.C. 2007) (cited at GDC Br. 13, 26), has nothing to do with seeking discovery from an attorney; it merely states the

---

[26] GDC also objects to compliance with the relevant subpoena requests – Nos. 2-4, 6-9 – on the basis of attorney-client privilege and the work product doctrine.  *See* GDC Br. at 25-26.  As explained in Section B *infra*, Al Jazeera has sought only non-privileged documents, the work product doctrine does not shield the requested material from production and any responsive documents withheld based on privilege claims can be asserted in a suitable privilege log.

basic rule that a party seeking discovery must show the relevancy of the information if challenged. Here, GDC has possession of the discoverable information because it chose to make disclosures on the Mannings' behalf that corroborated the Investigative Unit's source and it chose to participate in the scheme to intimidate Sly into appearing in the "recantation video."

Finally, GDC insists that McGill's testimony and relevant documents in GDC's possession are cumulative or duplicative of information already in Al Jazeera's possession. GDC Br. at 28. Al Jazeera does not have all of the responsive documents in GDC's possession, so there can be no legitimate claim of duplication as to documents sought by the subpoena. And, in any event, the burden is on the party seeking to quash a protective order to show that the information or testimony sought is "*unreasonably* cumulative or duplicative" of material already in the possession of the requesting party. FED. R. CIV. P. 26(b)(2)(c)(i) (emphasis added). This burden is not satisfied where there may be an overlap between the requested information and information already in the possession of the subpoenaing party. *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 30 (D.D.C. 2014) (cited at GDC Br. 28). As shown above, McGill's direct testimony as to the facts he provided to Corn-Revere is important to Al Jazeera's defenses, and the opportunity to depose him will allow a full exploration of these issues as well as the Manning Group's involvement in the Sly "recantation video." *See Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986) ("Depositions . . . rank high in the hierarchy of pre-trial, truth-finding mechanisms . . . [and] are a critical component of the tools of justice in civil litigation.").

**B.  GDC's Role In Sly's "Recantation Video" is Highly Relevant and Not Privileged.**

Plaintiffs' libel claims are based in large measure on the "recantation video" made by Sly, which was viewed by the Investigative Unit shortly before the Documentary was aired.

Plaintiffs allege that the "recantation video" demonstrates both that Sly's allegations about Plaintiffs were untrue, and that Al Jazeera knew the allegations to be untrue. *See, e.g.,* Howard FAC ¶¶ 76(e), 90; Zimmerman ¶¶ 73(e), 87.   The Court, in permitting the Plaintiffs' claims to proceed past a motion to dismiss, reasoned that "the primary support for Plaintiffs' assertion that [Defendants] subjectively doubted Sly's trustworthiness was the fact that they were indisputably aware of Sly's pre-publication recantation. . . . The substance of Sly's unequivocal recantation further supports an inference that Al Jazeera and Davies had reason to doubt their sole source." *Zimmerman*, 264 F. Supp. 3d at 283-84.

It follows, then, that the "recantation video" is an important issue in this case, and that facts relevant to the video include the circumstances under which it was made, including whether it was the product of coercion, whether anything said by Sly on the video was written by someone else, and whether the entire video was orchestrated by the Manning Group, including GDC.

Unlike the Mannings' disclosures to Al Jazeera, there is reason to believe that Sly's recantation was far from voluntary and far from genuine.   For example, it is public knowledge that GDC hired Indiana-based Phenix investigators to travel to Sly's family home in Indiana where the investigators apparently impersonated law enforcement officers, and took actions that prompted Sly's sister to call 911.   It also has been reported that these investigators returned to the family home the next day and met with Sly just before the recantation video was posted.[27]   In the video, Sly appears nervous and uncomfortable, and is reading from a statement located off-

---

[27] See Stevens Decl. at ¶ 9.

screen.[28]  Indeed, the words Sly speaks on the video sound like they are written by a lawyer who had already investigated Liam Collins's background: "Any recordings of me were made without my *knowledge or consent*. . . .   Liam is a reputed fraudster who is banned in his native United Kingdom from running any investment businesses. . . . The statements on any recordings . . . are absolutely *false and incorrect*."  *Id.* (emphasis added).   In other words, Sly claimed that every single thing he said in 27 hours of conversation was false, even though he did not know the content of these conversations, and even though GDC had already advised Al Jazeera that some of the information provided by its source was true.

Additionally, Plaintiffs admit in their complaint that prior to suing, they "learned (from a source other than Defendants) not only that the sole source of the allegations against [them] were statements made by Sly . . . but that Sly had unequivocally advised [Defendants] in writing . . . that the purported statements were false."[29]  Given that this information did not come from Defendants, it is likely that GDC, which was aware that Sly was a source, communicated what it knew to Plaintiffs or their counsel.[30]   Under these circumstances, Defendants are entitled to discover each and every fact relating to Sly's "recantation video."

In response, GDC does not dispute that the Manning Group played a role in Sly's "recantation video."  Rather, it contends that any such efforts are irrelevant because they were not known by Al Jazeera prior to broadcasting the Documentary.  Nonsense.  A trier of fact must ultimately "determine whether the [allegedly defamatory] statement is false."  *Zimmerman*, 246 F.Supp.3d at 272 (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir.

---

[28] *See id.*  As noted in Stevens Decl. at ¶ 9, the video is available at https://www.youtube.com/watch?v=sf2-8V0K3oM. It is also in the record as Exhibit R to Zimmerman FAC.
[29] Howard FAC ¶ 55; Zimmerman FAC ¶ 52.
[30] *See* GDC Subpoena, Request No. 8.

