**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES | Civil Action No. 16-cv-13 (KBJ/RMM) No. 16-cv-14 (KBJ/RMM) |

AL JAZEERA AMERICA, LLC, AL
JAZEERA MEDIA NETWORK, AL
JAZEERA INTERNATIONAL (USA) INC.,
AND DEBORAH DAVIES

                        Petitioners,

        vs.

GIBSON, DUNN & CRUTCHER LLP

                        Respondent.

Civil Action
No. 16-cv-13 (KBJ/RMM)
No. 16-cv-14 (KBJ/RMM)

**GIBSON, DUNN & CRUTCHER LLP'S MEMORANDUM OF LAW IN OPPOSITION
TO PETITIONERS' MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF
CROSS-MOTIONS TO QUASH PETITIONERS' SUBPOENAS AND FOR
PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ....................................................................................................1

BACKGROUND ......................................................................................................3

LEGAL STANDARD...............................................................................................11

ARGUMENT ...........................................................................................................13

I.     AL JAZEERA'S MOTION TO COMPEL PRIVATE AND PRIVILEGED
INFORMATION FROM THE MANNINGS' LEGAL COUNSEL
SHOULD BE DENIED. ..................................................................................13

     A.     Al Jazeera's Effort to Compel Production of Documents and
Testimony Exposing Ashley Manning's Private Medical
Information Is Unduly Burdensome and Wholly Unnecessary. ...............14

          1.     The Information that Al Jazeera Seeks to Compel Is Not
Relevant. ......................................................................................15

          2.     Al Jazeera Already Possesses the Information That It Seeks
to Compel........................................................................................18

          3.     Al Jazeera's Effort to Compel the Deposition of a Non-
Party's Attorney Is Abusive and Unnecessary...............................18

          4.     Al Jazeera's Effort to Compel Private Medical Information
Is Inappropriate and Abusive. .......................................................19

     B.     Information Concerning the Non-Parties' Interactions with Al
Jazeera's Informant of Which Al Jazeera Had No Knowledge Prior
to the Airing of The Dark Side Is Categorically Irrelevant and Al
Jazeera's Motion to Compel These Documents and Testimony Is
Therefore Unduly Burdensome.................................................................22

II.     THE REMAINING DOCUMENT REQUESTS SHOULD BE
QUASHED, AND A PROTECTIVE ORDER ENTERED TO PREVENT
FURTHER HARASSMENT OF THE MANNINGS...........................................24

     A.     The Balance of the Documents Sought by Al Jazeera Are All
Privileged or Already in the Possession of Al Jazeera and Not
Properly the Subject of Discovery. ..........................................................25

     B.     The Court Should Enter a Protective Order and Award Reasonable
Attorneys' Fees to Prevent Further Harassment of the Mannings.............29

CONCLUSION.........................................................................................................32

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albany Molecular Research, Inc. v. Schloemer,*
274 F.R.D. 22 (D.D.C. 2011) ...................................................................................15

*Alberts v. HCA Inc.,*
405 B.R. 498 (D.D.C. 2009) ...................................................................................31

*Banks v. Office of Senate Sergeant-at-Arms,*
222 F.R.D. 1 (D.D.C. 2004) ...................................................................................26

*Baylor v. Mitchell Rubenstein & Assocs.,*
130 F. Supp. 3d 326 (D.D.C. 2015) .......................................................................27

*Brinton v. Dep't of State,*
636 F.2d 600 (D.C. Cir. 1980) ...............................................................................26

*Call of the Wild Movie, LLC v. Does 1-1,062,*
770 F. Supp. 2d 332 (D.D.C. 2011) .......................................................................12

*In re Domestic Drywall Antitrust Litig.,*
300 F.R.D. 234 (E.D. Pa. 2014) .............................................................................24

*Fears v. Wilhelmina Model Agency, Inc.,*
No. 02 CIV. 4911 (HB)(HBP), 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004) ...........23

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.,*
180 F. Supp. 3d 1 (D.D.C. 2016) ...........................................................................27

*Freeman v. Seligson,*
405 F.2d 1326 (D.C. Cir. 1968) .............................................................................18

*Gibson v. Milwaukee Cty.,*
Civ. A. No. 12-CV-657, 2015 WL 12964665 (E.D. Wis. Mar. 26, 2015) .............19

*Hesco Bastion Ltd. v. Greenberg Traurig LLP,*
Civ. A. No. 09-0357 (RWR/DAR), 2009 WL 5216932 (D.D.C. Dec. 23, 2009)....13

*Hicks v. Wegmans Food Mkt.,*
Civ. A. No. 09-624 (JEI/AM), 2011 WL 499368 (D.N.J. Feb. 10, 2011) ..............19

*Linder v. Calero-Portocarrero,*
180 F.R.D. 168 (D.D.C. 1998) ...............................................................................13

*Linder v. Calero-Portocarrero,*
251 F.3d 178 (D.C. Cir. 2001) ...............................................................................31

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Lohrenz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003) ............................................................................23

*Maverick Entm't Grp., Inc. v. Does 1-2,115*,
  810 F. Supp. 2d 1 (D.D.C. 2011) ..........................................................................29

*Meijer, Inc. v. Warner Chilcott Holdings Co., III*,
  245 F.R.D. 26 (D.D.C. 2007) ..........................................................................13, 26

*In re Micron Tech., Inc. Sec. Litig.*,
  264 F.R.D. 7 (D.D.C. 2010) ..................................................................................13

*Mount Hope Church v. Bash Back!*,
  705 F.3d 418 (9th Cir. 2012) ................................................................................31

*N. Carolina Right to Life, Inc. v. Leake*,
  231 F.R.D. 49 (D.D.C. 2005) ....................................................................12, 24, 30

*Northrop Corp. v. McDonnell Douglas Corp.*,
  751 F.2d 395 (D.C. Cir. 1984) ..............................................................................13

*Pearson v. Miller*,
  211 F.3d 57 (3d Cir. 2000) ....................................................................................30

*Pendergrass v. U.S. Dep't of Justice*,
  Civ. A. No. 04-112 (CKK), 2005 WL 1378724 (D.D.C. June 7, 2005) ................26

*Porter v. Pinkerton Gov't Servs., Inc.*,
  304 F.R.D. 24 (D.D.C. 2014) ................................................................................15

*Premier Election Sols., Inc. v. Systest Labs Inc.*,
  Civ. A. No. 09-1822, 2009 WL 3075597 (D. Colo. Sept. 22, 2009) ......................12

*In re Sealed Case (Med. Records)*,
  381 F.3d 1205 (D.C. Cir. 2004) ............................................................................30

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ................................................................................................30

*SEC v. Nat'l Student Mktg. Corp.*,
  18 Fed. R. Serv. 2d 1302 (D.D.C. 1974) ..............................................................26

*Sourgoutsis v. United States Capitol Police*,
  2017 WL 5633088 (D.D.C. Nov. 21, 2017) ..........................................................23

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
276 F.R.D. 376 (D.D.C. 2011).................................................................................12

*In re Subpoena to Goldberg*,
693 F. Supp. 2d 81 (D.D.C. 2010)...........................................................................12

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
301 F.R.D. 20 (D.D.C. 2014)...................................................................................28

*United States v. ISS Marine Servs., Inc.*,
905 F. Supp. 2d 121 (D.D.C. 2012).........................................................................27

*United States ex rel. Barko v. Halliburton Co.*,
74 F. Supp. 3d 183 (D.D.C. 2014)...........................................................................27

*Upjohn Co. v. United States*,
449 U.S. 383 (1981).................................................................................................25

*Watts v. SEC*,
482 F.3d 501 (D.C. Cir. 2007).................................................................................13

*Zimmerman v. Al Jazeera Am., LLC*,
246 F. Supp. 3d 257 (D.D.C. 2017).........................................................................23

**Statutes**

D.C. Code § 14-307....................................................................................................19

Ind. Code § 34-46-3-1................................................................................................19

**Rules**

Fed. R. Civ. P. 26.......................................................................................13, 18, 25, 29

