## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, *et al.,* | ) |
| | ) |
| Petitioners, | ) |
| | ) Case No. 16-cv-13 (KBJ/RMM) |
| v. | ) Case No. 16-cv-14 (KBJ/RMM) |
| | ) |
| GIBSON, DUNN, & CRUTCHER, LLP | ) Related Case No. 18-mc-45 (RMM) |
| | ) |
| Respondent. | ) **\*SEALED\*** |
| | ) |
| | ) |
| AL JAZEERA AMERICA, LLC, *et al.,* | ) |
| | ) |
| Petitioners, | ) |
| | ) Case No. 18-mc-45 (RMM) |
| v. | ) |
| | ) Related Case No. 16-cv-13 (KBJ/RMM) |
| PHENIX INVESTIGATIONS, INC. | ) Related Case No. 16-cv-14 (KBJ/RMM) |
| | ) |
| Respondent. | ) **\*SEALED\*** |
| | ) |

## <u>MEMORANDUM OPINION</u>

This matter involves several discovery disputes regarding subpoenas issued by Petitioners Al Jazeera America, LLC, Al Jazeera Media Network, and Al Jazeera International (USA), Inc. (collectively, "Al Jazeera"). In *Zimmerman v. Al Jazeera America, LLC, et al*, 16-cv-13 (D.D.C.), Al Jazeera moves to compel Gibson, Dunn, & Crutcher LLP ("GDC") to produce (1) documents relating to conversations between GDC and Davis Wright Tremaine LLP ("DWT") lawyers; (2) documents relating to Phenix Investigations, Inc.'s ("Phenix's") interactions with Charles Sly a/k/a Charlie Sly ("Mr. Sly") or his family; and (3) witness Matthew McGill, a GDC attorney, for a deposition on this subject matter. *See* Pet'rs' Mem. Supp. Mot. Compel at 12–13, 16-cv-13, ECF No. 84-1 ("Al Jazeera's GDC Br."); *see also* Mot. Compel, 16-cv-13, ECF No.

166 (redacted version of identical Motion).  GDC opposes the Motion to Compel, and cross-moves to quash the subpoenas, cross-moves for a protective order, and asks the Court to award attorneys' fees and costs.  *See* Resp't's Mem. Opp'n Mot. Compel and Supp. Cross-Mots. Quash and Protective Order at 31, 16-cv-13, ECF No. 89-1 ("GDC's Br.").

In *Al Jazeera America, LLC, et al. v. Phenix Investigations, Inc.*, 18-mc-45 (D.D.C.), Al Jazeera moves to compel Phenix to produce (1) documents relating to Phenix's interactions with Mr. Sly or his family; and (2) the person(s) most knowledgeable about this subject matter for deposition.  *See* Pet'rs' Mem. Supp. Mot. Compel at 11, 18-mc-45, ECF No. 3 ("Al Jazeera's Phenix Br.").  Phenix opposes the Motion to Compel, and cross-moves to quash the subpoenas. *See* Resp't's Mem. Opp'n Mot. Enforce and Supp. Cross-Mot. Quash, 18-mc-45, ECF No. 16 ("Phenix Br."); Cross-Mot. Quash, 18-mc-45, ECF No. 18.

Because the discovery disputes in 16-cv-13 and 18-mc-45 relate to the same facts, legal analysis, and underlying litigation, the Court evaluates the Motions and Cross-Motions together. Having considered the relevant briefing,[1] the Court shall **GRANT IN PART** and **DENY IN PART** Al Jazeera's Motion to Compel, 16-cv-13, ECF Nos. 84, 166 and Al Jazeera's Motion to Compel, 18-mc-45, ECF No. 1; **GRANT IN PART** and **DENY IN PART** GDC's Motion to Quash, 16-cv-13, ECF No. 89, and Phenix's Motion to Quash, 18-mc-45, ECF No. 18; **GRANT** GDC's Motion for Protective Order, 16-cv-13, ECF No. 89; and **DENY** GDC's request for

---

[1] Al Jazeera's GDC Br.; GDC's Br.; Pet'rs' Reply Br. Supp. Mot. Compel and Opp'n Resp't's Cross-Mots. Quash and Protective Order, 16-cv-13, ECF No. 91 ("Al Jazeera's GDC Reply"); GDC's Reply Mem. Supp. Cross-Mots. Quash and Protective Order, 16-cv-13, ECF No. 94 ("GDC's Reply"); Pet'rs' Sur-Reply Supp. Mot. Compel and Opp'n Cross-Mots., 16-cv-13, ECF No. 169, 18-mc-45, ECF No. 27 ("Al Jazeera's Sur-Reply"); Resp'ts' Resp. Pet'rs' Sur-Reply, 16-cv-13, ECF No. 151, 18-mc-45, ECF No. 25 ("Resp'ts' Resp. Sur-Reply"); Al Jazeera's Phenix Br.; Phenix's Br.; Pet'rs' Reply Br. Supp. Mot. Compel, 18-mc-45, ECF No. 19 ("Al Jazeera's Phenix Reply"); Phenix's Reply Supp. Cross-Mot Quash, 18-mc-45, ECF No. 20 ("Phenix's Reply").

reasonable attorneys' fees and costs, 16-cv-13, ECF No. 89.  A separate Order consistent with this Memorandum Opinion shall follow.

## BACKGROUND

### I.  Factual History

Plaintiff Ryan Zimmerman ("Mr. Zimmerman") is a professional Major League Baseball ("MLB") player who brought a defamation lawsuit against Al Jazeera.  *See* Al Jazeera's GDC Br. at 1.[2]  Mr. Zimmerman alleges that Al Jazeera published a video documentary entitled *The Dark Side: Secrets of the Sports Dopers* ("*The Dark Side*") that falsely portrayed Mr. Zimmerman as using performance enhancing drugs ("PEDs").  *See id.* at 1–5.  *The Dark Side* includes hidden camera footage in which Mr. Sly claimed that Mr. Zimmerman used PEDs.  *See id.* at 3.  In the video, Mr. Sly also claimed that Peyton Manning, a professional National Football League player, received treatment at the Guyer Institute, and that his wife, Ashley Manning, received human growth hormone ("HGH") from the Guyer Institute.  *See id.*

Prior to broadcasting *The Dark Side*, Al Jazeera notified the Mannings about Mr. Sly's statements.  *See id.*  In response, the Mannings retained GDC to provide legal advice and to formulate a legal strategy for anticipated litigation.  *See* GDC's Br. at 4.  Matthew McGill, an attorney at GDC, then contacted Al Jazeera's pre-broadcast counsel at DWT, providing information regarding the Mannings' treatment at the Guyer Institute and ███████████.[3]  *See*

---

[2] Ryan Howard ("Mr. Howard") also brings a defamation suit against Al Jazeera, alleging nearly identical facts.  *See Howard v. Al Jazeera America, LLC*, 16-cv-14 (D.D.C.).  With the parties' consent, the Court consolidated Mr. Howard's case with Mr. Zimmerman's case.  *See* 16-cv-13, Nov. 18, 2016 Min. Order.  Because Mr. Zimmerman's case is the lead case, and the case in which the motions related to GDC have been filed, the Court shall refer solely to Mr. Zimmerman in this Memorandum Opinion.

[3] For simplicity, the Court shall refer to this proposed discovery as the "GDC/DWT Communications."

*id.* at 5.  GDC asserts that the information provided demonstrates that Mr. Sly's allegations were false.  *See id.*  Al Jazeera asserts that the information provided "substantially corroborated [Mr.] Sly's statements."  Al Jazeera's GDC Br. at 4.

GDC also retained Phenix to investigate the nature and sources of the allegations made in *The Dark Side*.  *See* GDC's Br. at 4.  Mr. Sly published a video online in which he recanted any statements made on hidden camera.  *See id.* at 6.  GDC and Phenix assert that Mr. Sly's recantation was sincere.  *See id.* at 23; Phenix's Br. at 8.  Al Jazeera asserts that Phenix investigators visited Mr. Sly's family's home and coerced Mr. Sly's recantation.  *See* Al Jazeera's GDC Br. at 4.

## II.  Procedural History

### A.  *The GDC Subpoena*

On September 14, 2017, District Judge Ketanji Brown Jackson referred all discovery-related motions in *Zimmerman v. Al Jazeera America, LLC, et al.*, 16-cv-13, to the undersigned.  *See* 16-cv-13, Sep. 14, 2017 Min. Order.

On September 28, 2017, Al Jazeera served GDC a subpoena duces tecum.  *See* Stevens Decl. Supp. Mot. Compel ¶ 10, 16-cv-13, ECF No. 84-2 ("Stevens GDC Decl."); *see also* Stevens GDC Decl. Ex. G., 16-cv-13, ECF No. 84-9 (subpoena duces tecum).  On February 9, 2018, Al Jazeera served Mr. McGill with a subpoena ad testificandum.  *See* Stevens GDC Decl. ¶ 10; Stevens GDC Decl. Ex. I, 16-cv-13, ECF No. 84-11 (subpoena ad testificandum).  On February 13, 2018, DLA served an amended subpoena duces tecum on GDC, which was identical to the original subpoena duces tecum in all respects except the address of the place of compliance.  *See* Stevens GDC Decl. ¶ 10.  GDC objected to the subpoenas and did not produce any documents or Mr. McGill for deposition.  *See id.* ¶ 11.