1990)).   Plaintiffs have taken the position that the "recantation video" is evidence that Sly's allegations were untrue.[31]   Al Jazeera is therefore entitled to discovery of any and all information relating to the "recantation video", especially information that shows that the Manning Group intimidated and coerced Sly to make him speak the words on the video.

Attempting to litigate privilege issues before they are ripe, GDC also asserts that the subpoenas seek information shielded by the attorney-client privilege or the work product doctrine.   GDC Br. at 25-28.   However, all of the document requests, including those that relate to Sly's recantation video, explicitly seek "non-privileged documents and communications."[32] Moreover, GDC may not withhold responsive documents based upon a claim of privilege unless those documents are identified in a privilege log that complies with Rule 26(b)(5).   Once that takes place, Al Jazeera has the right to challenge those assertions.   For example, to the extent that GDC received information from third parties, such as Phenix or Sly, or passed that information on to Plaintiffs or others,[33] those documents or communications are not privileged and should be produced.   *See Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) ("it is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged."); *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (same); *Blumenthal v. Drudge*, 186 F.R.D. 236, 243-244 (D.D.C. 1999) (holding that "[i]f any messages [forwarded from counsel to client] originally were sent by third parties, then the message is not privileged."). While Al Jazeera is not seeking the production of any legitimate legal advice that GDC may have provided to its clients, the Manning Group, including GDC, were retained to perform non-legal

---

[31] *See, e.g.,* Howard FAC ¶ 90; Zimmerman FAC ¶ 87.
[32] GDC Subpoena, Request Nos. 1-7, 9, 10.
[33] *See* GDC Subpoena, Request No. 5.

services (e.g., hiring investigators to coerce an important witness to recant), making a privilege log essential.

GDC's reliance on the work product doctrine is similarly unavailing.  GDC fails to show, as it must, that communications between GDC and Phenix were made in anticipation of litigation and accordingly protected by the doctrine.  *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149-50 (D.C. Cir. 2015) ("*Boehringer II*") (noting that work product only shields a document from disclosure if "the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation") (emphasis added).  Here, GDC did not retain Phenix to assist it in litigation; instead, Phenix was retained to intimidate Sly.[34]  Because GDC and Phenix's communications regarding Sly would have been created "in substantially similar form irrespective of . . . litigation," they are not entitled to work product protection.  *See Boehringer II,* 778 F.3d at 150.  But even so, GDC is entitled to make privilege and work product assertions in a privilege log, which Al Jazeera can then challenge if appropriate.[35]  The potential assertion of privilege or the work product doctrine does not justify GDC's wholesale refusal to comply with the subpoenas.

In a throwaway footnote, GDC argues that it is "impermissibly cumulative or duplicative" for Al Jazeera to seek "Sly-related material from both [GDC] and Phenix."  GDC Br. at 29, fn. 7.  Tellingly, GDC offers no authority to support this meritless contention.  To the contrary, it is wholly appropriate for Al Jazeera to subpoena documents from both entities since

---

[34] See Stevens Decl. at ¶ 9, Exhibit F.

[35] For example, Al Jazeera should have the opportunity to demonstrate that it has a "substantial need" for any fact work product.  FED. R. CIV. P. 26(b)(3). Given the particular importance of the information sought, and the difficulty Al Jazeera would face in obtaining it elsewhere, special circumstances may very well exist to override work product protection.  *See Boehringer II*, 778 F.3d at 156 (holding that the work product doctrine is of no force when "non-disclosure will impair the truth-seeking function of discovery.").

each very likely has responsive information that the other does not, such as internal emails. *See Estate of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 259 (D.D.C. 2011) (holding that it was not unreasonably cumulative or duplicative to subpoena individuals within the same organization when each individual was likely to have relevant information, and the extent of any overlap was not yet known); *U.S. Dep't of the Treasury*, 301 F.R.D. at 30 (observing that "some overlap does not justify foreclosing discovery"). The sheer number of meritless arguments advanced by GDC proves only one thing: GDC possesses relevant information and it does not want Al Jazeera to discover it.

### C. The Court Should Deny GDC's Demand for a Protective Order and Attorney's Fees.

For the reasons set out above, the discovery sought by Al Jazeera is proper and should be provided by GDC. The Court should therefore also deny GDC's demand for a protective order, and deny its demand for costs and attorneys' fees. *See Alberts v. HCA Inc.*, 405 B.R. 498, 503-04 (D.D.C. 2009) (holding that costs and attorneys' fees should only be awarded for the "blatant abuse of the subpoena power", and collecting case law in support of that proposition).

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' Motion to Compel should be granted, GDC's Motion to Quash Defendants' Subpoena and for Protective Order should be denied, along with GDC's request for attorneys' fees and costs, and the Court should award whatever other relief it deems just and appropriate.

Respectfully submitted.

Dated: March 30, 2018

/s/ *Charles Scheeler*
Charles Scheeler
DLA PIPER LLP
The Marbury Building

18

6225 Smith Avenue
Baltimore, MD 21209-3600
Office: (410) 580-3000
Fax: (410) 580-3001
charles.scheeler@dlapiper.com

Andrew L. Deutsch (admitted *pro hac vice*)
Rachel Stevens (admitted *pro hac vice*)
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020
Office: (212) 335-4500
Fax: (212) 335-4501
andrew.deutsch@dlapiper.com
rachel.stevens@dlapiper.com

*Counsel for Petitioners Al Jazeera America,*
*LLC, Al Jazeera Media Network, Al Jazeera*
*International (USA), Inc., Deborah Davies*