Fed. R. Civ. P. 45...........................................................................................13, 25, 31

**Regulations**

45 C.F.R. § 164.508.........................................................................................15, 19, 20

45 C.F.R. § 164.512...............................................................................................19, 21

## <u>INTRODUCTION</u>

Gibson, Dunn & Crutcher LLP ("Gibson Dunn") is not a party to this litigation, and does not represent any party in this litigation.  Nevertheless, Al Jazeera America LLC, Al Jazeera Media Network, and Al Jazeera International (USA) Inc. (collectively, "Al Jazeera" or "Petitioners"), have moved to compel Gibson Dunn to disclose private and sensitive information regarding its clients, retired professional football player Peyton Manning and his wife, Ashley (together, the "Mannings"), neither of whom is a party to this case.  In particular, Al Jazeera seeks to compel Gibson Dunn to produce (1) information concerning its communications with Al Jazeera's counsel relating to Ashley Manning's health history, and (2) information concerning interactions the Mannings' private investigators had with Charlie Sly, the now-discredited source of false allegations provided to Al Jazeera about the Mannings.  But both categories of information are categorically irrelevant to the claims and defenses in this case, because neither can have any bearing on the question for which Al Jazeera says it needs them: whether Al Jazeera acted recklessly or with malice when it defamed the plaintiffs in the underlying litigation.  And although Al Jazeera has retreated from all but these two categories of information, the third-party subpoenas Al Jazeera served on Gibson Dunn—seeking both documents and a deposition of the Mannings' counsel—are exceptionally broad, and compliance with them would require Gibson Dunn to divulge privileged and irrelevant material, as well as private medical information of non-party Ashley Manning.  Al Jazeera should not be permitted to engage in an improper fishing expedition that will unduly harass innocent non-parties who have nothing to do with this case.

In this litigation, Ryan Zimmerman and Ryan Howard have sued Al Jazeera for defamation because Al Jazeera reported in an inflammatory documentary titled "The Dark Side: Secrets of the Sports Dopers" ("The Dark Side") that Zimmerman and Howard allegedly used a

steroid known as Delta-2.  The allegations about Zimmerman and Howard featured in the documentary were based on incriminating statements made by Charlie Sly, a now-disgraced pharmacist, to an undercover Al Jazeera operative.  Shortly before the broadcast, Sly recanted those allegations, but Al Jazeera has nevertheless maintained that it reasonably relied on Sly's statements when it proceeded with the broadcast despite his recantation.

Al Jazeera now seeks to compel documents relating to Gibson Dunn's legal response to *other*, unrelated statements that Sly made to Al Jazeera's undercover operative about Gibson Dunn's clients, the Mannings, falsely claiming that Peyton Manning abused human growth hormone ("HGH").  Gibson Dunn served as legal counsel to the Mannings in relation to those false claims, and Ari Fleisher Communications ("Fleischer Communications") and Phenix Investigations ("Phenix") were retained specifically to assist the Mannings in formulating their legal and strategic response (both of which also have received subpoenas from Al Jazeera).

Al Jazeera's attempt to use these non-party subpoenas to obtain privileged, sensitive, and irrelevant information about the representation of the Mannings in that separate matter should be rejected as baseless and a gross abuse of the discovery process.  Al Jazeera's discovery requests seek to invade Ashley Manning's private medical history, as well as other privileged and protected information regarding the Mannings and their legal counsel, without any reasonable basis to believe that the requests would lead to discoverable information that is relevant to Al Jazeera's defense against Zimmerman's and Howard's defamation claims.  There is therefore no legitimate reason to subject Gibson Dunn (and ultimately, the Mannings, whose private information is truly at issue here) to these unnecessary and burdensome discovery requests.  Moreover, neither the Mannings nor Gibson Dunn should be required to bear the substantial costs incurred in responding to these facially improper subpoenas.  Therefore, Gibson Dunn

respectfully requests that the Court deny Petitioners' Motion to Compel this discovery and grant
Gibson Dunn's Motion to Quash the non-party subpoenas in their entirety.  Gibson Dunn also
respectfully requests that the Court enter a protective order precluding Al Jazeera from
attempting to seek further discovery from or about the Mannings or their agents, and award them
attorneys' fees and related costs for expenses incurred in defending against these baseless
discovery requests.

## **BACKGROUND**

### *Al Jazeera's Dispute with Ryan Zimmerman and Ryan Howard*

Ryan Zimmerman and Ryan Howard, both professional baseball players, filed the
litigation underlying this third-party discovery dispute to seek legal relief for the false claims
made against them by Al Jazeera in The Dark Side.  The documentary claimed that both men
used a steroid called Delta-2; Charlie Sly claimed to Al Jazeera's undercover operative (without
apparent support) that he had provided them with Delta-2, and instructed them on its use.  In
part, Sly claimed that he gave Delta-2 to Howard "in bags," and that he "worked with
[Zimmerman] in the off-season."  Transcript of The Dark Side, 16-cv-00013, ECF Dkt. No. 26-4,
at 26-27.  Sly also claimed that the use of Delta-2 improved each player's batting performance.
In response to these allegations against them—which made no mention of the Mannings
whatsoever—Zimmerman and Howard are seeking damages from Al Jazeera for libel and false
light invasion of privacy, on the grounds that Al Jazeera recklessly disseminated knowingly false
information.  *See* Pls. Am. Compls., No. 16-cv-00013, ECF Dkt. Nos. 9 & 44.

### *Al Jazeera's Misinformation Regarding Peyton and Ashley Manning*

Three weeks before The Dark Side was aired, on December 4, 2015, Al Jazeera reporter
Deborah Davies contacted both Peyton and Ashley Manning by email to Peyton Manning's
agent to request comment on a range of false allegations suggesting that Peyton Manning had

used HGH during the course of his football career.  Declaration of Edward C. Patterson ("Patterson Decl."), Exs. 1 & 2.  In particular, Al Jazeera alleged it had undertaken an investigation that purportedly revealed that "Peyton Manning spent up to $20,000 a month on HGH and used up to 20 IU's a day" and that "excessive use of HGH ha[d] resulted in bone development in Peyton Manning's forehead."  *Id*.  Al Jazeera also claimed to have "video and audio footage" demonstrating that "HGH was shipped to various locations . . . under Ashley Manning's name," but that Al Jazeera's "source" had implied that "the HGH was for Peyton Manning's use."  *Id*.  Al Jazeera advised the Mannings that the network would be broadcasting a documentary film "later [that] month" which would feature the HGH allegations against Manning.  *Id*.  Unbeknownst to the Mannings, the documentary would also feature the separate and unrelated allegations that Zimmerman and Howard had used Delta-2 during the course of their professional baseball careers.

The Mannings soon thereafter retained Gibson Dunn to provide legal advice on a response to Al Jazeera's threatened broadcast of these falsehoods, and to formulate a legal strategy for anticipated litigation over the false claims.  As part of that process, Gibson Dunn conducted its own investigation to explore the nature and possible source of the unfounded allegations.  The Mannings also retained an investigations firm, Phenix, and a communications firm, Fleischer Communications, to assist Gibson Dunn with their legal strategy and public response.  In addition, Gibson Dunn worked closely with one of Ashley Manning's medical providers—the Guyer Institute, of Indianapolis, Indiana—to identify the specific source of the unfounded allegations against the Mannings and to collect the information necessary to show that the allegations contained in Al Jazeera's December 4th emails to the Mannings were baseless and false.

During the course of that investigation, Gibson Dunn was able to identify the source of the allegations against the Mannings as Charlie Sly, a pharmacy student who had worked at the Guyer Institute as an intern for a few months in 2013.[1]



REDACTED

Far from the 20 IUs a day Sly claimed Peyton Manning had been taking, Exs. A & B to the Declaration of Rachel M. Stevens ("Stevens Decl.") REDACTED REDACTED *See* Exs. C & D to the Stevens Decl. And far from the $20,000 per month Sly claimed Peyton Manning had spent on HGH, REDACTED REDACTED *See* Ex. D to the Stevens Decl.