Al Jazeera moved, under seal, to compel GDC to comply with the amended subpoena duces tecum and the subpoena ad testificandum (collectively, the "GDC Subpoenas"), pursuant to Federal Rule of Civil Procedure 37.  *See* Sealed Mot., 16-cv-13, ECF No. 84.  Specifically, Al Jazeera asked the Court to order GDC to produce (1) "all documents relating to the conversations between GDC and DWT lawyers during December 2015;" (2) "all documents relating to Phenix's interactions with [Mr.] Sly or [Mr.] Sly's family;" and (3) Mr. McGill "for deposition on this subject matter."  *See* Al Jazeera's GDC Br. at 12–13.

GDC opposed Al Jazeera's Motion, and cross-moved to quash the GDC Subpoenas, for a protective order, and for an award of reasonable attorneys' fees, also under seal.  *See* GDC's Br.  Al Jazeera and GDC both filed sealed reply briefs in support of their motions.  *See* Al Jazeera's GDC Reply; GDC's Reply.  Al Jazeera and GDC also jointly moved to unseal, subject to limited redactions, the motions and supporting memoranda and exhibits.  *See* Joint Mot. Unseal, 16-cv-13, ECF No. 85 (unseal Al Jazeera's Motion to Compel); Joint Mot. Unseal, 16-cv-13, ECF No. 90 (unseal GDC's opposition and cross-motion); Joint Mot. Unseal, 16-cv-13, ECF No. 93 (unseal Al Jazeera's reply brief); Joint Mot. Unseal, 16-cv-13, ECF No. 95 (unseal GDC's reply brief).  The Court granted the Joint Motions to Unseal.  *See* Order, 16-cv-13, ECF No. 165.  Al Jazeera filed its redacted Motion to Compel, Mot. Compel, 16-cv-13, ECF No. 166, and its redacted reply brief and opposition to GDC's cross-motion.  *See* Reply to Opp'n Mot. Compel, 16-cv-13, ECF No. 167.

### B.   The Phenix Subpoena

On December 1, 2017, Al Jazeera issued to Phenix a subpoena duces tecum.[4]  *See* Stevens Decl. Supp. Mot. Compel ¶ 7, 18-mc-45, ECF No. 5 ("Stevens Phenix Decl."); *see also*

---

[4] In its briefs, Al Jazeera refers to this subpoena by the date it was served on Phenix on

Stevens Phenix Decl. Ex. E, 18-mc-45, ECF No. 5-5 (subpoena duces tecum).  On February 9, 2018, Al Jazeera served a subpoena ad testificandum on Phenix pursuant to Federal Rule of Civil Procedure 30(b)(6).  *See* Stevens Phenix Decl. ¶ 9; *see also* Stevens Phenix Decl. Ex. H. 18-mc-45, ECF No. 5-8 (subpoena ad testificandum).  Phenix objected to the subpoenas and did not produce any documents or witnesses.  *See* Stevens Phenix Decl. ¶ 8.

Al Jazeera subsequently moved in the United States District Court for the Southern District of Indiana to compel Phenix to comply with the subpoena duces tecum and the subpoena ad testificandum (collectively, "the Phenix Subpoenas").  *See* Mot. Enforce, 18-mc-45, ECF No. 1.  Specifically, Al Jazeera asked the Court to order Phenix to (1) produce all documents relating to Phenix's interactions with Mr. Sly or his family, as well as a privilege log describing all documents that were withheld; and (2) produce the person(s) most knowledgeable to testify about this subject matter at a deposition.  *See* Al Jazeera's Phenix Br. at 11.  Al Jazeera also moved to transfer the discovery dispute to this Court, so that the Phenix Subpoenas and GDC Subpoenas could be considered together.  *Id.*  Phenix consented to the transfer request, which the Southern District of Indiana granted.  *See* Stipulation of Transfer, 18-mc-45, ECF No. 12; Order, 18-mc-45, ECF No. 13.  The Motion to Enforce was referred to the undersigned to be adjudicated alongside the discovery dispute involving GDC in 16-cv-13.  *See* 18-mc-45, Apr. 4, 2018 Min. Order.

Phenix opposed Al Jazeera's motion and cross-moved to quash the Phenix Subpoenas.  *See* Phenix Br. at 1.  Al Jazeera replied in support of its motion and Phenix replied in support of

---

December 8, 2017.  *See* Stevens Phenix Decl. ¶ 7; Stevens Phenix Decl., Ex. E, 18-mc-45, ECF No. 5-5 (subpoena duces tecum); Stevens Phenix Decl., Ex. F, 18-mc-45, ECF No. 5-6 (affidavit of service).  This Memorandum Opinion and accompanying Order refers to the subpoena by its date of issuance on December 1, 2017.

its cross-motion.  *See* Al Jazeera's Phenix Reply; Phenix's Reply.  Pursuant to an order from the

Court, Al Jazeera redacted certain Highly Confidential information contained in its reply brief.

*See* Order, 16-cv-13, ECF No. 99.

       *C.*    *Sur-Reply*

      Al Jazeera subsequently moved for leave to file a sur-reply in both cases, which the Court

granted.  *See* Mot. Leave File Sur-Reply, 16-cv-13, ECF No. 133, 18-mc-45, ECF No. 21; 16-cv-

13, Sept. 21, 2018 Min. Order; 18-mc-45, Sept. 21, 2018 Min. Order.  Al Jazeera filed its sur-

replies and also moved for leave to file its sur-replies under seal.  Sealed Sur-Reply Supp. Sealed

Mot., 16-cv-13, ECF No. 140, 18-mc-45, ECF No. 22; Sealed Mot. Leave File Document Under

Seal, 16-cv-13, ECF No. 141, 18-mc-45, ECF No. 23.  On October 1, 2018, Al Jazeera filed

errata to both sur-replies, redacting information that was inadvertently included in the original

sur-replies.  *See* Errata, 16-cv-13, ECF No. 142, 18-mc-45, ECF No. 24.  The Court granted Al

Jazeera's Motions to File Under Seal.  *See* 16-cv-13, Nov. 13, 2018 Min. Order; 18-mc-45, Mar.

03, 2020 Min. Order.  Al Jazeera subsequently filed sealed, unredacted copies of its Sur-Replies.

*See* Al Jazeera's Sur-Reply.  GDC and Phenix both filed identical, unredacted responses on the

public docket.  *See* Resp'ts' Resp. Sur-Reply.  Al Jazeera notified the Court that it did not object

to unsealing the original Sur-Replies, as redacted through the Errata.  *See* Pet'rs' Not. Unsealing

at 1, 18-mc-45, ECF No. 28.  The Court will direct the Clerk of the Court to unseal the redacted

Sur-Replies.[5]

---

[5] A table listing the docket numbers for the sealed and unsealed versions of the motions
in both cases is attached as Appendix A.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits a party to compel production of information that is discoverable under Rule 26.  *See AF Holdings, LLC v. Doe*, 752 F.3d 990, 995 (D.C. Cir. 2014).  Rule 26 permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). "Generally speaking, 'relevance' for discovery purposes is broadly construed."  *Food Lion, Inc. v. United Food & Commercial Workers Int'l. Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (internal quotations omitted).  The party moving to compel discovery under Rule 45 "bears the initial burden of explaining how the requested information is relevant," and of proving that the challenged discovery responses were incomplete.  *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007); *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007); *see also Alexander v. FBI*, 193 F.R.D. 1, 3 (D.D.C. 2000).  The non-moving party must then explain "why discovery should not be permitted."  *Jewish War Veterans*, 506 F. Supp. 2d at 42; *see also United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("Once the relevancy of the material sought has been established, the objecting party then bears the burden of 'showing why discovery should not be permitted.'") (quoting *Alexander*, 194 F.R.D. at 326).

Upon timely motion, a court must quash or modify a Rule 45 subpoena that "requires disclosure of privileged or other protected matter[s], if no exception or waiver applies; or subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A); *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 83 (D.D.C. 2010) (Rule 45 governs a non-party's motion to quash).  That standard "applies to both document and testimonial subpoenas."  *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (citation omitted).  "The quashing of a subpoena is an extraordinary

measure, and is usually inappropriate absent extraordinary circumstances." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (citations omitted); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984) ("The burden is particularly heavy to support a 'motion to quash as contrasted to some more limited protection.'") (quoting *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C. Cir. 1965)).