Equipped with these facts, one of the Mannings' attorneys at Gibson Dunn, Matthew D. McGill, contacted attorneys for Al Jazeera at Davis Wright Tremaine LLP ("Davis Wright Tremaine") on December 14, 2015.  The next day, McGill met with attorneys at Davis Wright Tremaine to demonstrate that the allegations in Al Jazeera's December 4th email concerning Peyton Manning were false.  In conversations that both McGill and Al Jazeera's counsel

---

[1] Immediately after The Dark Side aired, it was publicly reported that Al Jazeera's allegations about the Mannings stemmed from Ashley Manning's treatment at the Guyer Institute and that Sly was the source of those allegations.  *See, e.g.*, *Meet Charlie Sly, the man telling — and recanting—tales about doping, Peyton Manning and Ryan Zimmerman*, The Washington Post (Dec. 28, 2015), *available at* https://www.washingtonpost.com/news/morning-mix/wp/2015/12/28/meet-charlie-sly-the-man-telling-and-recanting-tales-about-doping-peyton-manning-and-ryan-zimmerman/?utm_term=.53843f3b5153.

characterized as "off the record," Exs. C & D to the Stevens Decl., ECF Dkt. Nos. 84-5 & 84-6,

McGill undertook good faith efforts to expose the source and cause of the outlandish

misinformation that had been provided to Al Jazeera.  In particular,

REDACTED

all

facts that are markedly different from the baseless allegations peddled in Davies' December 4th

emails.

    As late as December 21, 2015 (only five days before the broadcast of the heavily

promoted documentary), counsel for Al Jazeera informed McGill that the network was not

certain which allegations—potentially including the original and inflammatory December 4,

2015 allegations—would be included in the final cut of the film.  A few days later, on December

24, 2015, Sly publicly recanted the statements he made in the presence of Al Jazeera's hidden

camera by uploading a YouTube video of himself disclaiming any truth to those statements.  *See*

https://www.youtube.com/watch?v=sf2-8V0K3oM.  Despite Sly's recantation, Al Jazeera

elected to move forward with the documentary.

    When the documentary aired on December 26, 2015, the allegations against the

Mannings differed markedly from the allegations made in Al Jazeera's December 4th email.

Evidently crediting the information that they had obtained from Gibson Dunn concerning Ashley

Manning's medical treatments, Al Jazeera's documentary did not allege that Peyton Manning

took "20 IU's a day" of HGH or that he had spent $20,000 per month on the substance.  Instead,

the documentary now reported that Ashley Manning, a non-public figure who is not a

professional athlete, had received shipments of HGH at her homes and then included footage of

an endocrinologist, who had never met or examined Ashley Manning, stating his baseless

opinion that there was no legitimate medical basis for her to have a prescription of HGH.

Transcript of the Dark Side, 16-cv-00013, ECF Dkt. No. 26-4, at 34.  Although the obvious

insinuation was that Ashley was receiving HGH shipments for Peyton Manning's use, after the

documentary aired, Petitioner Deborah Davies defended The Dark Side by saying that it had not

made any allegations with respect to Peyton Manning at all.  "We're not making the allegation

against Peyton Manning," Davies said.  *See Al Jazeera reporter: Documentary not alleging*

*Peyton Manning used HGH*, Today (Dec. 29, 2015), *available at*

https://www.today.com/news/al-jazeera-reporter-documentary-not-alleging-peyton-manning-

used-hgh-t64281 (quotation marks omitted).  The only allegation made with respect to the

Mannings, Davies insisted, was that Ashley Manning had received shipments of HGH:  "That's

it.  That's the allegation."  *Id*.

But the Dark Side also maintained its focus on Peyton Manning, touting how Sly "raised

one final astonishing question . . .  about one of the most beloved of American sportsmen."

Transcript of the Dark Side, 16-cv-00013, ECF Dkt. No. 26-4, at 31.  It included demonstrably

false statements suggesting that Sly and Peyton Manning had spent time together at the Guyer

Institute and that Sly was part of "a medical team that helped [Peyton] Manning recover" from

an injury in 2011.  *Id.*  In reality, the two men have never met, and Sly, a student intern, was not

part of any "medical team" at all.  Peyton Manning's name and images were also displayed

repeatedly in the documentary, as was footage of fans praising his reputation and leadership.  *Id.*

at 2, 18, 31.

In 2016, the NFL conducted its own investigation which fully cleared Manning of any

misconduct related to allegations of improper use of HGH or other illegal substances.  *See N.F.L.*

*Clears Peyton Manning of Doping Accusations*, The New York Times (July 25, 2016), *available*

*at* https://www.nytimes.com/2016/07/26/sports/football/peyton-manning-nfl.html?_r=1.
Although the allegations in The Dark Side against the Mannings were defamatory and false, and
Al Jazeera recklessly published Ashley Manning's private medical information, the family
ultimately decided against pursuing litigation so that they could simply put the matter behind
them and move on with their lives.

***Al Jazeera's Improper Subpoenas to Non-Party Gibson Dunn and Subsequent Subpoenas***

      After Zimmerman and Howard sued Al Jazeera for the claims made against *them* in The
Dark Side, Al Jazeera served a third-party subpoena on non-party Gibson Dunn seeking eleven
different and exceedingly broad categories of documents, all of which relate to Gibson Dunn's
legal representation of the Mannings—neither of whom is a party to this suit.  *See* Patterson
Decl., Ex. 3: Subpoena dated Sept. 28, 2017 ("Gibson Dunn Subpoena").[2]  Among other
requests, the Gibson Dunn Subpoena seeks "[a]ll non-privileged documents and
communications" "relating to Charlie Sly," "relating to Al Jazeera or Davies," "relating to the
representation of Peyton and/or Ashley Manning," "between Gibson Dunn and Davis Wright
Tremaine," "relating to [Peyton Manning's agent] Thomas Condon," and "relating to the Guyer
Institute."  *Id.* at 12-13.

      Upon receipt of the Subpoena, counsel for Gibson Dunn participated in meet-and-confer
teleconferences (on November 1 and 8, 2017) with Al Jazeera's counsel in a good faith effort to
limit its scope, come to a mutually agreeable solution to the disputed categories of documents,

---

[2]  The Gibson Dunn Subpoena was re-served on February 13, 2018, changing the place of
compliance from New York to the District of Columbia.  This subpoena is otherwise
identical to that dated September 23, 2017.  Patterson Decl., Ex. 6: Subpoena dated Feb. 13,
2018.  The two are referred to interchangeably in this memorandum as the "Gibson Dunn
Subpoena."

and better understand the Petitioners' theory of relevance with respect to the documents that they sought.  Following the initial meet-and-confers, Gibson Dunn served its Responses and Objections to the Gibson Dunn Subpoena on November 10, 2017.  Among other things, Gibson Dunn objected to the requests as seeking privileged and confidential information; information that Al Jazeera already has in its (or its counsel's) possession, custody or control; confidential medical information; and information that is irrelevant to Al Jazeera's defense against Zimmerman's and Howard's defamation claims.  Patterson Decl., Ex. 4: Non-Party Gibson, Dunn & Crutcher LLP's Responses and Objections to Petitioner's Subpoena, dated November 10, 2017.  Gibson Dunn also advised Al Jazeera that it had conducted a reasonable search for each category of document, and that aside from documents responsive to Requests Number 1, 2, and 4 that were already in the possession, custody, or control of Petitioners, it did not possess any other relevant, non-privileged documents.

Al Jazeera then intensified its campaign of harassment against the Mannings, serving additional subpoenas on Fleischer Communications and Phenix, both of whom assisted the Mannings and Gibson Dunn in formulating their response to Al Jazeera's accusations, in separate jurisdictions.  *See* Patterson Decl., Exs. 8 and 11: Subpoenas dated Dec. 1, 2017.  Those subpoenas contained requests that were nearly identical to the requests contained in the Gibson Dunn Subpoena.  In other words, instead of solely imposing the burden of these requests on Gibson Dunn, Al Jazeera multiplied the number of subpoenas in order to further harass and force concessions from the Mannings.[3]  Al Jazeera also took the extraordinary step of serving a

---

[3]  Al Jazeera has also now moved to compel materials and testimony from Phenix in the Southern District of Indiana, *Al Jazeera America, LLC, et al. v. Phenix Investigations, Inc.*, 1:18-mc-00011 (S.D. Ind. 2018).

document retention notice on the Guyer Institute, Ashley Manning's medical provider.  Patterson Decl., Ex. 13.