When a party claims a privilege as the basis for withholding documents, that party "bears the burden of proving the communications are protected." *Felder v. Washington Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (quoting *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)). To carry its burden, the party asserting the privilege must "present the underlying facts demonstrating the existence of the privilege," and "conclusively prove each element of the privilege." *In re Lindsey*, 158 F.3d at 1270 (citations omitted). "A blanket assertion of the privilege will not suffice." *Id.* Further, the party asserting the privilege must present facts to allow the court to "state *with reasonable certainty* that the privilege applies." *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) (emphasis added).

The court may also "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Ordinarily, the party requesting the protective order bears the burden of showing good cause "by demonstrating specific evidence of the harm that would result." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001); *see also Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998) ("The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."). Courts reviewing such motions generally employ a balancing test "weighing the movant's proffer of harm against the

adversary's 'significant interest' in preparing for trial." *Jennings*, 201 F.R.D. at 275 (citation omitted); *see also Alexander*, 186 F.R.D. at 75.

## DISCUSSION

### I.   The Court Shall Address Phenix's Cross-Motion on Its Merits

Al Jazeera asserts that the Court should "strike [Phenix's Cross-Motion to Quash] and permit no further briefing on this dispute" because Phenix never indicated an intention to move to quash.  *See* Al Jazeera's Phenix Reply at 4.  Phenix asserts that the Court should treat Phenix's Cross-Motion as unopposed, because Al Jazeera filed only a "reply" brief, and did not also file an "opposition" brief.  *See* Phenix's Reply at 11–13.

D.C. Local Civil Rule 7(m) requires parties to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought, and if there is, to narrow the areas of disagreement," before filing a nondispositive motion.  LCvR 7(m).  D.C. Local Civil Rule 7(b) permits a court to treat a motion as conceded if an opposition is not served within 14 days.  Enforcement of both Local Rules 7(m) and 7(b) is discretionary.  *See, e.g.*, *United States ex rel. Purcell v. MWI Corp.*, 824 F. Supp. 2d 12, 19 n.3 (D.D.C. 2011) ("Although violations of [Local Rule 7(m)] may in some circumstances be grounds for denying a motion, the court has the discretion to excuse such failures.") *rev'd on other grounds*, 15 F. Supp. 3d 18 (D.D.C. 2014); *FDIC v. Bender,* 127 F.3d 58, 68 (D.C. Cir. 1997) ("[T]he discretion to enforce [predecessor to Local Rule 7(b)] lies wholly with the district court.").

The Court shall consider Phenix's Cross-Motion on its merits, and exercises its discretion to look past any violation of Local Rules 7(m) or 7(b).  It is unclear whether Phenix discussed its anticipated Cross-Motion to Quash with Al Jazeera before filing its Cross-Motion.  Phenix's

Rule 7(m) statement only avers that counsel met and conferred "to attempt to resolve this discovery dispute." Phenix Br. at 2. "This discovery dispute," however, is ambiguous, as it could refer to either Al Jazeera's Motion to Enforce, or both Al Jazeera's Motion and Phenix's Cross-Motion.

In any event, enforcement of Local Rule 7(m) would be against the interests of justice and judicial economy, because further discussion is unlikely to narrow the areas of dispute or obviate the need for the Court's intervention. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) ("The purpose of [Local Rule 7(m)] is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court.") (citation omitted). Thus, even assuming that Phenix failed to discuss its Cross-Motion, the Court declines to summarily deny Phenix's Cross-Motion.

It is also unclear whether Al Jazeera failed to oppose Phenix's Cross-Motion. On the one hand, Al Jazeera did not style its reply brief as an "Opposition to Phenix's Cross-Motion" or separately docket its reply brief as an opposition. On the other hand, Al Jazeera clearly opposes Phenix's Cross-Motion for the reasons stated in its reply brief.

In any event, the overlap between the parties' motions makes it impractical to enforce Local Rule 7(b). The Court sees no way to adjudicate Al Jazeera's Motion to Enforce on its merits, while summarily granting Phenix's Cross-Motion to Quash. Phenix does not propose any way to resolve that contradiction. Rather, Phenix seems to ask the Court to stretch Local Rule 7(b) beyond its limits, and summarily deny *a motion* because *a cross-motion* was unopposed. *See* Phenix's Reply at 13 (asking the Court to "enter judgment in favor of Phenix on the ground that Al Jazeera has conceded the Motion to Quash."). Enforcing Local Rule 7(b) in this manner

would be against the interest of justice.  Thus, assuming without deciding that Al Jazeera failed

to oppose Phenix's Cross-Motion, the Court declines to summarily grant Phenix's Cross-Motion.

**II. The Documents and Testimony Relating to the GDC/DWT Communications Are Not Discoverable**

The Court first addresses Al Jazeera's Motion to Compel as it relates to "documents and

communications concerning GDC's pre-broadcast, non-privileged communications with DWT,

Al Jazeera's pre-broadcast counsel" and Mr. McGill's proposed deposition testimony "on this

subject matter."  Al Jazeera's GDC Br. at 9, 13.  GDC objects and cross-moves to quash the

GDC Subpoenas, asserting that the proposed discovery is not relevant, *see* GDC's Br. at 16,

already in Al Jazeera's possession, *see id*. at 18, and subject to the attorney-client privilege and

work-product doctrine.  *See id.* at 25.  Phenix also cross-moves to quash the Phenix Subpoenas,

incorporating GDC's arguments.  *See* Phenix Br. at 9 n.2.

*A.    Any Communications to which Al Jazeera or DWT Was a Party Are Unduly Duplicative*

Al Jazeera's requests include communications between GDC and DWT—Al Jazeera's

pre-broadcast counsel.  Al Jazeera asserts that the GDC/DWT Communications "confirmed

[Mr.] Sly's credibility by providing corroboration of numerous facts[.]"  Al Jazeera's GDC Br. at

6.  Al Jazeera also asserts that communications produced by GDC may carry greater weight at

trial than those Al Jazeera produces itself.  *See* Al Jazeera's GDC Reply at 8.  GDC opposes,

asserting that Al Jazeera already possesses any communications between GDC and DWT, and

DWT is a more convenient source for any communications Al Jazeera does not possess.  *See*

GDC's Br. at 18.

"On motion or on its own, the court must limit the frequency or extent of discovery . . .

[if] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from

some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P.

26(b)(2)(C)(i).  Discovery of communications between two people may be duplicative where

there has already been discovery from one of those people.  *See Guantanamera Cigar Co. v.*

*Corporacion Habanos, S.A.*, 263 F.R.D. 1, 9 (D.D.C. 2009) ("It is entirely clear that information

regarding meetings and a relationship between two people are in fact known to both people.").

      The GDC Subpoenas request material that is either duplicative of what Al Jazeera already

possesses, or can be obtained from a more convenient source—*i.e.*, Al Jazeera's counsel at

DWT.  The GDC Subpoenas seek documents and communications between GDC and either Al

Jazeera or DWT.  Specifically, GDC Subpoena Document Request No. 1 seeks "All non-

privileged documents and communications relating to [Mr. Sly], including any *communications*

*relating to [Mr.] Sly between Gibson Dunn and Davis Wright Tremaine LLP* [or its agents]."  *See*

Stevens GDC Decl. Ex. G at 26, 16-cv-13, ECF No. 84-9 (emphasis added).  GDC Subpoena

Document Request No. 2 seeks "All non-privileged documents and communications relating to

Al Jazeera or Davies, including any *communications between Gibson Dunn and Al Jazeera*,

Davies, or [their agents]."  *Id.* (emphasis added).  Phenix Subpoena Document Request No. 4

makes a nearly identical request for communications between Phenix and Al Jazeera.  *See*

Stevens Phenix Decl. Ex. E at 13, 18-mc-45, ECF No. 5-5.  GDC Subpoena Document Request

No. 4 seeks "All non-privileged documents and *communications between Gibson Dunn and*

*Davis Wright Tremaine LLP* [or its agents], relating to the Mannings."  *See* Stevens GDC Decl.

Ex. G at 26, 16-cv-13, ECF No. 84-9. (emphasis added).  All four requests are unreasonably

duplicative, or available from an alternative more convenient source, because communications

between GDC and Al Jazeera or DWT should be in the possession of Al Jazeera or DWT.  *See*

*Guantanamera Cigar,* 263 F.R.D. at 9.

Having found the requests to be outside the scope of permissible discovery, the Court may either quash or modify the subpoena.  *See* Fed. R. Civ. P. 45(d)(3).  Modification is more appropriate here because the duplicative discovery is only a subset of the material requested.  For example, under GDC Subpoena Document Request No. 1, non-privileged communications "relating to [Mr.] Sly" might also include communications between GDC and other athletes or other media companies.  Under GDC Subpoena Document Request No. 2, non-privileged communications "relating to Al Jazeera" might also include internal conversations relating to those shared with Al Jazeera or DWT (provided the attorney-client privilege or work-product doctrine does not apply).