Counsel for Al Jazeera and Gibson Dunn also exchanged correspondence regarding the scope of the Gibson Dunn Subpoena (Patterson Decl., Exs. 14, 15, 16, and 17), and participated in four additional telephonic meet-and-confers on December 21, 2017, January 4, January 11, and January 17, 2018, as described in greater detail in the Patterson Declaration.  After Al Jazeera clarified that it was primarily interested in communications between McGill and Davis Wright Tremaine and in Sly-related information, Gibson Dunn objected.  But in an effort to try to compromise, Gibson Dunn offered to provide that information through documents and (1) a stipulation filed under seal regarding the undisputed facts surrounding McGill's communications and (2) a deposition by written question regarding Phenix's interactions with Sly.  Patterson Decl. ¶ 17.  Al Jazeera refused.

Then, over three weeks later, Al Jazeera served *two more subpoenas* on Gibson Dunn and Phenix—this time, seeking depositions from McGill and the Phenix investigators most knowledgeable about Phenix's interactions with Sly and his family.  Patterson Decl., Exs. 5 and 10: Subpoenas dated Feb. 7 & 9, 2018.

Al Jazeera's refusal to accept the compromise position offered by the Mannings— preferring instead to continue litigating the facts of the dispute between the Mannings and Al Jazeera (as if the Mannings were the plaintiffs in the underlying case)—is an intentional tactic to thwart the Mannings' efforts to avoid litigation.  Al Jazeera now seeks to drag them into the

present litigation by creating an unnecessary and invasive sideshow that would place the Mannings, rather than Al Jazeera, on trial.[4]

Despite Gibson Dunn's good faith efforts to productively narrow the scope of the non-party subpoenas, Al Jazeera has now moved to compel Gibson Dunn to produce material that is already in Al Jazeera's control or is irrelevant (or both), and to compel the Mannings' counsel to sit for a deposition despite the fact that Gibson Dunn has offered to provide all of the relevant information, including in a stipulation.  These are not reasonable discovery demands to make of non-parties, particularly here, where the information is not relevant to the actual issues before the Court and the burden imposed on non-parties—both in loss of privacy and in terms of cost—is substantial.  The subpoenas should be quashed, and any further discovery relating to the Mannings precluded.  They are not parties to this lawsuit, and they chose not to sue Al Jazeera and to move on with their lives.  They should be allowed to do so, free from further harassment and threat of disclosure of private medical information by Al Jazeera.

## LEGAL STANDARD

Al Jazeera's discovery requests far exceed the bounds of permissible discovery, particularly to a non-party.  The third-party subpoenas at issue do not present a routine discovery dispute.  First, the subpoenas seek discovery about Peyton and Ashley Manning—non-parties to this action—including confidential medical and privileged information.  Second, the

---

[4] For instance, in their letter of January 10, 2018, counsel for Al Jazeera wrote that "[t]he explanation of why Ms. Manning obtained (and presumably used) these highly restricted and regulated drugs for so long did not comport with any regulatory approved condition permitting the lawful prescribing of hGH."  Patterson Decl., Ex. 17: Ltr. from C. Scheeler to M. Hewett, dated Jan. 10, 2018, at 1.  Al Jazeera therefore continues to dispute the legitimacy of Ashley Manning's medical treatments, even though that is not at issue in this case, and only confirms that Al Jazeera is intent on further harassing the Mannings.

extraordinary question before the Court is whether *counsel* to a non-party can be compelled to disclose the non-party's private medical information—despite petitioners already being in possession of the purportedly relevant portions of that information, *and* despite the information's tenuous relevance to the underlying dispute—or whether the unduly broad and intrusive non-party subpoenas should be quashed.

In determining whether to grant Gibson Dunn's Motion to Quash, the Court can consider "the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011). It is well settled that "non-party status is . . . relevant in considering the burden" that a subpoena imposes on the recipient. *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). As a result, subpoenas served on non-parties require "a more demanding weighing" to determine whether the relevance of the requested materials justifies such an extraordinary imposition. *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 88 (D.D.C. 2010); *see also Premier Election Sols., Inc. v. Systest Labs Inc*., Civ. A. No. 09-1822 (WDM/KMT), 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009) ("While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated."). Accordingly, while discovery might be appropriately broad as among parties to a litigation, this dispute must be examined through a more exacting lens.

Moreover, discovery must be regulated with particular care when lawyers are themselves the target of broad discovery requests. *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-82 (D.D.C. 2011). And when the subpoena is served on attorneys for

non-parties to a dispute, the need for careful scrutiny is amplified because parties are "presumed

to have no need of a matter not relevant to the subject matter involved in the pending action."

*Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30 (D.D.C. 2007) (quotation

marks and citations omitted).

In addition to weighing the undue burden on non-parties and attorneys, courts may also

"quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter."

Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see also In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9

(D.D.C. 2010) (litigants are not permitted to seek discovery "that call[s] for privileged matter or

would cause an undue burden") (quotation marks and citations omitted).  Similarly, courts may

quash subpoenas seeking discovery that is "unreasonably cumulative or duplicative, or [that] can

be obtained from some other source that is more convenient, less burdensome, or less

expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir.

2007) (applying Rule 26 to Rule 45 subpoenas); *Hesco Bastion Ltd. v. Greenberg Traurig LLP*,

Civ. A. No. 09-0357 (RWR/DAR), 2009 WL 5216932, at *3 (D.D.C. Dec. 23, 2009).

Accordingly, where, as here, non-party subpoenas seek privileged, duplicative, burdensome, and

irrelevant information, courts do not authorize discovery, but instead routinely modify or quash

civil subpoenas.  *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir.

1984); *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 170 (D.D.C. 1998).

## ARGUMENT

## I.  AL JAZEERA'S MOTION TO COMPEL PRIVATE AND PRIVILEGED INFORMATION FROM THE MANNINGS' LEGAL COUNSEL SHOULD BE DENIED.

Al Jazeera's Motion to Compel requests that the Court order Gibson Dunn to produce

two particular categories of information relating to its representation of the Mannings.  The first

category includes "[a]ll documents relating to the conversations between GDC and Davis Wright

Tremaine LLP lawyers during December 2015 pertaining to this matter" (for which Petitioners are also seeking a deposition of McGill), and the second category includes "[a]ll documents relating to Phenix's interactions with Charlie Sly or Charlie Sly's family." Pet'rs' Proposed Order; *see also* Patterson Decl., Ex. 17: Ltr. from C. Scheeler to M. Hewett, dated Jan. 10, 2018.

The first category of materials, relating to Ashley Manning's private medical information is already in Al Jazeera's possession (albeit disclosed by McGill to Davis Wright Tremaine off the record, as memorialized by Al Jazeera's counsel's own correspondence, and not for publication) and is irrelevant to this lawsuit in any event. Requiring Ashley Manning's own attorney to provide documents and deposition testimony about sensitive medical information would be needlessly intrusive and harassing. The second category, the Phenix-Sly interactions, includes information relating to Gibson Dunn and Phenix's investigation that was not known to Al Jazeera prior to the airing of The Dark Side and is therefore categorically irrelevant to Al Jazeera's state of mind when it elected to ignore Sly's recantation and proceed to publish his discredited statements about Zimmerman and Howard. Because the burden imposed on Gibson Dunn and the Mannings far outweighs any potentially probative value of the requested materials, Al Jazeera's Motion to Compel both categories of information should be denied.

### A.    Al Jazeera's Effort to Compel Production of Documents and Testimony Exposing Ashley Manning's Private Medical Information Is Unduly Burdensome and Wholly Unnecessary.