GDC Subpoena Document Request No. 4 is worded differently, and cannot be modified to excise the cumulative discovery.  Rather than seeking "documents and communications relating to the Mannings, including communications between GDC and DWT," Request No. 4 seeks "[a]ll non-privileged documents and communications between Gibson Dunn and Davis Wright Tremaine LLP . . . relating to the Mannings."  Stevens GDC Decl. Ex. G at 26, 16-cv-13, ECF No. 84-9.  In other words, whereas Requests Nos. 1 and 2 seek a broad universe of material relating to a subject matter, including a subset of communications between GDC and DWT, Request No. 4 seeks only communications between GDC and DWT, *limited* to a subset of material relating to a subject matter.  Thus, Document Request No. 4 cannot be modified to bring it into compliance with Rule 26, and it will be quashed.

Thus, the Court shall **DENY** Al Jazeera's Motion to Compel and **GRANT** GDC's Motion to Quash and **GRANT** Phenix's Motion to Quash as they relate to communications to which Al Jazeera or DWT was a party.  Regardless of whether the communications sought are relevant, they are either duplicative or can be obtained from a more convenient source.

Specifically, the Court shall **QUASH** GDC Subpoena Document Request No. 4.  Further, the Court shall **MODIFY** the remaining Document Requests to exclude communications to which Al Jazeera or DWT was a party.

      B.    *Documents and Communications Relating to the GDC/DWT Communications Are Relevant under Rule 26(b)(1)*

Al Jazeera asserts that GDC/DWT Communications are relevant to whether Al Jazeera acted with actual malice.  *See* Al Jazeera's GDC Br. at 10.  Specifically, Al Jazeera believes that the information sought will contradict Mr. Sly's recantation video.  *See id.*  Al Jazeera also asserts that the information will confirm "[Mr.] Sly's credibility and bona fides more broadly" by showing that Mr. Sly's allegations about other professional athletes were truthful.  *See id.*  GDC responds that any information not already possessed by Al Jazeera is irrelevant, because actual malice is limited to what Al Jazeera knew at the time of publication.  *See* GDC's Br. at 16.  GDC further responds that Mr. Sly's allegations against the Mannings are not relevant to Mr. Sly's "entirely distinct allegations" against Mr. Zimmerman.  *Id.* at 17.

"Generally speaking, 'relevance' for discovery purposes is broadly construed."  *Food Lion*, 103 F.3d at 1012; *see also Jewish War Veterans*, 506 F. Supp. 2d at 41 (federal rules allow "broad access to relevant information at the discovery stage.").  Relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense."  *Shamesh*, 314 F.R.D. at 8 (internal quotation marks omitted) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Relevant information "need not be admissible in evidence to be discoverable."  *Id.*

GDC is correct that further discovery is irrelevant to whether Al Jazeera acted with "actual malice."  Al Jazeera's state of mind is determined "at the time of publication."  *Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 118 (D.C. Cir.), *cert. denied* 138 S. Ct. 366 (2017).

Thus, new information gained through post-publication discovery has no bearing on whether Al

Jazeera published a defamatory statement with actual malice.  *See, e.g.*, *Secord v. Cockburn*, 747

F. Supp. 779, 792 (D.D.C. 1990) ("[P]ost-publication events have no impact whatever on actual

malice.").  Al Jazeera may not retroactively justify its publication decision with as-yet

undisclosed information relating to the GDC/DWT Communications, such as Ashley Manning's

medical information.[6]

Undisclosed information relating to the GDC/DWT Communications *is* relevant,

however, to whether Al Jazeera's statements were defamatory at all.  To prevail on his

defamation and false light invasion of privacy claims, Mr. Zimmerman must prove that Mr. Sly's

allegations in *The Dark Side* were actually false.  *See, e.g., Phila. Newspapers, Inc. v. Hepps*,

475 U.S. 767, 776 (1986) (recognizing "a constitutional requirement" that a defamation plaintiff

prove falsity before recovering damages); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624

(D.C. Cir. 2001) ("For a statement to be actionable under the First Amendment, it must at a

minimum express or imply a verifiably false fact about [the plaintiff].").  The Court in the

underlying action similarly recognized that "it remains to be seen whether Plaintiffs can put

forward sufficient evidence to demonstrate the falsity of the statements."  Mem. Op. at 29–30

n.13, 16-cv-13, ECF No. 43.  If the GDC/DWT Communications indicate that Mr. Sly's

allegations regarding the Mannings were true, a fact finder may decide that it is more likely that

his allegations regarding Mr. Zimmerman were also true.  Thus, the GDC/DWT

Communications are relevant because they bear on Mr. Sly's credibility and the veracity of his

---

[6] GDC's pre-publication communications with Al Jazeera and DWT may be relevant to the issue of actual malice; however, those communications are necessarily already known to Al Jazeera.  Thus, to the extent the GDC/DWT Communications are relevant to actual malice, they are unreasonably cumulative or duplicative.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *supra* Discussion, Section II.A.

original allegations, and therefore impact Mr. Zimmerman's burden to prove falsity. *See Elion v. Jackson*, 544 F. Supp. 2d 1, 6–7 (D.D.C. 2008) (impeachment material is relevant under Rule 26(b)).

Indeed, it is difficult to square GDC's argument that the GDC/DWT Communications are irrelevant to Mr. Sly's credibility with GDC's own conduct. *See* GDC's Br. at 16–17. If the GDC/DWT Communications were truly irrelevant to Mr. Sly's credibility, there would be no reason for GDC to communicate with DWT at all. Rather, the record indicates that GDC communicated with DWT to challenge Mr. Sly's credibility. *See, e.g.*, GDC's Br. at 6 (characterizing Mr. Sly's allegations as "outlandish misinformation").

Under different facts, a ███████████████ might be irrelevant to a *party's* alleged PED use. In *Food Lion*, for example, the district court permitted non-party discovery to "show that the types of actions engaged in by other unions in other corporate campaigns were also engaged in by the [defendant unions against employer plaintiff]." 103 F.3d at 1010. The D.C. Circuit reversed, holding that that the non-party unions' alleged misconduct had no bearing on the party union's intent, a requirement for the tort in question. *See id.* at 1013. The D.C. Circuit noted, however, that non-party discovery may be appropriate if a movant shows a "stronger nexus" between the non-party and the parties. *Id.* at 1014. As an example, the Circuit noted that a different conclusion may have been warranted if Food Lion could show the defendant union and non-party unions conspired under a "shared strategy of litigation." *Id.* at 1014 n.10.

The central issue of Mr. Sly's credibility as an insider to PED use by professional athletes, his specific allegations of PED against ███████████████ Mr. Zimmerman, as well as his central role in *The Dark Side*, provides a "stronger nexus" between the Mannings and Mr.

Zimmerman.  The GDC/DWT Communications are not relevant to directly show that, if ███

███████████, then it is more likely that Mr. Zimmerman also used PEDs.  Rather, the

GDC/DWT Communications are relevant to show that, if Mr. Sly's allegations against the

Mannings were credible, then it is more likely that his similar allegations against Mr.

Zimmerman were also credible.  Thus, the GDC/DWT Communications *are not* relevant to Al

Jazeera's state of mind, but *are* relevant to Mr. Sly's credibility and the truthfulness of the

allegedly defamatory statements.

> C.   *Documents and Communications Relating to the GDC/DWT Communications
>       Are Not Proportional under Rule 26(b)(1)*

Al Jazeera asserts that discovery relating to the GDC/DWT Communications is

proportional because any confidentiality objection was waived when the Mannings publicly

confirmed they were patients at the Guyer Institute, and any remaining confidentiality objections

can be addressed by an already existing protective order.  *See* Al Jazeera's GDC Br. at 11–12.

GDC responds that the Mannings maintain a strong privacy interest in their medical records and

that further discovery unduly burdens those privacy interests.  *See* GDC's Br. at 19.

The "concept of proportionality" is at the "forefront" of Rule 26.  *Oxbow Carbon &

Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 n.3 (D.D.C. 2017); *see also Prasad v.

George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017) (noting that Rule 26 was amended

"to emphasize the need for proportionality in discovery and to 'encourage judges to be more

aggressive in identifying and discouraging discovery overuse.'") (citing Fed. R. Civ. P. 26(b)(1)

Advisory Committee's Note to 2015 Amendment).  Courts consider six factors in determining

whether discovery is proportional: "(1) the importance of the issues at stake in this action; (2) the

amount in controversy; (3) the parties' relative access to relevant information; (4) the parties'

resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden

or expense of the proposed discovery outweighs its likely benefit." *See, e.g., Oxbow Carbon,* 322 F.R.D. at 6 (citations omitted); Fed. R. Civ. P. 26(b)(1).  Courts typically consider these factors under a "totality of the circumstances," rather than weighing each of the six factors individually.  *See, e.g., Fairholme Funds, Inc. v. Fed. Housing Fin. Agency*, 13-cv-1053, 2019 WL 5864595, at *6 (D.D.C. Nov. 8, 2019); *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1194 (10th Cir. 2009) (predecessor Rule 26(b)(2)(iii) does not require "formal and explicit findings regarding each of the factors"); *cf. Oxbow Carbon*, 322 F.R.D. at 6 ("No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis."). (internal quotation marks and citation omitted).