Al Jazeera argues that it is entitled to information about McGill's conversations with Davis Wright Tremaine because those conversations demonstrate that Charlie Sly correctly alleged that *Ashley* Manning had received HGH, and that Al Jazeera's pre-broadcast knowledge that Sly had not made up that particular allegation about Ashley Manning constitutes "relevant evidence of Al Jazeera's lack of malice in broadcasting" its allegations concerning Zimmerman and Howard and, indeed, "corroborat[es]" those allegations. Pet'rs' Mem. of Law at 6, 10. That

claim fails first because Al Jazeera's extremely attenuated theory of relevance fails to clear even

the low bar for legal relevance in civil discovery matters.  But even more fundamentally, Al

Jazeera already has all the information it seeks, as the exhibits to its Motion to Compel

demonstrate.  And because none of that information is in dispute, Gibson Dunn offered to enter

into a stipulation of those facts.  Yet Al Jazeera rejected that offer, apparently because it wants to

make a trial witness of McGill and have him testify about his client's private medical

information.  That result, if it is even permissible under federal law, *see* 45 C.F.R. § 164.508,

would amount to a sideshow that distracts from the merits of Plaintiffs' claims while wantonly

harming the privacy interests of Ashley Manning—harm that could not be even remotely

justified by the reed-thin theory of relevance articulated by Al Jazeera.  If Al Jazeera is permitted

to advance the counter-intuitive defense that Sly's knowledge of Ashley Manning's prescription

medication validated his statements about Zimmerman and Howard, it is vital that this Court

enter a protective order that accords proper regard for Ashley Manning's privacy interests.

### 1.    The Information that Al Jazeera Seeks to Compel Is Not Relevant.

Al Jazeera claims that the documents and testimony it seeks concerning Ashley

Manning's medical treatments "fit squarely within the parameters of permissible discovery," and

are "relevant" to demonstrate "Al Jazeera's lack of malice in broadcasting" its allegations

concerning Zimmerman and Howard.  *See* Pet'rs' Mem. of Law at 10.  In fact, for two

independent reasons, that information does not even satisfy the baseline standard for legal

relevance, nor is it likely to lead to such evidence.  Al Jazeera's requests therefore should be

quashed.  *See, e.g.*, *Porter v. Pinkerton Gov't Servs., Inc.*, 304 F.R.D. 24, 28 (D.D.C. 2014)

(discovery tools may only be used to obtain information or materials that "may be relevant to a

claim or defense or likely to lead to such evidence") (quotation marks and citation omitted);

*Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22, 27 (D.D.C. 2011) (discovery only

permitted if it is "reasonably calculated to lead to the discovery of admissible evidence")
(quotation marks and citation omitted).

*First*, information about Ashley Manning's medical treatments is not relevant to Al
Jazeera's actual malice defense because the only information that could be relevant to Al
Jazeera's state of mind is the information Al Jazeera's editorial staff received prior to
publication, and, as the exhibits to Al Jazeera's motion demonstrate, Al Jazeera received that
information not from McGill, but from its lawyers at Davis Wright Tremaine.  And it is *only* that
information that Al Jazeera received—again, not from McGill, but from Davis Wright
Tremaine—that possibly could bear on Al Jazeera's state of mind and its analysis of Sly's
credibility.  So, if Ashley Manning's medical information has any role to play in this litigation—
and it should not—all that would be relevant would be the summaries of the information that
Davis Wright Tremaine communicated to Al Jazeera's editorial staff, because that is the
information that Al Jazeera's editorial staff actually considered—not any information from
McGill.

*Second*, McGill's communications with Al Jazeera's pre-publication counsel do not shed
any light at all on the veracity of Sly's allegations that he supplied Zimmerman and Howard with
steroids, much less "corroborate" those allegations.  To demonstrate that Sly's allegations
concerning Peyton Manning were fabricated, REDACTED
Al Jazeera apparently credited that
information.  It chose not to include in its documentary any of Sly's statements explicitly
alleging that Peyton Manning had used HGH, and Deborah Davies later said on national

television that The Dark Side made no allegation about Peyton Manning at all, but instead reported only the manifestly un-newsworthy allegation that Ashley Manning had received HGH.

Al Jazeera does not argue—because it cannot plausibly do so—that information McGill provided about Ashley Manning directly "corroborate[d]" Sly's allegation that he supplied Zimmerman and Howard with Delta-2.  In fact, the information about Ashley Manning's medical treatments could not and did not corroborate that Sly had supplied *any* athlete with performance-enhancing drugs.  That information at most corroborated one thing that Al Jazeera already had confirmed—that Charlie Sly had interned briefly at the Guyer Institute in Indiana— and also that Sly had access to Guyer Institute patient records, which he apparently was willing to unlawfully disclose.

Al Jazeera does not explain how information demonstrating that Sly had not fabricated the allegation that Ashley Manning had received shipments of HGH made Sly's entirely distinct allegations that he personally supplied Delta-2 to Zimmerman and Howard any more credible except to say that the information McGill provided "served as confirmation of Sly's credibility and bona fides more broadly." Pet'rs' Mem. of Law at 10.  But that is utterly ludicrous.  The information McGill provided demonstrated (apparently to Al Jazeera's satisfaction) that Sly's many lurid allegations that Peyton Manning used HGH were false.  Al Jazeera's argument essentially is that because it could not be shown that *everything* Charlie Sly said was made up, it was entitled to credit *anything* he said that had not been disproven specifically.  The information about Ashley Manning is no more relevant to determining whether Al Jazeera acted with actual malice in broadcasting Sly's allegation that he had supplied Zimmerman and Howard with drugs than the fact that Charlie Sly did not lie about his name.  Al Jazeera's theory of "corroboration" is boundless and cannot satisfy the test of legal relevance, particularly in view of implications for

the undisputedly strong privacy interests of non-party Ashley Manning in forestalling further dissemination of her private medical information.

> **2.  Al Jazeera Already Possesses the Information That It Seeks to Compel.**

Aside from the lack of relevance, Al Jazeera's effort to require Gibson Dunn to produce communications with Davis Wright Tremaine is manifestly inappropriate because Al Jazeera already has those documents in its possession.  Al Jazeera's demand that Gibson Dunn produce the same documents is abusive and should be quashed.  And to the extent Al Jazeera claims not to have some subset of documents, it should obtain them from its counsel at Davis Wright Tremaine, which is an "other source that is more convenient, less burdensome, or less expensive" than counsel for a non-party.  Fed. R. Civ. P. 26(b)(2)(C)(i); *Freeman v. Seligson*, 405 F.2d 1326, 1335 (D.C. Cir. 1968).

> **3.  Al Jazeera's Effort to Compel the Deposition of a Non-Party's Attorney Is Abusive and Unnecessary.**

For similar reasons, Al Jazeera's subpoena for a deposition of McGill also should be quashed as abusive.  Al Jazeera's own motion makes clear that it already has in its possession all the facts concerning McGill's communications with Davis Wright Tremaine.  *See* Exs. C, D, & E to the Stevens Decl.  Because those facts are not in dispute, Al Jazeera's demand to depose McGill thus is, at best, "cumulative or duplicative" and unduly burdensome to the counsel of a non-party.  Fed. R. Civ. P. 26(b)(2)(C)(i).  And Al Jazeera's demand for a live deposition is particularly unwarranted in light of Gibson Dunn's offer to enter into a stipulation that sets forth the pertinent facts relayed by McGill to Davis Wright Tremaine and which could be filed under seal in order to protect the privacy interests of Ashley Manning.  In meet-and-confer discussions, Al Jazeera indicated a preference for McGill to serve as a live trial witness, but that only underscores the abusiveness of Al Jazeera's request.  There is no need—and it would be

inappropriate—to compel a lawyer to testify about a non-party client's highly sensitive, private

medical information when (1) those facts are of questionable (at best) relevance; (2) the sought-

after facts are in the possession of the party seeking to compel testimony; (3) those facts are not

in dispute; and (4) the party demanding the testimony could provide more relevant testimony

from a witness under its own control.  Al Jazeera's deposition subpoena to McGill should be

quashed as unreasonably cumulative (in addition to seeking irrelevant information).