Documents and communications relating to the Mannings' medical information, the Guyer Institute, or ▮▮▮▮▮▮▮▮▮▮▮▮ impose an undue burden on the Mannings that is not proportional to the needs of this case.  First, the GDC/DWT Communications relating to the Mannings, although relevant, will not dispose of the issues in this litigation.  While Mr. Sly's credibility is an important issue, proving that Mr. Sly's allegations against the Mannings are true will not automatically prove that his allegations against Mr. Zimmerman are also true.[7]

Second, the burden of the proposed discovery greatly outweighs its likely benefit. Indeed, it is not clear how much benefit the proposed discovery will actually provide to Al Jazeera's case.  The circumstances by which Mr. Sly learned about Mr. Zimmerman's alleged

---

[7] In fact, GDC's pre-publication disclosures only revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Al Jazeera's GDC Reply at 3.  Thus to the extent any additional disclosures relate to Ms. Manning and not Mr. Manning, the relation to Mr. Sly's allegations against Mr. Zimmerman is further attenuated.

PED use and ███████████████████████,[8] limiting the impact of any newly discovered information. That benefit is further diminished to the extent the discovery impeaches, rather than bolsters, Mr. Sly's credibility.[9] GDC's pre-publication disclosures also diminish the usefulness of the discovery, because Al Jazeera already has at least some of what it seeks and additional information may be cumulative.

The proposed discovery is also burdensome, because it invades the Mannings' privacy. *See generally In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1218 (D.C. Cir. 2004) (finding the district court abused its discretion under Rule 26(c) by ordering medical records produced "without weighing the appellant's privacy interests against the plaintiffs' evidentiary need for the remaining records."); *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (holding that "[l]egitimate interests in privacy are among the proper subjects of [Rule 26(c)]'s protection."). Although Al Jazeera correctly notes that neither federal nor D.C. law prohibits the discovery Al Jazeera seeks, the public policy behind such statutes cautions against discovery and must be taken into account. *In re Sealed Case (Med. Records)*, 381 F.3d at 1215–16 (courts must consider the burden of disclosure, even if statutory privileges do not apply); *Pearson*, 211 F.3d at 65; *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 933 (7th Cir. 2004) (holding that, under Fed. R. Civ. P. 45(c), the court was obligated to consider the principles underlying medical privacy laws, even when the Court was not able to enforce them).

---

[8] For example, while Mr. Sly bases his knowledge of Mr. Zimmerman's PED use on having personally "coached" him, Mr. Sly bases his knowledge of ████████████ on having interned at the Guyer Institute. *See* GDC's Br. at 5, 7; Transcript at 26–27, 32, 16-cv-13, ECF No. 26-4.

[9] GDC identifies several ways in which the GDC/DWT disclosures conflict with Mr. Sly's allegations. ████████████████████████████████████████
████████████████████  *See* GDC's Br. at 5.

The fact that the Mannings are not parties to the litigation heightens the concern over invading their privacy. *See, e.g.*, *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) ("[N]on party status is . . . relevant in considering the burden [under Rule 26].""). Thus, the burden placed on the Mannings to disclose such sensitive discovery greatly outweighs whatever benefit Al Jazeera could gain from discovering more information about the Mannings' medical history than it already has.

Contrary to Al Jazeera's assertion, the protective order in this matter does not fully mitigate the intrusiveness of requiring the production of the Mannings' medical information. The protective order allows the parties to designate certain documents containing medical information as "Highly Confidential," and that designation would limit the risk that the Mannings' medical information would be publicly disclosed if produced in discovery. *See* Protective Order, ECF No. 87. But that would simply avoid compounding, and would not eliminate, the burden of requiring the Mannings to share their private medical information with Al Jazeera. It might be appropriate to subject the Mannings to that burden if they had initiated or joined the litigation against Al Jazeera and thereby placed their medical information at issue. But in the circumstances here, given the limited importance of the information to Al Jazeera's claims, this burden is disproportionate and excessive.

Al Jazeera's assertion that the Mannings "waived" their claim to privacy by disclosing some private medical information to DWT in the GDC/DWT Communications is unpersuasive. *See* Al Jazeera's GDC Reply at 11. Al Jazeera cites only one case supporting this theory, and in that case, a plaintiff raising claims for denial of an accommodation of her disability sought to withhold portions of her medical records after disclosing and relying on the favorable portions of those records. *See Whitbeck v. Vital Signs, Inc.*, 163 F.R.D. 398, 399 (D.D.C. 1995). The court

concluded that this partial disclosure waived a D.C. state law privilege.  *See id.  Whitbeck* relies

upon *Sklagen v. Greater Southeast Community Hospital*, and quotes an excerpt from that Court's

conclusion that "[h]aving waived the medical privilege as to materials favorable to her position it

would be manifestly unfair to allow plaintiff to invoke the privilege to shield similar materials

which are potentially damaging."  625 F. Supp. 991, 992 (D.D.C. 1984); *see also Whitbeck*, 163

F.R.D. at 400.  Unlike the plaintiffs in *Whitbeck* and *Sklagen*, the Mannings are nonparties who

have not placed their records at issue in the underlying litigation.  Further, the Court's ability to

protect the Mannings' medical records from discovery is not contingent on the applicability of

the physician-patient privilege or another state law privilege.  Consequently, *Whitbeck* and

*Sklagen* are distinguishable.  The Mannings' disclosure of certain medical information to Al

Jazeera's pre-publication counsel before Al Jazeera published *The Dark Side* does not waive

their ability to ask the Court to protect their privacy interests in other medical records that they

have not disclosed.

Next, the Court must determine whether it can alleviate this disproportionality and

burden by modifying the discovery requests instead of disallowing them.  Certain Document

Requests cannot be modified, because those requests pertain exclusively to the Mannings'

medical information.  Specifically, GDC Subpoena Document Request Nos. 6 and 7, which seek

information relating to the Guyer Institute and ███████████████████ respectively,

cannot be modified to adequately balance the Mannings' privacy against Al Jazeera's discovery

interests.  Phenix Subpoena Document Request Nos. 6 and 7 make identical requests, and

similarly cannot be modified.  Other document requests may include the Mannings' medical

information, but may also include other, relevant information.  For example, GDC Subpoena

Document Request No. 1, which relates to Mr. Sly, or Document Request No. 3, which relates to

GDC's representation of the Mannings, may also include material relating to Phenix's investigation of Mr. Sly.

Thus, the Court shall **DENY** Al Jazeera's Motion to Compel and **GRANT** GDC's Motion to Quash and **GRANT** Phenix's Motion to Quash as they relate to the GDC/DWT Communications. While relevant, the proposed discovery is not proportional and would impose an undue burden on the Mannings' privacy. Specifically, the Court shall **QUASH** GDC Subpoena Document Requests Nos. 6 and 7 and Phenix Subpoena Document Requests Nos. 6 and 7. Further, the Court shall **MODIFY** the remaining Document Requests to exclude information relating to the Mannings' medical records.

> ### D. *Any Discovery of the Mannings' Medical Information Is Unduly Burdensome*

GDC also moves for a protective order, requiring that Ms. Manning's medical information remain permanently under seal and prohibiting Al Jazeera from serving additional subpoenas seeking information relating to the Mannings. *See* GDC's Br. at 31. GDC asserts that a protective order is necessary to safeguard the Mannings' privacy. *See id.* Al Jazeera opposes, asserting that its discovery requests were proper. *See* Al Jazeera's GDC Reply at 18.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Although not explicitly mentioned in Rule 26, protecting the privacy of litigants and third parties is "implicit in the broad purpose and language of the rule." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n. 21 (1984).

As discussed above, discovery of the Mannings' medical information is not proportional, because it unduly invades the Mannings' privacy. *See supra* Discussion, Section II.C. This will not change, regardless of whether discovery is sought from the Mannings' attorneys, their

medical providers, or the Mannings themselves.  *See Pearson*, 211 F.3d 57, 73 (3d. Cir. 2000) (noting an individual's embarrassment from disclosure can alone be enough to justify denying discovery into medical information).  Accordingly, there is good cause to issue an order protecting the Mannings from the discovery of their medical records through third-party subpoenas.  The Court shall **GRANT** GDC's Motion for a Protective Order, and **ORDER** that (1) the Mannings' medical records remain permanently under seal and (2) Al Jazeera refrain from seeking further information relating to the Mannings' medical records.

> E.   *Mr. McGill's Deposition Testimony on This Topic Is also Relevant, but Not Proportional*

Al Jazeera also moves to compel Mr. McGill's testimony regarding the GDC/DWT Communications.  *See* Al Jazeera's Br. at 13.  Al Jazeera asserts that the proposed deposition testimony is relevant, and that Al Jazeera only seeks testimony regarding "non-privileged communications with DWT."  *Id.* at 10.  GDC asserts that the deposition testimony is unreasonably cumulative of testimony Al Jazeera's attorneys at DWT could provide, and that the testimony is also irrelevant.  *See* GDC's Br. at 18–19.  Additionally, GDC asserts that attorney depositions warrant heightened scrutiny.  *Id.* at 12; *see also* GDC's Reply at 7–8.