> **4.      Al Jazeera's Effort to Compel Private Medical Information Is
> Inappropriate and Abusive.**

Quashing Al Jazeera's subpoenas seeking information about Ashley Manning's medical

information is still further justified by the fact that federal law generally *precludes* public

disclosure of private medical information, reflecting the strong federal policy favoring a patient's

right to protect the privacy of such information.  For instance, the Health Insurance Portability

and Accountability Act ("HIPAA") precludes physicians or others from disclosing confidential

medical information without the express consent of the patient, 45 C.F.R. § 164.508, or subject

to a court order, 45 C.F.R. § 164.512(e)(1).  Related statutory enactments in Washington, D.C.

and Indiana (where the Guyer Institute is located) similarly preclude disclosure, particularly

when the patient has not put her own health at issue.  D.C. Code § 14-307; Ind. Code § 34-46-3-1

(recognizing, in each jurisdiction, a physician-patient privilege that would preclude the

disclosure of medical records).  In part for this reason, courts have routinely held that private

medical information *must not* be publicly disclosed, especially when the medical information

concerns a non-party.  *See, e.g.*, *Gibson v. Milwaukee Cty.*, Civ. A. No. 12-CV-657, 2015 WL

12964665, at *1 (E.D. Wis. Mar. 26, 2015) ("It is clear that non-party coworkers have a privacy

interest in avoiding disclosure of their medical information."); *Hicks v. Wegmans Food Mkt.*,

Civ. A. No. 09-624 (JEI/AM), 2011 WL 499368, at *1 n. 2 (D.N.J. Feb. 10, 2011) (noting the

"legitimate interest in maintaining the confidentiality" of a non-party's medical history "in order to protect the non-party's privacy").

Al Jazeera's subpoenas to Ashley Manning's attorneys are an effort to obtain information federal and state law would prohibit Al Jazeera from obtaining from Ashley Manning's medical providers, and amount to an end-run around HIPAA.  Recognizing this, Al Jazeera claims that its own broadcast of Ashley Manning's medical information, and the reporting in the media that followed in the immediate aftermath of Al Jazeera's broadcast, somehow voids HIPAA's statutory protections.  Pet'rs' Mem. of Law at 11.  That assertion is unsupported and insupportable.  Under HIPAA, each disclosure of private medical information must be consented to or ordered by a court; one disclosure does not operate to authorize another.
45 C.F.R. § 164.508(c) (detailing standards for a proper authorization).  No less stringent requirements should be applied when the information is sought from a patient's attorney than from her health care provider.  Moreover, the detailed information about Ashley Manning's medical treatments that Al Jazeera seeks to have McGill testify about has *never* been disclosed to the public.  The law recognizes and protects Ashley Manning's interest in maintaining the privacy of her medical treatments.  Al Jazeera's efforts to have Ashley Manning's attorneys disclose this information should be rejected as contrary to federal policy and an unreasonably burdensome imposition on a non-party, who is not a public figure, much less a professional athlete.

If this Court is inclined to permit Al Jazeera to seek discovery from Gibson Dunn and McGill concerning Ashley Manning's medical treatments—and it should not—it is imperative that this Court enter a protective order that accords Ashley Manning's medical information the highest level of protection.  For instance, when a patient's medical information is sought by

subpoena and the subpoena is objected to, HIPAA allows disclosure only if a "qualified

protective order" is sought to govern the use and disposal of the protected health information.

45 C.F.R. § 164.512(e)(iv)(B).  A qualified protective order would be similarly appropriate in

this case, and should be entered if Ashley Manning's private medical information is to be

introduced into these proceedings.

And because it could be much more easily governed and protected by such a protective

order, a stipulation as to the undisputed contents of McGill's communications with Davis Wright

Tremaine (along the lines offered by Gibson Dunn in the meet-and-confer process in an effort to

reach a compromise) would be a far more appropriate means of adducing whatever facts are

actually relevant to these proceedings than a live deposition and possibly live testimony would

be.  In the event of a trial, live testimony on this topic could necessitate closing the courtroom.

But there are no facts necessary to show that McGill confirmed that Ashley Manning had

received shipments of HGH as prescribed medication REDACTED

REDACTED that could not simply be stipulated to, and the stipulation filed under

seal.  And if Al Jazeera feels that it needs a live witness, it should produce its pre-publication

counsel to testify, subject to conditions to safeguard Ashley Manning's privacy.  After all, it is

those lawyers at Davis Wright Tremaine—not McGill—who communicated information to Al

Jazeera's editorial staff that they supposedly took on board as "confirmation of Sly's credibility

and bona fides."  Pet'rs' Mem. of Law at 10.

Gibson Dunn should not be conscripted to assist Al Jazeera in violating its clients'

fundamental privacy rights.  Al Jazeera's Motion to Compel documents reflecting McGill's

communications with Davis Wright Tremaine, and its subpoena for the deposition of McGill

should be denied, and the subpoenas should be quashed.

**B.      Information Concerning the Non-Parties' Interactions with Al Jazeera's Informant of Which Al Jazeera Had No Knowledge Prior to the Airing of The Dark Side Is Categorically Irrelevant and Al Jazeera's Motion to Compel These Documents and Testimony Is Therefore Unduly Burdensome.**

Al Jazeera's effort to compel Sly-related material is similarly improper.  Al Jazeera argues that information relating to Sly's December 24, 2015 recantation is relevant because Sly was the source of allegations against the Mannings, and also the source of the allegations regarding Zimmerman's and Howard's alleged use of Delta-2, and because Sly recanted his statements in a categorical fashion.  Pet'rs' Mem. of Law at 10-11.  Al Jazeera argues that information concerning Sly's recantation in Gibson Dunn's possession may inform whether Al Jazeera acted reasonably in disregarding Sly's recantation.  *Id.* at 10 (Al Jazeera "intends to show that it believed that Sly was telling the truth . . . and that Sly's 55-second nervous recantation of everything he had ever said was not credible"); *see also* Patterson Decl., Ex. 14: Ltr. from R. Stevens to M. Hewett, dated Dec. 8, 2017.

The fundamental and fatal flaw in this argument is that documents relating to Sly's recantation that Al Jazeera did not already have in its possession could not possibly have informed Al Jazeera's decision to disregard Sly's recantation.  Any documents or communications relating to Sly that Gibson Dunn (or Phenix) might produce now could not be probative of Al Jazeera's defense that it did not act with malice in relying on Sly in December 2015 because Al Jazeera was not in possession of those documents or communications at the time that it made the (ill-advised) decision to disregard Sly's recantation.  Al Jazeera's editorial decision could only have been informed by information it had in hand, at the time of publication. Documents in Gibson Dunn's possession relating to Sly, therefore, are not relevant to any intent defense Al Jazeera might seek to advance in this suit.

Al Jazeera's claim that documents relating to Sly's recantation are relevant to help demonstrate that Sly's initial statements were *truthful* similarly fails.  Pet'rs' Mem. of Law at 6; *see also* Patterson Decl., Ex. 14: Ltr. from R. Stevens to M. Hewett, dated Dec. 8, 2017.  Al Jazeera speculates, without evidence, that the Mannings or Gibson Dunn somehow coerced Sly's recantation video and the two emphatic recantation emails he sent to Al Jazeera.  But even if that were so (and it is not), a suggestion that Sly spoke falsely when he made his recantations would not remotely demonstrate that any of his braggadocio to Al Jazeera's undercover operative posing as a drug-seeking aging athlete was true, much less that the specific statements Sly made concerning Zimmerman and Howard were true.  Nor would it make Al Jazeera's decision to rely wholly on Sly's outlandish bluster, without any effort to verify or corroborate it before publishing, any less reckless.  The probative value of evidence concerning the genesis of Sly's recantation is zero.  *See, e.g.*, *Sourgoutsis v. United States Capitol Police*, 2017 WL 5633088, at *4 (D.D.C. Nov. 21, 2017) ("Nothing in the [requested material] has any tendency to make the existence of any 'fact [that] is of consequence' to the resolution of . . . [the] claims more probable or less probable than it otherwise would be.") (citation omitted; first alteration in original).  On the other hand, the existence of the recantation that was known to Al Jazeera means Al Jazeera was relying on a source that they "had obvious reasons to doubt."  *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003) (quotation marks and citation omitted); *see also Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 280-81 (D.D.C. 2017).