The Court finds that the proposed deposition testimony regarding the GDC/DWT Communications is relevant, but not proportional for the same reasons as the Document Requests.  *See supra* Discussion, Sections II.B, II.C.  While Mr. McGill's testimony may offer some marginal benefit by bolstering a DWT attorney's testimony, that benefit is vastly outweighed by the intrusion upon the Manning's medical privacy.  Additionally, deposing the Mannings' counsel is burdensome because of the risk of encountering privilege or work-product issues.  *See, e.g., Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 384 (D.D.C. 2011) (prohibiting deposition of opposing party's former counsel).  That risk is

heightened because Al Jazeera seeks to depose Mr. McGill regarding communications made while representing the Mannings.  Thus, the Court shall **DENY** Al Jazeera's Motion to Compel and **GRANT** GDC's Motion to Quash as to Mr. McGill's deposition testimony regarding the GDC/DWT Communications.

### III. The Documents and Testimony Relating to the Phenix Investigation Are Discoverable

The Court next addresses Al Jazeera's Motion to Compel GDC as it relates to "the interactions between [Mr.] Sly and Phenix."  Al Jazeera's GDC Br. at 8.  The Court also addresses Al Jazeera's parallel Motion to Compel Phenix as it relates to "all documents relating to Phenix's interactions with [Mr.] Sly or [Mr.] Sly's family," as well as deposition testimony "about this subject matter."  *See* Al Jazeera's Phenix Br. at 11.  For simplicity, the Court shall refer to that proposed discovery as the "Phenix Investigation."

GDC objects to, and cross-moves to quash, the GDC Subpoenas, asserting that the proposed discovery is irrelevant and unduly burdensome.  *See* GDC's Br. at 22–24.  Phenix also cross-moves to quash the Phenix Subpoenas on similar grounds and also incorporates GDC's arguments.  *See* Phenix's Br. at 9 n.2.  Both GDC and Phenix also assert that much, if not all, of the Phenix Investigation is protected by the attorney-client privilege or work-product doctrine, and that a privilege review would be unduly burdensome.  *See id.* at 9; GDC's Br. at 24.

### A. Documents and Communications Relating to the Phenix Investigation Are Relevant under Rule 26(b)(1)

Al Jazeera asserts that documents and communications relating to the Phenix Investigation are relevant to show that Mr. Sly's recantation video was not credible.  *See* Al Jazeera's GDC Br. at 10; Al Jazeera's Phenix Br. at 10.  GDC and Phenix respond that the Phenix Investigation is not relevant because any information Al Jazeera did not have at the time

of publication cannot be used to disprove "actual malice." *See* GDC's Br. at 22; Phenix's Br. at 7–8. GDC and Phenix also respond that the Phenix Investigation is not relevant to Mr. Sly's credibility because there is no evidence that Mr. Sly's recantation was coerced and even if the recantation was coerced, it would not prove Mr. Sly provided PEDs to Mr. Zimmerman. *See* GDC's Br. at 23; Phenix's Br. at 8–9.

As discussed above, Mr. Zimmerman must prove that Mr. Sly's allegations in *The Dark Side* were actually false. *See supra* Discussion, Section I.B. Thus, the jury will likely need to decide whether to credit Mr. Sly's original allegations in *The Dark Side,* or his subsequent recantation of those allegations. The circumstances surrounding his recantation are relevant to that credibility determination. Evidence that Mr. Sly's recantation was coerced indicates that his original allegations against Mr. Zimmerman were truthful; evidence that the recantation was sincere indicates that his original allegations against Mr. Zimmerman were false. GDC and Phenix's assertion that there is no evidence of coercion carries little weight, given that there has been no discovery on this matter. *See* GDC's Br. at 22; Phenix's Br. at 8. There can be no evidence if there has been no discovery. GDC's and Phenix's objection that "[Mr.] Sly's motivations for video recording his own recantation cannot prove or disprove whether he in fact provided Zimmerman or Howard with Delta-2" conflates weight with relevancy. *See* Phenix's Br. at 8–9; *see also* GDC's Br. at 23. Although the Phenix Investigation cannot definitively prove whether Mr. Zimmerman used PEDs, additional discovery may make it more (or less) likely that Mr. Sly's allegations in *The Dark Side* were truthful. *See* Fed. R. Evid. 401.

Indeed, it is difficult, if not impossible, to square GDC's and Phenix's relevancy arguments with their assertion of the work-product doctrine. For example, in asserting the work-product doctrine, Phenix alleges its investigation involved "better understand[ing] the nature and

source of the claims involving the Mannings" and "potentially bring[ing] libel claims against Al Jazeera." *See* Phenix's Reply at 7; *see also* GDC's Br. at 27 ("Gibson Dunn commissioned and directed the [Phenix] [I]nvestigation in order to prepare a legal strategy, and potentially engage in litigation against Al Jazeera."). Information regarding "the nature and source" of allegations against the Mannings is equally relevant to those against Mr. Zimmerman, because the "nature and source" is the same—Mr. Sly. Also, information regarding the viability of the Mannings' potential libel claims are relevant to the viability of Mr. Zimmerman's similar libel claims. In short, the Phenix Investigation cannot both be "because of" libel litigation against Al Jazeera, and also "not relevant" to libel litigation against Al Jazeera.

### B. Documents and Communications Relating to the Phenix Investigation Are Proportional under Rule 26(b)(1)

GDC and Phenix claim that discovery of the Phenix Investigation is unduly burdensome because the documents and communications are protected by the attorney-client privilege and work-product doctrine. Al Jazeera responds that it does not seek any privileged material, that the Phenix Investigation's purpose was to coerce Mr. Sly's recantation, and that it is entitled to, at the very least, a privilege log. *See* Al Jazeera's GDC Reply at 16–17; Al Jazeera's Phenix Reply at 8–10.

Rule 45(e)(2)(A)(ii) requires a person asserting a privilege to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Thus, "[a] blanket assertion of the privilege will not suffice." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998). In fact, a privilege log is often a "requisite" to invoking a privilege under Rule 45. *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996); *see also In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 751 (D.C. Cir. 2006) ("[Rule 45(e)(2)] is

generally satisfied by the submission of a privilege log detailing each document withheld and the

reason.") (citing *Tuite*, 98 F.3d at 1416).  Similarly, Rule 26(b)(5) generally requires parties to

produce a privilege log.  *See, e.g.*, *Smith v. Cafe Asia*, 256 F.R.D. 247, 250–51 (D.D.C. 2009)

("Filing a privilege log has become the 'universally accepted means of asserting privileges in

discovery in the federal courts.'") (citing *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1

(D.D.C. 1999)); *TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 718 F. Supp. 2d 90, 97

(D.D.C. 2010) (ordering production of a privilege log).[10]

GDC's and Phenix's privilege and work-product assertions are unavailing unless and

until a privilege log is produced.  Without a privilege log describing the document-specific

nature of each objection, the Court cannot determine the validity of any attorney-client privilege

or work product doctrine claim.  Further, Al Jazeera and Phenix seem to agree that at least some

of the materials, such as Phenix's communications with Mr. Sly, are not privileged.  *See*

Phenix's Reply at 5.  While the non-privileged information may still be protected by the work-

product doctrine, Al Jazeera may be entitled to those documents if it can show "substantial

need."  Fed. R. Civ. P. 26(b)(3).  Such a showing is impossible, however, without knowing what

documents have been withheld as attorney work-product.  *See F.T.C. v. Boehringer Ingelheim*

*Pharmaceuticals, Inc.*, 778 F.3d 142, 156 (D.C. Cir. 2015) ("The 'substantial need' inquiry

---

[10] Some courts have gone so far as to find that failure to produce a privilege log waives
the privilege.  *See Banks v. Office of the Senate Sergeant-at-Arms and Doorkeeper*, 226 F.R.D.
113, 116–17 (D.D.C. 2005) (summarizing case law).  Privilege is not waived, however, if the
document is also subject to a pending objection, including relevancy.  *See U.S. v. Philip Morris*
*Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).  GDC and Phenix both objected to the subpoenas as
"categorically irrelevant."  *See* Phenix's Br. at 7; *see also* GDC's Br. at 15.  Those objections
were made in good faith, as the subpoenas were indeed categorically irrelevant to actual malice.
*See supra* Discussion, Section II.B.  Thus, the Court declines to find that GDC's or Phenix's
failure to produce a privilege log waived any privilege claim.

requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery.").