Moreover, Al Jazeera's effort to compel these documents (and demand a privilege log, despite previous representations that they would not) create an acute burden on Gibson Dunn as the Mannings' counsel.  Courts have routinely held that any purported value of the materials sought must be weighed "against the burden of production on the non party," *Fears v.*

*Wilhelmina Model Agency, Inc.*, No. 02 CIV. 4911 (HB)(HBP), 2004 WL 719185, at \*1 (S.D.N.Y. Apr. 1, 2004), and courts must evaluate whether "the potential harm caused by production outweighs the benefit," *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (quotation marks and citation omitted). Furthermore, courts have held that costly, time-consuming, and resource-intensive compliance with a non-party subpoena represents an undue burden, particularly when lawyers are involved. *See N. Carolina Right to Life, Inc.*, 231 F.R.D. at 52. In addition, much of the material sought by the Gibson Dunn Subpoena, including communications with and between Gibson Dunn, Phenix, the Guyer Institute, Fleischer Communications, and Condon is clearly protected by the attorney-client privilege, attorney work product doctrine or other applicable protections. *See* Section II.A, *infra*.

Compliance here will involve a fulsome review of the Mannings' entire client files—necessarily imposing a significant expenditure of resources for review and related redactions. This burden outweighs any purportedly probative value to Al Jazeera, particularly in light of the irrelevance of Gibson Dunn's and Phenix's communications with Sly to Al Jazeera's decision to rely on his recanted statements, which was made without access or reference to Gibson Dunn's documents at that time. Accordingly, Al Jazeera's Motion to Compel this information should be denied.

## II.     THE REMAINING DOCUMENT REQUESTS SHOULD BE QUASHED, AND A PROTECTIVE ORDER ENTERED TO PREVENT FURTHER HARASSMENT OF THE MANNINGS.

Despite Al Jazeera's current focus on the two categories of information discussed above, the Gibson Dunn Subpoena also includes numerous other improper discovery requests and should be quashed in its entirety. Although each request in the Gibson Dunn Subpoena purports to seek only "non-privileged documents and communications" (which would also preclude the creation of a privilege log, despite the contradictory request for one in Petitioners' proposed

24

order, *see* Pet'rs' Proposed Order), the entire purpose of the Subpoena is to obtain information

that Gibson Dunn might possess as a *consequence* of its role as legal counsel to the Mannings,

including material protected by the attorney-client privilege or other applicable privileges.  For

this reason, the Gibson Dunn Subpoena should be quashed in its entirety.  In addition, in

recognition of the undue burdens Al Jazeera's unrelenting pursuit has imposed upon Gibson

Dunn and the Mannings, Gibson Dunn respectfully requests that the Court enter a protective

order to bar further discovery from or about—and harassment of—the Mannings, and award

attorneys' fees incurred to date in defending against the improper non-party subpoenas.

A.    **The Balance of the Documents Sought by Al Jazeera Are All Privileged or Already in the Possession of Al Jazeera and Not Properly the Subject of Discovery.**

The Gibson Dunn Subpoena seeks a total of eleven categories of documents, all of which

relate to Gibson Dunn's legal representation of the Mannings.  Patterson Decl., Ex. 3: Gibson

Dunn Subpoena at 12-13.  However, the federal rules bar discovery of materials protected by the

attorney-client privilege, Fed. R. Civ. P. 45(d)(3)(A)(iii), and any materials created by Gibson

Dunn (or at Gibson Dunn's direction) are protected from disclosure by the work product

doctrine.  *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981); Fed. R. Civ. P. 26(b)(3)(A).

These protections are fatal to the Gibson Dunn Subpoena, which should be quashed in its

entirety.

As an illustration, Requests Number 3, 7, 9 and 10 call outright for privileged material.

For instance, Request Number 3 broadly seeks all "documents and communications relating to"

Gibson Dunn's "representation of" the Mannings "in connection with 'The Dark Side'"—in

other words, documents about the entire scope of Gibson Dunn's representation of the Mannings.

Patterson Decl., Ex. 3: Gibson Dunn Subpoena at 12.  However, the attorney-client privilege

protects documents from disclosure "when the information *is the product of an attorney-client*

*relationship* and is maintained as confidential between the attorney and client," and when the
"client's communications [are] made with the intention of confidentiality."  *Banks v. Office of
Senate Sergeant-at-Arms*, 222 F.R.D. 1, 3 (D.D.C. 2004) (quotation marks and citations omitted;
emphasis added).  The Mannings retained Gibson Dunn to represent them in legal matters related
to the false allegations in The Dark Side, specifically in anticipation of litigation against Al
Jazeera itself (creating a troubling situation where Al Jazeera seeks information about a case that
the Mannings contemplated filing against it).  Any information in Gibson Dunn's possession
relating to its representation is therefore the protected "product of an attorney-client
relationship."[5]  Moreover, "[t]he attorney-client privilege . . . applies to facts divulged by client
to attorney, but . . . also includes opinions from attorney to client based on those facts."  *Brinton
v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980).  Therefore, any communications between
Gibson Dunn and the Mannings relating to their legal representation is protected by the
attorney-client privilege and cannot be produced by Gibson Dunn.[6]

 Similarly, Request Number 5 calls for "[a]ll non-privileged documents and
communications relating to Thomas Condon [Mr. Manning's agent]."  Patterson Decl., Ex. 3:

---

[5] To the extent that the Gibson Dunn Subpoena seeks arguably non-privileged communications
relating to Gibson Dunn's representation of the Mannings in connection with The Dark
Side—such as contracts with the other non-parties, for example—Al Jazeera has not
suggested how or why such documents could be relevant to its legal defense against
Zimmerman's and Howard's defamation claims.  *See Meijer, Inc.*, 245 F.R.D. at 30 (moving
party bears the burden of proving material is discoverable).

[6] Significantly, the privilege belongs to the Mannings—and not to Gibson Dunn—and is
therefore not Gibson Dunn's to waive.  *SEC v. Nat'l Student Mktg. Corp.*, 18 Fed. R. Serv.
2d 1302, 1304 (D.D.C. 1974) (noting that the attorney-client privilege "of course belongs to
the client and is his alone to waive"); *see also Pendergrass v. U.S. Dep't of Justice*, Civ. A.
No. 04-112 (CKK), 2005 WL 1378724, at *5 (D.D.C. June 7, 2005) ("the attorney-client
privilege belongs to the client").

Gibson Dunn Subpoena at 12.  However, there are no such non-privileged documents because "the attorney-client privilege shelters confidential communications between an attorney and client, including their agents," where, as here, the "primary purpose" of those documents and communications was to "seek[ ] or provid[e] legal advice." *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 187 (D.D.C. 2014).  Indeed, it is well settled "that the attorney-client privilege protects communications not only between a client and an attorney, but also between their agents." *Baylor v. Mitchell Rubenstein & Assocs.*, 130 F. Supp. 3d 326, 330 (D.D.C. 2015).  Therefore, any communications between Gibson Dunn and Thomas Condon, Peyton Manning's agent, are equally protected from disclosure as communications directly between Gibson Dunn and the Mannings.  And to the extent that those communications relate to Al Jazeera or The Dark Side (*i.e.*, the scope of Gibson Dunn's representation of the Mannings), they relate to Gibson Dunn's representation of its clients, and are protected by the attorney-client privilege and/or work product doctrines.