Nor have GDC and Phenix carried their burden to show that producing a privilege log is itself unduly burdensome.  GDC and Phenix never specify the "significant expenditure of resources" or "substantial legal fees" privilege review would require.  GDC's Br. at 24; Resp. Sur-Reply at 3.  For example, GDC and Phenix do not describe the volume of the Mannings' case file, the accessibility of those files, or the time it would take to review those files.  *Cf.* *Oxbow Carbon*, 322 F.R.D. at 4–5 (describing the number of documents in the entire file, the number of documents sampled, the percentage of sampled documents that were responsive, the cost of reviewing the sampled documents, and an estimate of the costs of reviewing the entire file).  Without some specific supporting evidence, the Court cannot credit GDC's and Phenix's conclusory assertions that a privilege review would be time-consuming and expensive.  *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (district court cannot "exercise its admittedly broad discretion" without evidence "describing the precise nature of [the objecting party's] burden"); *see also U.S. Dep't of the Treasury v. Pension Benefit Guaranty Corp.*, 301 F.R.D. 20, 29 (D.D.C. 2014) ("If the 'good cause' requirement for quashing a subpoena could be met by a bare assertion that privilege review constitutes an undue burden, discovery under the Federal Rules would quickly grind to a halt.").

Even if the Court were to credit GDC's and Phenix's assertions that a privilege review would be burdensome, that burden is outweighed by the benefit of discovery.  The Phenix Investigation is important to resolving the issues in the case.  Unlike the truthfulness of Mr. Sly's allegations against the Mannings, the sincerity of Mr. Sly's recantation is very important to resolving the issues in this litigation.  The Court has already identified Mr. Sly's recantation as

"the primary support" for why his hidden-camera allegations may have been untrustworthy. Mem. Op. at 39, 16-cv-13, ECF No. 43.  Evidence showing that Mr. Sly's recantation was coerced is important rebuttal evidence, and would more directly show that Mr. Sly's allegations in *The Dark Side* were actually true.

Also, GDC and Phenix have far greater access to the relevant information than Al Jazeera.  In fact, Al Jazeera is unlikely to discover the relevant information elsewhere.  There is no indication that Phenix or GDC has shared information about its investigation with other parties, such as Mr. Zimmerman.  Further, Al Jazeera's attempts to locate Mr. Sly have so far been unsuccessful.  *See* Al Jazeera's Sur-Reply at 4.  Al Jazeera's delay in subpoenaing Mr. Sly does not weigh against its access to the relevant information, because it has diligently sought that information through GDC and Phenix.  Indeed, it is difficult to square GDC's argument that Al Jazeera is prohibited from seeking "duplicative" information from both GDC and Phenix, *see* GDC's Br. at 29 n. 7, with its argument that Al Jazeera should be required to seek triplicative information from Mr. Sly.  *See* Resp'ts' Resp. Sur-Reply at 5.  It is entirely understandable that Al Jazeera subpoenaed Mr. Sly only after it became apparent Phenix would not comply with its subpoena (and that Al Jazeera subpoenaed Phenix only after it became apparent that GDC would not comply with its subpoena).  Additionally, while some information may be known to Mr. Sly's family, it is likely that the most probative information is known only to Mr. Sly and the Phenix investigators.

GDC and Phenix are correct that it may not be necessary for both GDC and Phenix to produce documents.  The Court, however, is not in a position to decide which entity to hold responsible for production.  Further, neither entity has met its burden to show that production

would be duplicative, because neither entity has responded to the discovery requests.  In other words, because nothing has been produced, there is no production to "duplicate."

Thus, the Court shall **GRANT** Al Jazeera's Motions to Compel and **DENY** GDC's Motion to Quash and **DENY** Phenix's Motion to Quash as they relate to the Phenix Investigation.  The Phenix Investigation materials are relevant and proportional.  Any privilege or protective doctrine must be asserted in a privilege log, and the Court will assess any assertion of attorney-client privilege or work product protection after receiving such a log.  The Court shall **MODIFY** the remaining Document Requests to only include information relating to the Phenix Investigation.

### C.   Phenix Investigator Testimony Is Also Relevant and Proportional

In addition to the document requests, Al Jazeera also seeks deposition testimony from Phenix investigators relating to "Phenix's interactions with [Mr.] Sly or [Mr.] Sly's family."  Al Jazeera's Phenix Br. at 11.  Al Jazeera make similar arguments on relevancy and proportionality as with the Document Requests.  Phenix opposes, asserting that the proposed deposition testimony is irrelevant, burdensome, and seeks privileged or protected information.  *See* Phenix Br. at 3.

The Court finds that the proposed deposition testimony relating to the Phenix Investigation is relevant and proportional for same reasons the Document Requests are relevant and proportional.  *See supra* Discussion, Sections III.A, III.B.

In addition, the Court declines to consider Phenix's assertion that communications between Phenix investigators and GDC attorneys are privileged, because those communications are outside the scope of Al Jazeera's Motion to Compel.  In its Motion, Al Jazeera only seeks deposition testimony as to "Phenix's interactions with [Mr.] Sly or [Mr.] Sly's family."  Al

Jazeera's Phenix Br. at 11.  The subpoena ad testificandum is similarly limited to Phenix's

interactions with Mr. Sly or his family and Phenix's visits to Mr. Sly's family's home.  *See*

Stevens Phenix Decl. Ex. H., ECF No. 5-8.

Further, Phenix and Al Jazeera appear to agree that deposition testimony relating to

investigators' conversations with Mr. Sly or his family are not privileged.  Phenix (and GDC)

previously offered Al Jazeera non-privileged materials relating to Mr. Sly, including Mr. Sly's

communications with investigators.  *See* Phenix Br. at 5.  While the attorney-client privilege may

prevent deposition testimony as to investigators' conversations with GDC, neither Phenix nor

GDC offers any reason why the attorney-client privilege should prevent deposition testimony as

to investigators' conversations with Mr. Sly or his family.

The Court also finds that the work-product doctrine does not prevent investigators from

testifying as to their conversations with Mr. Sly or his family.  In fact, federal courts regularly

permit parties to depose investigators on specific facts uncovered during the investigation.,

because the work-product doctrine extends to documents prepared for litigation but not to the

underlying facts.  *See, e.g.*, *Bear Rep. Brewing Co. v. Central City Brewing Co.*, 275 F.R.D. 43,

45–46 (D. Mass. 2011) (investigator's report not discoverable, but facts recited in the report

would be); *Laxalt v. McClatchy*, 116 F.R.D. 438, 442 (D. Nev. 1987) ("In the present case, both

deponents must answer questions which seek to discover all relevant facts in the case, regardless

of whether those facts were discovered in their roles as defendants' investigators."); *see also*

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266–67 (10th Cir. 1995) (holding that blanket

assertion of the work-product doctrine to prevent investigator from testifying as to his

investigative process was sanctionable).  Facts only fall within the work-product doctrine when

the facts are "incidental to and bound up with, discussion of litigation strategy and the

deliberative processes of attorneys actively preparing their [case] for a pending lawsuit." *Mervin v. F.T.C.*, 591 F.2d 821, 827 (D.C. Cir. 1978) *superseded in part on other grounds*.  GDC and Phenix offer no reason why investigators' conversations with Mr. Sly or his family would be "bound up with" GDC's deliberative processes.

Al Jazeera is entitled to depose the witnesses by oral examination.  GDC and Phenix previously offered to allow Al Jazeera to depose the Phenix investigators by written question. GDC's Br. at 10; Phenix's Br. at 5.  It is unclear whether GDC and Phenix still advocate for that compromise position.  To the extent that they do, the Court concludes that deposition by oral examination is preferable.  The single proposed deposition topic—investigators' interactions with Mr. Sly or his family—does not seriously threaten the attorney-client privilege or work-product doctrine.  Deposition by oral examination will also permit counsel to examine the witnesses' demeanor and ask any probative follow-up questions.  *See, e.g.*, *Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 600 n. 5 (3d Cir. 1980) ("Indeed, there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses."); *Scott v. Chipotle Mexican Grill*, *Inc.*, 306 F.R.D. 120, 125 (S.D.N.Y. 2015) ("Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation.  Accordingly, depositions upon written questions are disfavored.") (citing *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 397 (S.D.N.Y. 2006)).

Thus, the Court shall **GRANT** Al Jazeera's Motion to Compel and **DENY** Phenix's Motion to Quash as they relate to Rule 30(b)(6) testimony from a person knowledgeable of the

Phenix Investigation.  Al Jazeera shall be permitted to depose the witnesses regarding Phenix's interactions with [Mr.] Sly and his family by oral examination.

> D.    *Mr. McGill's Deposition Testimony on This Topic Would Be Unduly Duplicative*

Al Jazeera also seeks Mr. McGill's testimony regarding Phenix's interactions with Mr. Sly or Mr. Sly's family.  *See* Al Jazeera's GDC Br. at 13.  Al Jazeera's arguments, and GDC's opposition, are not entirely clear, because both Al Jazeera and GDC focus on Mr. McGill's proposed testimony regarding the GDC/DWT Communications.

In any event, any testimony Mr. McGill could offer regarding the Phenix Investigation would be unduly duplicative of Phenix's own testimony.  There is no indication that Mr. McGill personally investigated Mr. Sly or his family, that Mr. McGill visited Mr. Sly's family's home, or that Mr. McGill otherwise has any relevant, first-hand knowledge regarding the Phenix Investigation.