The same is true of Requests Number 6, 9, and 10, which seek documents related to the investigation that Gibson Dunn conducted on behalf of the Mannings with the assistance of Phenix.  Patterson Decl., Ex. 3: Gibson Dunn Subpoena at 12-13.  Gibson Dunn commissioned and directed the investigation in order to prepare a legal strategy, and potentially engage in litigation against Al Jazeera.  Documents relating to the investigation conducted by Phenix at Gibson Dunn's direction are similarly protected under the attorney work product doctrine. *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) ("work product created by non-attorneys can also be protected if it is so intertwined with the legal analysis as to warrant protection") (citations and quotation marks omitted); *see also Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 18 (D.D.C. 2016) (explaining that the

"[w]ork product protection is usually broader than the attorney-client privilege because it is not restricted solely to confidential attorney-client communications" and includes all "work performed in anticipation of litigation").  Therefore, materials generated as a result of this investigation on behalf of the Mannings are precluded from disclosure by the work product doctrine and attorney-client privilege.

To the extent that non-privileged documents exist, Al Jazeera already possesses them and they are therefore not properly the subject of a subpoena, as noted in Section I.A, *supra*.  For instance, Request Number 1 calls for "any communications relating to [Charlie] Sly between Gibson Dunn and Davis Wright Tremaine LLP," and Request Number 2 includes a request for "any communications between Gibson Dunn and Al Jazeera."  Patterson Decl., Ex. 3: Gibson Dunn Subpoena at 12.  Even more starkly, Request Number 4 seeks "[a]ll non-privileged documents and communications between Gibson Dunn and Davis Wright Tremaine LLP or any of [Davis Wright Tremaine's] agents, representatives, attorneys, accountants, investigators, consultants, and any other person or entity acting on [Davis Wright Tremaine's] behalf," meaning that the entire Request is limited to documents already in the possession of Al Jazeera. *Id*.  It is inappropriate to require Gibson Dunn to produce such material because they are—by definition—either in the possession of Al Jazeera or Davis Wright Tremaine, Al Jazeera's legal counsel.  *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (stating that "[d]iscovery must be limited . . . if the discovery sought is unreasonably cumulative or duplicative") (quotation marks and citation omitted).  All of the remaining requests in the Gibson Dunn Subpoena should therefore be quashed.

**B.     The Court Should Enter a Protective Order and Award Reasonable Attorneys' Fees to Prevent Further Harassment of the Mannings.**

In light of Al Jazeera's unprincipled refusal to accept Gibson Dunn's offers of a compromise position, and their unrelenting pursuit of the Mannings, Gibson Dunn respectfully requests that the Court both enter a protective order to forestall future invasions of the Mannings' privacy interests, and award attorneys' fees for the costs and expenses incurred in defending against these baseless discovery requests.

A protective order barring further discovery from the Mannings or their representatives is warranted given Al Jazeera's blatant violation of Ashley Manning's privacy to date, and service of multiple, duplicative subpoenas on representatives of the Mannings.[7]  *See* Fed. R. Civ. P. 26(c)(1) (a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").  A protective order "may forbid disclosure altogether, or, among other measures, 'limit[ ] the scope of disclosure or discovery to certain matters.'"  *Maverick Entm't Grp., Inc. v. Does 1-2,115*, 810 F. Supp. 2d 1, 10 (D.D.C. 2011) (quotation marks and citation omitted; alteration in original).  Here, Al Jazeera is clearly seeking information that is altogether irrelevant, already in its possession, or protected by the attorney-client privilege or otherwise shielded from disclosure.  Moreover, Al Jazeera has expressed an unapologetic willingness to invade Ashley's Manning's private and confidential medical information—including by indicating that they may yet serve a subpoena on her medical provider, the Guyer Institute.  Moreover, the information sought is not relevant to this case, and

---

[7]  For instance, Al Jazeera has made no effort to explain why it needs to seek Sly-related material from both Gibson Dunn and Phenix.  Mot. to Compel Discovery from Phenix Investigations, Inc., *Al Jazeera America, LLC, et al. v. Phenix Investigations, Inc.*, 1:18-mc-00011 (S.D. Ind. 2018), ECF Dkt. No. 3.  Seeking identical information from two non-parties is impermissibly cumulative and duplicative.

the discovery requests are grossly overbroad and harassing.  Al Jazeera's improper discovery

requests have not only harassed the Mannings in attempt to drag the Mannings into this case,

they also have forced the Mannings to incur significant expense to defend against the requests.

 "'[A]lthough [Rule 26(c)] contains no specific reference to privacy or to other rights or

interests that may be implicated, such matters are implicit in the broad purpose and language of

the Rule.'"  *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004)

(quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35 n.21 (1984); second alteration in

original).  For this reason, "in exercising their discretion under the rule, courts have long

'recognized that interests in privacy may call for a measure of extra protection.'"  *In re Sealed*

*Case (Med. Records)*, 381 F.3d at 1215 (citation omitted); *see Pearson v. Miller*, 211 F.3d 57, 72

(3d Cir. 2000) (noting that "[l]egitimate interests in privacy are among the proper subjects of"

Rule 26(c)'s "protection.").  This is particularly so when a non-party is involved.  *N. Carolina*

*Right to Life, Inc.*, 231 F.R.D. at 51.  The concerns regarding privacy are especially acute where

medical information is at stake.  *See In re Sealed Case (Med. Records)*, 381 F.3d at 1217

(concluding that the district court abused its discretion by requiring the District of Columbia to

produce all of the appellant's Mental Retardation and Developmental Disabilities Administration

files, including his medical records, in part because of the "breathtaking" "scope of [the]

intrusion into the appellant's privacy" and the likelihood that the file contained "documents

that—although hugely invasive of the appellant's privacy—are of only marginal relevance.").

 The protective order that has been entered between the parties does not sufficiently

protect these substantial privacy interests.  Protective Order, ECF Dkt. No. 87.  Although the

protective order allows the parties in the underlying litigation to designate certain documents

containing medical information as "Highly Confidential," it does nothing to prevent further

disclosure of the Mannings' personal information or to bar additional intrusive discovery into the private lives of these innocent third parties.  A broader protective order is necessary to protect the Mannings from incurring additional economic costs or emotional stress stemming from the disclosure of information possessed by Davis Wright Tremaine about Ashley Manning and from any future discovery requests from Al Jazeera into the Mannings' private and personal information.  Gibson Dunn therefore respectfully requests that the Court enter a protective order (1) requiring that any and all information regarding Ashley Manning's medical information remain permanently under seal and (2) prohibiting Al Jazeera from serving any additional third-party subpoenas on the Mannings, their legal representatives or agents, their medical providers, or any other non-party seeking information relating to the Mannings in this case.

Gibson Dunn also respectfully requests that the Court award reasonable costs and attorneys' fees for the needless time and effort expended defending against these demands, and, if necessary, complying with these non-party discovery requests.  Fed. R. Civ. P. 45(d)(1) (authorizing attorneys' fees as a sanction for unduly burdensome subpoenas).  In fact "Rule 45 requires precisely that . . . the district court shall protect a non-party from significant expense" and that "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant."  *Linder v. Calero-Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001) (quotation marks omitted); *see also Alberts v. HCA Inc.*, 405 B.R. 498, 502-03 (D.D.C. 2009) (attorneys' fees may be ordered in case of "blatant abuse of the subpoena power," such as when parties act in "bad faith" or with some "improper purpose") (citations omitted); *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012) (assessment of sanctions turns on the "harms inflicted" on subpoena recipient). Such relief is appropriate here given the effort Gibson Dunn has made to compromise with Al

Jazeera despite the proliferation of subpoenas, all designed to further harass non-parties: the Mannings.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Petitioners' Motion to Compel should be denied, and Respondent's Motions to Quash Petitioners' Subpoena and for Protective Order should be granted, and attorneys' fees and costs awarded.

Dated:  March 16, 2018

Respectfully submitted,

/s/  *Matthew D. McGill*

Matthew D. McGill (D.C. Bar # 481430)
Chantale Fiebig (D.C. Bar # 487671)
Edward C. Patterson (D.C. Bar # 1023902)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, D.C. 20036
(202) 887-3680

*Attorneys for Non-Party*
*Gibson, Dunn & Crutcher LLP*