Thus, the Court shall **DENY** Al Jazeera's Motion to Compel and **GRANT** GDC's Motion to Quash as they relate to Mr. McGill's deposition testimony regarding Phenix's interactions with Mr. Sly or his family.[11]

**IV. GDC Is Not Entitled to Costs and Fees**

GDC requests that the Court award it reasonable costs and fees for the time and effort expended in "defending against" Al Jazeera's subpoenas.  GDC's Br. at 3; *see also* GDC's Br. at

---

[11] Because the Court has now denied Al Jazeera's Motion to Compel Mr. McGill's testimony on the two subject matters for which it has subpoenaed him and, by the same turn, granted GDC's Motion to Quash Al Jazeera's subpoena to produce Mr. McGill for testimony on the same subject matters, Al Jazeera's subpoena ad testificandum issued to Mr. McGill on February 9, 2018 is quashed in its entirety.  *See* Al Jazeera's GDC Br. at 13; Stevens GDC Decl. ¶¶ 10–19; *supra* Discussion, Section I.E;

31 (requesting costs and fees under Rule 45(d)(1)).  Al Jazeera responds that costs and fees are

unwarranted because its subpoena demands were "proper."  Al Jazeera's GDC Reply at 18.

Rule 45(d)(1) requires the district court "impose an appropriate sanction" on a party or

attorney who fails to "take reasonable steps to avoid imposing undue burden or expense."  Fed.

R. Civ. P. 45(d)(1).  "Rule 45(d)(1) does not require the court to impose sanctions merely

because a party is unsuccessful in its subpoena."  *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 22

(D.D.C. 2015) (citing *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009)); *see also Legal*

*Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) ("Merely losing a motion to compel

does not expose a party to Rule 45 sanctions.").  Rule 45(d)(1) sanctions are appropriate where a

subpoena was issued "in bad faith or for some improper purpose."  *Goldberg*, 123 F. Supp. 3d at

22.

GDC is not entitled to costs and fees incurred in opposing the subpoenas, because there is

no indication that the subpoenas were issued in bad faith or for an improper purpose.  The

subpoenas sought relevant material which may have aided Al Jazeera in its litigation.  *See supra*

Discussion, Sections II.B., III.A.  Although the Court disagrees that discovery of the GDC/DWT

Communications is proportional, Al Jazeera's arguments were substantially justified because the

issues raised in this discovery dispute were "amenable to reasonable disagreement."  *In re Long-*

*Distance Telephone Serv. Fed. Excise Tax Refund Litigation*, 751 F.3d 629, 636 (D.C. Cir.

2014).  Also, Al Jazeera reasonably rejected GDC's compromise offers, because Al Jazeera may

be entitled to more than what GDC offered.  Specifically, although GDC offered to produce non-

privileged documents relating to Mr. Sly, the Court finds that Al Jazeera is entitled to a privilege

log so that it may challenge appropriate work-product claims.  In addition, although GDC offered

to produce Phenix investigators for written deposition, the Court finds that Al Jazeera is entitled to depose the Phenix investigators by oral examination.

GDC's reliance on *Linder v. Calero Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001) is misplaced. *See* GDC's Br. at 31. The costs at issue in *Linder* were "reasonable copying and labor costs" incurred through complying with a court order, pursuant to Rule 45(d)(2)(B)(ii). *Linder*, 251 F.3d at 182 (discussing predecessor Rule 45(c)(2)(B)). In contrast, GDC seeks costs and fees incurred through defending against Al Jazeera's subpoenas, pursuant to Rule 45(d)(1). Whereas Rule 45(d)(2)(B)(ii) cost-shifting is mandatory and based upon significant expense incurred by the non-party, Rule 45(d)(1) sanctions are discretionary and based upon a finding of bad faith or abuse. *See Legal Voice*, 738 F.3d at 1185 (distinguishing Rule 45(d)(1) from Rule 45(d)(2)(B)(ii)).[12]

Thus, the Court shall **DENY** GDC's request for reasonable attorneys' fees, because Al Jazeera's subpoenas were substantially justified and made in good faith.

---

[12] *Linder* and Rule 45(d)(2)(B)(ii) make clear that, although GDC is not entitled to costs associated with defending against the subpoenas, it may be entitled to significant expenses resulting from compliance with the subpoenas. *See Linder*, 251 F.3d at 182; Fed. R. Civ. P. 45(d)(2)(B)(ii). In determining whether Al Jazeera must pay GDC's expenses, the Court must determine first "whether the subpoena imposes expenses on the non-party," and second, "whether those expenses are 'significant.'" *Linder*, 251 F.3d at 182. Reasonable attorneys' fees are recoverable under Rule 45(d)(2)(B)(ii). *See, e.g., G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 317 (D.D.C. 2016) (collecting cases); *In re Beltway Law Grp.*, Case No. 14-00380 (SMT), 2017 WL 394343 at *6 (Bankr. D.C. Jan. 27, 2017) (requiring reimbursement for attorneys' fees spent generating a detailed privilege log).

GDC cannot have incurred any expenses in complying with the subpoenas, let alone "significant" expenses, because GDC has not yet complied with the subpoenas. Further, the Court cannot determine whether future expenses will be "significant," because GDC offers no factual evidence regarding the cost or time required to conduct a privilege review. Also, Al Jazeera and GDC may be able to minimize the cost of reviewing the Mannings' entire case file through sampling, either randomly or by some other means. Thus, to the extent GDC seeks cost-shifting under Rule 45(d)(2)(B)(ii), that request is premature. Once the costs to be shifted are clearer, GDC may renew its motion for cost-shifting under Rule 45(d)(2)(B)(ii).

## CONCLUSION

For the reasons set forth above, the Court finds that the proposed discovery is relevant, because it goes to Mr. Sly's credibility and the veracity of the allegations made in *The Dark Side*. Discovery regarding the GDC/DWT Communications, however, is not proportional because it unduly burdens the Mannings' privacy interests.  Discovery regarding the Phenix Investigation is proportional, because there is no alternative source is available, and because GDC and Phenix have not shown that a privilege review would be unduly burdensome.  Although the Court anticipates future disputes regarding the scope of the attorney-client privilege and work-product doctrine, those disputes will not be ripe until GDC and Phenix produce a privilege log.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.2(b) of the United States District Court for the District of Columbia, any party who objects to the undersigned magistrate judge's ruling must file a written objection thereto within 14 days of the party's receipt of this Memorandum Opinion and Order.  The written objections must specifically designate the order or part thereof to which objection is made, and the basis for the objection.

Date:  September 7, 2021

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

37

**APPENDIX A**

| Motion/Cross-Motion | Sealed, Unredacted Version | Motion to Seal/Unseal | Order re: Motion to Seal/Unseal | Unsealed, Redacted Version |
|---|---|---|---|---|
| Al Jazeera's Mot. Compel GDC | 16-cv-13 ECF No. 84 | 16-cv-13 ECF No. 85 | 16-cv-13 ECF No. 165 | 16-cv-13 ECF No. 166 |
| GDC's Opp'n/Cross-Mot. Quash and Protective Order | 16-cv-13 ECF No. 89 | 16-cv-13 ECF No. 90 | 16-cv-13 ECF No. 165 | NOT YET FILED |
| Al Jazeera's GDC Reply | 16-cv-13 ECF No. 91 | 16-cv-13 ECF No. 93 | 16-cv-13 ECF No. 165 | 16-cv-13 ECF No. 167 |
| GDC's Reply | 16-cv-13 ECF No. 94 | 16-cv-13 ECF No. 95 | 16-cv-13 ECF No. 165 | NOT YET FILED |
| Al Jazeera's Sur-Reply | 16-cv-13 ECF No. 169 | 16-cv-13 ECF No. 141 | 16-cv-13, 11/13/2018 Min. Order | 16-cv-13 ECF No. 140* SEALED |
| GDC Resp. Sur-Reply | --- | --- | --- | 16-cv-13 ECF No. 151* |
| Al Jazeera's Mot. Compel Phenix | --- | --- | --- | 18-mc-45 ECF No. 1 |
| Phenix's Opp'n/Cross-Mot. Quash | --- | --- | --- | 18-mc-45 ECF No. 16, 18 |
| Al Jazeera's Phenix Reply | 16-cv-13 ECF No. 99 | --- | --- | 18-mc-45 ECF No. 19 |
| Phenix's Reply | --- | --- | --- | 18-mc-45 ECF No. 20 |
| Al Jazeera's Sur-Reply | 18-mc-45 ECF No. 27 | 18-mc-45 ECF No. 23 | 08-mc-45, 03/03/2020 Min. Order | 18-mc-45 ECF No. 22* SEALED |
| Phenix Resp. Sur-Reply | --- | --- | --- | 18-mc-45 ECF No. 25* |

* Al Jazeera filed identical Sur-Replies in both cases; GDC's and Phenix's Responses are also identical.